EVERYTOWN LAW

September 21, 2020
The Honorable Gregory H. Woods
United States District Court for the Southern District of New York
500 Pearl Street, Room 2260
New York, NY 10007

Re:     *City of Syracuse, et al. v. Bureau of Alcohol, Tobacco, Firearms and Explosives, et al.,* 1:20-CV-06885-GHW

Dear Judge Woods:

Pursuant to Rule 2(C) of this Court's Individual Rules of Practice in Civil Cases, Plaintiffs respectfully request: (a) a pre-motion conference and (b) permission to file an early motion for summary judgment. As discussed below, early summary judgment practice in Administrative Procedure Act ("APA") cases like this one is appropriate—particularly here, where timely Court intervention will address a rapidly expanding public safety crisis resulting from the proliferation of homemade firearms, known as "ghost guns," which are increasingly being used in crimes in cities across the country.

Plaintiffs have conferred with counsel for Defendants concerning an expedited schedule in the context of either a motion for early summary judgment or for a preliminary injunction, and the parties are in agreement that the most efficient way to resolve the case is on early cross-motions for summary judgment.  Specifically, the parties have agreed to the following schedule, subject to the Court's approval: (a) Defendants will produce the administrative records by October 26th; (b) Plaintiffs' motion for summary judgment will be filed by November 25th; (c) Defendants' cross-motion for summary judgment will be filed by January 8th; (d) Plaintiffs' reply/opposition will be filed by February 5th; and (e) Defendants' reply on any cross-motion will be filed by February 19th.  Additionally, and subject to the Court's approval of this proposed schedule, Defendants agree not to file a motion to dismiss and will raise any threshold issues in their cross-motion for summary judgment, and Plaintiffs agree in exchange to waive the requirement that Defendants answer until after summary judgment motions are decided.

1.  Brief Description of the Case.  Plaintiffs are four cities: Syracuse, NY; San Jose, CA; Chicago, IL; and Columbia, SC—as well as Everytown for Gun Safety, the country's largest gun violence prevention organization, which is headquartered in the Southern District of New York ("Everytown"). The Defendants are the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), the United States Department of Justice (of which ATF is a part), and the heads of those two agencies. The Complaint was filed on August 26, 2020, and all defendants were served by September 3, 2020. The Complaint includes five claims for relief, all under the APA and all arising out of the Defendants' failure to apply the clear terms of the Gun Control Act ("GCA") with respect to what constitutes a "firearm."

As alleged, and as a direct result of the Defendants' erroneous application of the law, anyone with a credit card and an address can go online and, without even a background check, purchase a gun-building kit.  Within hours of receiving a kit in the mail, an unserialized "ghost gun" can be completed, which—unlike a commercially manufactured firearm—cannot be traced by law

EVERYTOWN LAW

enforcement to its point of origin. These gun-building kits are quickly becoming the weapon of choice of individuals who are prohibited by law from acquiring or possessing firearms, such as convicted felons, domestic abusers, and minors.

The GCA defines regulated "firearms" to include not only operable weapons but also their core building blocks—frames for pistols, and receivers for long guns—so long as those core building blocks are "designed to be" or may "readily be converted" into operable weapons. *See* 18 U.S.C. § 921(a)(3). Notwithstanding that clear and broad statutory language, Defendant ATF has taken the arbitrary position that, even if a frame or receiver is nearly ready to be assembled with other parts into an operable firearm, if that frame or receiver is "unfinished" and has yet to undergo specific drilling or machining, or is "solid" in certain areas, then it cannot be a firearm—full stop. This position cannot be reconciled with the clear language, intent, and purpose of the GCA, and it ignores the reality that these frames and receivers are designed to become operable firearms, may readily be converted into operable firearms, and in fact have no purpose other than to be the main component of operable firearms.   (Complaint ¶¶59-64).

Plaintiffs ask this Court to set aside as arbitrary, capricious, and contrary to law: (a) a 2015 ATF interpretive rule memorializing this erroneous interpretation of the GCA and (b) three ATF determination letters issued in 2015 and 2017 to a leading gun-building kit supplier, Polymer80, which features the letters on its websites as supposed proof of the legality of selling gun-building kits.  (*Id.* ¶¶82-87; 108-118; 168-198). Plaintiffs also seek relief for Defendants' unreasonable delay in failing to respond to Everytown's Petition for Rulemaking filed in late 2019, which urged Defendants to issue a new regulation to properly apply the GCA, thereby regulating gun-building kits as firearms and halting the proliferation of ghost guns.  (*Id.* ¶¶148-167, 199-206).

2. <u>The Proliferation of Ghost Guns Due to ATF's Regulatory Failures Has Become an Urgent Threat to Public Safety</u>.  The recovery of ghost guns in connection with crimes has recently exploded.  (*Id.* ¶¶120-147).  In May 2020, the former acting director of ATF confirmed on *60 Minutes* that the use of ghost guns in crimes is "increasing significantly and rapidly." (*Id.* ¶2). As many as 30% of guns recovered by federal agents in California in 2019 lacked a serial number.  (*Id.* ¶17(a)). The District of Columbia recently disclosed in litigation that: (a) it had recovered three times as many ghost guns in 2019 vs. 2018 (116 vs. 25), (b) three of the ghost guns recovered in 2019 were involved in murders, and (c) over 80% of the ghost guns it had recovered since 2017 were made by Polymer80.  (*Id.* ¶¶17(b), 139).

Beyond these statistics, the Complaint sets forth numerous recent examples of horrific crimes carried out with ghost guns.  In May 2020, a homemade AR-15 style rifle was used in a premeditated attack at the federal courthouse in Oakland, killing a contract security officer with the Federal Protective Service and wounding his partner, and in an ambush on police in Santa Cruz, California, wounding two officers, one fatally.  (*Id.* ¶17(g)).  In November 2019, a ghost gun was used by a student in a school shooting at Saugus High School in California, leaving two students dead and three others shot and wounded.

The rising threat to public safety from ghost guns—including Polymer80 ghost guns in particular—has directly impacted Plaintiffs. For example, in Syracuse, 25 ghost guns have been recovered by police in 2020 alone, a 30% increase over 2019; over 90% of the ghost guns

EVERYTOWN LAW

recovered in that city since 2018 were made by Polymer80; and, in December 2019, a ghost gun was used in the shooting of a 6-year-old boy. (*Id.* ¶¶17(d), 138). Plaintiff City of Chicago estimates that it recovered over three times as many ghost guns in 2019 as it did in 2018; Plaintiff City of San Jose has recovered dozens of ghost guns over the past several years (*id.* ¶¶17(e), (f)); and, in both cities, a number of recently recovered ghost guns have been Polymer80s (*id.* ¶¶131, 143-144). As a direct result of the proliferation of ghost guns, these cities have experienced increased gun crime, increased difficulties and costs investigating and holding wrongdoers accountable for crimes committed with ghost guns, as well as economic injuries including increases in law enforcement and emergency services costs. (*Id.* ¶¶36-38, 40).

3. <u>The Law and the Facts Strongly Support Resolution of this Case by an Early Motion for Summary Judgment</u>. An early resolution of this APA action is supported by applicable law, principles of judicial economy, and the interests of justice. First, Fed. R. Civ. P. 56(b) allows for a motion for summary judgment to be filed "at any time" and "early summary judgment practice is routine in APA cases," where this Court effectively sits as an appellate tribunal resolving only questions of law and is not called on to resolve factual disputes. *See, e.g., Clean Air Carolina v. U.S. Dept. of Transp.*, No. 17-CV-05779, 2017 WL 5157469, at *1 (S.D.N.Y. Sept. 14, 2017). Second, APA cases are exempt from initial disclosure requirements, Fed. R. Civ. P. 26(a)(1)(B)(i), 26(f)(1), and Plaintiffs seek no discovery beyond the relevant administrative records, which Defendants have agreed to promptly produce.

Third, this case presents straightforward issues of law. The first four claims focus on a small handful of interrelated acts—ATF's issuance of the 2015 interpretive rule and ATF's three determination letters issued to Polymer80 in 2015 and 2017—all of which, Plaintiffs submit, manifest the ATF's arbitrary, capricious, and legally erroneous interpretation and application of the GCA. The fifth claim asserts that Defendants' delay of more than nine months in responding to the Petition for Rulemaking is unreasonable given the growing public safety threat resulting from Defendants' past actions.

Finally and critically, expedited resolution of this case could have a significant impact on public safety. A ruling for Plaintiffs would end the commercial sale of gun-building kits unless they included a serial number and a background check. The status quo, on the other hand, would permit the continuing and rapid proliferation of quickly and easily assembled ghost guns as the weapon of choice for criminals and other prohibited persons, leading to more gun violence in Plaintiff cities and other cities and states across the country.

For all these reasons, Plaintiffs respectfully request a pre-Motion Conference at the Court's earliest convenience and permission to file for summary judgment as set forth above.

Respectfully Submitted,

EVERYTOWN LAW

By:   */s/Eric Tirschwell*
        Eric Tirschwell (ET-3023)
        Len Kamdang (LK-3895)

EVERYTOWN LAW

Aaron Esty (4793329)
Krystan Hitchcock (5270202)
450 Lexington Avenue, P.O. #4184
New York, New York 10024
Telephone:  (646) 324-82222

Daniel Grooms**
Elizabeth B. Prelogar**
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone:  (202) 776-2042

Kathleen Hartnett**
COOLEY LLP
101 California Street, 5th Floor
San Francisco, California 94111-5800
Telephone:  (415) 693-2000

*Attorneys For Plaintiffs*


** *Pro Hac Vice application forthcoming*

cc: Assistant United States Attorney Alexander Hogan (via email)