UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CITY OF SYRACUSE, NY; CITY OF SAN
JOSE, CA; CITY OF CHICAGO, IL; CITY OF
COLUMBIA, SC; EVERYTOWN FOR GUN
SAFETY ACTION FUND; and EVERYTOWN
FOR GUN SAFETY SUPPORT FUND,

                  *Petitioners*,

     v.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES; REGINA
LOMBARDO, in her official capacity as Acting
Deputy Director of Bureau of Alcohol, Tobacco
Firearms and Explosives; UNITED STATES
DEPARTMENT OF JUSTICE; and WILLIAM
BARR, in his official capacity as ATTORNEY
GENERAL, U.S. Department of Justice,

                  *Defendants*,

     and

ZACHARY FORT; FREDERICK BARTON;
BLACKHAWK MANUFACTURING GROUP,
INC.; and FIREARMS POLICY COALITION,
INC.,

              *Applicants in Intervention*.

No. 1:20-cv-06885-GHW

**MEMORANDUM IN SUPPORT OF
ZACHARY FORT; FREDERICK
BARTON; BLACKHAWK
MANUFACTURING GROUP, INC.;
AND FIREARMS POLICY
COALITION, INC.'S
MOTION TO INTERVENE**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................. 1

DESCRIPTION OF APPLICANTS FOR INTERVENTION ................................. 4

ARGUMENT ................................................. 6

I.     Applicants Are Entitled To Intervene As Of Right.................................. 6

     A.     Applicants' Motion Is Timely ...................................... 7

          1.     Applicants Filed Soon After they had Notice of the Present Suit .................................... 8

          2.     No Prejudice will Occur to the Existing Parties if Applicants Intervene ................................ 9

          3.     Applicants Will be Prejudiced if Their Intervention is Denied ...................................... 10

          4.     The Circumstances Militate in Favor of Intervention ........... 10

     B.     Applicants Have Significant, Protectable Interests ......................... 11

     C.     Applicants' Interests Will Be Impaired by the Relief Sought.......... 14

     D.     Existing Parties Will Not Adequately Represent Applicants' Interests ....................................... 16

II.     Alternatively, This Court Should Grant Applicants Permissive Intervention ..................................... 18

CONCLUSION ................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Aristograt Leisure Ltd. v. Deutsche Bank Trust Co. Americas*,
262 F.R.D. 348 (S.D.N.Y. 2009) ....................................................................... 11

*Bridgeport Guardians v. Delmonte*,
602 F.3d 469 (2d Cir. 2010) .............................................................................. 12

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
250 F.3d 171 (2d Cir. 2001) .............................................................................. 17

*Exch. Comm'n v. U.S. Realty & Improvement Co.*,
310 U.S. 434 (1940) ........................................................................................... 19

*Floyd v. City of New York*,
302 F.R.D. 69 (S.D.N.Y. 2014) .................................................................. 7, 8, 12

*Forest Conservation Council v. U.S. Forest Serv.*,
66 F.3d 1489 (9th Cir. 1995) ............................................................................. 17

*Fresno County v. Andrus*,
622 F.2d 436 (9th Cir. 1980) ............................................................................. 18

*Hartford Fire Ins. Co. v. Mitlof*,
193 F.R.D. 154 (S.D.N.Y. 2000) ...................................................................... 8, 9

*In re Pandora Media, Inc.*,
No. 12-cv-08035-DLC, 2013 WL 6569872 (S.D.N.Y. Dec. 14, 2013) ............. 13, 14

*In re Tribune Co. Fraudulent Conveyance Litigation*,
291 F.R.D. 38 (S.D.N.Y. 2013) .......................................................................... 8

*Miller v. Silbermann*,
832 F. Supp. 663 (S.D.N.Y. 1993) ................................................................... 8, 9

*Nat'l Ass'n for Advancement of Colored People v. New York*,
413 U.S. 345 (1973)........................................................................................... 9

*New York v. Scalia*,
No. 20-cv-01689-GHW, 2020 WL 3498755 (S.D.N.Y. June 29, 2020)............. 15, 19

*N.Y. Pub. Int. Rsch. Grp., Inc. v. Regents of Univ. of State of N.Y.*,
516 F.2d 350 (2d Cir. 1975).............................................................................. 14, 18

*Olin Corporation v. Lamorak Insurance Company*,
325 F.R.D. 85 (S.D.N.Y. 2018)......................................................................... 19

*Peterson v. Islamic Republic of Iran*,
290 F.R.D. 54 (S.D.N.Y. 2013).......................................................................... 19

*S.E.C. v. Everest Management Corp.*,
475 F.2d 1236 (2d Cir. 1972)............................................................................. 17

*Sierra Club v. Espy*,
18 F.3d 1202 (5th Cir. 1994).............................................................................. 17, 18

*Sw. Ctr. for Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001).............................................................................. 13

*Tachiona ex rel. Tachiona v. Mugabe*,
186 F. Supp. 2d 383 (S.D.N.Y. 2002)................................................................ 7

*Town of North Hempstead v. Vill. of North Hills*,
80 F.R.D. 714 (E.D.N.Y. 1978).......................................................................... 18

*Tribovich v. United Mine Workers*,
404 U.S. 528 (1972).......................................................................................... 17

*United States Postal Serv. v. Brennan*,
579 F.2d 188 (2d Cir. 1978).............................................................................. 12

*United States v. Hooker Chems. & Plastics Corp.,*
    749 F.2d 958 (2d Cir. 1984) ............................................................ 7, 8, 9

*United States v. New York,*
    820 F.2d 554 (2d Cir. 1987) ............................................................ 8

*United States v. Pitney Bowes, Inc.,*
    25 F.3d 66 (2d Cir. 1994) ............................................................ *passim*

*Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.,*
    782 F. Supp. 870 (S.D.N.Y. 1991).................................................... 9

*Wilderness Soc'y v. U.S. Forest Service,*
    630 F.3d 1173 (9th Cir. 2011) ........................................................ 17

## **Rules**

Fed. R. Civ. P. 5.................................................................................. 22

Fed. R. Civ. P. 24 .............................................................................. 8

Fed. R. Civ. P. 24(a) .......................................................................... *passim*

Fed. R. Civ. P. 24(b) .......................................................................... 4, 19, 20

Applicants in Intervention, Zachary Fort; Frederick Barton; BlackHawk Manufacturing Group, Inc., d/b/a 80% Arms; and Firearms Policy Coalition, Inc. (collectively, "Applicants"), have a direct and personalized interest in the matter before this Court, including, *inter alia*, the continued legality of their, as well as their customers' and members' personal and business practices, and respectfully submit the following *Memorandum in Support of their Motion to Intervene* in the above-captioned case as Defendant-Intervenors.

## INTRODUCTION

The cities of Syracuse, NY; San Jose, CA; Chicago, IL; and Columbia, SC; as well as Everytown for Gun Safety Action Fund and Everytown for Gun Safety Support Fund (collectively, "Petitioners") seek to use the Administrative Procedure Act ("APA") to impose their policy preferences on the entire nation.  The crux of Petitioners' argument is that the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") has violated the APA by employing an objective test based on the actual manufacturing process involved to evaluate whether a "receiver blank," "frame blank," "partially-manufactured frame," "partially-manufactured receiver," "80% frame," "80% receiver," "unfinished frame," or "unfinished receiver" (collectively, "Non-Firearm Objects") is a "firearm" as defined by the Gun Control Act of 1968 ("GCA").  If Petitioners succeed, the ATF may be required to regulate materials of all kinds, including but not limited to Non-Firearm Objects, simply because individuals, through their own knowledge and skill, can manufacture them into firearms.  The process of individually manufacturing firearms for personal use is legal in the United States—a point Petitioners do not dispute.  Petitioners, however, argue it is too easy to manufacture a Non-Firearm Object into a firearm, attempting to substitute their own reasoning for that of the ATF.

The ATF's determination that Non-Firearm Objects do not constitute "firearms" as defined by the GCA, which Petitioners seek to overturn, has been relied upon by Applicants, as well as their customers, members, and numerous individuals across the nation.[1]  Petitioners, however, rely entirely on their own interpretation of the GCA in an attempt to force ATF to revise its long-standing determination.  Because Petitioners' interpretation of the GCA differs from the ATF's, and because Petitioners attempt to show alleged negative societal impacts of the ATF's position, Petitioners incorrectly assert they are entitled to the reversal of a well-established agency precedent.  Petitioners, however, cannot substitute their judgment for that of the agency.

Applicants timely seek to intervene in this matter to defend their, their customers', and their members' interests that would be directly impacted should this Court grant Petitioners the relief they seek.  Each Applicant would be directly and adversely impacted by a judgment in favor of the Petitioners on any of their claims for relief.  Applicants include Zachary Fort and Frederick Barton could be exposed to criminal liability for, and would be prevented from engaging in, the constitutionally and statutorily protected conduct they currently engage in should this Court grant the Petitioners' requested relief.  BlackHawk Manufacturing Group, Inc., d/b/a 80% Arms ("80% Arms"), is a lawful producer and retailer of Non-Firearm Objects and would be irreparably harmed, including but not limited to suffering a prohibition or significant disruption of its business

---

[1]       Petitioners' contention that the ATF "appeared to change course from its temporal approach without explanation" in 2006 is not accurate.  *See* Complaint, ECF No. 11, ¶ 78.  For example, a determination letter from January 2004 reads: "However, a solid AR-15 type receiver casting, without having the critical internal areas machined (magazine well and central area for the fire control components) or crosspin holes drilled, would not constitute a 'firearm' as defined in the NFA."  Letter from Sterling Nixon, Chief, Firearms Technology Branch, ATF, to Mark Malkowski, Continental Machine Tool Company, Inc. (Jan. 29, 2004).  Machining has always been the predominant factor in the ATF's determinations.  *See* Letter from Sterling Nixon, Chief, Firearms Technology Branch, ATF, to Justin Halford (July 1, 2003) ("Based on our examination of the unfinished receiver, it is our opinion that the subject sample *has received sufficient machining* to be classified as the frame or receiver for a 'firearm' . . . .") (emphasis added); Letter from Edward H. Cohen, Jr., Chief, Firearms Technology Branch, to Robert Bower, Jr., Philadelphia Ordnance, Inc. (May 26, 1992) ("The receiver is basically complete except that the interior cavity has *not been completely machined.*") (emphasis added).

practices, should this Court rule in favor of Petitioners.  Firearms Policy Coalition, Inc. ("FPC") is a nonprofit organization that owns and possesses Non-Firearm Objects;[2] has members who produce, buy, sell, possess, and own Non-Firearm Objects; and has members that have firearms individually manufactured for personal use from the same.  FPC represents its members, including Zachary Fort, Frederick Barton, and 80% Arms, who would all be harmed should this Court rule in Petitioners' favor, but who are too numerous to conveniently intervene.  Each party has an interest in protecting itself, its customers, and/or its members from a sudden reversal of long accepted precedent that could create felons out of millions of Americans for exercising their natural, inalienable, Second Amendment protected rights and could prohibit them from engaging in conduct that is lawful across the United States.

Furthermore, Applicants' interests are not adequately represented by Defendants.  While the ATF currently seeks to preserve its determination on behalf of the general public, it must balance competing statutory, regulatory, and resource concerns and may therefore compromise legally defensible positions Applicants seek to preserve, *inter alia*, their particular interests in the continued ownership, possession, production, purchase, and sale of Non-Firearm Objects. Moreover, Applicants seek to defend their reliance interests in the ATF's long-held precedent and preserve their rights as protected by the Second Amendment—a position that the ATF will not adequately represent.

Applicants meet all criteria for intervention as of right and request this Court grant their Motion to Intervene in this matter pursuant to Federal Rule of Civil Procedure 24(a).  In the alternative, Applicants request this Court grant them permissive intervention pursuant to Federal Rule of Civil Procedure 24(b).

---

[2]      *See* Declaration of Brandon Combs ("Combs Decl.") at ¶¶ 9–10.

## DESCRIPTION OF APPLICANTS FOR INTERVENTION

Zachary Fort is a resident of the state of New Mexico.  Mr. Fort is a law-abiding citizen who owns and possesses constitutionally protected arms for the lawful purpose of, *inter alia*, self-defense.  Mr. Fort is not prohibited from purchasing firearms by any federal or state law.  Mr. Fort has purchased at least one Non-Firearm Object in the past.  Through Mr. Fort's own effort and expertise, he has undertaken the manufacturing processes necessary to convert a Non-Firearm Object into a "firearm" as defined by the GCA.  Mr. Fort intends to continue to purchase Non-Firearm Objects so long as he can continue to do so without undergoing a federal background check and will continue to manufacture those items into firearms as defined by the GCA in the future.  Should this Court rule in Petitioners' favor, Mr. Fort's current property and/or future ability to acquire similar property will be directly and adversely impacted, thereby harming Mr. Fort and many other similarly situated Americans across the country.  Mr. Fort is a member of Firearms Policy Coalition, Inc.

Applicant Frederick Barton is a resident of the State of Colorado.  Mr. Barton is a law-abiding citizen who owns and possesses constitutionally protected arms for the lawful purpose of, *inter alia*, self-defense.  Mr. Barton is not prohibited from purchasing firearms by any federal or state law.  Mr. Barton has purchased at least one Non-Firearm Object in the past and had it shipped directly to his residence, not to a Federal Firearms Licensee, and did not undergo a federal background check.  Mr. Barton intends to continue to purchase Non-Firearm Objects so long as he can continue to have them shipped to his residence, not to a Federal Firearms Licensee, and continues to not be subjected to a federal background check.  Mr. Barton intends to manufacture those items into "firearms" as defined by the GCA in the future.  Should this Court rule in Petitioners' favor, Mr. Barton's current property and/or his future ability to acquire similar

property will be directly and adversely impacted, thereby harming Mr. Barton and many other similarly situated Americans across the country.  Mr. Barton is a member of Firearms Policy Coalition, Inc.

BlackHawk Manufacturing Group, Inc., d/b/a 80% Arms, is a corporation incorporated under the laws of California with its principal place of business in Garden Grove, California.  80% Arms is a producer and seller of Non-Firearm Objects, manufacturing jigs, and other firearm manufacturing tools.  80% Arms sells its products directly to customers across the United States, including within the state of New York.  80% Arms represents itself and its customers, including but not limited to its right to sell and its customers' right to purchase Non-Firearm Objects.  80% Arms has expended and diverted resources in furtherance of the lawful production, sale, and distribution of its products and will be adversely and directly harmed if this Court were to grant Petitioners the relief they seek—including but not limited to the potential prohibition of 80% Arms' current business practices or significant increases in its regulatory compliance costs.

Firearms Policy Coalition, Inc. is a nonprofit organization incorporated under the laws of Delaware with its principal place of business in Sacramento, California.  FPC's purposes include defending and promoting the People's rights—especially but not limited to First and Second Amendment protected rights—advancing individual liberty, and restoring freedom.  FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs.  FPC has members across the United States, including Applicants Fort, Barton, and 80% Arms.  FPC represents itself as an owner and possessor of Non-Firearm Objects[3] and its members—who include the named Applicants, producers, retailers, purchasers, and possessors of Non-Firearm Objects; individuals who have

---

[3]     *See* Combs Decl. at ¶¶ 9–10.

manufactured firearms for individual use from Non-Firearm Objects; and individuals who wish to continue to purchase Non-Firearm Objects to manufacture them into firearms.  FPC seeks intervention to represent these legally protected interests of itself and its members as FPC and its members will be adversely and directly harmed if this Court grants Petitioners the relief they seek.

## ARGUMENT

### III.    APPLICANTS ARE ENTITLED TO INTERVENE AS OF RIGHT

Applicants meet each element of the Second Circuit's test to evaluate intervention as of right, pursuant to Federal Rule of Civil Procedure 24(a).  Applicants timely seek intervention in this matter prior to the parties filing any dispositive motions, even in the face of a greatly expedited briefing schedule.  Additionally, Applicants *agree to abide by the currently established briefing schedule, should this Court grant them intervention*.  Applicants have a legally protectable interest in the continued production, sale, purchase, possession, and individual manufacture of Non-Firearm Objects, which interest will be directly impacted should this Court rule for Petitioners.[4] Finally, Applicants' interests are not adequately represented by the ATF, which, as a federal agency, is obligated to consider a wide spectrum of views, many of which conflict with the particular interests of Applicants, their customers, and their members.  Accordingly, this Court should grant Applicants intervention as of right in this matter.

Federal Rule of Civil Procedure 24(a) establishes the criteria for intervention as of right:

On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede

---

[4]    The extent of Petitioners' argument in this matter will determine the extent of the potential adverse impacts on Applicants.  At the very least, should this Court rule in favor of Petitioners, Applicants will be prohibited from engaging in the currently lawful practice of producing, selling, shipping, purchasing, and receiving Non-Firearm Objects without the use of a Federal Firearms Licensee or federal background check.  That change will fundamentally and negatively impact Applicants' currently legal business and personal practices.

the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a), (a)(2).

This Circuit employs a four-part test to evaluate intervention as of right: (1) the applicant's motion must be timely; (2) the applicant must assert an interest relating to the transaction or property that is the subject of the action; (3) the applicant must demonstrate that its interest may be impaired by the action; and (4) the interests of the applicant must not be adequately represented by the parties already involved in the action. *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 69 (2d Cir. 1994); *Floyd v. City of New York*, 302 F.R.D. 69, 83 (S.D.N.Y. 2014). This Circuit has specified that "the test [is] a flexible and discretionary one," where "courts generally look at all four factors as a whole." *Tachiona ex rel. Tachiona v. Mugabe*, 186 F. Supp. 2d 383, 394 (S.D.N.Y. 2002) (quoting *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 958, 983 (2d Cir. 1984)). In evaluating intervention, courts are guided by practical and equitable principles in an effort to balance "efficiently administrating legal disputes by resolving all related issues in one lawsuit, on the one hand, and keeping a single lawsuit from becoming unnecessarily complex, unwieldy or prolonged, on the other hand." *Floyd*, 302 F.R.D. at 83 (quoting *Pitney Bowes*, 25 F.3d at 69).

### A.  Applicants' Motion Is Timely

Applicants' Motion to Intervene is filed prior to any dispositive motions being filed, will not disrupt the current briefing schedule, and will not prejudice any party to the litigation—thus, Applicants' Motion is timely.

In determining whether a motion is timely, courts in this circuit consider four factors: (1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion

is denied; and (4) any unusual circumstances militating for or against a finding of timeliness. *Pitney Bowes*, 25 F.3d at 70; *United States v. New York*, 820 F.2d 554, 557 (2d Cir. 1987). The court weighs these factors, mindful that Rule 24 "provides the flexibility necessary to cover the multitude of possible intervention situations . . . ." *Hooker Chemicals*, 749 F.2d at 983.

Timeliness is flexible and the decision is entrusted to the district judge's sound discretion. *Floyd*, 302 F.R.D. at 83. Furthermore, the primary focus of the court's inquiry should be the prejudice to the non-moving parties and where they are not prejudiced the court should allow intervention. *Miller v. Silbermann*, 832 F. Supp. 663, 669 (S.D.N.Y. 1993). Each factor weighs in favor of this Court deeming Applicants' Motion timely.

### 1.      Applicants Filed Soon After they had Notice of the Present Suit

The time between Applicants' notice of this litigation and the filing of this motion is minimal and is not burdensome.

Intervention as of right is allowed when an applicant moves to intervene shortly after being put on notice that they have an interest in the litigation. *In re Tribune Co. Fraudulent Conveyance Litigation*, 291 F.R.D. 38, 41–42 (S.D.N.Y. 2013) (notice of interest was created in July and intervention in November was acceptable); *Hartford Fire Ins. Co. v. Mitlof*, 193 F.R.D. 154, 160 (S.D.N.Y. 2000) (intervention was timely when sought within three months of the complaint); *Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 782 F. Supp. 870 (S.D.N.Y. 1991) (two years is acceptable for intervention after notice of interest); *but see Nat'l Ass'n for Advancement of Colored People v. New York*, 413 U.S. 345, 366 (1973) (intervention not timely after four months *only because* applicants had notice far before commencement of the suit).

Here, less than three months have elapsed since Petitioners initiated this suit, which is less than the time allowed for by this Court in *Mitlof*, *Werbungs*, and *Tribune Co.* Further, unlike

intervention in *NAACP v. New York*, Applicants here had no advance notice of the impending litigation.  Even so, Applicants here have moved more quickly than those in *NAACP v. New York*. Additionally, while this suit directly impacts Applicants, their property, their activities, and their practices, Applicants were not required to be specifically notified of this litigation and learned of it sometime after the Complaint was filed.

Accordingly, based on notice to Applicants, their quick response, and this Court's past practice of allowing intervention five months after a notice of interest was created, this Court should consider Applicants' Motion as timely.

### 2.      No Prejudice will Occur to the Existing Parties if Applicants Intervene

The existing parties will not be prejudiced by allowing Applicants intervention in this matter because Petitioners' arguments will be unaffected and Applicants will not seek to alter the current briefing schedule.

A motion to intervene will generally be deemed timely if the nonmovant is not prejudiced by delay.  *Silbermann*, 832 F. Supp. at 669.  When determining the prejudice caused by the timeliness of the delay, the court focuses on the posture of that litigation at the time the motion to intervene is made.  *Hooker Chems.*, 749 F.2d at 983.  Prejudice is found where a court would unavoidably be required to delay decisions in the case.  *See Pitney Bowers*, 25 F.3d at 72 (prejudice would occur because the court would be unavoidably obligated to delay entry of the consent decree).

Here, even despite the greatly accelerated litigation schedule, Applicants have moved for intervention prior to any substantive motions being filed.  At the time of filing, Petitioners have thirteen days to file their motion for summary judgment, pursuant to this Court's September 29, 2020 Order.  ECF No. 35.  Applicants agree, should this Court grant their intervention, to abide

by the currently established briefing schedule.  ECF No. 35.  Applicants will adhere to Defendants'
briefing deadlines, filing Applicants' cross-motion and response to Petitioners' motion for
summary judgment on January 8, 2021, and Applicants' reply to their cross-motion on February
19, 2021.  ECF No. 35.

Additionally, Petitioners' arguments, based on the legality of the ATF's determination of
the legal status of Non-Firearm Objects, brought pursuant to the APA, will not be materially
affected by Applicants' intervention in this matter.  Petitioners will not be required to make any
additional or separate arguments due to Applicants' involvement and Petitioners will have ample
opportunity to respond to Applicants' arguments based on the established briefing schedule.

Given the litigation will not be delayed and Petitioners' arguments will not be adversely
affected, this Court will not prejudice the existing parties by granting Applicants intervention in
this matter.

### 3.      Applicants Will be Prejudiced if Their Intervention is Denied

As fully demonstrated in Section I(C), *infra*, denial of the Applicants' motion to intervene
as of right will prejudice Applicants' constitutionally protected rights, activities, and business
practices.  To avoid duplicity and for the sake of brevity, this motion will discuss prejudice in the
impairment of interest section.

### 4.      The Circumstances Militate in Favor of Intervention

The greatly accelerated nature of this case, as acknowledged by both parties, militates in
favor of Applicants' intervention.  *See* ECF Nos. 28, 30 (parties' letters to the court describing the
need for and agreeing to an accelerated briefing schedule).

The unusual circumstances prong of the timeliness determination is an equitable backstop
for unusual instances where denying intervention would be inequitable.  *See Aristograt Leisure*

*Ltd. v. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 348, 353 (S.D.N.Y. 2009) ("An unusual circumstance provides a reasonable explanation for prolonged delay in seeking intervention.").

Given this case will be fully briefed less than five months from Petitioners filing their Complaint, any timeliness concerns at this stage should be resolved in favor of Applicants. Applicants have a short window to ensure their substantial interests are protected in this case and have endeavored to move as quickly as possible to avoid prejudice to the non-moving parties and to avoid any unnecessary expenditure of this Court's resources.  Further, Applicants' commitment to abide by the current briefing schedule demonstrates Applicants' commitment to litigate this case in an expeditious manner, along with the parties.

This Court, therefore, should deem Applicants' Motion to Intervene as timely and grant Applicants intervention as of right in this matter.

> **B.**     **Applicants Have Significant, Protectable Interests**

Applicants and their customers and members have significant, protectable interests in the production, sale, purchase, and possession of Non-Firearm Objects, all of which directly implicate constitutionally and statutorily protected property and/or activities.  Applicants have a significant interest in ensuring they can continue to engage in personal and business activities as they do now, without involvement of Federal Firearms Licensees and federal background checks, which will, at a minimum, further restrict Applicants' ability to engage in lawful, constitutionally protected conduct and significantly increase the cost of producing and purchasing Non-Firearm Objects and manufacturing those items into "firearms" as defined by the GCA.

Rule 24(a)(2) provides for intervention as of right where the applicant "claims an interest relating to the property or transaction that is the subject of the action."  The Second Circuit has adopted a "direct, substantial, and legally protectable interest" standard.  *Bridgeport Guardians v.*

*Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010).  This interest need not rise to the level of Article III standing, *United States Postal Serv. v. Brennan*, 579 F.2d 188, 190 (2d Cir. 1978), nor must the applicant wait until there is no doubt as to the applicant's interests to intervene, *Floyd*, 302 F.R.D. at 86, 99.

The outcome of the instant litigation poses a direct and substantial threat to the constitutionally and statutorily protected property rights of Applicants, their customers, and their members.  Applicants Fort, Barton, and FPC have purchased and would continue to purchase the Non-Firearm Objects that are at issue in this case.  Applicant Fort has individually manufactured at least one Non-Firearm Object into a "firearm" as defined by the GCA for personal use using his own effort and expertise.  Applicants Fort and Barton also intend to individually manufacture Non-Firearm Objects into "firearms" as defined by the GCA for personal use in the future, using their own effort and expertise.  Applicant FPC has and would continue to purchase Non-Firearm Objects in furtherance of its mission and advocacy for the natural and individual right to keep and bear arms.  Applicants' purchases were conducted without involvement of a Federal Firearms License and without need for a federal background check, which practice Applicants seek to continue.  Because Petitioners seek to make illegal, or significantly restrict, Applicants Fort, Barton, and FPC's currently legal property, activities, and/or practices Applicants Fort, Barton, and FPC have a legally protectable interest sufficient to support intervention as of right under Rule 24(a).  *See Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817–18 (9th Cir. 2001) (granting intervention based upon a determination that the proposed intervenor had a reliance interest that would be affected if the challenge agreement were invalidated).

Moreover, Applicant 80% Arms seeks to represent the interests of its customers, who are too numerous to conveniently intervene in this matter and who, due to the nature of the property

in question, are chilled from coming forward to represent their own interests, due to the degrading and vitriolic abuse they may suffer for exercising their constitutionally protected rights— including, but not limited to, harassment, SWATing, and doxing.[5]  Accordingly, Applicant 80% Arms asserts a legally protectable interest on behalf of its customers sufficient to support intervention as of right under Rule 24(a).

Further, this Court has established that when a potential intervenor has a financial interest in the litigation it has a "direct, substantial, and legally protectable interest." *In re Pandora Media, Inc.*, No. 12-cv-08035-DLC, 2013 WL 6569872, at *8 (S.D.N.Y. Dec. 14, 2013).  In *Pandora Media*, this Court found a "direct" and "legally cognizable" interest in the ability of the company that sought intervention to avoid imposition of certain licensing fees.  *Id.* at *8.  Similarly, this Circuit determined that a group of pharmacists had a sufficiently cognizable interest to intervene in a challenge to a state regulation that prohibited advertising the price of prescription drugs, given it could detrimentally impact the pharmacists' existing business practices.  *N.Y. Pub. Int. Rsch. Grp., Inc. v. Regents of Univ. of State of N.Y.*, 516 F.2d 350 (2d Cir. 1975) (per curium).

Here, Applicant 80% Arms has significant financial interests in this matter.  Applicant 80% Arms is a producer and seller of the Non-Firearm Objects at issue here.  This lawsuit calls into

---

[5]      *See* Fernando Alfonso III, *Lawyer Doxes 50 Journalists Who Doxed Gun Owners*, Daily Dot (Mar. 2, 2020, 11:25 PM), https://www.dailydot.com/unclick/christopher-fountain-journal-news-gun-owners/ (last visited Nov. 2, 2020); John Cook, *Here Is a List of All the Assholes Handsome Law-Abiding Citizens Who Own Guns Some People in New York City* [sic], Gawker (Jan. 8, 2013, 3:10 PM), https://gawker.com/5974190/here-is-a-list-of-all-the-assholes-who-own-guns-in-new-york-city (last visited Nov. 2, 2020); Editorial Staff, *Gawker Posts Full List Of All New York City Licensed Gun Owners*, The Washington Examiner (Jan 9, 2013, 9:06 AM) https://www.washingtonexaminer.com/red-alert-politics/gawker-posts-full-list-of-all-ahole-new-york-city-licensed-gun-owners (last visited Nov. 2, 2020); K.C. Maas and Josh Levs, *Newspaper Sparks Outrage for Publishing Names, Addresses of Gun Permit Holders*, CNN (Dec. 27, 2012, 10:23 AM), https://www.cnn.com/2012/12/25/us/new-york-gun-permit-map/index.html (last visited Nov. 2, 2020); Perry Chiaramonte, *Gun Control Groups Accused of 'Swatting' Open-Carry Permit Holders, Putting Lives at Risk*, Fox News (Sept. 1, 2015, Updated Jan. 12, 2017), https://www.foxnews.com/us/gun-control-groups-accused-of-swatting-open-carry-permit-holders-putting-lives-at-risk (last visited Nov. 2, 2020);  Bob Owens, *Gun Control Group Tells Followers to "SWAT" Gun Owners*, Bearing Arms (Dec. 15, 2015, 3:24 PM), https://bearingarms.com/bob-o/2015/12/15/gun-control-groups-tells-followers-swat-gun-owners/ (last visited Nov. 2, 2020).

question Applicant 80% Arms' continued ability to produce, sell, and distribute its products, as it currently does, across the United States. If this Court were to grant Petitioners the relief they request, the outcome would, at minimum, expose Applicant 80% Arms to significant increases in its operation and compliance costs and, at worst, could put Applicant 80% Arms out of business. Because this case attempts to make illegal Applicant 80% Arms' current business practices by, at the very least, restricting the production, sale, and delivery of Non-Firearm Objects, Applicant 80% Arms has a legally protectable interest sufficient to support intervention as of right under Rule 24(a).

Finally, Applicant FPC represents itself, and the interests of its members across the nation. Numerous FPC members are producers, sellers, purchasers, and possessors of Non-Firearm Objects, including Applicants Fort, Barton, and 80% Arms. Because this case attempts to make illegal and/or severely restrict the currently lawful individual and business practices of Applicant FPC's members, Applicant FPC and its members have a legally protectable interest sufficient to support intervention as of right under Rule 24(a).

**C.      Applicants' Interests Will Be Impaired by the Relief Sought**

Applicants', their customers', and their members' interests in the production, sale, purchase, and possession of Non-Firearm Objects will be significantly impaired if the Court grants Petitioners the relief they seek, as it would likely render illegal the otherwise entirely lawful and constitutionally protected property, activities, and/or business practices of Applicants, and of their customers and members.

A proposed intervenor satisfies the third prong of the test if disposition of the action may, as a practical matter, impair or impede its ability to protect its interest. *Pitney Bowers*, 25 F.3d at 70. In *New York v. Scalia*, five trade organizations attempted to intervene in a case that would

change standards of liability under the Fair Labor Standards Act. *New York v. Scalia*, No. 20-cv-01689-GHW, 2020 WL 3498755 at \*2 (S.D.N.Y. June 29, 2020). This Court evaluated whether the proposed intervenor would suffer impairment due to the adverse economic consequences if the court invalidated an agency's final rule. *Id.* This Court determined that the potential cost to some employers in the trade organizations due to potential invalidation of the rule was sufficient to establish the impairment of a protectable interest. *Id.*

In the present case, an invalidation of the ATF's determination concerning Non-Firearm Objects would significantly impair Applicants' interests. Like the trade organizations in *Scalia*, whose members would be affected by the invalidation of a regulation, Applicants, their customers, and their members include individuals and businesses that produce, sell, purchase, and possess Non-Firearm Objects, all of whom would be directly and adversely affected by the invalidation of the ATF's longstanding rule. Depending on the extent of Petitioners' argument, this Court's ruling, and the ATF's decision, Applicants could be exposed to criminal liability based on continued performance of previously legal activities; could be forced to disclose the existence of certain constitutionally protected property to the federal government; and would be prohibited from engaging in otherwise lawful and constitutionally protected activities, including but not limited to the direct purchase of Non-Firearm Objects and, potentially, the unregulated manufacture of those objects into firearms. Additionally, Applicant 80% Arms and those similarly situated would be forced to comply with substantial additional legal and regulatory burdens, not only causing significant financial stress but potentially putting them out of business.

Furthermore, because adjudication of this case may impact certain Non-Firearm Objects or firearms in Applicants', their customers', and their members' possession, Applicants' constitutionally protected right to keep and bear arms may be impaired. Applicants have produced,

sold, purchased, and currently possess Non-Firearm Objects, and would continue to engage in those lawful practices in the future.  In addition, Applicants, their customers, and their members have and possess individually manufactured firearms from Non-Firearm Objects for personal use. All of this has been in reliance on years of ATF precedent.  If this Court were to reverse the ATF's determination regarding Non-Firearm Objects, depending on the extent of this Court's ruling and the ATF's decision, Applicants' currently constitutionally protected, lawful practices will be adversely affected, and their Second Amendment protected rights could be unconstitutionally impaired.

Thus, the third element for intervention as of right is met.

### D.      Existing Parties Will Not Adequately Represent Applicants' Interests

Applicants' interests are not adequately represented by the ATF, which does not speak directly for individual owners and purchasers of Non-Firearm Objects, for businesses engaged in the production or sale of the same, nor for organizations seeking to preserve and restore individuals' constitutionally protected rights—including the individual right to manufacture arms for the lawful purpose of, *inter alia*, self-defense.

The final prong in determining whether a court should grant a motion to intervene as of right is whether the applicant "has an interest not adequately represented by the other parties." *Pitney Bowers*, 25 F.3d at 70. "[T]he burden to demonstrate inadequacy of representation is generally speaking 'minimal.'" *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001) (quoting *Tribovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).

Here, because the ATF is litigating on behalf of the general public, it is obligated to consider a wide spectrum of views, many of which may conflict with the particular interests of Applicants and their customers.  *See Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d

1489, 1494 (9th Cir. 1995), *abrogated on separate grounds by Wilderness Soc'y v. U.S. Forest Service*, 630 F.3d 1173, 1177–80 (9th Cir. 2011) (the government will not adequately represent petitioners when petitioners seek to raise issues broader than the scope of the government's argument) (citing *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994)).   Representation is inadequate when a proposed intervenor would be damaged by the adjudication of its interest, but the agency being sued would not.  *See S.E.C. v. Everest Management Corp.*, 475 F.2d 1236, 1239 (2d Cir. 1972) (S.E.C. inadequately represents an intervenor who seeks damages).

Applicants seek to protect and defend their, their customers', and their members' right to produce, sell, purchase, and possess Non-Firearm Objects; their Second Amendment protected rights; and their justifiable reliance on the ATF's long held legal position.  By contrast, the ATF's interest in this suit is limited to defending the legitimacy of its rulemaking process and enforcement orders.  Petitioners' arguments encapsulate issues and narratives outside the ATF's narrow focus on its classification of Non-Firearm Objects, which issues and narratives can and will be addressed by Applicants.  Moreover, because the ATF must consider a wide spectrum of views, at least some of their interests in the suit will necessarily differ from Applicants' interest in continuing their currently lawful individual activities and business practices.  When, like here, a party has private interests, as opposed to the government's public interests, this difference is sufficient to warrant intervention.  *Sierra Club*, 18 F.3d at 1208; *Fresno County v. Andrus*, 622 F.2d 436, 438–39 (9th Cir. 1980).  Thus, Applicants' interests are not adequately represented by the existing parties.

Further, where "there is a likelihood that the property owners will make a more vigorous presentation of the economic side of the argument than would the governmental defendants," the government defendants fail to adequately represent the proposed intervenor's interests.  *Town of North Hempstead v. Vill. of North Hills*, 80 F.R.D. 714, 717 (E.D.N.Y. 1978) (quoting *N.Y. Pub.*

*Int. Rsch. Grp., Inc.*, 516 F.2d 350, 352 (2d Cir. 1975)).  In *Town of North Hempstead*, the court

granted intervention to preserve the economic interests of the intervenors because the village did

not share "real and immediate economic interests of the proposed intervenors."  80 F.R.D. at 717.

Here, Defendants will not adequately represent or protect Applicants' economic interests.

As fully demonstrated above, the outcome of this litigation could have a substantial monetary

effect on Applicant 80% Arms business practice, as well as the individual practices of other

Applicants and their members.  The ATF does not share the same real and immediate economic

interests of Applicants and has no duty, nor reason, to protect Applicants' economic interests.

Applicants could be required to cease lawful practices, report the existence of constitutionally

protected property to the federal government, or even lose their businesses, but the ATF only seeks

to uphold its determination as to Non-Firearm Objects.  Accordingly, Applicants interests are not

sufficiently represented.

Overall, Applicants more than satisfy the Second Circuit's four-part test and this Court

should grant Applicants intervention as of right pursuant to Rule 24(a).

## IV.   ALTERNATIVELY, THIS COURT SHOULD GRANT APPLICANTS PERMISSIVE INTERVENTION

Federal Rule of Civil Procedure 24(b) governs permissive intervention and provides:

On timely motion, the court may permit anyone to intervene who . . . has a claim
or defense that shares with the main action a common question of law or fact. . ..  In
exercising its discretion, the court must consider whether the intervention will
unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b)(1), (b)(3).  Courts have broad discretion under Rule 24(b).  *Scalia*, No. 20-

cv-01689-GHW, 2020 WL 3498755 at *4.  "In deciding whether to permit intervention under Rule

24(b), courts generally consider the same factors that are relevant as of right under Rule 24(a)(2)."

*Olin Corporation v. Lamorak Insurance Company*, 325 F.R.D. 85, 87 (S.D.N.Y. 2018) (citing

*Peterson v. Islamic Republic of Iran*, 290 F.R.D. 54, 57 (S.D.N.Y. 2013)).  Rule 24(b), however, "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation."  *Sec. & Exch. Comm'n v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 459 (1940).

In this case, Applicants have defenses to the claims asserted by Petitioners and to the relief being sought, which is a challenge to the ATF's determination that Non-Firearm Objects are not firearms pursuant to the GCA, upon which Applicants, their customers, and their members have relied.

"[T]he guiding principal in deciding whether to whether to grant permissive intervention is whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."  *Olin Corp.*, 325 F.R.D. at 87.  In this case, there would be neither prejudice nor undue delay.  Moreover, as demonstrated *supra*, Applicants have had a short window to ensure their substantial interests are protected in this case and have endeavored to move as quickly as possible, despite the accelerated schedule, and will agree to abide by the existing briefing schedule to avoid prejudice to the parties and any unnecessary expenditure of this Court's resources.  Further, Applicants have demonstrated their interests, a legal position they seek to advance, a probable relation to the case, that their interests are not adequately represented, and that intervention will not burden other parties.  *See supra*, Argument, Section I.  Thus, at a minimum, this Court should grant Applicants permissive intervention because Applicants' defenses to the claims asserted by Petitioners raise common questions of fact and law.

## CONCLUSION

For the foregoing reasons, Applicants respectfully request that this Court grant them intervention as of right pursuant to Federal Rule of Civil Procedure 24(a)(2).  In the alternative,

Applicants requests this Court exercise its discretion and grant permissive intervention pursuant

to Federal Rule of Civil Procedure 24(b).


DATED this 12th day of November, 2020.

Respectfully Submitted,


/s/ David D. Jensen
David D. Jensen
David Jensen PLLC
33 Henry Street
Beacon, New York 12508
(212) 380-6615
david@djensenpllc.com

Cody J. Wisniewski*
*Pro Hac Vice* application forthcoming
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado  80227
Telephone: (303) 292-2021
Facsimile: (303) 292-1980
cody@mslegal.org


*Attorneys for Applicants in Intervention*