UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

\- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

CITY OF SYRACUSE, NY, CITY OF SAN
JOSE, CA, CITY OF CHICAGO, IL, CITY OF
COLUMBIA, SC, EVERYTOWN FOR GUN
SAFETY ACTION FUND and EVERYTOWN
FOR GUN SAFETY SUPPORT FUND,

                        Plaintiffs,

             v.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES, REGINA
LOMBARDO, in her official capacity as Acting
Director of the Bureau of Alcohol, Tobacco,
Firearms, and Explosives, UNITED STATES
DEPARTMENT OF JUSTICE, and WILLIAM
BARR, in his official capacity as ATTORNEY
GENERAL, U.S. Department of Justice,

                        Defendants.

No. 1:20-cv-06885-GHW

\- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO MOTION TO INTERVENE AS DEFENDANT BY
ZACHARY FORT; FREDERICK BARTON; BLACKHAWK MANUFACTURING
GROUP, INC; AND FIREARMS POLICY COALITION, INC.**

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ........................................................................................................................ 3

    I.      Proposed Intervenors are not entitled to intervene as a matter of right under Rule 24(a)(2). ............................................................................................. 3

          A.     Defendants adequately represent any cognizable interest that Proposed Intervenors may have in the outcome of this litigation, precluding intervention as of right. ............................................................. 4

          B.     Plaintiffs fail to assert a cognizable Second Amendment interest. ........... 7

          C.     Even assuming cognizable Second Amendment rights, Proposed Intervenors can enforce such rights in a subsequent proceeding. ............ 11

    II.     Permissive intervention under Rule 24(b) is unwarranted. ................................. 13

          A.     Proposed Intervenors seek to unduly expand the scope of this litigation. .................................................................................................. 13

          B.     Permitting intervention would prejudice Plaintiffs. ................................. 15

CONCLUSION ..................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Battle v. City of N.Y.*,
  No. 11-CV-3599, 2012 WL 112242 (S.D.N.Y. Jan. 12, 2012) .............................................16

*Bridgeport Guardians, Inc. v. Delmonte*,
  602 F.3d 469 (2d Cir. 2010).............................................................................................8

*British Airways Bd. v. Port Auth. of N.Y. & N.J.*,
  71 F.R.D. 583 (S.D.N.Y. 1976) .......................................................................................16

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
  250 F.3d 171 (2d Cir. 2001)...........................................................................................4, 6

*Cook v. Bates*,
  92 F.R.D. 119 (S.D.N.Y. 1981) .......................................................................................11

*Floyd v. City of New York*,
  770 F.3d 1051 (2d Cir. 2014)..........................................................................................3, 7

*Forest Conservation Council v. U.S. Forest Serv.*,
  66 F.3d 1489 (9th Cir. 1995) ............................................................................................6

*Fresno County v. Andrus*,
  622 F.2d 436 (9th Cir. 1980) ............................................................................................6

*H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*,
  797 F.2d 85 (2d Cir. 1986)...............................................................................................8

*Kachalsky v. County of Westchester*,
  701 F.3d 81 (2d Cir. 2012)..............................................................................................11

*Kamden-Ouaffo v. PepsiCo, Inc.*,
  314 F.R.D. 130 (S.D.N.Y. 2016) .......................................................................................3

*Kwong v. Bloomberg*,
  723 F.3d 160 (2d Cir. 2013).............................................................................................11

*Libertarian Pty. of Erie Cty. v. Cuomo*,
  970 F.3d 106 (2d Cir. 2020)............................................................................................10

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*,
  471 F.3d 377 (2d Cir. 2006)...........................................................................................3, 4

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Murphy v. Guerrero*,
    No. 1:14-CV00026, 2016 WL 5508998 (D.N. Mar. Sept. 28, 2016) ....................................10

*Nat. Res. Def. Council, Inc. v. N.Y. State Dep't of Envt'l. Conservation*,
    834 F.2d 60 (2d Cir. 1987)...........................................................................................................7

*New York News Inc. v. Newspaper & Mail Deliverers' Union of New York*,
    139 F.R.D. 291 (S.D.N.Y. 1991), *aff'd sub nom. New York News, Inc. v.*
    *Kheel*, 972 F.2d 482 (2d Cir. 1992) .......................................................................................11

*New York v. Scalia*,
    No. 1:20-CV-1689, 2020 WL 3498755 (S.D.N.Y. June 29, 2020) .............................4, 5, 6, 7

*New York v. U.S. Dep't of Health and Human Servs.*,
    No. 19-CV-4676, 2019 WL 3531960 (S.D.N.Y. Aug. 2, 2019).............................................5, 6

*New York v. United States Department of Education*,
    No. 20-CV-4260, 2020 WL 3962110 (S.D.N.Y. July 10, 2020)...........................12, 14, 15, 16

*New York Pub. Int. Res. Grp., Inc. v. Regents of Univ. of State of N.Y.*,
    516 F.2d 350 (2d Cir. 1975)..................................................................................................7, 11

*New York State Rifle & Pistol Ass'n v. Cuomo*,
    804 F.3d 242 (2d Cir. 2015)....................................................................................................11

*Oneida Indian Nation of Wis. v. New York*,
    732 F.2d 261 (2d Cir. 1984)................................................................................................11, 12

*"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*,
    467 F.3d 238 (2d Cir. 2006)......................................................................................................3

*Rocky Mountain Gun Owners v. Hickenlooper*,
    371 P.3d 768 (Colo. App. 2016) ..............................................................................................10

*Sierra Club v. Espy*,
    18 F.3d 1202 (5th Cir. 1994) .....................................................................................................6

*State of California v. ATF*,
    No. 3:20-cv-06761-EMC (N.D. Cal. Nov. 30, 2020) ...............................................................2

*Town of North Hempstead v. Village of North Hills*,
    80 F.R.D. 714 (E.D.N.Y. 1978)................................................................................................7

*United States v. City of N.Y.*,
    198 F.3d 360 (2d Cir. 1999)......................................................................................................5

**TABLE OF AUTHORITIES**

(continued)

Page(s)

*United States v. Decastro*,
    682 F.3d 160 (2d Cir. 2012)......................................................................10

*United States v. Hooker Chems. & Plastics Corp.*,
    749 F.2d 968 (2d Cir. 1984).......................................................................5

*United States v. Marzzarella*,
    614 F.3d 85 (3d Cir. 2010).......................................................................10

*Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*,
    922 F.2d 92 (2d Cir. 1990).........................................................................8

**Federal Rules**

Fed. R. Civ. P.
    24(a)(2) .....................................................................................1, 3
    24(b)........................................................................................2, 13
    24(b)(1)(B) ......................................................................................13
    24(b)(3) .....................................................................................13, 15

**Federal Statutes**

Gun Control Act, 18 U.S.C. §§ 921–28 .........................................................1
    § 922(a)(3) .....................................................................................10

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06.................................1

**Other Authorities**

7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
    § 1909 (3d ed. 2007 & supp. 2019) ............................................................5

Plaintiffs respectfully submit this memorandum of law in opposition to the Motion to Intervene submitted by Zachary Fort; Frederick Barton; Blackhawk Manufacturing Group, Inc.; and Firearm Policy Coalition, Inc. ("Proposed Intervenors"), pursuant to Federal Rule of Civil Procedure 24(a)(2) or 24(b) (ECF No. 43) ("Motion").

## INTRODUCTION

The Court should deny Proposed Intervenors' Motion.   Proposed Intervenors' Memorandum of Law (ECF No. 44) ("Memo") does not establish that intervention as a matter of right or permissive intervention is warranted here.

Plaintiffs challenge under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06, an interpretive rule issued by the United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), three letter determinations issued by ATF to Polymer80, Inc., and ATF's failure to respond to Plaintiffs' petition for rulemaking.  Plaintiffs allege that ATF's interpretive rule and the letter determinations ("ATF actions"), which disclaim ATF's authority to regulate certain unfinished firearm frames and receivers ("'ghost gun' components"), are all based on a flawed and erroneous interpretation and application of the Gun Control Act's ("GCA"), 18 U.S.C. §§ 921–28, definition of "firearm" and all fail to provide, as required by the APA, reasoned explanations to support their conclusions.  Compl. ¶¶ 174, 183, 189, 195 (ECF No. 1).  Plaintiffs further allege that ATF's delay in responding to the petition for rulemaking, which asks ATF to reconsider its current interpretation of "firearm," is unreasonable as a matter of law given the public safety crisis attributable to the proliferation of the ghost gun components and kits that ATF currently allows to be purchased and assembled into operable firearms without any regulation. *Id.* ¶ 205.  Accordingly, Plaintiffs have asked the Court to vacate ATF's actions, and to compel ATF to respond to the petition for rulemaking consistent with the APA's and the GCA's requirements.

Regarding intervention as of right under Rule 24(a)(2), Proposed Intervenors have failed to establish the requisite elements.  Centrally, with respect to Proposed Intervenors' asserted interest in sustaining the ATF actions challenged by Plaintiffs, Proposed Intervenors have not rebutted the strong presumption of adequate representation by the federal government in defending ATF.  Indeed, just this week, the government moved to dismiss a similar, later-filed lawsuit against ATF in the Northern District of California, making clear its vigorous defense.[1]  In addition to seeking to uphold ATF's current approach, however, Proposed Intervenors appear also to assert a broader interest—that ATF's regulation of "ghost gun" components would violate their claimed Second Amendment rights.  The purported rights Proposed Intervenors seek to assert—selling, manufacturing, purchasing, and possessing firearms *free of any government regulation whatsoever*—are not cognizable Second Amendment rights under binding precedent and thus cannot serve as a basis for intervention.  And even if such alleged rights were cognizable, the Memo does not explain why Proposed Intervenors would be unable to protect those rights in a separate or subsequent proceeding and thus why intervention is required here.  For all and any of these reasons, the Court should deny the Motion.

With respect to permissive intervention under Rule 24(b), the Court should not exercise its discretion to allow intervention because Proposed Intervenors' involvement as parties would distract from the core issues presented by this case, thereby impeding the efficient resolution of this matter.  Proposed Intervenors' Memo indicates their view that ATF's regulation of ghost gun components would violate the Second Amendment and even that ATF's current (erroneous) interpretation of the GCA is *required* by the Second Amendment.  *E.g.*, Memo at 3 (explaining that they seek to "preserve their rights as protected by the Second Amendment").  Such an

---

[1] *See* Dkt. 29, *State of California v. ATF*, No. 3:20-cv-06761-EMC (N.D. Cal., Nov. 30, 2020).

argument is unrelated to the current dispute over whether the challenged ATF actions violate the GCA and the APA. Moreover, were Petitioners' view of the Second Amendment accepted, it would have a sweeping effect on ATF's and the City Plaintiffs' authority to regulate firearms. This case is not the place for such arguments, which, at most, can and should be made by Proposed Intervenors through amicus filings.

## ARGUMENT

I.    **Proposed Intervenors are not entitled to intervene as a matter of right under Rule 24(a)(2).**

Under Rule 24(a)(2), a proposed intervenor must (1) file a timely motion; (2) "assert[] an interest relating to the property or transaction that is the subject of the action"; (3) demonstrate that "without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest"; and (4) show that its "interest is not adequately represented by the other parties." *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006). A '[f]ailure to satisfy *any one* of these four requirements is a sufficient ground to deny the application.'" *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (quoting *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006)). "[T]he proposed intervenor bears the burden of demonstrating that it meets the requirements for intervention." *Kamden-Ouaffo v. PepsiCo, Inc.*, 314 F.R.D. 130, 134 (S.D.N.Y. 2016).

Intervention as of right should be denied for three independent reasons. *See Floyd*, 770 F.3d at 1057. First, Proposed Intervenors fail to demonstrate, as they must, that the federal government will not adequately defend the ATF actions challenged here. Second, to the extent Proposed Intervenors seek to assert an interest beyond reliance on ATF's current approach—*e.g.*, a potential violation of Proposed Intervenors' purported Second Amendment rights—that interest is not cognizable under binding precedent. Third, even were cognizable Second Amendment rights

implicated, the Court's resolution of this action would not impede Proposed Intervenors from enforcing those alleged rights in another proceeding, therefore rendering intervention unnecessary to protect any such rights.

### A. Defendants adequately represent any cognizable interest that Proposed Intervenors may have in the outcome of this litigation, precluding intervention as of right.

To intervene as of right, Proposed Intervenors must show that their "interest is not adequately represented by the other parties." *MasterCard*, 471 F.3d at 389. This case is about whether ATF acted in accordance with the GCA and the APA when it issued the 2015 interpretive rule and the three Polymer80 letter determinations, as well as whether ATF has unreasonably delayed in responding to Plaintiffs' Petition. *See* Complaint Counts I–V. To the extent Proposed Intervenors assert a reliance interest in ATF's current approach[2]—the only cognizable interest they have identified—that interest is adequately represented by ATF, which "has a strong incentive to make every colorable argument" that its conduct is lawful. *New York v. Scalia*, No. 1:20-CV-1689, 2020 WL 3498755, at * 3 (S.D.N.Y. June 29, 2020). Because Proposed Intervenors are adequately represented by ATF, intervention as of right should be denied.

Where, as here, Proposed Intervenors and Defendants have the "same ultimate objective" the Second Circuit "ha[s] demanded a more rigorous showing of inadequacy." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001). Specifically, when a proposed intervenor and a current party share "an identity of interest," the proposed intervenor "must rebut the presumption of adequate representation by the party already in the action." *Id.* at 179–80. Proposed Intervenors have not and cannot do that here.

---

[2] Proposed Intervenors argue that they "seek to defend their reliance interests in the ATF's long-held precedent." Memo at 3. They also argue that "Applicant 80% Arms has significant financial interests in this matter" because "Applicant 80% Arms is a producer and seller of the Non-Firearm Objects at issue here" and "[t]his lawsuit calls into question Applicant 80% Arms' continued ability to produce, sell, and distribute its products." *Id.* at 13–14.

Proposed Intervenors and Defendants both seek to uphold an ATF interpretive rule and certain ATF determinations concerning whether unfinished frames and receivers are firearms under the GCA.  Proposed Intervenors thus bear the burden of establishing that Defendants' representation will be inadequate.  *See New York v. U.S. Dep't of Health and Human Servs.*, No. 19-CV-4676, 2019 WL 3531960, at *5 (S.D.N.Y. Aug. 2, 2019) ("*N.Y. v. H.H.S.*") (proposed intervenors failed to show their interests were not adequately represented by government agency where intervenors and government agency "share the same goal: upholding the rule"); *New York v. Scalia*, 2020 WL 3498755, at * 3 (same).

Proposed Intervenors' burden is especially heavy because Defendants are government agents.  "The proponent of intervention must make a particularly strong showing of inadequacy in a case where the government is acting as *parens patriae*."  *United States v. City of N.Y.,* 198 F.3d 360, 367 (2d Cir. 1999) (citing *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 985 (2d Cir. 1984)); *see also* 7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1909 (3d ed. 2007 & supp. 2019) ("The rare cases in which a member of the public is allowed to intervene in an action in which the United States, or some other governmental agency, represents the public interest are cases in which a very strong showing of inadequate representation has been made.").  This heightened showing is required because there is "an assumption of adequacy when the government is acting on behalf of a constituency that it represents."  *N.Y. v. H.H.S.*, 2019 WL 3531960, at *4 (citations omitted).  Accordingly, "[i]n the absence of a very compelling showing to the contrary, it will be presumed that a state adequately represents its citizens when the applicants share the same interest."  *Id.*

Proposed Intervenors have not offered any evidence sufficient to rebut the presumption that Defendants adequately represent Proposed Intervenors' interests.  Indeed, as noted above, the

evidence is directly to the contrary—the government just this week moved to dismiss a similar challenge to ATF's actions, *see supra* n.1, and has given every indication it will defend this case similarly.  The presumption of adequate representation may be rebutted by "evidence of collusion, adversity of interest, nonfeasance or incompetence" by the named party sharing the same interest. *Butler*, 250 F.3d at 180.  But, instead of offering such evidence, Proposed Intervenors simply argue that ATF "does not speak directly" for Proposed Intervenors and is instead litigating "on behalf of the general public."  Memo at 16.  As discussed above, however, Second Circuit case law compels the opposite conclusion—because ATF is litigating "on behalf of the general public," its representation is presumptively adequate.[3]  Proposed Intervenors also have not suggested that Defendants will argue for a construction that is "at odds with the one that the Proposed Intervenors may articulate."  *N.Y. v H.H.S.*, 2019 WL 3531960, at *6.  To the contrary, Proposed Intervenors admit that Defendants will defend ATF's Rule.  Memo at 17.

Proposed Intervenors also argue that they and ATF have different motives for litigating. Specifically, Proposed Intervenors state they are seeking to protect "their, their customers', and their members' right to produce sell, purchase and possess Non-Firearm Objects; their Second Amendment protected rights;[4] and their justifiable reliance on the ATF's long held legal position," whereas, according to Proposed Intervenors, ATF's interest is limited to defending the "legitimacy of its rulemaking process and enforcement orders."  Memo at 17.  Additionally, Proposed

---

[3] Proposed Intervenors cite Fifth and Ninth Circuit cases for the proposition that the government does not adequately represent Proposed Intervenors' interest because it is obligated to consider more views than just those of Proposed Intervenors.  Memo at 16–17 (citing *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1494 (9th Cir. 1995); *Fresno County v. Andrus*, 622 F.2d 436, 438-439 (9th Cir. 1980); *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994)).  But "[w]hatever persuasive value these cases may have in general, the Court must follow binding Second Circuit law."  *New York v. Scalia*, 2020 WL 3498755, at *4.

[4] *See* Sections I.B and I.C, *infra*, concerning the non-cognizability of Proposed Intervenors' asserted Second Amendment interests.

Intervenors argue that Defendants are not motivated by the same economic interests that motivate Proposed Intervenors.  *Id.*

But even assuming differential motives, it does not follow that Defendants will not vigorously litigate this case.  To the contrary, a proposed intervenor "does not have an interest not adequately represented by a party to a lawsuit simply because it has a motive to litigate that is *different* from the motive of an existing party."  *Nat. Res. Def. Council, Inc. v. N.Y. State Dep't of Envt'l. Conservation*, 834 F.2d 60, 61–62 (2d Cir. 1987) (emphasis added).  The question is whether "the nature of [Proposed Intervenors'] economic interests is related to [a] colorable legal defense[] that the public defendants would be less able to assert."  *Id.* at 62.  Here, Proposed Intervenors have identified no colorable legal defense that they would be able to assert, but that Defendants would not.  Accordingly, any difference in motive is inconsequential and Proposed Intervenors have failed to establish, as they must, inadequate representation.[5]

**B.    Plaintiffs fail to assert a cognizable Second Amendment interest.**

As just established, any cognizable economic or reliance interest held by Proposed Intervenors is adequately represented by Defendants.  Yet Proposed Intervenors also assert throughout their Memo an interest in upholding their Second Amendment rights.  As explained below, as framed by Proposed Intervenors, the alleged Second Amendment interest is non-cognizable and cannot support intervention in this matter.

The Second Circuit has "made it clear that, for an interest to be 'cognizable' under Rule 24, it must be 'direct, substantial, and legally protectable.'"  *Floyd*, 770 F.3d at 1060 (quoting

---

[5] Proposed Intervenors cite *Town of North Hempstead v. Village of North Hills*, 80 F.R.D. 714, 717 (E.D.N.Y. 1978), for the proposition that intervention is appropriate where a defendant does not share the "real and immediate economic interests of the proposed intervenors."  Memo at 17–18.  But *Town of North Hempstead* did not involve intervention alongside a government defendant seeking to uphold its own regulation.  Moreover, *Town of North Hempstead* relies on *New York Pub. Int. Res. Grp., Inc. v. Regents of Univ. of State of N.Y.*, 516 F.2d 350, 352 (2d Cir. 1975) (*NYPIRG*), for the economic interests proposition, and this Court has already determined that *NYPIRG* does not control in the context of a motion to intervene alongside government defendants.  *See Scalia*, 2020 WL 3498755 at *4.

*Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010)).  "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990) (citing *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 88 (2d Cir. 1986)).

Although Proposed Intervenors assert some economic and reliance interests, discussed *supra*, Proposed Intervenors make clear throughout their Memo a focus on vindicating claimed rights under the Second Amendment.  For instance, they argue at the outset that Plaintiffs' position that ATF is failing properly to regulate "ghost gun" components under the GCA "could create felons out of millions of American for exercising their natural, inalienable, Second Amendment protected rights."  Memo at 3 (emphasis added).  The Memo is replete with similar statements (emphasis added):

- "Moreover, Applicants seek to defend their reliance interests in the ATF's long-held precedent and preserve their ***rights as protected by the Second Amendment***— a position that the ATF will not adequately represent." *Id.*

- "Applicants and their customers and members have significant, protectable interests in the production, sale, purchase, and possession of Non-Firearm Objects, all of which directly implicate ***constitutionally and statutorily protected property and/or activities***." *Id.* at 11.

- "Applicants have a significant interest in ensuring they can continue to engage in personal and business activities as they do now, without involvement of Federal Firearms Licenses and federal background checks, which will, at a minimum, further restrict Applicants' ability to engage in lawful, ***constitutionally protected conduct*** and significantly increase the cost of producing and purchasing Non-Firearm Objects and manufacturing those items into 'firearms' as defined by the GCA." *Id.*

- "The outcome of the instant litigation poses a direct and substantial threat to the ***constitutionally and statutorily protected property rights*** of Applicants, their customers, and their members." *Id.* at 12.

- "Moreover, Applicant 80% Arms seeks to represent the interests of its customers, who are too numerous to conveniently intervene in this matter and who, due to the nature of the property in question, are chilled from coming forward to represent their own interests, due to the degrading and vitriolic abuse they may suffer for exercising their *constitutionally protected rights*—including, but not limited to, harassment, SWATing, and doxing." *Id.* at 12–13.

- "Applicants', their customers', and their members' interests in the production, sale, purchase, and possession of Non-Firearm Objects will be significantly impaired if the Court grants Petitioners the relief they seek, as it would likely render illegal the otherwise entirely lawful and *constitutionally protected property, activities, and/or business practices of Applicants*, and of their customers and members." *Id.* at 14.

- "Depending on the extent of Petitioners' argument, this Court's ruling, and the ATF's decision, Applicants could be exposed to criminal liability based on continued performance of previously legal activities; could be forced to disclose the existence of *certain constitutionally protected property to the federal government*; and would be prohibited from engaging in otherwise lawful and *constitutionally protected activities, including but not limited to the direct purchase of Non-Firearm Objects and, potentially, the unregulated manufacture of those objects into firearms*." *Id.* at 15.

- "Furthermore, because adjudication of this case may impact certain Non-Firearm Objects or firearms in Applicants', their customers', and their members' possession, Applicants' *constitutionally protected right to keep and bear arms may be impaired*." *Id.*

- "If this Court were to reverse the ATF's determination regarding Non-Firearm Objects, depending on the extent of this Court's ruling and the ATF's decision, *Applicants' currently constitutionally protected, lawful practices will be adversely affected, and their Second Amendment protected rights could be unconstitutionally impaired*." *Id.* at 16.

- "Applicants' interests are not adequately represented by the ATF, which does not speak directly for individual owners and purchasers of Non-Firearm Objects, for businesses engaged in the production or sale of the same, nor for *organizations seeking to preserve and restore individuals' constitutionally protected rights— including the individual right to manufacture arms for the lawful purpose of, inter alia, self-defense*." *Id.*

- "Applicants seek to protect and defend their, their customers', and their members' right to produce, sell, purchase, and possess Non-Firearm Objects; *their Second Amendment protected rights*; and their justifiable reliance on the ATF's long held legal position." *Id.* at 17.

Proposed Intervenors, however, do not explain how or why the legal issues presented by this case—centrally, the proper interpretation of the GCA's definition of "firearm" and whether ATF's challenged actions violate the APA—threaten cognizable Second Amendment rights.  Nor can they.  The potential inability to procure unregulated "ghost gun" components does not and cannot violate the Second Amendment and therefore provides no cognizable Second Amendment interest.  For example, to the extent they seek the ability to procure firearms without submitting to a federal background check, *see, e.g.*, Memo at 4 (Proposed Intervenors Fort and Barton indicating their desire to avoid federal background checks); *see also id.* at 6 n.4, 11, 12 (referencing Proposed Intervenors' desire to avoid background checks), no Court has ever held that there is such a right under the Second Amendment—and Proposed Intervenors cite none.[6]  Nor is there a  Second Amendment right to an unserialized gun.[7]

Moreover, even if the regulation of "ghost gun" components somehow implicated a Second Amendment right, there would be no viable Second Amendment claim because where, as here, "adequate alternatives remain for law-abiding citizens to acquire a firearm for self-defense," any burden of the right is "not a substantial" one.  *United States v. Decastro*, 682 F.3d 160, 168 (2d Cir. 2012).  For this reason, the Second Circuit has rejected Second Amendment challenges to, for example:  18 U.S.C. § 922(a)(3), the provision of the GCA that "prohibits the transportation into one's state of residence of firearms acquired outside the state," *Decastro*, 682 F.3d at 168; *see* 18

---

[6] Second Amendment challenges to background checks have been rejected.  *See, e.g.*, *Murphy v. Guerrero*, No. 1:14-CV00026, 2016 WL 5508998, at *8 (D.N. Mar. Sept. 28, 2016) (rejecting Second Amendment challenge to Northern Mariana Islands law requiring licenses and background checks for all firearms purchases); *Rocky Mountain Gun Owners v. Hickenlooper*, 371 P.3d 768, 776–77 (Colo. App. 2016) (rejecting challenge to Colorado law requiring background checks for firearm sales and transfers based on findings that the law "does not infringe on individuals' rights to keep and bear arms for a lawful purpose" and "does not implicate a fundamental right"); *see also Libertarian Pty. of Erie Cty. v. Cuomo*, 970 F.3d 106, 127–28 (2d Cir. 2020) (rejecting challenge to a New York law that requires a license, including a background check, to possess any handgun within the State).

[7] *See United States v. Marzzarella*, 614 F.3d 85, 93–94, 101 (3d Cir. 2010) (upholding federal law prohibiting possession of firearms with obliterated serial numbers, and expressly rejecting challenger's argument that "the Second Amendment must protect firearms without serial numbers").

U.S.C. § 922(a)(3); New York City's handgun licensing fee, *see Kwong v. Bloomberg*, 723 F.3d 160, 167–69 (2d Cir. 2013); New York State's concealed carry permit requirements, *see Kachalsky v. County of Westchester*, 701 F.3d 81, 83–84 (2d Cir. 2012); and New York State's prohibition of assault weapons and large-capacity ammunition magazines, *see New York State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 263–64 (2d Cir. 2015).

In light of this authority, there is no support (and Proposed Intervenors cite none) for their generalized suggestion that ATF's regulation of "ghost gun" components—were that the consequence of the relief in this case—could violate their Second Amendment rights.

**C.    Even assuming cognizable Second Amendment rights, Proposed Intervenors can enforce such rights in a subsequent proceeding.**

To intervene as of right, a proposed intervenor must demonstrate that their "claims and interests . . . may be adversely affected at least by principles of *stare decisis*, arising out of the final judgment to be entered in this case." *Oneida Indian Nation of Wis. v. New York*, 732 F.2d 261, 265 (2d Cir. 1984) (citing *NYPIRG*, 516 F.2d at 352).  Thus, intervention as of right is inappropriate where there is no danger that an adverse decision "would preclude the intervenors by *res judicata* or collateral estoppel from bringing their own challenge," *Cook v. Bates*, 92 F.R.D. 119, 123 (S.D.N.Y. 1981), and the intervenors can "protect [their] interests by other means," *New York News Inc. v. Newspaper & Mail Deliverers' Union of New York*, 139 F.R.D. 291, 293 (S.D.N.Y. 1991), *aff'd sub nom. New York News, Inc. v. Kheel*, 972 F.2d 482 (2d Cir. 1992).

Proposed Intervenors clearly fail to meet this requirement, even assuming a cognizable Second Amendment interest.  In this matter, Plaintiffs seek vacatur of ATF's interpretive rule and determination letters as inconsistent with the GCA and APA; they also seek an order directing ATF to act on Plaintiffs' rulemaking Petition consistent with the APA's and the GCA's requirements.  For their part, Proposed Intervenors appear to contend that the Second Amendment

constrains ATF's regulation of ghost gun components—such that ATF treating such components as "firearms" under the GCA (as Plaintiffs argue ATF must do) would violate the Second Amendment.  In other words, Proposed Intervenors appear to argue that ATF's challenged actions are *required* by the Second Amendment.

Beyond the fact that any such argument is completely lacking in merit or legal support, as this Court has explained elsewhere, "[b]ecause the issue of what rules the Constitution requires is not an issue the Court needs to reach to resolve the claims in the Complaint, no decision by this Court would foreclose the movant's argument that any other definition or procedural requirement in [an ATF] Rule would be unconstitutional." *New York v. United States Department of Education*, No. 20-CV-4260, 2020 WL 3962110, at *3 (S.D.N.Y. July 10, 2020) (*New York v. Department of Education*).  *New York v. Department of Education* is directly instructive here.  In that case, the plaintiffs brought an APA challenge against a Department of Education Final Rule that "provide[d] greater protections for individuals accused of sexual harassment."  *Id.* at *1.  The Foundation for Individual Rights in Education (FIRE), a non-profit organization that "works with college students and faculty who are subjected to disciplinary proceedings for engaging in conduct protected by the First Amendment," sought to intervene.  *Id.* at *2.  In rejecting FIRE's motion for intervention as of right, the court noted that "FIRE seeks to uphold the Final Rule, not because it is valid under the APA, but because the Final Rule's new provisions . . . are allegedly required by the Constitution."  *Id.* at *3.  In short, because the plaintiffs' "claims relate[d] solely to the validity of the Final Rule under the APA," FIRE's constitutional interest would "not be 'adversely affected . . . by principles of stare decisis, arising out of the final judgment to be entered in this case.'"  *Id.* (citing *Oneida Indian Nation*, 732 F.2d at 265).  FIRE was thus "at liberty to initiate litigation alleging that the Final Rule [was] required by the Constitution, or in the event the Final Rule [was]

held to be improper under the APA, alleging that the DOE's former policies, if continued or reinstated, are unconstitutional." *Id.*

Here, the Court's resolution of Plaintiffs' challenge to ATF's actions will not foreclose Proposed Intervenors from asserting any purported Second Amendment Rights in a later proceeding, even assuming the Court orders—as Plaintiffs seek—vacatur of certain ATF actions and a requirement that ATF act on their Petition in accordance with the APA and the GCA. Depending on ATF's actions after that relief is granted, Proposed Intervenors may or may not believe they have Second Amendment interests to advance in the future. But there is no need or reason for them to do so now as intervenors in this matter, which involves whether ATF's current actions are compliant with the GCA and the APA—not whether other actions that ATF may take pose a Second Amendment issue. In short, no resolution of this matter would prevent Proposed Intervenors from later alleging that ATF's actions, or the GCA itself, are unconstitutional.

## II.     Permissive intervention under Rule 24(b) is unwarranted.

Permissive intervention should also be denied because, even assuming "a common question of law or fact" between Proposed Intervenors' interests and the case at hand, "intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1)(B), (b)(3). First, although Proposed Intervenors make passing reference to the APA claims that are the basis for this case, as shown above, their focus is elsewhere: they seek to expand the scope of this litigation by inserting a Second Amendment issue concerning ATF's potential future actions, as opposed to the issues currently presented. Second, this proposed addition would prejudice Plaintiffs.

### A.     Proposed Intervenors seek to unduly expand the scope of this litigation.

As discussed above, Proposed Intervenors' Memo and stated interests are minimally directed at the APA issues at hand, instead focusing heavily on their asserted Second Amendment

rights.  Because inserting these non-cognizable, premature Second Amendment issues into this APA case would radically (and needlessly) alter the scope of this litigation, the Court should not exercise its discretion to permit intervention.

Where a plaintiff challenges an agency action solely because the agency has failed to comply with the APA or an authorizing statute, a third party is typically not permitted to intervene if its primary goal is to interject complicated, tangential Constitutional questions.  For example, in *New York v. Department of Education*, after concluding that FIRE could not intervene as of right, *see* I.B., *supra*, the court held that similar considerations militated against permissive intervention. "The addition of the movant's arguments," the court explained, "would complicate the analysis by introducing new issues of law while not contributing to the development of the factual record related to the current parties' dispute."  *New York v. Department of Education*, 2020 WL 3962110, at *4 (internal quotation omitted).  FIRE's "interests in arguing that the Final Rule must be upheld because it [was] constitutionally required [was] a question that [was] extraneous to whether the Final Rule [was] valid under the APA and that [was] unaffected by th[e] litigation."  *Id.*  This precise reasoning applies to Proposed Intervenors' attempted intervention here.

Proposed Intervenors repeatedly indicate an interest in expanding the scope of this case to include the adjudication of constitutional issues unrelated to Plaintiffs' core statutory and APA claims.  *See* Memo at 3, 11, 12, 13, 14, 15, 16, 17 (references to alleged constitutional rights or issues).  For example, the Memo states that each Proposed Intervenors' primary objective is "protecting itself, its customers, and/or its members from a sudden reversal of long accepted precedent that could create felons out of millions of American for exercising their natural, inalienable, Second Amendment protected rights."  Memo at 3.  But this case is not the proper vehicle for Proposed Intervenors to challenge the constitutionality of the hypothesized regulation

under the GCA, given that Plaintiffs' current complaint challenges specific ATF actions as in violation of the APA, with the requested relief vacatur and an order that further rulemaking be consistent with the APA's and GCA's requirements.

In short, because the Memo reveals that permitting intervention will lead to the insertion of irrelevant and distracting constitutional and other issues into this APA challenge, permissive intervention should be denied.

**B.** **Permitting intervention would prejudice Plaintiffs.**

Permissive intervention also should be denied because intervention will prejudice the rights of Plaintiffs. *See* Fed. R. Civ. P. 24(b)(3). Specifically, the Memo makes plain that Proposed Intervenors' primary goal is to obtain a broad ruling that would cast doubt on the regulation of unfinished frames and receivers and "ghost gun" kits (and, more broadly, a range of federal, state, and local firearm regulations). A party should not be permitted to intervene where it seeks a broad ruling that would affect rights not implicated by the underlying action.

In *New York v. Department of Education*, the court noted that, in addition to raising issues "extraneous to whether the Final Rule is valid under the APA," FIRE's requested relief would "raise questions as to the legality of various institutions' policies pursuant to state and local laws, which are not at issue in the complaint." 2020 WL 3962110, at *4. "Arguing that the Constitution affirmatively requires nothing less than the definitions and procedures of the Final Rules," the court explained, "differs significantly from deciding that the Final Rule is valid or invalid under the APA; it is a step further even from an allegation that the old rules published by the DOE were unconstitutional." *Id.* Accordingly, allowing FIRE to intervene and to present these arguments would have prejudiced the plaintiffs' interests.

Likewise here, Proposed Intervenors advance an apparently broad theory of the Second Amendment that would preclude the regulation of "ghost guns" or their components, and, more

broadly, prevent federal, state, and local governments from passing various regulations on the sale and possession of firearms.  For instance, Proposed Intervenors make the sweeping argument that "direct purchase of Non-Firearm Objects and, potentially, the unregulated manufacture of those objects into firearms" are "constitutionally protected activities."  Memo at 15.  The (unsupported and erroneous) argument that the Second Amendment guarantees the right to "unregulated manufacture" of "ghost guns"—or protects firearm components that Proposed Intervenors argue are not even firearms under the GCA—has implications well beyond the scope of this case.  In short, it would "raise questions as to the legality of various . . . state and local laws, which are not at issue in the complaint."  *New York v. Department of Education*, 2020 WL 3962110, at *4.  It therefore counsels for the Court to exercise its discretion to decline permissive intervention here.

## CONCLUSION

Proposed Intervenors have failed to meet the requirements for intervention as of right and should not be granted permissive intervention for the reasons set forth above.  Intervention should therefore be denied.  To the extent Proposed Intervenors believe they have perspectives that should be considered, those perspectives may be appropriately offered as *amici curiae.  See, e.g.*, *Battle v. City of N.Y.*, No. 11-CV-3599, 2012 WL 112242, at *7 (S.D.N.Y. Jan. 12, 2012); *see also British Airways Bd. v. Port Auth. of N.Y. & N.J.*, 71 F.R.D. 583, 585 (S.D.N.Y. 1976) ("[A] third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention.").

Dated: New York, New York
   December 3, 2020

Respectfully Submitted,

COOLEY LLP

By:   */s/Stephanie Schuyler*
   Stephanie Schuyler

55 Hudson Yards

New York, NY 10001-2157
Telephone: (212) 479-6000

Daniel Grooms
Elizabeth B. Prelogar
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 776-2042

Eric Tirschwell
Len Kamdang
Aaron Esty
Krystan Hitchcock
EVERYTOWN LAW
450 Lexington Avenue, P.O. #4184
New York, New York 10024
Telephone: (646) 324-82222

*Attorneys For Plaintiffs*