$2 0$ APR 1978

T:T:F:CHB
7540

Mr. Dan C. Kingsland
American Arms and Ammunition Corporation
915 NW. 72nd Street
Miami, Florida  33150

Dear Mr. Kingsland:

This is in reply to your letter of March 15, 1978, and enclosed
samples which were received by our office on March 21, 1978.

Section 921(a)(3) of Title I of the Gun Control Act of 1968 defines
the term firearm to include (A) any weapon (including a starter
gun) which will or is designed to or may be readily converted to expel
a projectile by the action of an explosive; and (B) the frame or
receiver of any such weapon.  The three samples which were received
are identified as follows:

1.  Norton Model TP-70 pistol, caliber .25, serial number 005.
2.  Rough frame as received from casting company.
3.  Machined frame which you propose to import from a foreign
    source.

Our examination reveals that Item 2, the rough frame, is not a
firearm as defined.  However, Item 3, the machined frame, has
reached a stage of manufacture such that it may be readily converted
to functional condition.  Therefore, it is a firearm and is subject
to all applicable controls under the provisions of the Act and the
implementing regulations in Part 178, Title 27, Code of Federal
Regulations.  This frame would not be approved for importation into
the United States under Section 925(d)(3) of the Act.

It is our further determination that eliminating either the grooves
for the slide rails or the grooves for the barrel rails from the
machined frame, would not be sufficient to exempt it from controls
under the Act.




-2-

Mr. Dan C. Kingsland

We regret that our response in this matter has not been more
favorable.  If you have any further questions, please feel free
to contact us.

Sincerely yours,

Chief, Firearms Technology Branch

| CODE | INITIATOR | REVIEWER | REVIEWER | REVIEWER | REVIEWER | REVIEWER | REVIEWER |
|------|-----------|----------|----------|----------|----------|----------|----------|
| | T.T.F | TTF | | | | | |
| SUR-NAME | Bartlett | Yousouvey | | | | | |
| DATE | 4/17/78 | 4/19/78 | | | | | ATF0002 |

CHBARTLETT:psc:4-8-78

ATF F 1325.6 (2-75)
REPLACES ATF FORM 92 (9-73) WHICH MAY BE USED

CORRESPONDENCE APPROVAL AND CLEARANCE

DEPARTMENT OF THE TREASURY
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS

//////// **AMERICAN ARMS & AMMUNITION CORPORATION**

Dear Sir:

Pursuant to my telephone conversation of 14 March 1978 with your Mr. Bartlett, under separate cover we are forwarding you the following items for examination:

1 Norton TP-70 Pistol, Complete S/N 005, 25 Cal.

1 Frame as received from our casting company

1 Frame as we would like to have it machine from an off shore source

We would like to have some of our castings forwarded to a machine shop outside the United States for partial machining. Upon completion, they would be returned to us for final machining and assembly. Our purpose is to lighten the burden on our equipment to increase production without expending large sums of money for additional equipment and labor.

We presently have in mind a company located in Portugal with the necessary equipment and machine time available.

We are open to any suggestions or changes that you might have after your examination of the above items and look forward to your reply.

In the meantime, should you require any additional information, please feel free to contact me.

Very truly yours,

*Dan C. Kingsland*

DCK/id
Encl: FFL's

Dan C. Kingsland
Executive Vice President

915 N.W. 72nd STREET, MIAMI, FLORIDA 33150 • PHONE: AREA 305-836-9112

Bureau of Alcohol, Tabacco & Firearms
Room B-230
Attn: Chief, Firearms Technical Brance          15 March 1978
12 Pennsylvania Ave.
Washington, D.C. 20226

ATF0003

FILE

**1. Name** AMERICAN ARMS & AMMUNITION CORPORATION   Copy of license (18 U.S.C. Chapter 44) CHANGE

| 2. License Number | 3. Expiration Date |
|---|---|
| 1-59-013-07-F8-15247 | 6-1-78 |

| 4. Employer Identification No. or Social Security No. | 5. County |
|---|---|
| 59 1737025 | Dade |

**6. Type of License** 07

01 Dealer in firearms other than destructive devices or ammunition for other than destructive devices.

02 Pawnbroker dealing in firearms other than destructive devices or ammunition for firearms other than destructive devices.

03 Collector of curios and relics.

06 Manufacturer of ammunition for firearms other than destructive devices.

07 Manufacturer of firearms other than destructive devices.

08 Importer of firearms other than destructive devices or ammunition for firearms other than destructive devices.

09 Dealer in destructive devices or ammunition for destructive devices.

10 Manufacturer of destructive devices or ammunition for destructive devices.

11 Importer of destructive devices or ammunition for destructive devices.

I certify that this is a true copy of a license issued to me to engage in the business specified in item 6.

_____
(Signature of Licensee)

**PURCHASING COPY**

The licensee named herein may use this form, a reproduction thereof, or a reproduction of his license, to assist a transferor of firearms to verify the identity and the licensed status of the licensee as provided in 27 CFR Part 178.

**LICENSEE**

AMERICAN ARMS & AMMUNITION CORPORATION
915 N W 72nd Street
Miami, FL   33150

**7. Issued by Regional Regulatory Administrator, ATF at (Address)**
P.O. Box 2994
Atlanta, GA   30301

**8. Signature of Regional Regulatory Administrator**

ATF Form 8 (5310.11) (1-77) PART II

DEPARTMENT OF THE TREASURY — BUREAU OF ALCOHOL, TOBACCO AND FIREARMS

---

FILE

**1. Name** AMERICAN ARMS & AMMUNITION CORPORATION   NAME CHANGE
License (18 U.S.C. Chapter 44)

| 2. License Number | 3. Expiration Date |
|---|---|
| 1-59-013-08-18-15639 | 9-1-78 |

| 4. Employer Identification No. or Social Security No. | 5. County |
|---|---|
| 59 1737025 | Dade |

**6. Type of License** 08

01 Dealer in firearms other than destructive devices or ammunition for other than destructive devices.

02 Pawnbroker dealing in firearms other than destructive devices or ammunition for firearms other than destructive devices.

03 Collector of curios and relics.

06 Manufacturer of ammunition for firearms other than destructive devices.

07 Manufacturer of firearms other than destructive devices.

08 Importer of firearms other than destructive devices or ammunition for firearms other than destructive devices.

09 Dealer in destructive devices or ammunition for destructive devices.

10 Manufacturer of destructive devices or ammunition for destructive devices.

11 Importer of destructive devices or ammunition for destructive devices.

In accordance with the provisions of Title I, Gun Control Act of 1968, and the regulations issued thereunder (27 CFR Part 178), you are licensed to engage in the business specified in item 6 of the license, within the limitations of Chapter 44, Title 18, United States Code, and the regulations issued thereunder, until the expiration date specified in item 3 of this license.



Department of the Treasury
**Bureau of Alcohol, Tobacco and Firearms**

● **LICENSEE** ●

AMERICAN ARMS & AMMUNITION CORPORATION
1015 NW 72nd Street
Miami, FL   33150

**7. Issued by Regional Regulatory Administrator, ATF at (Address)**
P.O. Box 2994
Atlanta, GA   30301

**8. Signature of Regional Regulatory Administrator**

ATF Form 8 (5310.11) (1-77) PART I   EDITION of (9-75) MAY BE USED

SEE "WARNING" ON BACK

**AMERICAN ARMS & AMMUNITION CORPORATION**

Dear Sir:

Pursuant to my telephone conversation of 14 March 1978 with your Mr. Bartlett, under separate cover we are forwarding you the following items for examination:

1 Norton TP-70 Pistol, Complete S/N 005, 25 Cal.

1 Frame as received from our casting company

1 Frame as we would like to have it machine from an off shore source

We would like to have some of our castings forwarded to a machine shop outside the United States for partial machining. Upon completion, they would be returned to us for final machining and assembly. Our purpose is to lighten the burden on our equipment to increase production without expending large sums of money for additional equipment and labor.

We presently have in mind a company located in Portugal with the necessary equipment and machine time available.

We are open to any suggestions or changes that you might have after your examination of the above items and look forward to your reply.

In the meantime, should you require any additional information, please feel free to contact me.

Very truly yours,

Dan C. Kingsland
Executive Vice President

DCK/id
Encl: FFL's

915 N.W. 72nd STREET, MIAMI, FLORIDA 33150 • PHONE: AREA 305-836-9112

Bureau of Alcohol, Tabacco & Firearms
Room B-230
Attn: Chief, Firearms Technical Brance          15 March 1978
12 Pennsylvania Ave.
Washington, D.C. 20226

ATF0005

FILE

**1. Name** AMERICAN ARMS & AMMUNITION CORPORATION

Copy of License (18 U.S.C. NAME CHANGE)

**2. License Number**
1-59-013-07-F8-15247

**3. Expiration Date**
6-1-78

**4. Employer Identification No. or Social Security No.**
59 1737025

**5. County**
Dade

**6. Type of License** 07

01 Dealer in firearms other than destructive devices or ammunition for other than destructive devices.

02 Pawnbroker dealing in firearms other than destructive devices or ammunition for firearms other than destructive devices.

03 Collector of curios and relics.

06 Manufacturer of ammunition for firearms other than destructive devices.

07 Manufacturer of firearms other than destructive devices.

08 Importer of firearms other than destructive devices or ammunition for firearms other than destructive devices.

09 Dealer in destructive devices or ammunition for destructive devices.

10 Manufacturer of destructive devices or ammunition for destructive devices.

11 Importer of destructive devices or ammunition for destructive devices.

I certify that this is a true copy of a license issued to me to engage in the business specified in item 6.

_____
(Signature of Licensee)

**PURCHASING COPY**

The licensee named herein may use this form, a reproduction thereof, or a reproduction of his license, to assist a transferor of firearms to verify the identity and the licensed status of the licensee as provided in 27 CFR Part 178.

**LICENSEE**

AMERICAN ARMS & AMMUNITION CORPORATION
915 N W 72nd Street
Miami, FL  33150

**7. Issued by Regional Regulatory Administrator, ATF at (Address)**
P.O. Box 2994
Atlanta, GA  30301

**8. Signature of Regional Regulatory Administrator**

ATF Form 8 (5310.11) (1-77) PART II

DEPARTMENT OF THE TREASURY — BUREAU OF ALCOHOL, TOBACCO AND FIREARMS

---

FILE

**1. Name** AMERICAN ARMS & AMMUNITION CORPORATION

NAME CHANGE
License (18 U.S.C. Chapter 44)

**2. License Number**
1-59-013-08-J8-15639

**3. Expiration Date**
9-1-78

**4. Employer Identification No. or Social Security No.**
59 1737025

**5. County**
Dade

**6. Type of License** 08

01 Dealer in firearms other than destructive devices or ammunition for other than destructive devices.

02 Pawnbroker dealing in firearms other than destructive devices or ammunition for firearms other than destructive devices.

03 Collector of curios and relics.

06 Manufacturer of ammunition for firearms other than destructive devices.

07 Manufacturer of firearms other than destructive devices.

08 Importer of firearms other than destructive devices or ammunition for firearms other than destructive devices.

09 Dealer in destructive devices or ammunition for destructive devices.

10 Manufacturer of destructive devices or ammunition for destructive devices.

11 Importer of destructive devices or ammunition for destructive devices.

In accordance with the provisions of Title I, Gun Control Act of 1968, and the regulations issued thereunder (27 CFR Part 178), you are licensed to engage in the business specified in item 6 of the license, within the limitations of Chapter 44, Title 18, United States Code, and the regulations issued thereunder, until the expiration date specified in item 3 of this license.



Department of the Treasury
**Bureau of Alcohol, Tobacco and Firearms**

**LICENSEE**
AMERICAN ARMS & AMMUNITION CORPORATION
1015 NW 72nd Street
Miami, FL  33150

**7. Issued by Regional Regulatory Administrator, ATF at (Address)**
P.O. Box 2994
Atlanta, GA  30301

**8. Signature of Regional Regulatory Administrator**

ATF Form 8 (5310.11) (1-77) PART I    EDITION of (9-75) MAY BE USED

SEE "WARNING" ON BACK

Per phone 7/22/78 w/ Kingsland
alternative –
        eliminate barrel channel
        eliminate slide rails –

ATF0007

**0 2 AUG 1978**

T:T:F:CHB
7540

Mr. Tom L. Klein
831 Keeven Lane
Florissant, Missouri  63031

Dear Mr. Klein:

This is in reply to your request of July 17, 1978, for information regarding the status of an unfinished firearm receiver under the provisions of the Gun Control Act of 1968.

The term "firearm" as defined in Section 921(a)(3) of Title I of the Act means, (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; and, (B) the frame or receiver of any such weapon.  It is our position that an unfinished firearm receiver which may be readily converted to functional condition is a firearm as defined.

We regret that we do not have a precise definition of what is "readily converted" since there are too many variables which must be considered. Therefore, it is our policy to render a classification on these items only on a case by case basis.  In most instances, we would need to examine the receiver.  However, if a sample is not available, we could consider any detailed plans, drawings, specifications, and descriptive data which you could provide.

We regret that our response has not been more definitive.  If you would care to provide additional information, we would be happy to respond.  If you wish to discuss this matter by telephone, our number is (202) 566-7131.

Sincerely yours,

Nick Vojnovich

CHBARTLETT:psc:8/1/78

| CODE | INITIATOR | REVIEWER | REVIEWER | REVIEWER | REVIEWER | REVIEWER | REVIEWER |
|------|-----------|----------|----------|----------|----------|----------|----------|
| SUR- NAME | T:T:F Bartlett | TTF Vornovich | | | | | |
| DATE | 8/2/78 | 8/2/78 | | | | | |

ATF F 1325.6 (2-75)
REPLACES ATF FORM 92 (9-73) WHICH MAY BE USED

CORRESPONDENCE APPROVAL AND CLEARANCE

DEPARTMENT OF THE TREAS
BUREAU OF ALCOHOL, TOBACCO AND FIREA



# DEPARTMENT OF THE TREASURY
### BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
### 230 SOUTH DEARBORN STREET — 15TH FLOOR
### CHICAGO, ILLINOIS 60604

REFER TO
MW:RE:T:RNA

JUL 25 1978

MEMORANDUM TO:  Assistant Director
                Technical and Scientific Services
                ATTN:  Firearms Technology Branch

       FROM:  Chief, Technical Services
              Midwest Region

    SUBJECT:  Classification Request

              Tom L. Klein d/b/a
              Tom Klein Sporting Goods
              831 Keeven Lane
              Florissant, Missouri  63031
              3 43 097 01 J7 12816

The attached request for a determination as to the production

stage at which a receiver becomes a firearm is, because of its

technical nature, being forwarded for your consideration and

response.

Arthur Davidson

Attachments:
Licensee's correspondence
Interim response to licensee

Sirs:

17 July 1978
314/837-3717
FFL #3 43 047 01 R8
12816

While I am a licensed dealer, a situation has arisen that requires a legally binding ruling. FOR MY OWN PERSONAL USE I AM attempting to manufacture one or two rifles (nothing special about them in terms of size nor use as machinegun, et.al) RATHER THAN HAVE the RECEIVER MACHINED FROM BAR STOCK, I AM attempting to purchase investment castings - AS CAST and solution annealed. The METAL upon receipt would REQUIRE - Non-destructive testing, surface cleaning, heat treat, MACHINING on ALL dimensional surfaces. The differences between what I want and what is offered ARE - change material from SAE 8620 to AISI 410 stainless; Hot Isostatic PRESS concurrent with HEAT TREAT, innoculate casting for smaller grain structure.

When the rough castings ARE sold to ME, must they be classified as a FIREARM, considering that about $800 worth of machine work must occur before ANY parts will fit? I believe that the material is (scrap) metal. The maker of the castings would prefer not to be liable for machining, et.al. done by me.

Tom Klein



ATF0010

T:T:F:EMO
7540

## 2 2 MAR 1979

Mr. Richard J. Drake
Rider, Drake, Weiner & Loeb, P.C.
427 Little Britain Road
P.O. Box 991
Newburgh, New York  12550

Dear Mr. Drake:

This refers to your letter of March 8, 1979, in which you ask
at what stage in manufacture a firearm frame becomes subject to
the Gun Control Act.

The frame or receiver of a firearm is considered to be subject
to the provisions of the Gun Control Act of 1968 at such time
that it has reached a stage in it's manufacture where the frame
can be readily converted to fire.  From the information contained
in your letter it would appear that upon completion of step 2 in
the manufacturing process the frames would be subject to the
provisions of the Act.  However, we cannot render a formal opinion
until we have had the opportunity to examine samples of the frames
in their various stages of manufacture.  If you submit samples of
the partially completed frames and a completed frame we will be
in a better position to render a formal classification.

We trust that the foregoing has been responsive to your inquiry.
If we can be of any further assistance, please contact us.

Sincerely yours,

Nick Voinovich
Chief, Firearms Technology Branch

EMOWEN:psc:3/20/79

| CODE | INITIATOR | REVIEWER | REVIEWER | REVIEWER | REVIEWER | REVIEWER | REVIEWER |
|------|-----------|----------|----------|----------|----------|----------|----------|
| | T.T.F | T.T.F | | | | | |
| SUR-NAME | Owen | Voinovich | | | | | |
| DATE | 3/22/79 | 3/22/79 | | | | | |

ATF F 1325.6 (2-75)
REPLACES ATF FORM 92 (9-73) WHICH MAY BE USED

CORRESPONDENCE APPROVAL AND CLEARANCE

DEPARTMENT OF THE TREASURY
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS

ATF0011

E Mo

RIDER, DRAKE, WEINER & LOEB, P.C.

ATTORNEYS & COUNSELLORS AT LAW

ELLIOTT M. WEINER
JAMES R. LOEB
RICHARD J. DRAKE
DAVID L. RIDER
DAVID L. LEVINSON
STEPHEN L. REINEKE
——
STEVEN L. TARSHIS
TIMOTHY J. AHEARN

M.J. RIDER (1906-1968)
——
427 LITTLE BRITAIN ROAD
POST OFFICE BOX 991
NEWBURGH, NEW YORK 12550
TEL (914) 562-8700
——
JULIUS LARKIN HOYT
OF COUNSEL

March 8, 1979

Mr. Edward Owen
Bureau of Alcohol, Tobacco and Firearms
1200 Pennsylvania Avenue N.W.
Washington, D.C.      20226

> Re:   Wildey Firearms Company, Inc.
>        Our File: 16,806

Dear Mr. Owen:

You may not recall,but we met in Chicago and I am Secretary of Wildey
Firearms Company Inc. as well as its general counsel.  I am enclosing
a copy of my business card.  We are progressing to a point where I need
your assistance in interpretation of the federal statutes in regard to
firearms manufacturing.

We are reaching a stage where the component parts of the gun are in
various stages of design and engineering and we will be, very shortly,
ordering parts from various vendor/suppliers.

My concern with the statute,and for which I need your assistance and
perhaps interpretation, relates to the frame.  I understand that you
may have had some conversations with Will Moore, the Company President,
in this regard.

Basically the problem is that the frame will have several procedures com-
pleted on it and we envision a three step procedure:

1.   The investment casting process will be completed for us by a casting
     house who will ship the frame, as cast for procedures under step 2.

2.   Step 2 is the machining of the frame by an independent vendor which
     will be basically a tape machining operation to grind and polish.
     At this step there will be no other component parts that could be
     used to complete the gun in any way whatsoever and the frame would
     then be shipped after machined to stage 3.

3.   Finish polishing and assembly.  This stage envisions the receipt of
     the frame, final touching up, polishing and serial numbering as

RIDER, DRAKE, WEINER & LOEB, P.C.

Mr. Edward Owen
March 8, 1979                                                    Page 2
_____

a "mat" finish.  It would seem to me that at stage 3 when ther serial
number is put on the frame and the mat finish applied is the stage
where other component parts would be placed in the gun for assembly.
The statute seems unclear and I would appreciate it if you could
give us your assistance in this regard.

                          Very truly yours,


                          Richard J Drake


RJD/cm

ATF0013

8 U C   0 9 9 8



# DEPARTMENT OF THE TREASURY
### BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
WASHINGTON, D.C. 20226

JAN 3 1 1980

REFER TO

T:T:N:FEB
80-C-440
7560

Mr. William M. York
York Arms Company
Hurricane, Utah  84737

Dear Mr. York:

In your letter dated December 17, 1979, you ask various
questions with respect to the lawful manufacture of
firearms.  Your questions are answered in the order asked.

A "piece of metal" is considered to be a firearm receiver
and subject to the provisions of the Gun Control Act of
1968 (GCA) at such time as it reaches a stage in
manufacture where it can be readily converted to a
functional condition.

As provided in Section 179.103 of the regulations
implementing Title II of the GCA (the National Firearms
Act (NFA)), a manufacturer must file ATF form 2 no later
than the close of the next business day after the
firearms are manufactured.  For example, if, on
January 17, 1980, a "piece of metal" reached the stage in
manufacture where it could be readily converted to a
functional condition, the manufacturer must have filed
ATF form 2 to report and register the receiver no later
than the close of business on January 18, 1980, the next
business day.

The answer in the preceding paragraph also applies to the
manufacture of prototype weapons.  Insofar as the
alteration or conversion of a registered prototype
firearm is concerned, any permanent alterations or
changes in the classification of the firearm must be
reported by letter to the NFA Branch so that the National

*Exhibit D'*

ATF0014

80 C  0998

-2-

Mr. William M. York

Firearms Registration and Transfer Record will accurately
reflect the status of your registered weapon.

Your last question is, "Do we as a manufacturer need to
register conversion parts for firearms, or are these only
required to be registered when we intend to sell them as
a complete unit?" These parts should be registered when
sold as a complete unit.  Additionally, you must comply
with Title 27, Code of Federal Regulations (CFR), Section
179.102, Identification of Firearms.

If you have further questions, please let us know.

Sincerely yours,

Nick Vainovich

Chief, National Firearms Act Branch

ATF0015



1 1 JUN 1980

T:T:F:CTB
7540

Mr. William M. York
York Arms Company
Hurricane, Utah  84737

Dear Mr. York:

This refers to your letter of April 4, 1980, in which you ask about the meaning of the phrase "readily converted to a functional condition."

Due to the vast variation in firearms design, construction, material, production techniques, and other variables, it is not possible to provide you with a simple answer to your question which would be applicable in all cases. Certainly, if an unfinished receiver could be converted to functional condition within a few hours time using common hand tools, or simple grinding, cutting, drilling, or welding operations, it would likely qualify as a firearm. However, for us to provide you with a positive determination regarding the status of any particular unfinished receiver, it would be necessary for us to examine a sample.

We trust that the foregoing has been responsive to your inquiry. If we can be of further assistance, please contact us.

Sincerely yours,

Edward M. Owen, Jr.
Chief, Firearms Technology Branch

CTBARTLETT:spl:6-10-80

cc: BAC Office

| CODE | INITIATOR | REVIEWER | REVIEWER | REVIEWER | REVIEWER | REVIEWER | REVIEWER |
|------|-----------|----------|----------|----------|----------|----------|----------|
|      | T:17.6    |          |          |          |          |          |          |
| SUR-NAME | Bartlett | Owen |          |          |          |          |          |
| DATE | 6/10/80 | 6/11/80 |          |          |          |          |          |

ATF F.1323.6 (3-78)
REPLACES ATF FORM 62 (3-73) WHICH MAY BE USED
CORRESPONDENCE APPROVAL AND CLEARANCE
DEPARTMENT OF THE TREASURY
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS



Ex D 2

ATF0016



T.TUP.CSL.
7540

JUN 18 1981

Mr. R. A. Greenleaf
Customer Services Manager
Savage Arms
Springdale Road
Westfield, Massachusetts 01085

Dear Mr. Greenleaf:

This refers to your letter of June 3, 1981, in which you request a written
opinion on the classification of a piece of machined steel bar that is ultimately
to be a firearm frame or receiver. You have enclosed a photograph of the machined
steel bar.

The machined steel bar depicted in the photograph, with no other machine operations
performed, has not reached the point in the manufacturing process that it would
be classified as the frame or receiver of a firearm. Therefore, it is not necessary
to mark these items with a serial number or other identifying markings required by
the Gun Control Act of 1968 or the implementing regulations.

We trust that the foregoing has been responsive to your request. If we can be
of any further assistance, please do not hesitate to contact us.

Sincerely yours,

Edward M. Owen, Jr.
Chief, Firearms Technology Branch

CSTARDU:dJo:6-16-81

TE Office

CO

| CODE | INITIATOR | REVIEWER | REVIEWER | REVIEWER | REVIEWER | REVIEWER | REVIEWER |
|------|-----------|----------|----------|----------|----------|----------|----------|
| | T:T:F | | | | | | |
| SUR-NAME | Graham | | | | | | |
| DATE | June 17, 1981 | | | | | | |

ATF F 1325.6 (2-78)
REPLACES ATF FORM 82 (9-73) WHICH MAY BE USED
CORRESPONDENCE APPROVAL AND CLEARANCE
DEPARTMENT OF THE TREASURY
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS

ATF0017

CSL

 **Savage**
File: RAG

SAVAGE ARMS
Springdale Road
Westfield, Massachusetts 01085
Telephone: (413) 562-2361   Telex: 95-5440

June 3, 1981

Firearms Technical Branch
Bureau of Alcohol, Tobacco & Firearms
P.O. BOX 784
Washington, D. C. 20044

Gentlemen:

I have been asked by your Springfield, Massachusetts office
to write to you.

I would like to receive a written opinion as to whether or not
bolt action rifle receiver blanks, as illustrated in the
enclosed polaroid picture, have to be serial numbered before
sale to a custom gunsmith who will make match rifle receivers
from them.

These blanks are made by cutting a steel bar to length and
then drilling and broaching.  There are no other operations per-
formed on this piece of steel by Savage Arms.  The exterior is
unfinished and over sized.

The custom gunsmith who was to furnish these into receivers would
have put on a serial number after machining has been completed.

We will not ship any of these blanks until we receive your
opinion.

Sincerely yours,

R. A. Greenleaf

RAG/gk                          R. A. Greenleaf
                                Customer Services Manager

encl



ATF0019

- 3 MAY 1983

C:F:TK:CHB
7540

Mr. Henry A. Roehrich
SGW, Incorporated
524 Old Pacific Highway SE
Olympia, Washington  98503

Dear Mr. Roehrich:

This refers to your letter of March 25, 1983, in which you ask
about the status of an unfinished AR-15 type firearm receiver
which you submitted for our examination.

Examination of the sample reveals that it is identifiable as
the receiver of a firearm.  It is basically complete except
that the interior cavity has not been milled.  For test
purposes, the interior of the sample was drilled out using a
5/8 inch drill and then finished with a 1/2 inch rotary file.
Approximately 75 minutes time was required to make the
receiver functional.

Based on our examination, we have determined that the unfinished
receiver as provided, is still a firearm subject to the
provisions of the Gun Control Act of 1968.  Should a customer
of yours require unfinished receivers of this type, without
conventional serial number or other markings, we would be
happy to consider your request for a variance from the marking
requirements in Title 27, Code of Federal Regulations (CFR),
Part 178, Section 178.92.

An alternate form of identification may be approved only if
it is determined that the proposed markings are reasonable
under the particular circumstances involved, and will not
hinder effective administration of the law and implementing
regulations.  Your customer must be a licensed manufacturer
of firearms who will apply all required markings to the
finished receiver.  Further, it will be necessary for you to
apply some sort of identifying mark to the unfinished receiver
to identify SGW as the original manufacturer.

We trust that the foregoing has been responsive to your inqury.
If you have further questions concerning this matter, please
do not hesitate to contact us.

                    Sincerely yours,


                    Edward M. Owen, Jr.
            Chief, Firearms Technology Branch



**S.G.W. INC.**
624 OLD PACIFIC HWY. S.E.
OLYMPIA, WA. 98503
PHONE: (206) 456-3471



RIFLE BARRELS
CHAMBER REAMERS

LOWER RECEIVERS
GUNSMITHING

March 25, 1983

BATF
Federal Building
Washington, D.C.  20226

Attn: Mr. Edward M. Owen, Jr.
      Chief, Firearms Technology Branch

Subject: Status of unfinished Ar-15 Type Lower Receivers.

Dear Sir:

Enclosed is a sample unfinished AR-15 type Lower Receiver Forging.  You
will note that the area for the trigger, Hammer, and Disconnector is
basically still unmachined and solid.  It would require additional machining
to become functional.

A customer requests that we supply him with receiver forgings in this
machined condition without prior markings (identification) with serial No.
caliber and manufacturer's name.  He will then finish them under his
manufacturer's license and put on the required markings.

Would we be authorized to ship these unfinished forgings per sample supplied
without any prior markings?

Sincerely,

Henry A. Roehrich
SGW, Inc.
General Manager

ATF0021

MAY 1 3 1986

LE:F:TE:EMO
7540

Ms. Cheryl E. Maron
Supervisor, Military Sales
Colt Industries
Firearms Division
P.O. Box 1868
Hartford, Connecticut  06101

Dear Ms. Maron:

This refers to your letter of April 21, 1986, in which you
asked about the classification of a partially machined M16
lower receiver which Colt desires to export to DIEMACO in
Canada.

As indicated in your letter the following operations will
be performed to the raw forging prior to shipment:

    a.  Mill qualifying cut
    b.  Broach top, bottom and end surface
    c.  Drill receiver extension hole
    d.  Drill and rough contour magazine well

A raw forging to which the above operations are performed
would not be classified as a firearm.  Therefore, the
partially machined raw forging as described would not be
subject to any of the provisions of the Gun Control Act
or the National Firearms Act.  However, if any additional
machining or finishing operations are performed, this
classification is subject to review.

We trust that the foregoing has been responsive to your
inquiry.  If we can be of any further assitance, please
contact us.

                    Sincerely,


                    Edward M. Owen, Jr.
            Chief, Firearms Technology Branch

ATF0022

Honorable Esteban E. Torres
House of Representatives
Washington, DC   20515

Dear Mr. Torres:

This refers to your letter of June 1, 1987, regarding a
letter from your constituent George Jennings, president of
Raven Arms.  Mr. Jennings states that unfinished frame
castings for the Raven .25 pistol should not be classified
as firearms subject to the provisions of Federal law.

As defined in 18 U.S.C., section 921(a)(3), the term
firearm includes the frame or receiver of any weapon which
will or is designed to or may readily be converted to
expel a projectile by the action of an explosive.  Thus,
that portion of a firearm which constitutes the frame or
receiver is classified as a firearm irrespective of the
other firearm components.

A person engaged in the manufacture of firearm frames or
receivers for sale and distribution is required to hold a
Federal firearms license and to keep records indicating
when each firearm was manufactured and how it was disposed
of in commerce.  The frames are also required to bear
identification markings.  Other firearm components (e.g.,
hammer, trigger and  barrel) are not subject to controls
as firearms, and may be manufactured and sold to anyone
without licensing and without records.

In recent years we have encountered numerous instances in
which individuals have attempted to sell firearms in
unassembled or unfinished form, thereby avoiding
recordkeeping and transfer restrictions.  We are extremely
concerned that the availability of unfinished frames and

ATF0023

-2-

Honorable Esteban E. Torres

receivers would provide an avenue whereby prohibited
persons may be able to acquire mail order firearms in kit
form bearing no serial number or marks of identification.

Our records reflect that Peat Manufacturing, of Norwalk,
California produced frame castings for Raven Arms and
other manufacturers beginning in the early 1970's.  Peat
became licensed in 1974 only after being informed by the
Bureau of Alcohol, Tobacco and Firearms (ATF) that a
license was required to make firearm frames.  This
situation came to our attention due to problems which
occurred regarding control of the unfinished frames being
produced for one of Peat's other customers.

During a compliance inspection in 1981, we found that Peat
was producing frames for Raven Arms which were not marked
with any identification.  A sample Raven frame was
submitted for our examination and we determined that it
could be readily converted to function and that it was a
firearm as defined.  We suggested that Peat  submit a
written request to receive authorization to use an
abbreviated form of marking.

In 1984, a compliance inspection revealed that the frames
made by Peat for Raven were still not marked in accordance
with requirements.  In 1985, we received further inquiry
from Mr. Jennings regarding the matter and he enclosed a
copy of a letter dated January 8, 1982, from Peat to ATF
requesting a marking variance.  Our records reflect that
this letter had not previously been received by ATF.

We advised Mr. Jennings that our examination of a sample
frame casting revealed that it could be converted to
function as a firearm frame in approximately 20 minutes
using only common hand tools.  The unfinished Raven pistol
frames were classified as firearms as that term is defined
in 18 U.S.C. section 921(a)(3).  We advised Peat that the
form of marking which it was using was not appropriate and
we again requested that they submit a request for
authorization to use an alternate form of marking.  No
further request was received.

We understand that Raven Arms submitted an unfinished
frame and parts kit to Mr. J.B. Wood who required

-3-

Honorable Esteban E. Torres

approximately 6-1/2 hours to complete the frame.  We
are unable to account for the time spent by Mr. Wood in
completing a task which we accomplished in approximately
20 minutes.

We further understand that Peat Manufacturing has
discontinued business.  It now appears that Raven Arms
frames are being produced by another subcontractor which
may not be licensed to manufacture firearms and which has
not received any authorization to omit required markings.
We are currently examining this situation to determine if
these manufacturers are complying with the provisions of
the law and regulations.

We hope to have this matter resolved in the near future.
If you have any further questions or if we can be of any
assistance, please contact us.

Sincerely yours,

Director

CHBARTLETT:chb:6-29-87
Disk #L3



**ROUTING AND TRANSMITTAL SLIP**

Date

June 15, 1987

| TO: (Name, office symbol, room number, building, Agency/Post) | Initials | Date |
|---|---|---|
| 1. Bill Drake | | |
| 2. | | |
| 3. CF:  Bill Earle | | |
| 4.   Jim Pasco ✓ | | |
| 5. | | |

| Action | | File | | Note and Return | |
|---|---|---|---|---|---|
| Approval | | For Clearance | | Per Conversation | |
| As Requested | | For Correction | | Prepare Reply | |
| Circulate | X | For Your Information | | See Me | |
| Comment | | Investigate | | Signature | |
| Coordination | | Justify | | | |

**REMARKS**

Bill,

Bodisco discussed this matter with Ed Owens and has DHL'd the full package of about 60 pages to him since Ed is familiar with the problem and offered to help with the reply to Cong. Torres.  Mike will follow up on the matter and will be talking to Bill Earle.

DO NOT use this form as a RECORD of approvals, concurrences, disposals, clearances, and similar actions

| FROM: (Name, org. symbol, Agency/Post) | Room No.—Bldg. |
|---|---|
| JOSEPH D. DEVINEY | |
| Regional Director (Compliance) WR | Phone No. |

5041-102

☆ U.S.G.PO.: 1985:461-274/426

OPTIONAL FORM 41 (Rev. 7-76)
Prescribed by GSA
FPMR (41 CFR) 101-11.206

ATF0026

COMMITTEES
BANKING, FINANCE AND
URBAN AFFAIRS

SUBCOMMITTEE ON HOUSING AND
COMMUNITY DEVELOPMENT
SUBCOMMITTEE ON INTERNATIONAL
DEVELOPMENT INSTITUTIONS
AND FINANCE
SUBCOMMITTEE ON ECONOMIC
STABILIZATION

SMALL BUSINESS

SUBCOMMITTEE ON SBA AND SBIC AUTHORITY,
MINORITY ENTERPRISE AND GENERAL
SMALL BUSINESS PROBLEMS
SUBCOMMITTEE ON ENERGY, ENVIRONMENT
AND SAFETY ISSUES AFFECTING
SMALL BUSINESS

# Congress of the United States
## House of Representatives
### Washington, DC 20515

## ESTEBAN E. TORRES
34TH DISTRICT, CALIFORNIA

June 1, 1987

WASHINGTON OFFICE
1740 LONGWORTH HOUSE OFFICE BUILDING
WASHINGTON, DC 20515
(202) 225-5256

DISTRICT OFFICE

8819 WHITTIER BOULEVARD
SUITE 101
PICO RIVERA, CA 90660
(213) 695-0702

WEST COVINA/LA PUENTE AREA
(PHONE ONLY)
(818) 961-3978

**RECEIVED**

JUN 08 1987

Alcohol, Tobacco & Firearms
Compliance Operations
Los Angeles Area Office

Ms. Emma C. Alarcon
Area Supervisor
Department of the Treasury
Bureau of Alcohol, Tabacco & Firearms
300 N. Los Angeles, CA   90053-1991

Dear Ms. Alarcon:

I am writing to you on behalf of Mr. George Jennings, President
of Raven Arms of 1300 Bixby Dr., City of Industry, CA 91745.   Mr.
Jennings has contacted me for assistance with a problem he is
having with the Bureau regarding his pistol manufacturing firm.

Enclosed for your review and consideration are several documents
that Mr. Jennings has provided to my office on this matter.   You
will note that on April 22, 1987, Mr. Jennings wrote to Inspector
Jane Dommeyer in Santa Ana submitting a report from Mr. J.B. Wood
on the matter of assembling a Raven Arms "Kit" pistol from a
rough "as cast" frame and two packets of parts.

According to Mr. Wood it took him approximately 6 1/2 hours to
get the frame into a condition that would accept the prefinished
component parts and fire one cartridge.   Mr. Jennings contends
that this is proof that his frame does not meet the Bureau's
definintion of a "....firearm...any weapon which ...may be
readily converted to expel a projectile..." (Public Law 90-618).

Mr. Jennings has tried for several years to resolve this matter
with the Bureau.   Please review the contents of his letter to Mr.
Steve Zell (attorney) dated April 9, 1987.   This letter provides
a historical review of his efforts on this matter.

As an employer in my district, Mr. Jennings asks that I assist
him in this dispute regarding the Bureau's requirement that his
diecasters place serial numbers on the unfinished frame
castings.   He argues that placing of the serial numbers by the
diecaster will create an unnecessary burden on his company that
will cost them several thousands of dollars.   He believes that he
has adequate safeguards with his manufacturing process.

I would appreciate your investigation and assistance with this
matter.   Please send your report to my Pico Rivera office.

Sincerely,

ESTEBAN E. TORRES
Member of Congress

EET:ld

ATF0027



**RAVEN ARMS**

1300 BIXBY DRIVE. INDUSTRY. CALIFORNIA 91745 • (818) 961-2511

April 22, 1987

Inspector Jane Dommeyer
Federal Building
34 Civic Center Plaza, Room 318
Santa Ana, CA 92712

Re: Serial numbers by diecasters

Dear Ms. Dommeyer:

Please accept my appology for the length of time taken to get back to you since our meeting of March 13th.  Besides an unbelievable amount of legal matters, we have also been awaiting a report from Mr. J.B.Wood regarding this issue.  Mr. Wood's report finally arrived yesterday, a copy is enclosed for your review.

As you can see it took Mr. Wood approximately 6½ hours to get the frame into a condition that would accept the prefinished component parts and fire one cartridge, but note that it would not eject or reload the chamber.  Six and a half hours of labor , and expenditures exceeding $80.00 is not what I consider something that fits B.A.T.F.'s definition of a 'firearm'which says in part "may readily be converted"

Aperson wanting a pistol without serial numbers would be far better-off by purchasing a factory completed pistol for about $60.00 and removing the serial numbers, than to spend $80.00,or more, for parts and tools with no guarantee that they would even be capable of producing a working pistol.  Mr. Wood, with his forty years experience had some difficulties in several places.

I am enclosing a highlited copy of page 3 from the current (1984-85) copy of the Federal Firearms Regulation, received from the Bureau of Alcohol, Tobacco and Firearms on April 10, 1987. This page plainly states the "PURPOSE" of the law and defines the word 'firearm'.

As not one case of a Raven pistol entering commerce without a serial number has ever been reported to us, by any agency (Federal, State or Local), it is obvious that it is not a problem that needs regulated by requiring the diecaster have a firearms license or to apply serial numbers to our rough, unfinished, as-cast, frame castings.  This unnecessary proposed requirement will cause undue hardships and costs upon the manufacturers, without due cause.

Obviously we would prefer to resolve this matter without the publicity, cost and agravationof a lengthy court battle and we are willing to cooperate with any reasonable request,(short of having the diecaster put serial numbers on our pistols,) to resolve this issue once and for all.  Our attorney is presently out of state, but should contact you sometime in the week of April 27th regarding this issue.

My best regards,

George H. Jennings
President

cc: Zell, Davis Industries.

ATF0028



# DEPARTMENT OF THE TREASURY
## BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
### WASHINGTON, D.C. 20226

APR 2 2 1985

REFER TO
LE:F:TE:CHB
7540

Mr. George H. Jennings
Raven Arms
1300 Bixby Drive
Industry, California  91745

Dear Mr. Jennings:

This refers to your letters of January 15, and February 28,
1985, concerning markings on firearm frames produced by Peat
Manufacturing for Raven Arms.  You also enclosed previous
correspondence regarding this matter.

As defined in § 921(a)(3) of the Gun Control Act of
1968, the term firearm includes the frame or receiver of
any weapon which can readily be converted to expel a
projectile by the action of an explosive.  This classification
is of particular significance since other components of a
firearm may be manufactured, and transferred without any
licensing, record keeping, or other controls under the cited
Act.

Title 27, Code of Federal Regulations (CFR), requires, in part,
that each firearm produced by a licensed manufacturer must
bear certain identification markings which include the following:

    1. a proper serial number.
    2. the caliber or gauge.
    3. the model (if assigned).
    4. the name of the manufacturer.
    5. the city and State of the manufacturer.

A firearm frame or receiver which is not a component part of a
complete weapon at the time it is disposed of in commerce
must bear all identification markings required by the cited
section.

The cited section also provides that any variations from the
marking requirements must be authorized in writing by the
Director upon written request.  The section does not provide
any automatic waiver covering a firearm which is produced by
two or more manufacturers.

-2-

Mr. George H. Jennings

Our examination of the rough frame casting which is produced
by Peat Manufacturing for Raven Arms reveals that it is
cast (too close) to finish dimensions with all frame openings
and pilot holes for all pin holes.  In fact, our testing
revealed that the frame can be made totally functional in
approximately 20 minutes time using tools likely to be found
in a home workshop.  Further, the exterior surfaces required
little finishing other than removal of flashing.

Our records indicate that the problem concerning markings
was previously brought to light in 1981 by Inspector Jax who
questioned the legality of the procedures in use at that
time.  Peat was advised to submit a request for a marking
variance which was never received.  In fact, the copy of the
letter to ATF dated January 8, 1982, which you provided, is
the first copy of this letter which we have seen.  Obviously,
no approval for alternate markings was ever granted.

This matter was again brought up by Inspector Chappa who
correctly determined that the matter had not been resolved in
1981.  Peat was again advised to submit a request for a marking
variance.  You enclosed a copy of a letter from Peat to ATF
dated January 7, 1985.  We have yet to receive this letter
from Peat.  Further, we would not approve the variance as
requested since the proposed alternate marking "PMC" could
stand for several other licensed manufacturers and has in
fact already been used by another manufacturer.  Further,
the request as provided, is limited to the Raven Arms frames
and makes no mention of other frames currently being made by
Peat.

We have once again advised Peat to provide us with a proper
request for a marking variance covering all firearm frames
which they produce for other manufacturers.  Despite the
fact that no great damage may have occurred in regard to
these improperly marked Raven frames, you should be aware
that problems involving commerce in unfinished firearms
frames have become increasingly significant in recent years.

ATF0030

-3-

Mr. George H. Jennings

We do not regard this as a trivial matter.  It is not our
intention to unnecessarily disrupt your business; however,
the requirements in the regulations apply to all licensed
manufacturers in an equal manner.  Your cooperation in
resolving this situation will be appreciated.

We will advise you of further developments regarding this
matter.  If you have further questions, please contact us.

Sincerely yours,

William T. Earle
Chief, Firearms and Explosives Division



**RAVEN ARMS**

1300 BIXBY DRIVE, INDUSTRY, CALIFORNIA 91745 • (818) 961-2511

May 19, 1987

Lupe De La Cruz, District Manager
Congressman Esteban E. Torres
34th District, California
8819 Whittier Blvd., Suite 101
Pico Rivera, CA 90660

Dear Mr. De La Cruz:

Enclosed are copies of correspondence and other information regarding the problems of serial numbering of Frame castings by commercial diecasters as discussed with you this morning.

I'm not sure what you can do to alleviate this problem but I will appreciate anything you can do in our behalf.

As B.A.T.F. has already shut down Davis Industry's production and sales for this same thing, I would greatly appreciate any expediance extended us, and indirectly to Davis Industry.

Thank you for your time and consideration.

Sincerely,

George H. Jennings
President

Enclosures:  As stated

GHJ/va

*P.S. Some items are for my son's and daughters business — I have highlighted names.*

*George*

ATF0032



**RAVEN ARMS**

1300 BIXBY DRIVE, INDUSTRY, CALIFORNIA 91745 • (818) 961-2511

April 22, 1987

Inspector Jane Dommeyer
Federal Building
34 Civic Center Plaza, Room 318
Santa Ana, CA 92712

Re: Serial numbers by diecasters

Dear Ms. Dommeyer:

Please accept my appology for the length of time taken to get back to you since our meeting of March 13th. Besides an unbelievable amount of legal matters, we have also been awaiting a report from Mr. J.B. Wood regarding this issue. Mr. Wood's report finally arrived yesterday, a copy is enclosed for your review.

As you can see it took Mr. Wood approximately 6½ hours to get the frame into a condition that would accept the prefinished component parts and fire one cartridge, but note that it would not eject or reload the chamber. Six and a half hours of labor , and expenditures exceeding $80.00 is not what I consider something that fits B.A.T.F.'s definition of a 'firearm'which says in part "may readily be converted"

Aperson wanting a pistol without serial numbers would be far better-off by purchasing a factory completed pistol for about $60.00 and removing the serial numbers, than to spend $80.00,or more, for parts and tools with no guarantee that they would even be capable of producing a working pistol. Mr. Wood, with his forty years experience had some difficulties in several places.

I am enclosing a highlited copy of page 3 from the current (1984-85) copy of the Federal Firearms Regulation, received from the Bureau of Alcohol, Tobacco and Firearms on April 10, 1987. This page plainly states the "PURPOSE" of the law and defines the word 'firearm'.

As not one case of a Raven pistol entering commerce without a serial number has ever been reported to us, by any agency (Federal, State or Local), it is obvious that it is not a problem that needs regulated by requiring the diecaster have a firearms license or to apply serial numbers to our rough, unfinished, as-cast, frame castings. This unnecessary proposed requirement will cause undue hardships and costs upon the manufacturers, without due cause.

Obviously we would prefer to resolve this matter without the publicity, cost and agravationof a lengthy court battle and we are willing to cooperate with any reasonable request,(short of having the diecaster put serial numbers on our pistols,) to resolve this issue once and for all. Our attorney is presently out of state, but should contact you sometime in the week of April 27th regarding this issue.

My best regards,

George H. Jennings
President

cc: Zell, Davis Industries.

ATF0033



**RAVEN ARMS**

1300 BIXBY DRIVE, INDUSTRY, CALIFORNIA 91745 • (818) 961-2511

April 9, 1987

Mr. Steve Zell
Madory, Booth, Zell and Pleiss
17822 East 17th. St.
Centre Bldg., suite 205
Tustin, C A. 92680-2183

      Re; Application of serial numbers by diecasters

Dear Steve:

On March 13th. I attended a meeting between you, Jim Davis, Jane Dormmeyer of the Bureau of Alcohol, Tobacco and Firearms (B.A.T.F.) and myself regarding B.A.T.F.'s insistance that the diecasters place the serial numbers on our unfinished frame castings.

I am enclosing notes and letters regarding this subject, and the following basic history:

In 1973 I contacted B.A.T.F. agent Mr. Mike Catlett and was told our procedures were proper and to continue as we were. In 1981 (8 yrs. later) B.A.T.F. agent Mr. Ed Jax said that he didn't think we were in complience. After a lenghty discussion over the next few days with Mr. Jax, he indicated he thought that a varience would be approved if we provided certain letters and modified our diecasting molds, to which we complied. Mr. Jax said he would take the requested letters, his report and recommendation and samples of modified castings, to make sure they went to the correct person in B.A.T.F.. Sometime after this Mr. Jax telephoned me and indicated that he was told that everything was o.k. and we could continue as we were. Later, our diecaster (Mr. John Murphy of Peat Mfg.) telephoned me indicating that he had also been contacted and given the same information.

On December 3, 1985 (almost 4 yrs. later) we were again confronted with the same issue by B.A.T.F. Inspector Art Chappa. I explained our position and recited to him the past history on this subject. When he asked if I had a letter of approval from B.A.T.F. I replied that I didn't remember but I would check our files and advise him later. I could find no letter in our files and I telephoned Mr. Murphy and asked if he received one. He called back and said he thought he had gotten one but he couldn't locate it. I advised inspector Chappa that we apparently did not receive a written varriance, only the verbals by Mr. Catlett and Mr. Jax.

Inspector Chappa then asked Mr. Murphy to submit the same information and samples of the frame casting to B.A.T.F., Cheif Firearms Technology Branch at 1200 Pennsylvania N W, Washington D.C., which he did on January 7, 1985. After receiving no response, I telephoned on January 11th. and 14th., 1985 and wrote letters on January 15th and February 28th, 1985 inquiring about their findings and determinations. My next involvement was at our recent meeting of March 13th which you attended. Apparently this matter is still unresolved, and will remain so until we resolve this problem once and for all.

ATF0034

April 9, 1987

Steve Zell

page (2)

We now find that Jane Dormmeyer of B.A.T.F.(Santa Ana) is involved in the same pursuit. And because of that meeting I've been contacted on March 24th by B.A.T.F. inspector Lance Yoshioka (of L.A.) about the wherebouts of Peat Manufact uring. I'm sure it's all related to this same subject.

As we have never had a problem, or even a report of one, from any person or agency concerning our pistols getting into the streams of commerce without serial numbers being placed upon the pistols, it is unclear why B.A.T.F. employees are so insistant upon having the diecasters apply the serial numbers on the frames.

The purpose of the laws are clearly stated in Sec. 101 of Title I- STATE FIREARM CONTROL ASSISTANCE (page 3 of 1984-85 Federal Firearms Regulation distributed by B.A.T.F.) which in part states "it is not the purpose of this title to place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens--------o any other lawful activity, and that this title is not intended to discourage or eliminate-----, or provide for the imposition by Federal regulations of any procedure or requirements other than those reasonably necessary to impliment and effectuate the provisions of this title" (photo-copy enclosed).

Having to change our systems and procedures that we've used sucessfully, without problem, for the past 17 years could be a disasterous unnecessary burden upon us that could cost us hundreds of thousands of dollars, and wouldn't help B.A.T.F. or other law enforcement officials fight crime or violence.

It has always been our contention that the diecast manufacturers are just that, diecast manufacturers and are not firearms manufacturers. These diecasters manufacture many castings for deversified businessess including automobiles, typewriters, motorcycles, computers etc., but they are not considered manufacturers of automobiles, typewriters, motorcycles, computers etc.

B.A.T.F. claims that the castings made by our diecasters "can be readily converted to accept all component parts necessary to expel a projectile by the action of an explosive". We contend that it cannot be READILY converted by the average person in the average home work shop, as they claim. I have sent castings and finished parts to a well known gunsmith/author asking him to preform this task and keep accurate record of his time. I was told in a telephone conversation with William T. Earle that it could be done in 20 minutes, with which I disagree. I expect an answer of some kind within the next week or so.
The following is our current manufacturing procedures;

Incomplete barrels are amnufactured with no cartridge chamber and are sent to the diecaster on peg-boards holding exactly 100 barrels.

Bolts that are also cast into our parts are placed on peg-boards holding exactly 100 pcs.

These bolts and barrels are placed into a large, locked wooden crate and is moved by forklift and truck to the diecaster where they issue them to their operators in exact numbers at the begining of each shift. At the end of each shift each operator must return 1 set of castings for each set of barrel and bolt inserts issued to them.

ATF0035

April 9, 1987

Steve Zell

page (3)

The castings are made and shipped to us. They are counted by both the driver and the receiving agent. The count must be agreed upon and conform to the amounts shown on the accompaning shippers.

The castings are then placed in work boxes which hold 100 frames and 120 slide castings, and our 77 machining operations are performed.

The machined parts are then boxed and sent to the polishing and buffing shop where upon their arrival counts and verifacation of count is made and compaired to the shippers.

When the polishing operations are finished, the parts are degreesed and placed into cell boxes that hold exactly 100 frame castings and 100 slide castings. These parts are again counted and verified by the polisher and receiving agent and compared to shipper amounts.

The parts are inspected for polishing errors and then sent to the electro-plating process using the same cell boxes and procedures as outlined for the polishers.

Upon receipt of the plated castings in machining, the frames are immediately serial numbered and the other identifacation requirements are put on the slide castings.

The frames are then chambered to accept the cartridge, deburred, washed and sent to the assembly department.

Assembly is completed, the pistols are proofed and test fired, inspected, packaged, locked in our storeroom until sold and shipped to our wholesale customers.

I believe that B.A.T.F. should be aware of the tremendous costs, burdens and problems that we will suffer if we are ultimately required to have the diecaster place the serial numbers on the castings. The hiring of the additional people to do the sorting, inspection and recordkeeping operations alone would increase our costs at least 20% or 25% by itself. The risk of loosing our vendors due to the extra paperwork, licenseing, liability incurred and general harrassment would increase dramatically. There has already been a lot of statements of dissatisfaction over this issue. Believe me, good diecasters are hard to find especially for the firearms industry. When all factors and costs are considered the loss of a good diecaster acn be tremendous in dollars and cents. The costs of seting up our own equipment to make our own diecastings, polihing and plating would be several hundred thousand dollars, plus costs of hiring experienced personel to run these highly complex and E.P.A. harrassed departments.

I believe our costs will increase over 35% by having the diecaster put on the serial numbers instead of us. The costs would be dramatically higher if we have to set-up our own diecasting, if indead we are even capable of doing so.

Yours truly,

George H. Jennings
President

cc. Jim Davis

ATF0036



**FIREARMS**

**SERVICE**

**J. B. WOOD**
POST OFFICE BOX 72 (2nd Street)
CORYDON, KY. 42406
PHONE: 502-533-6753

| Custom Gunsmithing | Forensic Consultation |
| Firearms Design | Evaluation & Appraisal |

Actual project time:    8 hours, 20 minutes

Preparation of report: 2 hours


10 hours @ $75 per hour:    $750.00


17th of April, 1987


**GUNSMITHING TODAY**
*Voice of the Professional Gunsmith*

Box 224 E
Lexington, Missouri 64067
816-259-2636

**J. B. Wood**
*Technical Editor*

*Official*
PROFESSIONAL GUNSMITHS OF AMERICA
*Publication*

*Res: Box 72, Second Street*
*Corydon, Kentucky 42406*
*502-533-6753*



RAVEN APR 21 1987

ATF0037

Report on project to construct a Raven .25 Auto pistol
in proposed "kit" form, as requested by George Jennings
of Raven Arms.

From Mr. Jennings I received a rough "as cast" frame,
serial number 1250300, and two packets of parts.  One
packet contained all of the necessary parts to complete
a pistol, in finished form.   The other packet contained
the following parts in rough form:  Slide, trigger, maga-
zine catch, magazine body, follower, spring, and endpiece.

Before starting on the work, the parts were examined to
determine the tools that would be needed, and according to
Mr. Jennings these were to be confined to the ordinary
"hardware store" items that would be routinely available
to the average person making the gun from a "kit".  In all
but two cases, I adhered to this restriction.   However,
the two items that had to be obtained from a machine supply
firm are available in most locales -- they would just require
an extra errand.

The hardware store items were:  A small pocket knife, a small
triangular file, a 6-32 thread tap and handle, a small hammer,
s 3/32" drill bit, a 1/16" drill bit, and a small (3/8") Dreml

Raven Project                    Wood                      2

tip with a spherical shape.   From the machine supply firm
I obtained a small and slim bastard file, and a size "J"
drill bit (.277").   Total cost of all tools:  $19.89.  Of
course, some of these items an amateur might already have
on hand, but for most of them, this is unlikely.  For study
of the parts and obtaining the tools, total time was: 1 hour,
22 minutes.

A description of the work follows, with the time noted at
the end of each segment:

1.        Removed casting sprue edges from the frame, using
the small blade of the knife and the files.  Cleaning up the
sprue edges is not just a matter of esthetics -- the inside
edges would impede mechanical action, and the outside ones
could injure the hand after assembly and firing.  Caution!
sprue edges, and knife, are sharp.  Add warning to kit.
Time:  46 minutes.

2.        Drilled 3/32" holes for slide retainer pin and
sear lever pivot pin, measuring with insertion of the pin
at intervals to get the proper depth for the latter.

ATF0039

Raven Project                    Wood                          3


Drilled 3/32" hole for magazine release pivot pin, and 1/16"
hole for trigger pin. (Note: Did not include electric drill
in tool list, as nearly every household has one.) Assembled
trigger, trigger bar, and bar spring, installing small cross-
pin in trigger. (Note: springs should be in separate labelled
packets for the amateur, as size and strength transpositions
are possible with some of them.) Installed magazine catch and
spring and cross-pin, filing upper rear of catch to give it
proper reach.    Time:  1 hour, 12 minutes.


3.         Installed trigger in frame, with trigger return
spring.   Additional filing and scraping with small knife
blade was necessary to clear sear well and slot in frame
for free movement of sear.    Installed sear, sear spring,
and sear lever.   Installed safety detent plunger and its
spring, staking it in place. (Note: This is a tricky job
for an amateur.)   Installed safety bar, filing the top
of its rear extension for a tight fit under the cross-pin
of the sear. (Safety warning needed here.)  Pushed sprue
out of grip screw holes, and tapped to take 6-32 grip screws.
(Note: Screw size and thread count should be in instructions.
I cheated here -- I know a 6-32 screw when I see one.)  In-
stalled grips and grip screws.  Time: 1 hour, 32 minutes.


ATF0040

Raven Project                    Wood                      4

4.        Experimentally installed striker (firing pin)
in slide, with its spring and the retainer, and the recoil
spring in the frame.   Assembled slide on frame to check
functioning.   The striker (firing pin) would cock and
snap when the trigger was pulled at this point, but gun
could not be fired, as the chamber had not been cut, and
a cartridge could not be inserted.   Time: 12 minutes.
Total time to this point:  4 hours, 44 minutes.

5.        To properly machine the chamber to take the .25
Auto cartridge, a set of chambering reamers (rougher and
finisher) should be used.   However, these would cost in
excess of the retail price of a Raven pistol, and they are
not routinely available locally.   A careful amateur might
borrow a micrometer caliper and determine that the .25 Auto
case has a diameter of .276", and from a machine shop he
could buy a "J" size drill bit (.277").   I did this, and
used it to drill out the chamber, with many stops to check
the depth with a .25 Auto round.   A round was then single-
loaded into the chamber, and the gun was fired.   The case
stuck in the chamber, and had to be pushed out with a rod.
Time: 1 hour, 48 minutes.   Total time to this point, 6
hours, 32 minutes.

ATF0041

Raven Project                    Wood                    5

6.          Using the small spherical tool in an electric
drill, the feed ramp was cut in the frame and the chamber.
The small bastard file was used to cut the extractor slot
in the top rear of the barrel, a difficult process.  The
extractor, spring, and cross-pin was installed in the slide.
It was necessary to recut the extractor beak for proper
engagement with the cartridge rim.   Also, the chamber was
slightly off in relation to the cartridge head recess in
the breech face of the slide, and the tip of the small
triangular file was used to chamfer the edges of the recess.
Time:  1 hour, 28 minutes.   Total time to this point:
8 hours, 20 minutes.

As a further experiment, the rough cast parts from the
second packet were finished, and substituted for the ones
on the gun.   The trigger and magazine catch were not
difficult, requiring only removal of the sprue and drilling
of the trigger hole.   Assembling the magazine parts was
also not difficult, but staking the endpiece in place was
a bit tricky, and a third hand would have been helpful.
The rough, "as cast" slide, however, was quite a problem,
especially the clearance of the casting plugs from the

Raven Project                    Wood                      6

underside of the breech block area.    Removing the side
wings of the forward plug was a particularly tedious
operation, using only a nail cut to a chisel point and
the small flat file.    Time:  1 hour, 34 minutes.


Conclusions:


Given the time involved (and remember, I needed no in-
structions!), and the retail cost of the parts, which
according to a factory list would be $78.65 exclusive of
the frame, I would say that a "kit" would not be a good
idea.    At factory cost the parts would be less, but a
lot of semi-finishing would have to be done by the Raven
plant before such a kit was sold.    Several of the oper-
ations fall into this category, but the most important
would be the chambering.    I would doubt that the average
"gun tinkerer", with home workshop tools, could do it
properly, and the barrel would probably be ruined.    As
you will note, even I got it a trifle off-center.    The
same caveat would apply in regard to the feed ramp --
keeping the turning Dreml stone centered, using an elec-
tric drill, is difficult.    And then, there is the

ATF0043

Raven Project                    Wood                      7

matter of product liability.   With suits today being
filed for fairly ridiculous reasons, even a cut finger
during assembly could create a plaintiff.

Mainly, though, I think the "as cast" frame and the un-
chambered barrel are the main drawbacks.   With these
two factors, I would say that making a Raven pistol from
a kit would not be routinely possible.   Note that it
took me more than eight hours to produce a fully functioning
pistol -- how long would it take the average tinkerer?

J. B. Wood

17th of April, 1987



**RAVEN ARMS**                1300 BIXBY DRIVE, INDUSTRY, CALIFORNIA 91745 • (818) 961-2511

March 26, 1987

Mr. J. B. Wood
Second Street
Corydon, KY  42406
(502)533-6753

    RE:  Research on firearm manufacture, kit form

Dear Mr. Wood:

Enclosed are two packets of parts.  One contains an "as cast" MP-25 pistol frame,
serial number 1250300, 1 pistol slide casting, 1 trigger casting, 1 magazine
catch casting, 1 magazine base casting, 1 magazine body, 1 magazine spring and 1
follower.  The second packet contains the following <u>finished</u> parts; 1 slide, 1
trigger, 1 magazine catch, 1 complete magazine assembly and all the small parts
that are required to make one complete pistol.  I am including a parts and price
list, with a copy of the instructions that are available to the general public.

As per the instructions in my letter of March 23, 1987, I want you to start with
the "Frame" first.  Complete the frame and then assemble those "finished" parts
you deem necessary to make the pistol conform to A.T.F.'s definition of a
firearm, under Title 18, United States Code, Section 921(a)(3) of the GUN
CONTROL ACT OF 1968.

When you have completed that part of the test, and have recorded your time
accurately, then proceed to make the rest of the "as cast" castings fit and
function on the same frame and with the same parts as used in the first
assembled pistol.

Make a written report to me describing any difficulties encountered, the amount
of time recorded, any expenses incurred and in your opinion the feasability of
offering these pistols to the public in a kit form similar to the ones supplied
to you.

For my files, please forward a copy of your resume', expertise and qualifications.

Please refer to my letter of March 23, before proceeding with these instructions.

I am hoping you can start these tests immediately as I need this information as
soon as possible.

My Best Regards,


George H. Jennings
President

GHJ/va

cc:  Steve Zell, Bruce Jennings,       1161  4395  81 ATF0045
     Jim Davis & Gene Johnson



**RAVEN ARMS**

1300 BIXBY DRIVE, INDUSTRY, CALIFORNIA 91745 • (818) 961-2511

March 23, 1987

Mr. J. B. Wood
Second Street
Corydon, KY  42406
(502)533-6753

    RE:  Research on firearm manufacture, kit form

Dear Mr. Wood:

    Upon receipt of a copy of your Federal Firearms License, I will send you
an "as cast" unfinished pistol frame casting, and all of the other pistol parts
that are required to make one (1) RAVEN ARMS model MP-25 pistol.  I will
include an instruction sheet (as furnished with each pistol) and a catalog
sheet which shows the assembly diagram on the reverse.  All of these items
(except the pistol frame) is available to the general public.

    I would like for you to examine the frame casting and submit your written
opinion as to whether you think this casting would fit the description of a
"Firearm" as defined in Title 18, United States Code, Section 921(a)(3) of the
GUN CONTROL ACT OF 1968, then submit to me your estimate of the amount of time
required and your hourly rate for labor to perform the following services:

    Using only the castings, parts and literature supplied you, I would like
you to do what you feel is necessary to make them into a "firearm" as described
in the above mentioned code section.

    In your efforts to make these parts into a "firearm", please do not use
chamber reamers, taps, tools, machinery or equipment that you feel would not be
found in a normal, average home workshop.  Also, if you have other pistols
lying around, please do not use them for dimensional or visual aid.

    It is important that you keep an accurate record of time spent on this
project.  Please include as a separate item, the amount of time you spend
analyzing and planning your approach to this task.  Report any common tools or
supplies, and their retail costs, that you need to purchase to complete this
project.

    NOTE:  Do not go beyond what you feel needs to be done to make these parts
into a "firearm", as you interpret the definition of "firearm", as described in
the above referenced code.

    As time is of the essence, your reply via U.P.S. Next Day Air Letter will
be appreciated.

Yours truly,

George H. Jennings
President

cc:  Steve Zell
     Jim Davis
     Bruce Jennings
     Gene Johnson



NEXT DAY AIR
SHIPPER RECEIPT
TRACKING NO.

1161  4395 ATF 0046

MAY 1 0 1990

LE:F:TE:EHO

Ms. Kathleen A. Ryan
Springfield Armory
420 West Main Street
Geneseo, Illinois  61254

Dear Ms. Ryan:

This refers to your letter of May 2, 1990, in which you ask
about the importation of unfinished receivers and component
parts for the Algimec AGM1 9mm caliber carbine.  You
indicated that Springfield Armory plans to complete the
manufacture of the receiver and assemble the weapons in the
United States.  A sample of the unfinished receiver was
submitted to this office on May 9, 1990.

An examination of the submitted sample indicates that it is
a flat rectangular piece of sheet metal approximately 11-3/4
inches in length and approximately 4-3/8 inches in width.
The ejection port has been cut and two strengthening ribs have
been pressed into the blank.  As indicated in your letter
the following operations are to be performed by your firm:

1.  Form to a U shaped channel.
2.  Stamp out the bolt handle cocking handle slot.
3.  Perform a dimple-and-punch operation for the carrying
    handle.
4.  Weld a barrel retainer collar in place to properly
    locate the barrel in the receiver.
5.  Weld a reenforcement bracket in place to give strength
    to the receiver and allow the location and installation
    of the front trigger housing.
6.  Drill to properly locate the rear trigger mounting
    placement.

The unfinished receiver for the Algimec AGM1 carbine, as
described above, has not reached a stage in manufacture
where it would be classified as a firearm.

| CODE | INITIATOR LE:F:TE | REVIEWER | REVIEWER | REVIEWER | REVIEWER | REVIEWER | REVIEWER |
|------|-------------------|----------|----------|----------|----------|----------|----------|
| SUR-NAME | | | | | | | |
| DATE | 5-9-90 | | | | | | |

ATF F 1328 6 (2-75)
REPLACES ATF FORM 92 (9-73) WHICH MAY BE USED

CORRESPONDENCE APPROVAL AND CLEARANCE

DEPARTMENT OF THE TREASURY
BUREAU OF ALCOHOL, TOBACCO, AND FIREARMS
* U.S. GPO:1989-0-226-536

ATF0047

-2-

Ms. Kathleen A. Ryan

Please be advised that this classification is based on the sample as received. If the design, dimensions, or number of manufacturing operations are changed, this classification is subject to review.

The subject unfinished receiver has reached a stage in manufacture where it is identifiable as a defense article; therefore, an ATF Form 6, Application and Permit for Importation of Arms, Ammunition and Implements of War, will be required for the importation of the unfinished receivers.

Your question concerning record keeping has been referred to the Firearms and Explosives Operations Branch, Compliance Operations. They will respond concerning this question.

The submitted sample is being returned under separate cover.

We trust that the foregoing has been responsive to your inquiry. If we may be of any further assistance, please contact us.

Sincerely yours,

(Signed) Edward M. Owen, Jr.

Edward M. Owen, Jr.
Chief, Firearms Technology Branch

Disk I-24:RYAN.DOC:15-9-90
cc: SAC:RD:DIVISION

| CODE | INITIATOR | REVIEWER | REVIEWER | REVIEWER | REVIEWER | REVIEWER | REVIEWER |
|------|-----------|----------|----------|----------|----------|----------|----------|
| SUR-NAME | | | | | | | |
| DATE | | | | | | | |

ATF F 1325.6 (2-75)
REPLACES ATF FORM 92 (9-73) WHICH MAY BE USED
CORRESPONDENCE APPROVAL AND CLEARANCE
DEPARTMENT OF THE TREASURY
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
* U.S. GPO 1989-0-226-530

ATF0048



AUG  1  ███                    LE:F:TE:EMO

Disk L-26:CZEREPAK.DOC:8-1-98
cc: SAC:RD:DIVISION

Mr. ████ Czerepak
Chicago, Illinois  60652

Dear Mr. Czerepak:

This refers to your letter of July 24, 1998, in which you
ask about selling MP40 submachinegun receivers which are
"80% finished".

We do not make classifications based on the percentage of
completeness of a particular item.  The terminology "80%
finished" is not used by this office.

We have classified certain unfinished receivers as not being
firearms.  Those unfinished submachinegun type receivers,
which have been classified as not being firearms, are solid
bars with no internal machining performed.  The exterior of
the bar has been profiled to the approximate shape of the
finished item.

If you plan to sell a solid bar having the exterior profile
of an MP40 submachinegun receiver and having no internal
machining, the item would not be a firearm.  If any
additional operations were performed this classification
would be subject to review.

We trust that the foregoing has been responsive to your
inquiry.  If we may be of any further assistance, please
contact us.

Sincerely yours,

(Signed) Edward M. Owen, Jr.

Edward M. Owen, Jr.
Chief, Firearms Technology Branch

| CODE | INITIATOR | REVIEWER | REVIEWER | REVIEWER | REVIEWER | REVIEWER | REVIEWER |
|------|-----------|----------|----------|----------|----------|----------|----------|
| SUR-NAME | | | | | | | |
| DATE | | | | | | | |

ATF F 1328.6 (2-75)
REPLACES ATF FORM 92 (9-73) WHICH MAY BE USED       CORRESPONDENCE APPROVAL AND CLEARANCE       DEPARTMENT OF THE TREASURY
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS

ATF0049

MAY 2 6 1992                     LE:F:TB:ENO
                                3311.0

Mr. Robert Bower, Jr.
Philadelphia Ordnance, Inc.
Oreland Industrial Park
Oreland, Pennsylvania  19872

Dear Mr. Bower:

This refers to your letter of May 18, 1992, with which you
submitted an unfinished AR-15 type receiver for
classification.

Examination of the submitted sample, no serial number,
indicates that it is identifiable as the receiver of a
firearm.  The receiver is basically complete except that the
interior cavity has not been completely machined.

A receiver in basically the same configuration has
previously been submitted by another manufacturer.  It was
found that the receiver could be made functional by drilling
out the cavity with a 5/8 inch drill and then finishing with
a 1/2 inch rotary file.  Based on that examination, it was
determined that unfinished AR-15 type receivers in the same
basic configuration as that submitted by your firm are
firearms as defined.

Therefore, the sample as submitted is classified as a
firearm as that term is defined in Section 921(a)(3)(A),
Chapter 44, Title 18, United States Code.

The submitted sample is being returned under separate cover.

We trust that the foregoing has been responsive to your
inquiry.  If we may be of any further assistance, please
contact us.

                        Sincerely yours,

                        /S/

                        Edward M. Owen, Jr.
                        Chief, Firearms Technology Branch

| CODE | INITIATOR LE:F:TB | REVIEWER | REVIEWER | REVIEWER | REVIEWER | REVIEWER | REVIEWER |
|------|-------------------|----------|----------|----------|----------|----------|----------|
| SUR-NAME | Owe | | | | | | |
| DATE | 5/26/92 | | | | | | |

ATF F 1325.6 (2-75)
REPLACES ATF FORM 92 (9-73) WHICH MAY BE USED    CORRESPONDENCE APPROVAL AND CLEARANCE    DEPARTMENT OF THE TREASURY
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
☆ U.S. GPO: 1991 - 291-554



DEPARTMENT OF THE TREASURY
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
WASHINGTON, D.C. 20226

LE:F:TE:RLB
3311.4

JUL 1 4 1994

Mr. Thomas C. Miller
Attorney at Law
1540 South Pearl Street, Suite B
Denver, Colorado  80210

Dear Mr. Miller:

This refers to your letter of July 1, 1994, concerning
an unfinished, sample AR-15 type receiver, which you
submitted for our examination and classification.

As defined in 18 U.S.C. Section 921(a)(3)(A) the term
"firearm" is defined, for the purposes of the Gun
Control Act of 1968 (GCA), to mean any weapon
(including a starter gun) which will or is designed to
or may readily be converted to expel a projectile by
the action of an explosive; Section 921(a)(3)(B) also
includes the frame or receiver of any such firearm.

Examination of the sample disclosed that it is
identifiable as the frame or receiver of an AR-15 type
firearm and it may readily be converted to function as
the frame or receiver of a firearm.  The submitted
sample is basically complete, except for a block of
metal which is located in the area of the front pivot
pin and two (2) holes which must be drilled through the
receiver walls to allow installation of the trigger and
hammer pivot pins.  The magazine opening and the
receiver cavity are completely machined out and the
sample receiver is capable of excepting various
components to include, but not limited to, the
magazine, magazine catch assembly, selector, rear take
down pin, lower receiver retainer with complete buffer
assembly, trigger guard, various small detent pins and
springs.

Based on our examination of the submitted sample, we
have determined that the unfinished receiver, as
submitted, has reached a stage of manufacture where it
would be classified as a "firearm" under Section 921
(a)(3) and, therefore, subject to all the controls of
the GCA.

-2-

Mr. Thomas C. Miller

Since the sample receiver is classified as a firearm
for the purposes of the GCA, your client must be
licensed under the provisions of the GCA as a
manufacturer of firearms.  In addition, any person
manufacturing such an article would be responsible for
all marking requirements, to include the manufacturers
identification and serialization, as provided in the
regulations, 27 CFR Section 178.92.

If a customer of your client requires unfinished
receivers of this type, without conventional serial
numbers or other markings, we would be happy to
consider your written request for a variance from the
marking requirements.  Please understand that an
alternate form of identification can be approved only
if it is determined that the proposed markings are
reasonable under the particular circumstances involved,
and will not hinder effective administration of the law
and its implementing regulations.  Further, it may
still be necessary for your client to apply some sort
of identifying mark to the unfinished receiver to
identify the client as the original manufacturer.

With respect to United States vs. Seven Miscellaneous
Firearms, this district court decision is not legal
precedent and is, therefore, inapplicable to this
matter.

The sample receiver is being returned to you under
separate cover.

We trust that the foregoing has been responsive to your
inquiry.  If you have further questions concerning this
matter, please contact us.

Sincerely yours,

Edward M. Owen, Jr.
Chief, Firearms Technology Branch

ATF0052

**DEPARTMENT OF THE TREASURY**
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
**CORRESPONDENCE APPROVAL AND CLEARANCE**

DEC 27 2002

903050:RDC
3311/2003-016

360
357.3846

Mr. Lane Browne
Mega Machine Shop, Incorporated
5323 Joppa S.W.
Tumwater, Washington 98512-8020

Dear Mr. Browne:

This refers to four AR-15 type lower receiver samples
that were received by this office on October 3, 2002,
for the purposes of examination and classification.

You indicate that each of the samples represents a
separate stage in the manufacturing process.  The
samples are labeled "OP-1," "OP-2," "OP-3," and "OP-4."

Receiver sample "OP-1" is a solid casting having holes
drilled for the takedown pins, selector, hammer,
trigger, bolt catch, rear takedown pin retainer, and
magazine catch.  Further, the areas for the magazine
catch and bolt catch have been partially machined and
the rear ring threaded for the buffer tube.  Machining
of the interior cavity and magazine well has not been
made on this sample.

Receiver sample "OP-2," in addition to the operations
above, has had the magazine well and interior cavity
machined, trigger slot machined, trigger guard holes
drilled, and the slots for the magazine catch and bolt
catch completed.

Receiver sample "OP-3," in addition to the operations
above, has had the hole drilled in the receiver ring
for the buffer retainer.

| | INITIATOR | REVIEWER | REVIEWER | REVIEWER | REVIEWER | REVIEWER | REVIEWER |
|---|---|---|---|---|---|---|---|
| CODE | 903050 | 903050 | | | | | |
| SURNAME | | Bowe | | | | | |
| DATE | | 12/27/02 | | | | | |

ATF F 9310.3A (7-97) (Formerly ATF/F 1325.6A, which may still be used)

ATF0053

**DEPARTMENT OF THE TREASURY**
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS
**CORRESPONDENCE APPROVAL AND CLEARANCE**

-2-

Mega Machine Shop, Inc.

Receiver sample "OP-4," in addition to the operations above, has had the hole for the grip screw drilled and tapped, and the markings applied. The left side of the magazine well is marked, in descending order, "DALPHON," "SHELTON, WA.,," "MULTI-CALIBER," "MODEL B.F.D.," and "CDB 0806." "FIRE" and "SAFE" are marked adjacent to the safety selector hole.

We have determined that an AR-15 receiver can still function as a firearm receiver without a magazine opening or the threaded hole for the buffer tube. In addition, we previously examined an AR-15 style receiver in a similar condition to your receiver sample "OP-1" having the holes for the trigger and hammer pins, but with a solid interior. The interior cavity of the previously examined sample was finished in approximately 75 minutes time using a 5/8-inch drill and a rotary file. This receiver was determined to be a "firearm" as defined in Title 18, United States Code (U.S.C.), § 921(a)(3). Therefore, your sample "OP-1" is also a firearm as defined.

Receiver samples "OP-2," "OP-3," and "OP-4" are manufactured to the point where they will accept AR-15 type semiautomatic fire control components, the magazine catch, the bolt catch, both takedown pins, rear takedown pin retainer, and buffer tube. Therefore, each of these samples constitutes a "firearm" as defined in Title 18, U.S.C. § 921(a)(3).

We trust the foregoing has been responsive to your inquiry. If we can be of any further assistance, please contact us.

Sincerely yours,

Curtis H.A. Bartlett
Chief, Firearms Technology Branch

| | INITIATOR | REVIEWER | REVIEWER | REVIEWER | REVIEWER | REVIEWER | REVIEWER |
|---|---|---|---|---|---|---|---|
| CODE | | | | | | | |
| SURNAME | | | | | | | |
| DATE | | | | | | | |

ATF F 9310.3A (7-97) (Formerly ATF F 1325.6A, which may still be used)        *U.S. Government Printing Office: 2002 — 491-811/53553

ATF0054



**DEPARTMENT OF THE TREASURY**
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS

903050:RLB
3311/2003-227

FEB 25

Mr. ███ Halford

Jonesboro, Arkansas 72404

Dear Mr. Halford:

This is in response to your letter dated January 21, 2003, to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). In your letter you ask about manufacturing 80% complete receivers.

The terms 50%, 80% and 90% complete receivers are commonly used for advertisement purposes. Such terms do not accurately identify the condition of a partially completed or unfinished receiver and have no precise meaning. Further, such terms did not originate with ATF, are not used by ATF and have no legal or technical meaning within ATF.

In order for us to render any opinion regarding the status of a partially finished receiver, we need to physically examine a sample. If you care to submit a sample of the subject receiver, we will be happy to examine it and provide you with an appropriate classification and any related determinations. Upon completion of our examination, the sample will be returned to you. However, you should be aware that if the sample is found to be a machinegun receiver or otherwise subject to the purview of the National Firearms Act, it could not be returned and would have to be abandoned to the government.

COPY

-2-

COPY

Mr. ████ Halford

Samples may be forwarded to the below-listed address:

   Bureau of Alcohol, Tobacco, Firearms and Explosives
         Firearms Technology Branch, Room 6450
              650 Massachusetts Avenue, NW
                 Washington, DC  20226

We regret that we are unable to respond more fully at
the present time.  If we may be of any further
assistance, please contact us.

               Sincerely yours,

               Curtis H.A. Bartlett
          Chief, Firearms Technology Branch

COPY



**DEPARTMENT OF THE TREASURY**
BUREAU OF ALCOHOL, TOBACCO AND FIREARMS

JUL 31 2003

903050:RLB
3311/2003-327

Mr. ████ Halford
████ Jonesboro, Arkansas  72404

Dear Mr. Halford:

This is in response to your letter dated March 4,
2003, to the Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF).  In your letter, you ask about the
classification of an unfinished AR-15 type receiver.

Along with your letter you provided this office with a
sample of the unfinished receiver that has been CNC
machined from a block of aluminum.  The external
profile has been machined and the magazine well has
been cut out.  The receiver cavity is in semiautomatic
configuration and is complete with the exception of
the trigger port and various holes for the fire
control components and takedown pins.  Based on our
examination of the unfinished receiver, it is our
opinion that the subject sample has received
sufficient machining to be classified as the frame or
receiver for a "firearm" as that term is defined in
section 921(a)(3)(B) of Title 18, United States Code,
Chapter 44 and is therefore subject to the controls
and provisions of the Gun Control Act of 1968.

The submitted sample is being returned to you under
separate cover.

Sincerely yours,

Sterling T. Nixon
Chief, Firearms Technology Branch

WWW.ATF.TREAS.GOV

ATF0057



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

903050:MRC
**JAN 1 3** 2004     3311/2004-233

www.atf.gov

Mr. Steve Lazzara
National Ordnance Company
5514 W 34th Street
Houston, Texas 77092

Dear Mr. Lazzara:

This is in response to your letter dated November 28,
2003, to the Firearms Technology Branch, Bureau of
Alcohol, Tobacco, Firearms and Explosives (ATF), in
which you ask for a classification of an accompanying
sample of a Government 1911A1 type casting.

Upon an examination of the submitted sample, our
Branch determined the following machining operations
would have to be performed:

1. Cutting frame rails;
2. Drilling of hammer and sear pin holes;
3. Drilling of plunger tube holes;
4. Drilling of slide stop pin hole;
5. Drilling of disconnector hole;
6. Drilling of holes for ejector legs;
7. Drilling of hole for thumb safety;
8. Finishing machining for magazine catch;
9. Cutting groves for mainspring housing; and
10. Drilling and tapping for grip bushings.

Furthermore, based on the examination of the submitted
casting, we concluded that it does not meet the
definition of a "firearm" provided in 18 U.S.C.
921(a)(3). However, any deviation from the submitted
item would void this classification.

ATF0058

-2-

Mr. Steve Lazzara

We thank you for your inquiry, along with accompanying
sample, and trust that the foregoing has been
responsive to your request for an evaluation.

Sincerely yours,

Sterling Nixon
Chief, Firearms Technology Branch

ATF0059



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

JAN 2 9 2004          903050:RDC
                     3311/2004-738

www.atf.gov

Mr. Mark Malkowski
Continental Machine Tool Company, Incorporated
515 John Downey Drive
New Britain, Connecticut 06051

Dear Mr. Malkowski:

This refers to two AR-15 type unfinished aluminum
lower receivers that were received by the Firearms
Technology Branch (FTB), Bureau of Alcohol, Tobacco,
Firearms and Explosives (ATF), on September 17, 2003,
for the purposes of examination and classification.

As you may be aware, the Gun Control Act of 1968
(GCA), 18 U.S.C. § 921(a)(3), defines the term
"firearm" to include "any weapon (including a starter
gun) which will or is designed to or may be readily
converted to expel a projectile by the action of an
explosive.  The term also includes the frame or
receiver of any such weapon."

Our evaluation indicates that both of the receivers
have had several machining operations performed,
creating the following:

- Magazine well;
- Trigger slot;
- Cavity for the trigger, hammer, disconnector,
  safety selector;
- Initial opening for the buffer tube;
- Slot for magazine catch;
- Slot for the bolt catch;
- Right hand relief cut for forward takedown
  pin; and
- Center relief cut for forward takedown pin.

ATF0060

-2-

Mr. Mark Malkowski

The following is a list of machining operations that were not accomplished:

- Trigger, hammer, safety selector, trigger guard, and bolt catch crosspin holes;
- Opening for the magazine catch shaft and release button;
- Enlarging and threading of buffer tube attachment point (receiver "ring");
- takedown pin holes (front and rear); and
- pistol grip mount.

The FTB examination of the submitted samples revealed that both have reached the stage of manufacture whereby they are identifiable as the frame or receiver of an AR-15 type firearm. Each is therefore a "firearm" as defined in the GCA. However, a solid AR-15 type receiver casting, without having the critical internal areas machined (magazine well and central area for the fire control components) or crosspin holes drilled, would not constitute a "firearm" as defined in the NFA.

We thank you for your inquiry, along with submitted parts, and trust the foregoing assessment is responsive.

Sincerely yours,

Sterling Nixon
Chief, Firearms Technology Branch

ATF0061



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

**MAR 1 0 2004**          903050:CLB
3311/2004-278

www.atf.gov

Mr. ███ Paschal
████████████
Granbury, TX  76049

Dear Mr. Paschal:

This is in reference to your letter to the Bureau of Alcohol, Tobacco, Firearms and Explosives
(ATF), Firearms Technology Branch, dated January 6, 2004, in which you ask several questions
about modifications to AR-15 type receivers.

As you may be aware, the National Firearms Act (NFA), 26 U.S.C. 5845(b), defines a
machinegun as—

...any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more
than one shot, without manual reloading, by a single function of the trigger. The term shall also include
the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or
combination of parts designed and intended, for use in converting a weapon into a machinegun, and any
combination of parts from which a machinegun can be assembled if such parts are in the possession or
under the control of a person.

Based on this definition, an AR-15 type receiver which has been modified by the drilling of a
hole through both receiver walls in the proper location for the installation of an M16 automatic
sear cross pin, and which has had the receiver cavity milled out to a width sufficient to facilitate
the installation of an M16 automatic sear, is a frame or receiver a machinegun. Therefore, it is a
machinegun as defined.  Further, an AR-15 type receiver, which has been modified as above, or
an M16 receiver which has had the automatic sear cross pin holes covered and or material filled
into the receiver cavity, is still a machinegun frame or receiver.

For further guidance, we suggest that you read through the Additional Information section of the
*Federal Firearms Regulations Reference Guide* (ATF P 5300.4).  This guide is also available on
the ATF Web site, www.atf.gov.

Also, based upon your correspondence, it appears that you may be in possession of an
unregistered machinegun.  Should this be the case, we suggest you contact your local ATF office
to coordinate abandoning it.

ATF0062

-2-

Mr███████ Paschal

We thank you for your inquiry and trust the foregoing has been responsive.

Sincerely yours,

Sterling Nixon
Chief, Firearms Technology Branch

ATF0063



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

903050:MRC
3311/2004-179

MAY - 5 2004

Mr. Neil Amodeo
Numrich Gun Parts Corporation
226 Williams Lane
P.O. Box 299
West Hurley, NY 12491

www.atf.gov

Dear Mr. Amodeo:

This is in response to your letter dated November 28, 2003, to the Bureau of Alcohol, Tobacco,
Firearms and Explosives (ATF), Firearms Technology Branch, with reference to your submitted
AMT Automag-type casting. In your correspondence, you inquire whether this item qualifies as
a "firearm" under the Gun Control Act of 1968.

Following examination of the example you submitted, our Branch determined that the following
machining operations would be necessary for this casting to be considered a *firearm*:

1. Cut frame rails.
2. Drill hammer and sear pin holes.
3. Drill hole for trigger bar spring.
4. Drill hole for trigger bar stop pin.
5. Drill slide stop pin hole.
6. Drill and tap for grip screws.
7. Drill hole for hammer strut and spring.
8. Final prep of feed ramp.
9. Drill hole for trigger pivot pin.

Therefore, the particular casting you submitted does not meet the definition of a "firearm"
presented in 18 U.S.C. Section 921(a)(3). However, any deviation from the example would void
this classification.

We thank you for your inquiry and trust that the foregoing has been responsive.

Sincerely yours,

Sterling Nixon
Chief, Firearms Technology Branch



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

AUG 1 9 2004

www.atf.gov

903050:RDC
3311/2004-564

Mr. Robert Serva
Dan Wesson Firearms
5169 Highway 12 South
Norwich, NY 13815

Dear Mr. Serva:

This refers to an unfinished 1911-type semiautomatic pistol frame sample, which was received by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch (FTB), on July 25, 2004, for examination and classification.

Examination of the submitted unfinished frame revealed that the following machining operations have been made, implementing these essential features:

- Slide stop crosspin holes.
- Sear pin hole.
- Hammer pin hole.
- Thumb safety pin hole.
- Main spring housing pin hole.
- Disconnector port.
- Stock screw bushing threads.
- Frame plunger tube mounting holes.
- Feed ramp.
- Barrel link surfaces.
- Frame interior passages/slots.
- Frame safety lever cutout.

In an accompanying letter, you note that the submitted slide rails have not been cut and that there is an additional .015 inch of material left on top of the rail area. Additionally, you state that the sides are approximately .004 inch in width.

The only critical operation yet to be made is the cutting of the slide rails. Although critical, this work can be completed in a minimal amount of time by a competent individual having the necessary equipment.

ATF0065

-2-

Mr. Robert W. Serva

Based on our review of the submitted frame, including the features enumerated above, FTB has determined that the number and complexity of the operations made are sufficient to classify this sample as a "firearm" as defined in 18 U.S.C. § 921(a)(3).

We trust the foregoing has been responsive to your inquiry.  If we can be of any further assistance, please contact us.

Sincerely yours,

Sterling Nixon
Chief, Firearms Technology Branch



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

SEP 1 4 2004

www.atf.gov

903050:RV
3311/2004-653

Mark Barnes & Associates
1350 Eye Street, Suite 1255
Washington, DC 20005

Gentlemen:

This is in response to your letter dated July 19, 2004, to the Firearms Technology Branch (FTB),
Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), in which you request a
classification on M6A1 machinegun receivers.

Specifically, you want to know at which point during the manufacturing process would the
forgings warrant classification as a firearm receiver. To amplify your inquiry, you have
submitted photographs, blue prints, and portions of a technical manual to indicate the step-by-
step machining process.

In determining whether a partially completed receiver is, in fact, at a stage where it should be
classified as a firearm, FTB evaluates the level of completion of the submitted sample--in this
case via an examination of detailed photographs--and makes a comparison with a sample of a
completed firearm of the same type. Then we determine if the submitted sample can be brought
to a stage of completeness that will allow it to accept the firearm components to which it is
designed for, using basic tools in a reasonable amount of time.

After examining the photographs with the instructions provided, FTB has determined that upon
completion of "operation 307," all of the critical dimensions would be completed (see
enclosure). Therefore, at this stage the item has reached a stage that it would be classified as a
*receiver* under the Gun Control Act of 1968.

The plans and photographs submitted with this request will be placed on file with this letter.
Any deviation or departure from the steps indicated could change our classification.

-2-

Mark Barnes & Associates

We trust that the foregoing has been responsive to your inquiry.  If you have further questions concerning this matter, please contact us.

Sincerely yours,

Sterling Nixon
Chief, Firearms Technology Branch

Enclosure



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

JAN 2 5 2005

www.atf.gov

903050:AG
3311/2005-141

Mr. Si H Bloom
General Counsel
Taurus International
16175 N.W. 49th Avenue
Miami, FL 33014-6314

Dear Mr. Bloom:

This is in response to your letter dated December 15, 2004, to the Firearms Technology Branch
(FTB), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), in which you ask for a
classification of the four investment castings you submitted in order to determine their
importability.

The FTB examination of the submitted samples has determined that the following major
machining operations would need to be performed on items 1-3 (revolver-type receiver castings)
to enable them to meet the definition of a *firearm*:

- Machine barrel channel.
- Machine cylinder pin hole(s).
- Machine trigger pin hole(s).
- Machine hammer pin hole(s).
- Machine firing pin tunnel.

Other minor machining operations might also be required.

The FTB examination of the last submitted sample has determined that the following major
machining operations would need to be performed on item 4 (pistol-type receiver casting) to
enable it to meet the definition of a *firearm*:

- Machine bore of barrel.
- Machine slide rails.
- Machine trigger pin hole(s).
- Machine hammer pin hole(s).
- Machine mainspring channel.

Other minor machining operations might also be required.

ATF0069

-2-

Mr. Si H. Bloom

In conclusion, the FTB examination of the submitted sample castings has determined that they do not meet the definition of a "firearm" found in 18 U.S.C. Section 921(a)(3) and may be imported into the United States.  However, any deviation from the examples submitted would void this finding.

We thank you for your inquiry and trust that the foregoing has been responsive to your request for an evaluation.

Sincerely yours,

Sterling Nixon
Chief, Firearms Technology Branch



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

DEC - 4 2005

903050:AG
3311/2006-124

www.atf.gov

Mr. Eric Unger
General Manager
Pine Tree Castings
411 Sunapee Street
Sunapee, NH  03773

Dear Mr. Unger:

This is in response to your correspondence dated November 4, 2005, to the Bureau of Alcohol,
Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch (FTB), in which you ask
for a classification of two pistol-type (Smith & Wesson/Walther) frame castings that you
submitted to FTB.

The FTB examination confirmed that the submitted samples are ferrous metal, pistol-type frame
castings.  The castings resemble firearm frames, but are missing several features that would
permit their use as firearm frames.

The following major machining operations are required for these items to meet the definition of a
"firearm" (see photos provided on pages 3 and 4):

- Machine barrel tunnel/feed ramp.
- Machine barrel retaining pin hole.
- Machine slide rails.
- Machine trigger guard recess and pivot pin hole.
- Machine trigger pin hole.
- Machine trigger recess.
- Machine trigger bar recess.
- Machine sear hole(s) and recess(es).
- Machine mainspring cap retaining pin hole (PPK/S only).
- Machine mainspring clearance/grip panel screw hole area (PPK only)
- Machine hammer drop safety recess.

Other minor machining operations may also be required.

ATF0071

-2-

Mr. Eric Unger

Accordingly, the FTB examination has determined that the Smith & Wesson/Walther pistol type frame castings you submitted are not "firearms" as defined in 18 U.S.C. § 921(a)(3).

This classification is based on the characteristics and features of the samples as received (one PPK type and one PPK/S type). Any alteration of the dimensions and/or configuration of these items will void this classification and require reevaluation by FTB.

We thank you for your inquiry and trust that the foregoing has been responsive to your request for an evaluation.

Sincerely yours,

Sterling Nixon
Chief, Firearms Technology Branch



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

Martinsburg, WV   25401     903050:AG
www.atf.gov                 3311/2006-601

**APR 2 4 2006**

Mr. ███ Halford

████████
Jonesboro, Arkansas  72404

Dear Mr. Halford:

This is in reply to your correspondence, dated January 26, 2006, along with you your submitted item, to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch (FTB).  The submitted item is a partially machined AR-15 pattern receiver, which you have submitted for classification with respect to its status under the Gun Control Act (GCA) of 1968.

The FTB examination determined that the receiver would need the machining operations for the following holes or openings to enable it to be used as the receiver of a firearm:

- Machine pivot pin hole(s).
- Machine takedown pin hole(s).
- Machine trigger pin hole(s).
- Machine trigger opening in the bottom of the trigger/hammer recess.
- Machine hammer pin hole(s).

Additional minor machining or fitting operations may also be required.

For your information, previous determinations by FTB have classified as "firearms," receivers featuring less machining than your sample.  Since your sample is nearly complete, requiring only minor modifications to allow it to function as the frame or receiver of a firearm, it is a *firearm* as defined in 18 USC 921 (a)(3).

As you are aware, an AR-15 type receiver which has absolutely no machining performed in the area of the trigger/hammer recess might not be classified as a firearm.  Such a receiver could have **all** other machining operations performed, including the boring of pivot pin and takedown pin hole(s) and clearance for the takedown pin lug, but it must be completely solid and un-machined in the trigger/hammer recess area.  Your sample has been filled with clay by FTB to illustrate this area (see photo, next page).  If you are interested in having such a modified item formally classified, you must re-submit the prototype to FTB for examination.

-2-

Mr. ███ Halford

Please note that, absent an actual submission, this response cannot constitute a classification of a receiver having a solid trigger/hammer area.



We thank you for your inquiry, and trust that the foregoing has been responsive.

Sincerely yours,

Sterling Nixon
Chief, Firearms Technology Branch



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

Martinsburg, WV   25401          903050:AG
www.atf.gov                     3311/2006-896

**JUL 2 6 2006**

Mr.    Audibert

Wolcott, Connecticut  06716

Dear Mr. Audibert:

This is in reply to your correspondence dated June 6, 2006, to the Bureau of Alcohol, Tobacco,
Firearms and Explosives (ATF), Firearms Technology Branch (FTB).  Your inquiry was
forwarded to FTB's new location, Martinsburg, West Virginia.  Included in your correspondence
are blueprints for a partially machined AR-15 pattern receiver, for which you are requesting
classification under the Gun Control Act of 1968 (GCA).

During our examination of the submitted prints, FTB determined that an item machined to the
submitted specifications would require the following machining operations to allow its use as the
receiver of a firearm:

- Machine takedown pin hole(s).
- Machine trigger pin hole(s).
- Machine hammer pin hole(s).

Additional minor machining/threading or fitting operations may also be required.

For your information, previous determinations by FTB have classified AR-15 pattern receivers
(with less machining than your print depicts) as "firearms."  Since your submitted prints depict a
receiver which is nearly complete, and would require only minor modifications to allow it to
function as the frame or receiver of a firearm, a receiver machined to your submitted
specifications would be a *firearm* as defined in 18 USC 921 (a)(3).

Please note that an AR-15 type receiver which has no machining performed at all in the area of
the trigger/hammer recess might not be classified as a firearm.  Such a receiver could have **all**
other machining operations performed, including pivot pin and takedown pin hole(s) and
clearance for the takedown pin lug, but must be completely solid and un-machined in the
trigger/hammer recess area.  The photo insert (see page 2) depicts a sample which has been filled
with clay by FTB to illustrate this area.

If you are interested in having such an item formally classified, you must submit a machined
prototype to FTB for examination.

-2-

Mr▮▮▮▮▮ Audibert

Absent an actual submission, this response cannot constitute a classification of a receiver having a solid trigger/hammer area.

### Clay-filled Sample AR-15 Type Receiver



We thank you for your inquiry, and trust that the foregoing has been responsive.

Sincerely yours,

Sterling Nixon
Chief, Firearms Technology Branch



ATF0077



ATF0078



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

AUG **2 9** 2007

Martinsburg, WV   25401
www.atf.gov

903050:KEM
3311/2007-667

Mr.           Audibert

Wolcott, Connecticut  06716

Dear Mr. Audibert:

This refers to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and Explosives
(ATF), Firearms Technology Branch (FTB), in which you requested that two accompanying
sample AR 15 style receivers be evaluated to determine if they have reached a stage in
manufacture at which they would be considered firearms. Your correspondence and samples
were redirected to FTB's new location, Martinsburg, West Virginia, for reply.

As you may be aware, the Gun Control Act of 1968 (GCA), 18 U.S.C. 921(a)(3), defines the
term "firearm" to mean, in part, "...any weapon (including a starter gun) which will or is
designed to or may be readily converted to expel a projectile by the action of an explosive" or
"the frame or receiver of any such weapon...."

The FTB examination of the submitted samples indicates they have been machined from solid
castings of aluminum stock. Both samples resemble an AR-15 type receiver and have had
several machining operations performed, creating the following:

- Magazine well.
- Magazine catch slot, magazine catch shaft, and release button.
- Bolt catch slot.
- Hole for the bolt-catch cross pin.
- Trigger slot.
- Cavity for the trigger, hammer, disconnector, and safety selector.
- Opening for the buffer tube assembly attachment point.
- Relief cut for pistol grip mount.

In addition to the above, "Sample 2" has had the following additional operations preformed:

- Holes for both front and rear trigger guard pins.
- Front takedown pin holes.

ATF0079

-2-

Mr. ███ Audibert

Based on our review of the submitted receivers, including the features enumerated above, FTB has determined that the number and complexity of the operations made are sufficient to classify these submitted AR-15 type receivers as "firearms" as defined in 18 U.S.C. 921(a)(3). Therefore, both samples are subject to GCA provisions.

We regret the delay in our reply, but trust that the foregoing has been responsive to your request for an evaluation and additional information.

Sincerely yours,

Richard Vasquez
Acting Chief, Firearms Technology Branch



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

|  |  |
|---|---|
| Martinsburg, West Virginia 25405 | 903050:AG |
| www.atf.gov | 3311/2009-336 |
| FEB 1 1 2009 | |

FN Manufacturing, Inc.
P.O. Box 24257
Columbia, South Carolina 29224

To Whom It May Concern:

This is in reference to two items submitted to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch (FTB), for classification under the Gun Control Act of 1968(GCA). The submitted items are M16A4 receiver castings—one raw, the other partially machined.

During the FTB examination, it was determined that the partially machined casting would require the following major machining operations to allow both the attachment of an AR-15 pattern upper receiver assembly and the firing of a cartridge from the entire assemblage:

- Machine pivot pin hole(s).
- Machine takedown pin hole(s).
- Machine trigger pin hole(s).
- Machine hammer pin hole(s).

Also, additional minor machining or fitting operations could be required.

For your information, previous determinations by FTB have classified receivers having less machining than your sample as "firearms." Since your sample is nearly complete, requiring only minor modifications to allow it to function as the frame or receiver of a firearm, it is a *firearm* as defined in 18 U.S.C. 921 (a)(3).

As you may be aware, an AR-15 type receiver which has <u>no machining performed whatsoever in the area of the trigger/hammer recess</u> might not be classified as a firearm. Such a receiver could have **all** other machining operations performed, including pivot pin and takedown pin hole(s) and clearance for the takedown pin lug, but would have to be completely solid and un-machined in the trigger/hammer recess area (see photo insert below). If you are interested in having such a modified item formally classified, you must submit it to FTB for examination.

ATF0081

-2-

FN Manufacturing, Inc.

Please note that, absent an actual submission, this response cannot constitute a classification of a hypothetical receiver having a solid trigger/hammer area.



We thank you for your inquiry and trust that the foregoing has been responsive.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

---

Martinsburg, West Virginia 25405                 903050:MMK
www.atf.gov                                      3311/2009-565

MAY **2 0** 2009

Mr. Chris Coad
Ultra-Tech, Inc.
3003 Power Drive
Kansas City, Kansas 66106

Dear Mr. Coad:

This refers to your letter to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF),
Firearms Technology Branch (FTB), with an accompanying sample of a partially machined
AR-15 type receiver-casting. You have requested a classification of the sample.

The FTB evaluation of this casting found that the following machining operations had been
completed:

- Casting to shape, from aluminum alloy, of an AR-15 type receiver.
- Milling of recesses for the bolt stop and magazine release.
- Milling of the forward and rear take-down pins.
- Milling of the magazine well.
- Threading for the attachment of the buffer tube assembly.
- Drill and tap for the pistol-grip screw.
- Hole for the take-down retaining pin and spring.

The following operations were not completed:

- Drilling of the fire-control (trigger-group) component pivot-pin holes.
- Milling of the cavity for the fire-control (trigger-group) components.

Additionally, we noted that there were no external markings on the receiver.

Our Branch has previously determined that if an AR-type receiver-blank possessed either pivot
pin holes or indexing marks for the fire-control components (trigger group); or if any of the
cavity for the trigger group had been milled, then the receiver-blank would have been finished to
the point at which it could be recognized as a firearm frame or receiver. Your submitted sample
does not contain any of these critical features.

-2-

Mr. Chris Coad

Based on our examination, FTB finds that this sample AR-15 type receiver-casting is not yet finished to the point at which it would be classified as a firearm. As such, it is not regulated by the Gun Control Act or National Firearms Act.

To facilitate the return of the submitted sample, please provide FTB with the appropriate FedEx or other common carrier account information within 60 days of receipt of this letter. If you intend to use UPS, you must make arrangements with them to pick up the item at our location. Alternatively, if you wish to abandon the sample to ATF, you may notify us in writing.

We trust the foregoing has been responsive to your request. If we can be of any further assistance, please contact us.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

Washington, DC 20226                903050:MMK
www.atf.gov                        3311/2009-840

JUL **2 4** 2009

Mr. Rick W. Miller
G&S Precision Machine
108 Pine Rd.
Newnan, Georgia 30263

Dear Mr. Miller:

This refers to your letter to the Firearms Technology Branch (FTB), Bureau of Alcohol,
Tobacco, Firearms and Explosives (ATF), which was accompanied by two samples of partially
machined AR-15 type receiver-castings (see enclosed photos). You have requested a
classification of the samples with respect to the Gun Control Act of 1968 (GCA), 18 U.S.C.
§ 921(a)(3). For clarity, we will refer to the samples as you have marked them— "*Current*" and
"*Proposed*."

The FTB evaluation of sample "**Current**" found that the following machining operations have
been completed:

- Milling to shape, from aluminum alloy, of an AR-15 type receiver.
- Milling of recesses for the bolt stop and magazine release.
- Milling of the forward and rear take-down pins.
- Milling of the magazine well.
- Threading for the attachment of the buffer tube assembly.
- Drill and tap for the pistol-grip screw.
- Hole for the take-down retaining pin and spring.
- Drilling of the selector-lever pivot holes.
- Milling of the cavity for the fire-control (trigger-group) components.
- Selector-lever position markings: "*FIRE*" and "*SAFE*".

The following operations <u>were not</u> completed:

- Drilling of the fire-control (trigger-group) component pivot-pin holes.
- Removal of excess metal on the left side used to secure and align the block for
  machining.

Mr. Rick W. Miller

Sample "**Proposed**" was identical to "**Current**" except in the amount of excess material on the left side of the receiver that is used to secure and align the block for machining. Additionally, we noted that there were no external manufacturer's markings and no serial number on either receiver.

Our Branch has previously determined that if an AR-type receiver-blank possessed either pivot pin holes or indexing marks for the fire-control components (trigger group), or, if any of the cavity for the trigger group has been milled, then the receiver-blank would have been finished to the point at which it could be recognized as a firearm frame or receiver. Each of your submitted samples contains at least one of these critical features (the trigger-group cavity).

Based on our examination, FTB finds that both sample AR-15 type receiver-castings are finished to the point at which they would be classified as "firearms" pursuant to § 921(a)(3). As such, they are regulated by the GCA. As per your request, we have enclosed a photo depicting the areas which must not be machined in order to preclude GCA regulation.

To facilitate the return of your samples, please provide FTB with the appropriate FedEx or other common carrier account information within 60 days of receipt of this letter. If you intend to use UPS, you must make arrangements with them to pick up the items at our location. Alternatively, if you wish to abandon the samples to ATF, you may notify us in writing.

We regret that our findings could not have been more favorable, but trust the foregoing has been responsive to your request. If you have any additional questions, or if we can be of further assistance, please contact us.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

Enclosures

ATF0086



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

Martinsburg, West Virginia 25405    903050:AG
www.atf.gov                         3311/2010-137

DEC 2 4 2009

Mr. Terry S. Campbell
Cerro Fabricated Products, Inc.
300 Triangle Drive
Weyers Cave, Virginia 24486

Dear Mr. Campbell:

This is in reference to your submitted item, a partially machined AR-15 pattern receiver forging, along with correspondence dated November 12, 2009, received by the Firearms Technology Branch (FTB), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). You have submitted this forging for classification under the Gun Control Act of 1968 (GCA).

In prior correspondence (please see #2007-500), FTB informed you that our Branch had previously determined that an AR-15 type receiver which has no machining of any kind performed in the area of the trigger/hammer recess might not be classified as a firearm. Such a receiver could have all other machining operations performed, including pivot-pin and takedown-pin hole(s) and clearance for the takedown-pin lug, but must be completely solid and un-machined in the trigger/hammer recess area.

While you have submitted the current item for classification with the above qualifications in mind, our examination revealed that the forging incorporates three machining operations which surpass the allowable machining described above. These additional operations are the machining of the—

1. selector hole;
2. the hammer-pin hole; and
3. the trigger-pin hole.

Due to these additional operations, FTB finds that the submitted item is a "firearm" as defined in the GCA. In order to obtain a non-firearm classification, you must omit the three additional machining operations described above (also see photo diagram, next page). The reconfigured item must also be submitted for evaluation.

ATF0087

-2-

Mr. Terry S. Campbell

**Submitted item**



We thank you for your inquiry, and trust that the foregoing has been responsive.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

ATF0088



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

Martinsburg, West Virginia 25405

www.atf.gov

MAR 1 6 2010

903050:ELG
3311/2010-469

Mr. Jason Renschler
Quentin Laser, LLC
751 N. Monterey Street
Gilbert, Arizona 85233

Dear Mr. Renschler:

This is in reference to your recently received correspondence and accompanying, partially machined, AR-15 pattern receiver forging that was submitted to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Branch (FTB), for classification with respect to the provisions of the amended Gun Control Act of 1968 (GCA).

As you are aware, the GCA, 18 U.S.C. § 921(a)(3), states that the term "firearm" includes—

> ... *(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon...*

Based on this definition, a firearm receiver casting or firearm receiver blank can itself be a "firearm" if completed to the point at which it can be recognized as a firearm frame or receiver.

Previously, FTB has determined that an AR-15 type receiver which has <u>no machining of any kind performed in the area of the trigger/hammer recess</u> might not be classified as a firearm. Such a receiver could have **all** other machining operations performed, including pivot-pin, takedown-pin hole(s), and clearance for the takedown-pin lug, but must be completely solid and un-machined in the trigger/hammer recess area.

Our examination revealed that the forging incorporates machining for the selector opening, which exceeds the allowable machining described above. Due to this operation, FTB finds that the submitted item is a "firearm" as defined in the GCA. In order to obtain a non-firearm classification, you must omit this machining operation (also see enclosed photo diagram).

-2-

Mr. Jason Renschler

We thank you for your inquiry and trust that the foregoing has been responsive.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

Enclosure

-3-

Mr. Jason Renschler

## Obtaining a "Non-Firearm"



2010-494-010

ATF0092

2010 - 469 - ELG

ATF0093

2010-469-276

ATF0094

**Quentin Laser LLC**
**Quentin Defense**
**751 N. Monterey St.**
**Suite 115**
**Gilbert, AZ 85233**
**480-273-8935**



EVAL.
2010-469-ELG

**Bureau of Alcohol, Tobacco, Firearms, and Explosives**
**Firearms Technology Branch**
**244 Needy Road**
**Martinsburg, West Virginia 25405**

Please accept the following sample piece for examination. The enclosed piece is being sent to you for a determination as to whether or not it would be considered a firearm as defined by the Gun Control Act of 1968, 18 U.S.C. Section 921(a)(3) in it's current state of completion.

Please respond with your findings in writing to the address listed above.

Thank you,

**Jason Renschler**
**Quentin Laser LLC**



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Martinsburg . West Virginia 25405*      903050:MMK
*www.atf.gov*                            3311/2010-1091

DEC 1 4 2010

Mr. Steve Carter
Irac, Inc.
P.O. Box 989
Waynesville, Ohio 45068

Dear Mr. Carter:

This refers to your correspondence to the Bureau of Alcohol, Tobacco, Firearms and Explosives
(ATF), Firearms Technology Branch (FTB), which accompanied your submitted sample non-
firing replica of a Browning Automatic Rifle (BAR) receiver. Specifically, you requested an
examination and classification of the "dummy" receiver with respect to the Gun Control Act of
1968 (GCA), 18 U.S.C. § 921(a)(3).

As you may be aware, the GCA, § 921(a)(3), defines the term **"firearm"** to include:

*... (A) any weapon (including a starter gun) which will or is designed to or may readily be
converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any
such weapon....*

Also, a firearm *frame* or *receiver* is identified in 27 CFR §478.11 as—

*That part of a firearm which provides housing for the hammer, bolt or breechblock, and firing
mechanism, and which is usually threaded at its forward portion to receive the barrel.*

The FTB evaluation of the submitted sample noted that it incorporated the following
characteristics and features:

- Cast generally to shape from aluminum or aluminum alloy.
- The internal cavity formed and partially milled generally to shape.
- The cavity inside the "hump" formed sufficiently to allow the locking block of a
  bolt-assembly to toggle upward.
- The mounting pin hole for the attachment of the trigger group was drilled.
- Attachment for the fore grip assembly machined.
- At the forward end, an opening formed and threaded for the attachment of a barrel.
- The ejection port formed.
- The slot for the cocking handle formed.

-2-

Mr. Steve Carter

The following critical features were omitted:

- Material was removed from the sides of the fire-control cavity so that bolt guide rails could not be formed.
- Although the cavity for the locking block was formed, the locking surface against which the locking block of the bolt-assembly locks was left unformed, and material that would prevent the forming of such a locking surface by simple machining alone was removed.
- No guide rail formed for the gas piston.
- The opening in the front of the block for the gas piston was not formed or indexed.
- The installation/takedown hole for the hammer pin was not drilled; thus, if a bolt-assembly, gas piston, and cocking handle were installed, they could not be linked together.
- Provision not made for mounting a buffer assembly.

In order for this sample not to be considered a firearm receiver, along with the above noted modifications, one additional feature needs to be omitted from the design: The cavity formed for the toggling portion (the locking block) of the bolt-assembly must be omitted. We have filled in the noted area with clay and have enclosed a photo with this correspondence for your reference.

We caution that these findings are based on the sample as submitted. If the design, dimensions, configuration, method of operation, or materials used were changed, our conclusions would be subject to review.

The sample will be returned under separate cover using the return information provided.

We thank you for your inquiry, and trust the foregoing has been responsive. Please do not hesitate to contact us if you have additional questions.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

Enclosure



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Martinsburg , West Virginia 25405*                903050:AG
                                                   3311/2011-394
www.atf.gov

FEB 0 9 2011

Mr. Garrett Fannin
DPM Shops
224 Big Run Road
Lexington, Kentucky 40503

Dear Mr. Fannin:

This is in reference to two partially machined AR-15 type receivers, as well as correspondence
dated January 24, 2011, to the Firearms Technology Branch (FTB), Bureau of Alcohol, Tobacco,
Firearms and Explosives (ATF). You have submitted these items (photos provided, next page)
for classification under the Gun Control Act of 1968 (GCA).

As FTB previously informed Mr. Krimm, DPM Shops, an AR-15 type receiver which has <u>no
machining performed at all in the area of the trigger/hammer (fire-control) recess</u> might not be
classified as a firearm. Such a receiver could have **all** other machining operations performed,
including pivot-pin and takedown-pin hole(s) and clearance for the takedown-pin lug, but must
be completely solid and un-machined in the fire-control recess area. Although one of the
submitted samples has a reference hole which is necessary for a broaching operation (this
reference hole is located in the fire-control recess area), the magazine well is the only significant
machining operation which has been performed. The second sample has been partially machined
in the magazine-well area, but has not yet been broached and does not incorporate the indexing
hole mentioned above. Neither of the submitted items has been machined to a point at which it
is capable of being used as the frame or receiver of a firearm.

Accordingly, the submitted items are not "firearms" as defined in the GCA. We caution that this
classification is based on the items received and examined by our Branch. Any changes to the
characteristics of these items would require re-evaluation by FTB.

We thank you for your inquiry and trust that the foregoing has been responsive. Please contact
our Branch to arrange for the return of the submitted items.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch

Enclosure



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

_Martinsburg , West Virginia 25405_   903050:AG
www.atf.gov                              3311/2011-246

Mr. Kas McManus
Lancer Systems
7566 Morris Court, Suite 300
Allentown, Pennsylvania 18106

**MAR 1 6 2011**

Dear Mr. McManus:

This is in reference to your submitted item, a partially machined AR-15 pattern receiver, along
with supporting correspondence, recently received by the Firearms Technology Branch (FTB),
Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). You have submitted this receiver
(photo provided, next page) for classification under the Gun Control Act of 1968 (GCA).

In a prior letter, FTB informed you that our Branch had previously determined that an AR-15
type receiver which has no machining of any kind performed in the area of the trigger/hammer
(fire-control) recess might not be classified as a firearm. Such a receiver could have **all** other
machining operations performed, including pivot-pin and takedown-pin hole(s) and clearance for
the takedown-pin lug, but must be completely solid and un-machined in the fire-control recess
area.

You have submitted the current item for classification with the above qualifications in mind.
Our examination confirmed that the receiver has been partially machined, including clearance for
the takedown-pin lug. With respect to this particular cut, our evaluation found that the length of
the clearance for the takedown-pin lug is approximately 1.860 inches, measured from
immediately forward of the front of the buffer retainer hole. Since (in a finished AR-15 pattern
receiver) the front of the takedown-pin lug clearance area merges with the back of the
fire-control recess, it was necessary to determine the point at which the takedown-pin lug
clearance area stops, and the fire-control recess begins. **Accordingly, we have determined that
in order to be considered "completely solid and un-machined in the fire-control recess
area," the takedown-pin lug clearance area must be no longer than .800 inch, measured
from immediately forward of the front of the buffer retainer hole.**

Since the takedown-pin lug clearance area of the submitted item is longer than .800 inch, FTB
finds that the submitted item is **not** completely solid and un-machined in the fire-control recess
area. Accordingly, the submitted item has been classified as a "firearm" as defined in the GCA.

ATF0099

-2-

Mr. Kas McManus

**Submitted item**



If your current design is modified to incorporate a takedown-pin lug clearance area of .800 inch or less in length, FTB is ready to reevaluate it as soon as we receive a new sample.

We thank you for your inquiry, regret that our present findings could not be more favorable, but trust that the foregoing has been responsive to your evaluation request.

Sincerely yours,

John R. Spencer
Chief, Firearms Technology Branch