UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITY OF SYRACUSE, NY; CITY OF SAN JOSE, CA; CITY OF CHICAGO, IL; CITY OF COLUMBIA, SC; EVERYTOWN FOR GUN SAFETY ACTION FUND; and EVERYTOWN FOR GUN SAFETY SUPPORT FUND,

*Petitioners*,

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; REGINA LOMBARDO, in her official capacity as Acting Deputy Director of Bureau of Alcohol, Tobacco Firearms and Explosives; UNITED STATES DEPARTMENT OF JUSTICE; and WILLIAM BARR, in his official capacity as ATTORNEY GENERAL, U.S. Department of Justice,

*Defendants*,

and

ZACHARY FORT; FREDERICK BARTON; BLACKHAWK MANUFACTURING GROUP, INC.; and FIREARMS POLICY COALITION, INC.,

*Applicants in Intervention*.

No. 1:20-cv-06885-GHW

**REPLY MEMORANDUM IN SUPPORT OF ZACHARY FORT; FREDERICK BARTON; BLACKHAWK MANUFACTURING GROUP, INC.; AND FIREARMS POLICY COALITION, INC.'S MOTION TO INTERVENE**

# TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| ARGUMENT | 2 |
| I. Federal Defendants Do Not Adequately Represent Applicants' Interests | 2 |
| II. Petitioners Misconstrue This Circuit's Standard In Evaluating Adequate Representation | 5 |
| III. Applicants Have, At Minimum, Demonstrated Financial Interests That Will Be Impaired If Petitioners Are Successful | 8 |
| CONCLUSION | 9 |
| CERTIFICATE OF SERVICE | 11 |

**TABLE OF AUTHORITIES**

| Cases | Page(s) |
|---|---|
| *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171 (2d Cir. 2001) | 6 |
| *Bridgeport Guardians v. Delmonte*, 602 F.3d 469 (2d Cir. 2010) | 8 |
| *Commonwealth of Pennsylvania v. President United States of America*, 888 F.3d 52 (3d Cir. 2018) | 6 |
| *Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742 (7th Cir. 2020) | 6 |
| *Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242 (11th Cir. 2002) | 6 |
| *Hodgson v. United Mine Workers of America*, 473 F.2d 118 (D.C. Cir. 1972) | 6 |
| *In re Pandora Media, Inc.*, No. 12-cv-08035-DLC, 2013 WL 6569872 (S.D.N.Y. Dec. 14, 2013) | 8 |
| *JLS, Inc. v. Public Service. Commission of West Virginia*, 321 Fed. App'x 286 (4th Cir. 2009) | 6 |
| *Law Foundation of New England, Inc. v. Mosbacher*, 966 F.2d 39 (1st Cir. 1992) | 5 |
| *Linton by Arnold v. Commissioner of Health & Environment, State of Tennessee*, 973 F.2d 1311 (6th Cir. 1992) | 6 |
| *New York v. Scalia*, No. 20-cv-01689-GHW, 2020 WL 3498755 (S.D.N.Y. June 29, 2020) | 8, 9 |
| *New York Public Interest Research Group, Inc. v. Regents of University of New York*, 516 F.2d 350 (2d Cir. 1975) | 5, 8 |
| *National Farm Lines v. I.C.C.*, 564 F.2d 381 (10th Cir. 1977) | 6 |
| *Texas v. United States*, 805 F.3d 653 (5th Cir. 2015) | 6 |

*Trbovich v. United Mine Workers of America*,
404 U.S. 528 (1972) .......... 5, 6

*United States v. City of New York*,
198 F.3d 360 (2d Cir. 1999) .......... 7

*United States v. Hooker Chemicals & Plastics Corp.*,
749 F.2d 968 (2d Cir. 1984) .......... 7

*United States v. Union Electric Co.*,
64 F.3d 1152 (8th Cir. 1995) .......... 6

*United States Postal Service v. Brennan*,
579 F.2d 188 (2d Cir. 1978) .......... 5, 9

**Rules**

Fed. R. Civ. P. 5 .......... 11

Fed. R. Civ. P. 19 .......... 6

Fed. R. Civ. P. 24(a) .......... 7

Fed. R. Civ. P. 24(a)(2) .......... 9

Local Civil Rule 5.2 .......... 11

Applicants in Intervention have demonstrated a direct and personalized interest in the matter before this Court that is not adequately represented by Federal Defendants and more than justifies Applicants' intervention in this case.

Federal Defendants, based on admissions in parallel litigation, do not adequately represent Applicants' specific interests in upholding the legally correct interpretation that Non-Firearm Objects (as defined in Applicants' Motion) are not "firearms" as defined by the Gun Control Act of 1968 ("GCA"). Federal Defendants do not purport to produce, sell, buy, or own Non-Firearm Objects, nor will they be materially or economically harmed should this Court rule in Petitioners' favor. In contrast, Applicant 80% Arms, which has at least one determination letter akin to the Polymer 80 Letters challenged by Petitioners, could have its entire, currently lawful business practice made illegal should Petitioners succeed. *See* ATF0136–0145 (Letter from Earl Griffith, Chief, Firearms Technology Branch, to Tilden Smith, 80 Percent Arms (July 15, 2013)). Remaining Applicants each own Non-Firearm Objects and intend to continue to directly purchase Non-Firearm Objects in the future—which would be made illegal if Petitioners prevail. Applicant Firearms Policy Coalition ("FPC"), whose members include other Applicants, also represents numerous, similarly situated individuals across the United States. Federal Defendants serve in none of these roles and do not represent Applicants' reliance or economic interests in the ATF's current interpretation. Instead, Federal Defendants must balance competing statutory, regulatory, and resource concerns and may compromise legally defensible positions that Applicants will advance unique to their interests in the Non-Firearm Objects market.

Additionally, Petitioners charge that if this Court were to allow Applicants permissive intervention to defend their substantial interests, it would expand the scope of or "prejudice" Petitioners' Administrative Procedure Act ("APA") claims. Petitioners do not explain how they

can be prejudiced by Applicants' inclusion when Petitioners specifically implicate Applicants in their arguments. *See* ECF No. 11 ¶¶ 18 n.23, 107; ECF No. 64 ¶¶ 20(b), 20(e), 21, 22, 24, 26(b), 27.[1] Further, Petitioners' argument misunderstands Applicants' interests and APA litigation. Applicants' goal is not to "obtain a broad ruling that would cast doubt on the regulation of" Non-Firearms Objects—that is the Petitioners' stated goal. ECF No. 58, at 15. Applicants' goal is to preserve the status quo and uphold the longstanding definition of "firearm" under the GCA. Applicants have relied on that definition to establish business and personal practices, have lives and livelihoods at stake, and can offer this Court insight into the law-abiding citizens and businesses within the Non-Firearm Object industry—interests not represented by Federal Defendants and wrongly demonized by Petitioners. Applicants' exclusion would allow Petitioners to characterize Applicants' actions and activities without allowing any representation of those interests. Applicants will not address permissive intervention further and rely on their Motion.

If Petitioners succeed, the ATF may be required to regulate materials of all kinds, including Non-Firearm Objects, simply because individuals, through their own knowledge and skill, can manufacture them into firearms. This Court should grant Applicants intervention to defend their interest, their industry, and their personal practices from Petitioners' attack.

## ARGUMENT

### I. FEDERAL DEFENDANTS DO NOT ADEQUATELY REPRESENT APPLICANTS' INTERESTS

Federal Defendants do not represent Applicants' interest in their continued business and individual practices, nor Applicants' reliance-based interest in the ATF's long-standing

[1] Applicants do not agree to the admission of the documents referenced in and appended to ECF No. 64, nor is this extra-record evidence relevant to this Court's APA inquiry. This information, however, highlights that even though Petitioners have opposed Applicants' intervention, Petitioners continue to drag Applicants into their arguments. Petitioners seek to use Applicants to make their case while attempting to exclude Applicants from this litigation.

determination that Non-Firearm Objects do not constitute "firearms" under the GCA. Petitioners' assertion that Applicants' interests are *completely* represented by Federal Defendants misconstrues the obligations and representations of Federal Defendants and ignores Petitioners' specific implication of Applicants in this matter.

While Petitioners argue that Federal Defendants adequately represent Applicants' interests because "the government just this week moved to dismiss a similar challenge to ATF's actions . . . and has given every indication it will defend this case similarly," Petitioners omit that Applicants have also moved to intervene in that action. ECF No. 58, at 5–6; *Motion to Intervene*, Case No. 3:20-cv-06761-EMC, ECF No. 24 (N.D. Cal. Nov. 24, 2020). Equally relevant, Federal Defendants filed a Response in that matter that supports Applicants' intervention as appropriate. *Federal Defendants' Response to Motion to Intervene* ("CA Response"), Case No. 3:20-cv-06761-EMC, ECF No. 38 (N.D. Cal. Dec. 8, 2020).[2] In that Response, Federal Defendants specifically support intervention as of right for Applicant 80% Arms, noting that because the petitioners there "criticize ATF's action in part based on statements of [80% Arms] subsequent to ATF's action . . . the APA may constrain ATF's ability to adequately represent [80% Arms'] interests in the face of such post-hoc, extra-record materials." *CA Response*, at 3. That issue is present here as well. Petitioners specifically implicate Applicant 80% Arms in their Complaint, referencing activities subsequent to the ATF's alleged "action." Petitioners argue that the "proliferation" of individually manufactured firearms is, in part, due to Applicant 80% Arms, ECF No. 11 ¶ 18 n.23, and that Applicant 80% Arms "trumpet[s] ATF's rule" on its website, *id.* ¶ 107. Petitioners continue to implicate Applicant 80% Arms in this litigation even after opposing intervention. On December 9, 2020, Petitioners filed a Declaration of Aaron Esty in support of their Motion for

[2] Federal Defendants' Response filed in the Northern District of California is attached hereto as Exhibit 1.

Summary Judgment. ECF No. 64. There, Petitioners repeatedly cite to Applicant 80% Arms website in an attempt to support their arguments. *Id.* ¶¶ 20(b), 20(e), 21, 22, 24, 26(b), 27. Petitioners cannot be allowed to simultaneously implicate Applicant 80% Arms in this lawsuit and exclude Applicant from defending its interests.[3]

As to Applicants Fort and Barton, Federal Defendants note that their "alleged reliance interests are substantially different from the interests of the manufacturers of [Non-Firearm Objects] to whom ATF's classification letters are issued . . . and this weighs in favor of intervention." *CA Response*, at 4–5.[4] Accordingly, Federal Defendants do not adequately represent Applicant Fort's and Barton's reliance interests.

Finally, while Federal Defendants take no position on Applicant FPC's intervention, Applicants note that FPC not only represents the interests of its members—including Applicants Fort, Barton, and 80% Arms, and those in substantially similar positions—but FPC is also an individual owner and purchaser of Non-Firearm Objects. Applicant FPC uses those objects to educate legislatures, politicians, and the public about Non-Firearm Objects, the GCA, and the proper definition of a "firearm." ECF No. 46 ¶¶ 9–11. Applicant FPC's intervention allows this Court to conveniently and efficiently grant intervention to all of FPC's members, through FPC's representation of their interests.

As demonstrated by Petitioners' direct implication of Applicants and Federal Defendants' position in the parallel litigation, Federal Defendants do not adequately represent Applicants' substantial interests in the outcome of this litigation.

---

[3] Of note, Applicant 80% Arms is a party that is required to be joined in this lawsuit pursuant to Federal Rule of Civil Procedure 19, which joinder Applicant 80% Arms may pursue should this Court deny Applicants' intervention.

[4] Federal Defendants argue Applicants Fort and Barton should be granted permissive intervention, but Applicants note that Federal Defendants' statements also demonstrate they do not adequately represent the interests of Applicants Fort and Barton. In the alternative, Applicants argue this, at the very least, supports permissive intervention in this matter.

## II. PETITIONERS MISCONSTRUE THIS CIRCUIT'S STANDARD IN EVALUATING ADEQUATE REPRESENTATION

Petitioners' assertion that Applicants are adequately represented, despite the facts demonstrated *supra*, misconstrues the liberal Supreme Court standard employed by this Circuit in allowing for intervention where an applicant's interest *may not* be adequately represented.

"The requirement of [Rule 24(a)] is satisfied if the applicant shows that representation of his interest '*may be*' inadequate; and the burden of making that showing *should be treated as minimal*." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (citation omitted) (emphasis added). In *Trbovich*, the Supreme Court determined that the Secretary of Labor might not adequately represent the proposed intervenor's interests even though the Secretary had a *statutory obligation* to represent the individual, because the Secretary had a competing interest in protecting a broader public interest. *Id*. at 538–39.

The Second Circuit has also recognized that intervention is appropriate when a proposed intervenor's argument *may not* be entirely represented by a governmental actor. *Cf. U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978) ("An applicant for intervention as of right has the burden of showing that representation may be inadequate, although the burden 'should be treated as minimal.'") (quoting *Trbovich*, 404 U.S. at 538 n.10); *see N.Y. Pub. Int. Rsch. Grp., Inc. v. Regents of Univ. of State of N.Y.*, 516 F.2d 350, 352 (2d Cir. 1975) (recognizing that governmental defendants' interests "may significantly differ" from those of proposed intervenors.)

Indeed, despite Petitioners' contention, the Second Circuit's application of *Trbovich* is very much in line with *every other circuit's* precedent on this issue.[5]

---

[5] *See, e.g., Conservation. Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) (applying the liberal *Trbovich* standard to grant seven commercial fishing groups intervention where the federal defendant's "judgments are necessarily constrained by his view of the public welfare," because "the fisherman may see their own

Here, not only do Federal Defendants not have any requirement—statutory or otherwise—to represent Applicants' individual and corporate interests in the production, sale, purchase, or possession of Non-Firearm Objects, but Federal Defendants also do not represent Applicants' exercise of their legal right to continue to purchase Non-Firearm Objects or to individually manufacture those objects into personal use firearms. Federal Defendants have not opposed Applicants' intervention here, have not filed an answer indicating their merits positions, and have made no indications that they adequately represent Applicants' interests.

This Court should summarily reject Petitioners' attempt to heighten the Second Circuit's standard. Petitioners' argument is based, in large part, on *Butler, Fitzgerald & Potter v. Sequa Corp.*, where this Circuit denied the motion of a discharged attorney to intervene into the attorney's

interest in a different, perhaps more parochial light."); *Commonwealth of Penn. v. President U.S. of Am.*, 888 F.3d 52, 61 (3d Cir. 2018) (granting intervention because "similar to *Trbovich*," the government was tasked "with serving two related interests that are not identical: accommodating the free exercise rights of religious objectors while protecting the broader public interest in access to contraceptive methods and services.") (citing *Trbovich*, 404 U.S. at 538–39); *JLS, Inc. v. Pub. Serv. Com'n of West Virginia*, 321 Fed. App'x 286, 290 (4th Cir. 2009) ("We conclude that Movants clearly satisfied their 'minimal' burden of showing that [the Public Service Commission of West Virginia's] representation of their interests 'may be inadequate'" in regard to "the motivation that Movants have to defeat [plaintiff].") (quoting *Trbovich*, 404 U.S. at 538 n.10); *Texas v. U.S.*, 805 F.3d 653, 663 (5th Cir. 2015) (granting intervention under the *Trbovich* standard because "the Government has an institutional interest in shielding its actions from state intervention through the courts, whereas the [proposed intervenors'] interest is in working and providing for their families . . . ."); *Linton by Arnold v. Comm'r of Health & Enviro., State of Tenn.*, 973 F.2d 1311, 1319 (6th Cir. 1992) (noting it is "sufficient that the movants prove that representation may be inadequate," because the governmental party "acted as both a regulator and purchaser of movants' services thereby creating inherent inconsistencies between movants' interests and those of the State . . . .") (citing *Trbovich*, 404 U.S. at 539); *Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 749 (7th Cir. 2020) (employing the lenient *Trbovich* standard to grant intervention because proposed intervenors had economic interests not represented by the Wisconsin Public Service Commission); *U.S. v. Union Elec. Co.*, 64 F.3d 1152, 1170 (8th Cir. 1995) (applying the lenient *Trbovich* standard in determining "[t]he interests of the prospective intervenors are narrower and not subsumed by the general interest of the United States in providing for the clean up of polluted sites," because "prospective intervenors are seeking to protect a more 'parochial' financial interest not shared by other citizens . . . .") (citations omitted); *Nat'l Farm Lines v. I.C.C.*, 564 F.2d 381, 384 (10th Cir. 1977) ("We have here also the familiar situation in which the governmental agency is seeking to protect not only the interest of the public but also the private interest of the petitioners in intervention, a task which is on its face impossible. The cases correctly hold that this kind of a conflict satisfies the minimal burden of showing inadequacy of representation."); *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1256 (11th Cir. 2002) (employing the minimal *Trbovich* standard in finding the federal government did not independently represent proposed intervenors' interest, because the federal government had "no independent stake.") (citation omitted); *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C. Cir. 1972) (granting intervention under the minimal *Trbovich* standard noting that "[t]he right of intervention conferred by Rule 24 implements the basic jurisprudential assumption that the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard.").

former client's action. 250 F.3d 171, 177 (2d Cir. 2001). Not only was that case between private parties, the purported interest was "seemingly . . . not in the subject of the underlying action," and the court questioned "whether a discharged attorney's intervention into a former client's action fits within the language of the Federal Rules." *Id.* (citing Fed. R. Civ. P. 24(a)).

Petitioners' attempt to invoke the doctrine of *parens patriae* in this matter is equally unpersuasive. ECF No. 58, at 5–6. In *United States v. City of New York*, relied on by Petitioners, the proposed intervenors, Croton Watershed Clean Water Coalition, *et al.*, were denied intervention when they sought to "enforce the obligations of New York City under federal law" because the state of New York was *already explicitly granted intervention* "as a plaintiff 'on behalf of itself and as *parens patriae*, trustee, guardian and representative on behalf of all residents and citizens of New York, particularly those individuals who obtain their drinking water from the Croton System.'" 198 F.3d 360, 363, 367 (2d Cir. 1999). In *Hooker Chemicals*, another case Petitioners unpersuasively cite, a New York-based organization was denied intervention, in part, because it was adequately represented by the state of New York given the state had filed a complaint against Hooker Chemicals "on behalf of itself as *parens patriae* on behalf of all residents and citizens of the State of New York . . . ." 749 F.2d 968, 972, 985 (2d Cir. 1984). *Hooker Chemicals* notes the *parens patriae* test is only applicable when "an intervenor['s] state is already a party . . . ." *Id*. at 984. The *parens patriae* concept is inapplicable here—Federal Defendants do not purport or seek to represent Applicants' interests and Petitioners cite no example of a federal agency holding an all-encompassing and non-conflicted status in APA litigation.

This Court should apply this Circuit's liberal standard in determining Applicants' interests are not *completely* represented by Federal Defendants, including, as demonstrated above, Applicants' reliance on the ATF's interpretation to structure their business and individual

practices, their intent to continue to produce, sell, purchase, and possess Non-Firearm Objects without government interference, and their ability to individually manufacture personal use firearms from the same. Accordingly, Applicants are entitled to intervention as of right.

## III. APPLICANTS HAVE, AT MINIMUM, DEMONSTRATED FINANCIAL INTERESTS THAT WILL BE IMPAIRED IF PETITIONERS ARE SUCCESSFUL

Applicants, their customers, and their members have economically and financially relied on the ATF's determination that Non-Firearm Objects are not "firearms" pursuant to the GCA, and will be directly impacted if Petitioners succeed. Applicants, therefore, at minimum, meet this Circuit's requirements for intervention based on financial interest.[6]

Second Circuit precedent establishes that intervenors with financial interests in the challenged regulation have a direct, substantial, and legally protectable interest to intervene. *Bridgeport Guardians v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010); *In re Pandora Media, Inc.*, No. 12-cv-08035-DLC, 2013 WL 6569872, at *8 (S.D.N.Y. Dec. 14, 2013). This includes an impact on proposed intervenors' existing business practices or even a *potential* cost to proposed intervenors, or their members, due to the outcome of the litigation. *See N.Y. Pub. Int. Rsch. Grp., Inc.*, 516 F.2d at 352 ("Specifically, we are satisfied that there is a likelihood that the pharmacists will make a more vigorous presentation of the economic side of the argument than would the Regents."); *N.Y. v. Scalia*, No. 20-cv-01689-GHW, 2020 WL 3498755 at *2 (S.D.N.Y. June 29, 2020) (determining proposed trade association intervenors had financial interest in the outcome because some members might face changing standards for liability if the rule were invalidated).

[6] Petitioners' argument that their lawsuit challenging the ATF's definition of "firearm" does not implicate Second Amendment protected rights is circular and borderline absurd. Applicants have Second Amendment protected rights that, depending on Petitioners' arguments and the scope of this litigation, may be impacted. Petitioners ask that this Court require the ATF to reconsider its current interpretation of "firearm" and extend that definition to include Non-Firearm Objects, which Applicants produce, sell, purchase, and/or own. It is Petitioners' own attempt to expand the definition of "firearm" that could directly implicate Applicants' Second Amendment protected rights.

This Circuit, when denying intervention in *U.S. Postal Service*, noted that "the Postal Service, a semi-private corporation, had as direct a *legal and economic interest* in the constitutionality of its monopoly as did [proposed intervenor]." 579 F.2d at 191 (emphasis added). In *U.S. Postal Service*, the court reasoned that economic interests should be considered, following *N.Y. Public Interest Research Group*, but determined that the existing party, the Postal Service, had an incentive to protect those economic interests. Federal Defendants have no such interest here. Federal Defendants are not "semi-private," have not relied on the ATF's actions to make business decisions, and will not be economically impacted should this Court rule for Petitioners.

Instead, like proposed intervenors in *New York v. Scalia* and *N.Y. Public Interest Research Group*, if Petitioners are successful, Applicants would suffer an immediate increase in overhead and purchase costs, significant alterations to their business and personal practices, and Applicants will all be prevented from—or exposed to criminal liability for—continuing to engage in their business and personal practices.

The outcome of the instant litigation poses a direct and substantial threat to the legally protected behavior of Applicants, their customers, and their members. Applicants have each transacted in Non-Firearm Objects and intend to continue transacting in Non-Firearm Objects in the future. Petitioners seek to impose their interpretation of the GCA on ATF's definition of "firearm," and in doing so, extend ATF's regulatory jurisdiction to Non-Firearm Objects. Extending ATF's regulatory burden to Non-Firearm Objects would result in harm to Applicants' reliance and economic interests—which interests are not represented by Federal Defendants.

**CONCLUSION**

For the foregoing reasons, Applicants respectfully request that this Court grant them intervention as of right pursuant to Rule 24(a)(2), or in the alternative, permissive intervention.

DATED this 10th day of December, 2020.

Respectfully Submitted,

*/s/ David D. Jensen*
David D. Jensen
DAVID JENSEN PLLC
33 Henry Street
Beacon, New York 12508
(212) 380-6615
david@djensenpllc.com

Cody J. Wisniewski*
**Pro Hac Vice* application pending
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
cody@mslegal.org

*Attorneys for Applicants in Intervention*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 10, 2020, I electronically filed the foregoing with the Clerk of the Court using this Court's CM/ECF system, which will send notification to all counsel of record, pursuant to Fed. R. Civ. P. 5 and Local Civil Rule 5.2.

Clerk of the Court
Southern District of New York | New York
Daniel Patrick Moynihan
U.S. Courthouse
500 Pearl Street
New York, New York 10007
(212) 805-0136

Attorneys for Petitioners:

Eric Tirschwell
Len Kamdang
Aaron Esty
Krystan Hitchcock
EVERYTOWN LAW
450 Lexington Avenue, P.O. #4184
New York, New York 10024
Telephone: (646) 324-8222

Daniel Grooms
Elizabeth B. Prelogar
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
Telephone: (202) 776-2042

Kathleen Hartnett
COOLEY LLP
101 California Street, 5th Floor
San Francisco, California 94111-5800
Telephone: (415) 693-2000

Attorneys for Defendants:

AUDREY STRAUSS
Acting United States Attorney for the Southern District of New York

ALEXANDER J. HOGAN
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2799

*/s/ David D. Jensen*
David D. Jensen
DAVID JENSEN PLLC