**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **CITY OF SYRACUSE, NY; CITY OF SAN JOSE, CA; CITY OF CHICAGO, IL; CITY OF COLUMBIA, SC; EVERYTOWN FOR GUN SAFETY ACTION FUND; and EVERYTOWN FOR GUN SAFETY SUPPORT FUND,** | **Case Number: 1:20-cv-06885-GHW** |
| **Petitioners,** | |
| **v.** | |
| **BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; REGINA LOMBARDO, in her official capacity as Acting Deputy Director of Bureau of Alcohol, Tobacco, Firearms and Explosives; UNITED STATES DEPARTMENT OF JUSTICE; and WILLIAM BARR, in his official capacity as ATTORNEY GENERAL, U.S. Department of Justice,** | |
| **Defendants.** | |

**MEMORANDUM OF LAW OF POLYMER80, INC.**
**<u>IN SUPPORT OF ITS MOTION TO INTERVENE IN THIS ACTION</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

PERTINENT FACTS ......................................................................................................... 4

ARGUMENT ...................................................................................................................... 9

   THE COURT SHOULD GRANT THE INSTANT MOTION.................................... 9

     A.   Polymer80 Is Entitled To Intervention As Of Right. ...................................... 9

       1.   Polymer80, In All The Circumstances, Timely Filed The Instant Motion. ............... 10

       2.   Polymer80 Meets The Tests Relating To Its Interest
           In This Action And The Possible Impairment Thereof. ............................................ 12

       3.   The Present Defendants Do Not And Cannot Adequately
           Represent Polymer80's Interests In This Proceeding. ................................................ 14

     B.   Alternatively, The Court Should Permit Polymer80 To Intervene. ............................ 20

   CONCLUSION .................................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ass'n of Conn. Lobbyists LLC v. Garfield,*
   241 F.R.D. 100 (D. Conn. 2007) ........................................................................... 22

*Bldg. And Realty Inst. Of Westchester And Putnam Counties, Inc. v. New York,*
   2020 WL 566781 (S.D.N.Y. Sept. 23, 2020) ........................................................ 11

*Brennan v. N.Y.C. Bd. Of Educ.,*
   260 F.3d 123 (2d Cir. 2001) ....................................................................... 10, 12, 14

*Brumfield v. Dodd,*
   749 F.3d 339 (5th Cir. 2014) ............................................................................... 13

*Butler, Fitzgerald & Potter v. Sequa Corp.,*
   250 F.3d 171 (2d Cir. 2001) ........................................................................... 14, 15

*Center For Biological Diversity v. U.S. Fish & Wildlife,*
   2012 WL 13049186 (N.D. Cal.   Mar. 22, 2012) ................................................. 15

*Comer v. Cisneros,*
   37 F.3d 775 (2d Cir. 1994) .................................................................................. 21

*Commack Self-Serv. Kosher Meats, Inc. v. Rubin,*
   170 F.R.D. 93 (E.D.N.Y. 1996) ..................................................................... 13, 22

*Degrafinreid v. Ricks,*
   417 F. Supp. 2d 403 (S.D.N.Y. 2006) ................................................................. 20

*Diamond v. Charles,*
   476 U.S. 54 (1986) ............................................................................................... 13

*Donaldson v. United States,*
   400 U.S. 517 (1971) ............................................................................................. 12

*Dow Jones & Co., Inc. v. U.S. Dep't. of Justice,*
   161 F.R.D. 247 (S.D.N.Y. 1995) ................................................................... 10, 11

*Eddystone Rail Co., LLC v. Jamex Transfer Servs., LLC,*
   289 F. Supp.3d 582 (S.D.N.Y. 2018) ............................................................. 10, 20

*Floyd v. City of New York,*
   770 F.3d 1051 (2d Cir. 2014) .............................................................................. 10

*Forest Conservation Council v. U.S. Forest Serv.*,
    66 F.3d 1489 (9th Cir. 1995).................................................................................. 15

*Fresno Cty. v. Andrus*,
    622 F.2d 436 (9th Cir. 1980)................................................................................. 16

*Great Atl. & Pac. Tea Co., Inc. v. Town of E. Hampton*,
    178 F.R.D. 39 (E.D.N.Y. 1998) ............................................................................ 12

*Herdman v. Town of Angelica*,
    163 F.R.D. 180 (W.D.N.Y. 1995)......................................................................... 13

*Laroe Estates, Inc. v. Town of Chester*,
    828 F.3d 60 (2d Cir. 2016)........................................................................... 11, 14

*MasterCard Int'l Inc. v. Vista Int'l Serv. Ass'n, Inc.*,
    471 F.3d 377 (2d Cir. 2006) ................................................................................. 10

*McConnell v. Fed. Election Comm'n*,
    540 U.S. 93 (2003) ................................................................................................ 10

*McNeill v. N.Y.C. Hous. Auth.*,
    719 F. Supp. 233 (S.D.N.Y. 1989)........................................................................ 20

*Miller v. Silbermann*,
    832 F. Supp. 663 (S.D.N.Y. 1993)........................................................................ 21

*Mortg. Lenders Network, Inc. v. Rosenblum*,
    218 F.R.D. 381 (E.D.N.Y. 2003) .......................................................................... 11

*N.Y. Pub. Interest Research Grp., Inc. v. Regents of Univ. of N.Y.*,
    516 F.2d 350 (2d Cir. 1975).................................................................................. 12

*NAACP v. New York*,
    413 U.S. 345 (1973) .............................................................................................. 11

*New York v. Pruitt*,
    2018 WL 1684341 (S.D.N.Y. Apr. 5, 2018).......................................................... 20

*New York v. Scalia*,
    2020 WL 3498755 (S.D.N.Y June 29, 2020)................................................... 17, 21

*New York v. U.S. Dep't. of Educ.*,
    2020 WL 3962110 (S.D.N.Y. July 10, 2020) ........................................................ 19

*New York v. U.S. Dep't of Health & Human Servs.*,
    2019 WL 3531960 (S.D.N.Y. Aug. 2, 2019).................................................... 17, 21

*Olin Corp. v. Lamorak Ins. Co.*,
   325 F.R.D. 85 (S.D.N.Y. 2018).................................................................. 11, 20

*Republic of the Philippines v. Abaya*,
   312 F.R.D. 119 (S.D.N.Y 2015)................................................................ 10

*SEC v. Everest Mgmt. Corp.*,
   475 F.2d 1236 (2nd Cir. 1972).................................................................. 16

*Sherman v. Town of Chester*,
   339 F. Supp. 3d 346 (S.D.N.Y. 2018)...................................................... 10, 11, 14

*Sierra Club v. Espy*,
   18 F.3d 1202 (5th Cir. 1994)..................................................................... 15

*Spangler v. Pasadena City Bd. of Ed.*,
   552 F.2d 1326 (9th Cir. 1977)................................................................... 20, 21

*Town of Chester, N.Y. v. Laroe Estates, Inc.*,
   137 S. Ct. 1645 (2017) ............................................................................. 10

*Town of No. Hempstead v. Vill. of North Hills*,
   80 F.R.D 714 (E.D.N.Y. 1978).................................................................. 16

*Trbovich v. United Mine Workers of Am.*,
   404 U.S. 528 (1972) .................................................................................. 14

*U.S. Postal Serv. v. Brennan*,
   579 F.2d 188 (2d Cir. 1978)...................................................................... 20, 21, 22

*U.S. v. City of N.Y.*,
   198 F.3d 360 (2d Cir. 1999)...................................................................... 15

*U.S. v. Columbia Pictures Indus., Inc.*,
   88 F.R.D. 186 (S.D.N.Y. 1980)................................................................. 20

*Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*,
   922 F.2d 92 (2d Cir. 1990)........................................................................ 12

*Wilderness Soc'y v. U.S. Forest Serv.*,
   630 F.3d 1173 (9th Cir. 2011) ................................................................... 15

## **Statutes**

5 U.S.C. § 706 (2) ................................................................................................................ 7

5 U.S.C. § 706 (1) ................................................................................................................ 7

18 U.S.C. §§ 921 ................................................................................................................. 4

## **Rules**

Fed. R. Civ. P. 24 .............................................................................................................. 12

Fed. R. Civ. P. 24(a) ........................................................................................................... 9

Fed. R. Civ. P. 24(b) .................................................................................................. Passim

## **Other Authorities**

7C C.A. Wright, *et al.*, *Federal Practice and Procedure* § 1908.1 (3d ed. 2019) ....................... 13

7C C.A. Wright, *et al.*, *Federal Practice and Procedure* § 1909 (3d ed. 2019) ................... 14, 15

Polymer80, Inc. ("Polymer80" or "Company") respectfully submits this Memorandum of Law, along with the Declaration of David L. Borges, dated December 29, 2020, ("Borges Declaration"), in support of its motion ("Motion"), pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure, to intervene as of right in this action or, alternatively, for permissive intervention, pursuant to Fed. R. Civ. P. 24(b).  For all of the reasons set forth below and in the remainder of the record of this matter, the Motion is meritorious, and the Court should grant it, enabling Polymer80 to intervene as a defendant herein.

## PRELIMINARY STATEMENT

In this action, plaintiffs challenge, *inter alia*, the lawfulness under the Administrative Procedure Act ("APA") of three "determination letters" ("Determination Letters") that defendant Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), an arm of defendant United States Department of Justice ("DOJ"), issued during the Obama Administration, in February 2015, November 2015, and January 2017, respectively, to Polymer80 regarding certain of its products, including the Company's "PF940C" Blanks.  In each and every one of those Letters, ATF concluded, after in-depth scrutiny and consideration, that all of the products under review, including those Blanks, were decidedly *not* "firearms" under federal law.  However, the instant "Complaint For Declaratory And Injunctive Relief" ("Complaint") avers that those Letters were and are "arbitrary and capricious" and "contrary to law" under the APA.  In all the circumstances since the late August 2020 commencement of this action, Polymer80 has been awaiting defendants' initial, substantive responses to these averments.

Prior to the filing of any such response, on December 10, 2020, in a previously unannounced move that shocked Polymer80, given its longstanding practice of full cooperation with federal, State, and local law enforcement authorities across the country, a group of ATF agents, armed with a "Search and Seizure Warrant" ("Search Warrant") approved by a United States Magistrate Judge, appeared at the Company's Dayton, Nevada offices at 5 a.m.  Those agents remained there seizing and carrying away voluminous information and materials for over five hours and during that time also served Polymer80 with an expansive Grand Jury Subpoena ("Subpoena") emanating from the Office of the United States Attorney for the Central District of California.

It was not until over three days later that the government turned over the Affidavit of an ATF agent upon which the Search Warrant was predicated ("Search Warrant Affidavit").  That Affidavit stated, *inter alia*, that ATF now considers certain of Polymer80's products, known as "Kits," to be "firearms" under federal law.  And, most revealingly for present purposes, that Affidavit also disclosed that ATF now asserts that the Polymer80 Kit related to the possible building of a "PF940C" Blank is also a "firearm," notwithstanding ATF's crystalline January 2017 Determination Letter essentially to the contrary.  Additionally, according to the Search Warrant Affidavit, ATF appears now also to posit that the individual items within those Kits, in certain scenarios, may themselves be deemed "firearms" under federal law.  Finally, on December 14, 2020, the Assistant United States Attorney for the Central District of California, who had turned over the Search Warrant Affidavit the day before, orally notified Polymer80 that it was under investigation by his Office (which was and is working with ATF, whose "case agent" was the affiant on the Search Warrant Affidavit) and the Grand Jury that issued the Subpoena.  Suffice to say, Polymer80 will vigorously oppose any efforts to charge the Company with engaging in criminal activity of any sort, which it has *never* done.

Given these recent, rapidly developing, and disturbing circumstances, Polymer80 has had little choice but to file this Motion, seeking intervention in this action "as of right," pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure.  As we elucidate below, Polymer80 -- which potentially stands to lose more than one half of its annual revenue in the event of unfavorable rulings in this case -- easily meets the four settled criteria for such intervention, that is: (i) a timely motion; (ii) a significant protectable interest arising from this case; (iii) the possibility of that interest being negatively affected by this case; and (iv) the inadequacy of the current defendants in representing all of Polymer80's interests and concerns.  As to the latter, often dispositive factor, in the wake of events since December 10, 2020, neither ATF, nor DOJ, nor any of their senior officials can possibly adequately represent the Company in all respects in this proceeding, given their curious and conflicting pronouncements on certain of the Company's products directly at issue.  Thus, Polymer80's intervention as of right is wholly warranted.

Should the Court disagree, and as we further illustrate below, Polymer80 is alternatively entitled to intervene here "permissively," pursuant to Fed. R. Civ. P. 24(b).  The Company completely satisfies the fewer and less stringent tests for such relief than those governing an application for intervention as of right.

Whatever the rationale, this Court should grant the instant Motion and accord Polymer80 intervention as a defendant in this suit.

## PERTINENT FACTS

Polymer80 is a Nevada corporation with its principal place of business in Dayton, Nevada. Borges Decl. ¶ 4, at p. 2.  Founded in 2013, the company designs, develops, and sells innovative products and aftermarket accessories.  A foundational principle of the Company has always been its customers' inalienable Constitutional right to bear arms and their ability to engage lawfully with its products.  Plaintiffs' Complaint mentions Polymer80 no fewer than seventy (70) times. At least four of its five "Claims for Relief" turn on -- and seek to reverse -- U.S. government actions directly influencing the legality of several products of Polymer80.  However, the Company is not named as a party to the suit.

Plaintiffs commenced this action on August 26, 2020.  Simply put, their Complaint constitutes a frontal assault largely on the lawfulness and legitimacy of a January 2015 Interpretive Rule in the form of ATF Ruling 2015-1 ("Ruling 2015-1") and at least one subsequent pronouncement strengthening that ruling, as well as three separate Determination Letters that ATF issued to Polymer80 during the Administration of then-President Barack Obama, in February 2015, November 2015, and January 2017, respectively.  Those Letters, each and all, concluded, after the federal authorities weighed and considered voluminous submissions from concerned and affected parties, that several of Polymer80's products did *not* constitute "firearms" within the meaning of that term under the Gun Control Act of 1968 ("GCA"), 18 U.S.C. §§ 921 *et seq*.  The products addressed in the Classification Letters were and are an AR-15 Pattern Receiver Casting (February 2015), AR-10 type item (November 2015), and a "GC9" Blank and two "PF940C" Blanks (January 2017), respectively.[1]  Borges Decl. ¶ 5, at p. 2.  According to plaintiffs, these

---

[1] According to the January 2017 Determination Letter at issue, the PF940C Blank is "a solid core unibody design made out of a single casting and without any core strengthening inserts … [and] void of any indicators that designate or provide guidance in the completion of the firearm."

Letters and related ATF actions have given "the green light to the unregulated sale of unfinished ghost gun frames and receivers."[2]   Complaint ¶ 4, at p. 2.  As a consequence, the stakes are indeed high for the Company in this case, which stands to lose at least half (or more) of its annual revenue, should there be unfavorable decisions on the merits herein.  Borges Decl. ¶ 6, at p. 2.

The Complaint expends multiple pages propounding a disjointed, significantly inaccurate, and/or immaterial set of averments as to Polymer80 and its business activities, including its supposed manufacturing, advertising, sales, and distribution practices.  Among the incendiary and erroneous allegations of the lengthy Complaint, to all of which the Company has a great interest in responding, are the following:

- Polymer80 is "a leading online seller of unfinished gun frames, receivers, and ghost gun kits" (footnote omitted), Complaint ¶ 6, at p. 2.

- "Polymer80's homepage prominently touts the ATF letters and 2015 rule as proof that its unfinished frames and receivers are allegedly legal" (footnote omitted). *Id*. ¶ 6, at p. 3.

- "Polymer80's ghost guns are increasingly used throughout the country to commit violent crimes.  For example, of the 250 ghost guns recovered by Washington, D.C. police from 2017 through May 2020, over **80%** were manufactured by Polymer80" (footnote omitted). *Id*. ¶ 7, at p. 3.[3]

---

[2] This Motion is neither the vehicle -- nor is it the appropriate time -- to respond in depth to the Complaint's unfounded and far-ranging assertions.  For instance, Polymer80 does *not* manufacture "ghost gun" Kits, nor are those Kits, in the Company's view, "firearms" in any respect.  Suffice to say, plaintiffs are meaningfully in error in any number of ways, as Polymer80 will establish, if the Court grants the instant Motion.

[3] In late June 2020, the Attorney General for the District of Columbia ("AG") commenced a civil action propounding two Counts against Polymer80, alleging false and deceptive advertising on the Company's global website.  At or about the same time, the AG moved for a preliminary injunction.  In response, Polymer80, *inter alia*, moved to dismiss for lack of personal jurisdiction, stay all discovery, and stay said preliminary injunction motion.  The District of Columbia Superior Court has stayed both merits discovery and the preliminary injunction motion, while permitting the AG to obtain limited jurisdictional disclosure in advance of a hearing upon the Company's dismissal application set for February 12, 2021.

- "… Polymer80 – a leading supplier of ghost gun frames, receivers and kits, whose name includes the "80%" concept – offers "Buy Build Shoot™ kits," as well as instructional manuals and video for easily completing assembly" (footnote omitted). *Id.* ¶ 98, at p. 29.

- "Polymer80 is one of the largest sellers of ghost gun parts and kits." *Id.* ¶ 108, at p. 32.

- "Polymer80 prominently features the February 2015 ATF determination letter on its website homepage offering it as the answer to the question: 'Is it legal?'" (footnote omitted). *Id.* ¶ 111, at p. 33.

- "The February 2015 ATF determination letter linked to on Polymer80's homepage addressed an AR-15 receiver, which ATF erroneously determined was 'not a firearm' – even though it was designed to be, and is readily converted into, an operable weapon and thus satisfies the statutory definition of a "firearm" in the Gun Control Act." *Id.* ¶ 112, at p. 33.

- "Polymer80 received similar ATF determination letters from the Firearm Technology Industry Services Branch in November 2015 and January 2017, also available on Polymer80's website, which again concluded – arbitrarily and contrary to statute – that an AR-10-type receiver blank and certain Glock-type blanks were not "sufficiently complete" to be considered firearms under the Gun Control Act" (footnote omitted). *Id.* ¶ 113, at pp. 33-34.

The Complaint goes on to lodge various other inflammatory, substantially inaccurate, and/or misleading allegations about the Company and, above all else, is unremitting in its "ghost guns" mantra. *See, e.g., id.* ¶¶ 119, 138-39, 142, 146-47, at pp. 36, 40-41. To be sure, Polymer80 has a keen interest in refuting and disproving such averments and assuredly will be injured, if they are left uncontested.

6

The Complaint proceeds to propound five "Claims For Relief."  In the First such Claim, plaintiffs maintain that ATF Ruling 2015-1 is "arbitrary, capricious, and contrary to law" and so runs afoul of the APA, specifically, 5 U.S.C. § 706 (2).  *See id.* ¶ 175, at p. 45.  The Second, Third and Fourth Claims For Relief all similarly allege that the February 2015 (Second), November 2015 (Third), and January 2017 (Fourth) Determination Letters, respectively, likewise and each and all, are "arbitrary, capricious, and not in accordance with law," again in violation of the APA, 5 U.S.C. § 706 (2).  The Fifth and final Claim For Relief asserts that the ATF's supposed delay in addressing certain of plaintiffs' petitions for rulemaking was and is "unreasonable" and so contravenes the APA, 5 U.S.C. § 706 (1).

A substantial portion of the relief sought in the Complaint directly relates to, and could substantially and negatively affect Polymer80, including the following "requests" of the Court:

a)  Declare unlawful and set aside the 2015 rule;

b)  Declare unlawful and set aside the letter determinations to Polymer80 dated February 2015, November 2015, and January 2017; and

c)  Enjoin Defendants from applying a definition of "Firearm" that is contrary to the Gun Control Act, including any definition that permits unfinished frames and receivers from being treated as Firearms if they are designed to be or readily can be converted to operable weapons.

*Id.* at p. 50.

Polymer80 was not unaware of the filing of, and early developments in, this suit.  Indeed, the Company was most interested in scrutinizing and assessing all of the initial submissions from the present defendants in response to the Complaint.  To the best of Polymer80's knowledge, no such defense submissions have yet been filed.

Then, for some five hours during the early morning of December 10, 2020, ATF agents executed the Search Warrant, as authorized on December 9, 2020 by United States Magistrate Judge for the District of Nevada, William G. Cobb, at Polymer80's Dayton, Nevada headquarters. Borges Decl. ¶ 9, at p. 3. At the same time, those agents also served Polymer80 with the expansive Subpoena, dated December 10, 2020, drawn to it and issued out of the United States District Court for the Central District of California in support of a criminal investigation being conducted by both the United States Attorney for that District (an arm of DOJ) and ATF. *Id*. As the Borges Declaration makes more than clear, the events of December 10, 2020 and their aftermath have demonstrated that there is now a patently adversarial relationship between Polymer80, on the one hand, and defendants DOJ and ATF, on the other. *See id*. ¶¶ 10, 13-15, at pp. 3-5.

In fact, that Search Warrant sought detailed and sensitive information related to, *inter alia*, numerous Polymer80 products and/or "kits" that have some connection to the Determination Letters at the center of this action. Moreover, in light of the express contents of the Search Warrant Affidavit, it now appears to be ATF's new-found stance that certain of Polymer80's so-called "Buy Build Shoot Kits," including the Kit linked with the same PF940C Blanks that ATF's January 2017 Determination Letter pronounced "*not firearms*," *do* constitute "firearms" under federal law, a position that ATF prior to December 10, 2020 had never articulated to Polymer80 or the public before. *Id.* ¶¶ 12-14, at p. 4-5. Furthermore and tellingly, an Assistant United States Attorney for the Central District of California has informed Polymer80 that it is under criminal investigation by a Grand Jury in that District, and that that investigation engendered the Search Warrant and Subpoena. *Id.* ¶ 15, at p. 5. Suffice to say, we submit that, as of the filing of this paper, no reasonable observer, given these palpably adversarial recent interactions and those new disclosures by the government within the past few weeks, could responsibly contend or believe that DOJ

and/or ATF can adequately represent the interests of Polymer80 in this proceeding.  Accordingly, this Motion has ensued.

To the best of our knowledge, discovery has not begun, and this Court has yet to rule upon any potentially dispositive, pending application, with briefing on the parties' dueling summary judgment motions scheduled by Court Order to continue into March 2021.  Additionally, there appears to be one other intervention motion, filed in November 2020, before the Court that has yet to be decided.

## ARGUMENT

### THE COURT SHOULD GRANT THE INSTANT MOTION.

As illuminated below, the legal standards governing this Motion are clear and settled. Thereunder, Polymer80 is entitled to intervene in this action as of right pursuant to Fed. R. Civ. P. 24(a).  Alternatively, should this Court disagree, "permissive intervention" under Fed. R. Civ. P. 24(b) is warranted here.

### A.   Polymer80 Is Entitled To Intervention As Of Right.

Rule 24(a)(2) of the Federal Rules of Civil Procedure mandates that a Court award intervention "as of right" to any nonparty, who "claims an interest relating to the property or transaction that is subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  To intervene as of right, then, an applicant must show that it has: "(1) timely file[d] an application, (2) show[ed] an interest in the action, (3) demonstrate[d] that the interest may be impaired by the disposition of the action, and (4) show[ed] that the interest

is not protected adequately by the parties to the action."[4] *Brennan v. N.Y.C. Bd. Of Educ.*, 260 F.3d 123, 128-29 (2d Cir. 2001) (quotation marks and internal citation omitted) ("*Brennan*"). *See also Sherman v. Town of Chester*, 339 F. Supp. 3d 346, 358 (S.D.N.Y. 2018) ("*Sherman*").[5]

We turn now, *seriatim*, to each of these four elements of intervention as of right.

### 1.   Polymer80, In All The Circumstances, Timely Filed The Instant Motion.

Courts "have not imposed a hard and fast rule defining timeliness under Rule 24(a)(2), preferring instead ... that the ruling be based on all the circumstances of the case." *Dow Jones & Co., Inc. v. U.S. Dep't. of Justice*, 161 F.R.D. 247, 251 (S.D.N.Y. 1995) ("*Dow Jones*"). In the Second Circuit, such circumstances include: "(a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness." *Floyd v. City of New York*, 770 F.3d 1051, 1058 (2d Cir. 2014), *citing MasterCard Int'l Inc. v. Vista Int'l Serv. Ass'n, Inc.,* 471 F.3d 377, 390 (2d Cir. 2006). Since this action was initiated a little over four months ago, any assertion of untimeliness against Polymer80 is flawed. *See, e.g., Republic of the*

---

[4] Both Rule 24(a) and Rule 24(b) provide that intervention as of right and permissively, respectively, are authorized, if the proposed intervenor "is given an unconditioned right to intervene by a federal statute." The federal statute at the center of this action, the APA, does not appear to "give" such a "right" to Polymer80. Thus, we do not pursue that possible avenue to intervention any further in this Memorandum of Law.

[5] In *Town of Chester, N.Y. v. Laroe Estates, Inc*., 137 S. Ct. 1645 (2017) ("*Town of Chester*"), the Supreme Court held that a litigant must possess Article III standing to intervene as of right, "if the intervenor wishes to pursue relief not requested by a plaintiff" or "to pursue relief that is different from that which is sought  by a party with standing." 137 S. Ct. at 1645, 1648, 1651 (2017) (internal citations and quotation marks omitted) (emphasis supplied). Specifically, the Court held that "[f]or all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right." *Id*. at 1648. However, a District Court "need not address the standing of the intervenor-defendants" whose position is identical to that of named defendants. *McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 109 (2003), overruled on other grounds by *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010). *See also Eddystone Rail Co., LLC v. Jamex Transfer Servs., LLC,* 289 F. Supp.3d 582, 590 (S.D.N.Y. 2018) ("*Eddystone*"). It is possible, but not likely, that Polymer80 will not need to independently establish Article III standing for intervention as of right or otherwise. *See Town of Chester*, 137 S. Ct. at 1651.  However, if such a showing is necessary, there can be little doubt that the Company's posture on that Ruling and those Letters will raise substantial "federal questions" properly founding this Court's subject matter jurisdiction.

*Philippines v. Abaya*, 312 F.R.D. 119, 123 (S.D.N.Y 2015) (application in which plaintiffs waited "nearly a year to intervene in the action" was timely); *Mortg. Lenders Network, Inc. v. Rosenblum*, 218 F.R.D. 381, 383-84 (E.D.N.Y. 2003) (granting motion to intervene, when filed more than six months after the proposed intervenors knew or should have known of their interest in the litigation); *Dow Jones*, 161 F.R.D. at 251-53 (finding intervention motion timely, despite its filing after issuance of Order granting summary judgment). *See also Bldg. And Realty Inst. Of Westchester And Putnam Counties, Inc. v. New York*, 2020 WL 566781 (S.D.N.Y. Sept. 23, 2020) (intervention motion timely, when filed within four months of action's inception). *But see NAACP v. New York*, 413 U.S. 345, 367 (1973) (intervention motion denied, where suit had been pending for more than four months *and* the action had reached a "critical stage"). Here, tellingly, discovery has not yet begun, and Polymer80 was truly unaware of all the relevant facts and circumstances until, at the earliest, December 14, 2020, when it was informed it was under federal Grand Jury investigation. The Company has moved with all deliberate speed since then, notwithstanding the onset of the holiday season and the worsening pandemic, to prepare and file the instant motion.

Moreover, intervention at this stage will not cause anyone any prejudice, insofar as summary judgment briefing is months from conclusion, while the administrative record has been turned over, discovery has not begun, and Polymer80 will not and does not seek any undue pause in the proceedings. *See, e.g.*, *Sherman*, 339 F. Supp. 3d at 359 (noting that the Second Circuit recognized that intervention was timely, where "the parties ha[d] not even begun discovery"), citing *Laroe Estates, Inc. v. Town of Chester, N.Y.*, 828 F.3d 60, 67 (2d Cir. 2016) ("*Laroe*"). *See also Olin Corp. v. Lamorak Ins. Co.*, 325 F.R.D. 85, 88 (S.D.N.Y. 2018) ("*Olin*") (granting motion to intervene of right, even where "discovery deadlines have come and gone").

Therefore, Polymer80's motion is timely.

**2.      Polymer80 Meets The Tests Relating To Its Interest
In This Action And The Possible Impairment Thereof.**

Regarding the second and third governing elements of the intervention as of right standard, the Second Circuit defines the nature of the interest in the subject matter of the action under Rule 24(a)(2) as one that is "direct, substantial, and legally protectable[,]" as opposed to "remote from the subject matter of the proceeding, or ... contingent upon the occurrence of a sequence of events[.]" *Brennan*, 260 F.3d at 129, quoting *Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co*., 922 F.2d 92, 97 (2d Cir. 1990). *Accord*, *Donaldson v. United States*, 400 U.S. 517, 531 (1971) (requiring "significantly protectable interest"); *N.Y. Pub. Interest Research Grp., Inc. v. Regents of Univ. of N.Y.*, 516 F.2d 350, 352 (2d Cir. 1975) (*per curiam*) (finding interest and granting intervention of pharmacists in action challenging advertising of prescription drug prices); *Great Atl. & Pac. Tea Co., Inc. v. Town of E. Hampton*, 178 F.R.D. 39, 42 (E.D.N.Y. 1998) (finding the interest of environmental organization dedicated to preserving the rural character of a town "would likely be impaired," if controversy decided absent the organization). *See generally* Fed. R. Civ. P. 24 (Advisory Committee's Note) ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene[.]"). To be sure, Polymer80, facing four Claims For Relief targeting Ruling 2015-1 and three separate Determination Letters, possesses the requisite "interest," especially where the Company would face very adverse financial and commercial consequences from unfavorable decisions in this case.

Furthermore, interests such as those that Polymer80 might espouse, protected by a Constitutional provision such as the Second Amendment or a statute of general application, are construed broadly and are particularly likely to warrant intervention, when the lawsuit raises a question of public interest. "The Supreme Court has recognized that 'certain public concerns' may constitute an adequate 'interest' within the meaning of [Rule 24(a)(2)]." *Herdman v. Town of Angelica*, 163 F.R.D. 180, 187 (W.D.N.Y. 1995), quoting *Diamond v. Charles*, 476 U.S. 54, 68 (1986) (alteration in original). The Court, as a result, must "take into account both the public nature" of the instant litigation "and the basis for, and strength of, [proposed intervenors'] particular interest in the outcome of the litigation." *Id. Accord*, *Commack Self-Serv. Kosher Meats, Inc. v. Rubin*, 170 F.R.D. 93, 100 (E.D.N.Y. 1996). ("*Commack*"). *See also Brumfield v. Dodd*, 749 F.3d 339, 343 (5th Cir. 2014) ("The interest requirement may be judged by a more lenient standard if the case involves a public interest question or is brought by a public interest group. The zone of interests protected by a constitutional provision or statute of general application is arguably broader than are the protectable interests recognized in other contexts." (internal citations omitted)); 7C C.A. Wright, *et al*., *Federal Practice and Procedure* § 1908.1 (3d ed. 2019) ("[I]n cases challenging various statutory schemes as unconstitutional or as improperly interpreted and applied, the courts have recognized that the interests of those who are governed by those schemes are sufficient to support intervention.").

Here, this action could severely prejudice Polymer80 not just philosophically but financially.  In actuality, as a senior Company witness has attested under penalties of perjury, Polymer80 could lose over half of its annual revenue (and maybe as much as 75 percent thereof), should negative rulings ensue in this matter.

**3.      The Present Defendants Do Not And Cannot Adequately
Represent Polymer80's Interests In This Proceeding.**

As to the fourth and final element, intervention as of right is sound, when the proposed intervenor's interests are not "adequately represent[ed]" by "the existing parties." Fed. R. Civ. P. 24(a)(2). *See also Sherman*, 339 F. Supp.3d at 360, *citing Laroe*, 828 F.3d at 70. Courts must permit intervention under this factor, unless the interests of existing parties are "so similar to those of [intervenor's] that adequacy of representation [is] assured." *Brennan*, 260 F.3d at 132-33. This analysis does not require certainty about how existing parties will litigate the case; it is sufficient that representation of proposed intervenors' interests "'may be' inadequate." *Trbovich v. United Mine Workers of Am*., 404 U.S. 528, 538, 538 n.10 (1972) ("*Trbovich*") (observing "sufficient doubt about the adequacy of representation to warrant intervention"); 7C C.A. Wright, *et al*., *Federal Practice and Procedure* § 1909 (3d ed. 2019) (an applicant ordinarily should be permitted to intervene as of right "unless it is clear that the party will provide adequate representation for the absentee.").

Where, unlike here, a proposed intervenor has the same ultimate objectives as the current defendants, it is a proposed intervenor's burden to overcome the presumption of adequacy. *See Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179-80 (2d Cir. 2001) ("*Butler*"). The Second Circuit has not precisely defined what is necessary to discharge this burden. See *id*. at 180 (holding that, while "not an exhaustive list, ... evidence of collusion, adversity of interest, nonfeasance, or incompetence may suffice to overcome the presumption of adequacy."). Nevertheless, "[t]he burden to demonstrate inadequacy of representation is generally speaking 'minimal[,]'" *Id*. at 181, quoting *Trbovich,* 404 U.S. at 538 n.10.

However, the Second Circuit has "demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective[.]" *Butler*, 250 F.3d at 179. In that setting, the proposed intervenor "must rebut the presumption of adequate representation by the party already in the action." *Id*. at 179-80. And, "[t]he proponent of intervention must make a particularly strong showing of inadequacy in a case where the government is acting as *parens patriae*." *U.S. v. City of N.Y.*, 198 F.3d 360, 367 (2d Cir. 1999). *See also* 7C C.A. Wright & A.R. Miller, *Federal Practice and Procedure* § 1909 & nn. 24-27 (3d Ed. 2007 & Supp. 2019).  Whether this case is determined to be one in which – as Polymer80 contends – the present defendants cannot adequately represent all of the Company's interests, making its burden "minimal," or the Court concludes that Polymer80 still must make "a particularly strong showing of inadequacy," the record establishes that Polymer80 has met its burden on this fourth factor of the intervention as of right analysis.

In the first instance, it is indisputable DOJ and ATF are litigating on behalf of the general public and so are obliged to consider a wide spectrum of views, unlike Polymer80, which has a singular, traditionally corporate focus.  To be sure, those public interests, as allegedly facilitated here by DOJ and ATF, often come into conflict with those of profit-making entities.  *See Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1494 (9th Cir. 1995), *abrogated on other grounds*, *Wilderness Soc'y v. U.S. Forest Serv.,* 630 F.3d 1173, 1177-80 (9th Cir. 2011).  *See also Center For Biological Diversity v. U.S. Fish & Wildlife*, 2012 WL 13049186 at *2 (N.D. Cal. Mar. 22, 2012). ("While the government represents the interests of the public at large, [intervenor] represents its own financial interests in the potential regulation of its product.").  Where, as here, an intervenor has clear private interests, the difference between them and the public interest are sufficient to engender intervention.  *See Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994);

*Fresno Cty. v. Andrus*, 622 F.2d 436, 438-39 (9th Cir. 1980).  In fact, inadequacy of representation exists, where a proposed intervenor would be monetarily damaged by an adverse ruling in the underlying case, but the governmental parties would not.  *See SEC v. Everest Mgmt. Corp*. 475 F.2d 1236, 1239 (2nd Cir. 1972).  And, where it is likely that a private intervenor will make a more vigorous argument on the economic issues at bar than would the governmental defendants, the Court can find inadequacy of representation. *See Town of No. Hempstead v. Vill. of North Hills*, 80 F.R.D 714, 717 (E.D.N.Y. 1978).

The Borges Declaration establishes that not only will Polymer80 suffer grievously from adverse rulings on the merits of this case, but also that, at least since December 10, 2020, defendants DOJ and ATF have had an adversarial relationship with Polymer80, are investigating the Company and seeking to propagate the notion that certain of its products, including those specifically involved in this case (such as the PF940C Blanks), are "firearms" under the GCA – all to the great detriment of Polymer80.  In actuality, little could or would be more destructive of Polymer80's commercial well-being than that notion being adopted and approved in this case. Since one of the core issues at hand is whether the ATF's prior conclusions in the Determination Letters that the subject Company products (including those Blanks) are not such "firearms," it is difficult to fathom how, particularly given the upcoming change in Administrations and the realities arising from the facts set forth in the Borges Declaration, Polymer80 can effectively coexist "on the same side of the 'V'" as the government defendants.  Nor is it at all clear how those defendants could possibly advance all of Polymer80's arguments about its products and overall interests.  It surely would be asking and expecting much too much of DOJ and ATF to successfully engage in such legal and intellectual gymnastics.

At bottom, ATF (and DOJ) have some explaining to do.  In January 2017, ATF concluded in its Determination Letter of that date that two of Polymer80's PF940C Blanks were not "firearms" under the GCA.  This lawsuit, in part, attacks the legal correctness of that assessment, and defendants, one would think, are duty-bound to parry that attack.  Now, Polymer80 has been forced to reckon with the absence of certainty as to the government's position on many of its products, as well as the fall-out from events since December 10, 2020.  Those events have included the execution of the Search Warrant, service upon the Company of the Subpoena, and pronouncement from a knowledgeable Assistant United States Attorney that the Company is under criminal investigation -- the apparent premise of which is that Polymer80's Kits relating to the PF940C Blanks (and component parts of those Kits) *are* "firearms" under federal law.  Terming said defendants' dilemma on the PF940C Blanks and related Kits a "conflict of interest" would be a vast understatement and misnomer, indeed.  Otherwise put, a huge contradiction has been exposed that, we submit, requires a finding that the current defendants inadequately represent Polymer80's interests in this action.

In so contending, Polymer80 is not unmindful of two recent decisions by two District Judges in this District, one from this very Court.  *See New York v. Scalia*, 2020 WL 3498755 (S.D.N.Y June 29, 2020) ("*Scalia*"); *New York v. U.S. Dep't of Health & Human Servs.*, 2019 WL 3531960 (S.D.N.Y. Aug. 2, 2019) ("*HHS*").  In both cases, the Courts denied motions for intervention as of right, while granting intervention on a permissive basis.  Nonetheless, the record reflects far different facts and circumstances that tip the adjudicative balance in favor of intervention as of right here.

For instance and unlike in *HHS*, Polymer80 is not advocating that it is better situated to explain or defend prior decisions by ATF, a current defendant.  Polymer80 is arguing that it and only it can today intellectually consistently and cogently demonstrate that Ruling 2015-1 and the three subject Determination Letters (particularly, the January 2017 letter as to the PF940C Blanks) are neither arbitrary, nor capricious, nor contrary to law *and* themselves are incompatible with ATF's new-found postures as to the Company's Kits (including the one tied to building a PF940C Blank) and the individual items within those Kits.  The government's defense of said Ruling and Letters will surely not highlight the legal errors and misapprehensions contained in the Search Warrant Affidavit and so necessarily will not make all of the arguments that Polymer80 will and must to protect its interests.

Second, again unlike in *HHS*, there is virtually no speculation attendant to Polymer80's core position upon this Motion.  The Search Warrant issued.  It was executed. The Subpoena was served.  A federal Grand Jury has been convened.  The prosecutor said what he said to Polymer80. In sum, these developments embody a governmental sea-change as to the legality of certain Company products addressed in this case.  Simply put, the government defendants cannot, as a matter of intellectual integrity, argue, on the one hand, that Polymer80 PF940C Blanks are *not* "firearms" standing alone but *are* "firearms" when assembled with and through a Company Kit. The same glaring *non sequitur* leaps out, when focusing on the government's need to explain somehow how the individual components of those Kits *are* "firearms," while the PF940C Blanks that the Company itself assembles and sells are *not*.  Those government defendants may well be caught in a "Catch 22."

Third, and once more unlike in *HHS*, Polymer is decidedly *not* relying here upon the common wisdom that gun control policy and regulation will change with the ascendancy of the new Biden Administration.  While that may well happen, certain unfortunate facts are already settled for Polymer80.  Within the past three weeks, its offices were unexpectedly raided, notwithstanding its longstanding pattern and practice of full cooperation with governmental bodies.  The Search Warrant Affidavit has spoken for itself.  Polymer80 has taken the Assistant United States Attorney at his word. The Company is presently the "clear focus" of a criminal investigation being conducted by both DOJ and ATF in conjunction with a Central District of California Grand Jury.

Finally, unlike in both *HHS* and *Scalia* and perhaps most fundamentally, three of the five extant Claims For Relief turn wholly on governmental actions and decisions as to *Polymer80 itself*.  All three Determination Letters speak to the legal status of specific Company products, and *no one else's*.  Polymer80 is not akin to the doctor and medical and dental association, who sought intervention as of right in *HHS*, nor the five trade associations seeking the same relief in *Scalia*.  It is Polymer80's own products that are directly at issue in three Claims For Relief herein, and no one else will be as fundamentally affected by the outcome of this action.  With the current defendants on record as considering charging Polymer80 in regard to certain of the same products as are at the center of this case (the legality of which products those same defendants must somehow uphold), this Court is presented with a *sui generis* and compelling scenario in which intervention as of right must be the correct result.[6]

---

[6] Nor is this case analogous to an even more recent ruling from Judge Koetl of this District in *New York v. U.S. Dep't. of Educ.*, 2020 WL 3962110 (S.D.N.Y. July 10, 2020).  There, the Court found that the "objectives" of the movant and the governmental defendant were, in truth, "aligned."  Where in that case there might have been merely an "alternate strategy" or "different motives" in litigating, here there is a patent and outright conflict between the government's interests and those of Polymer80, which threatens the Company's very existence.

**B.      Alternatively, The Court Should Permit Polymer80 To Intervene.**

Under Fed. R. Civ. P. 24(b), a Court may, in its discretion, "permit anyone to intervene,"

provided that the proposed intervenor: (i) files a "timely motion," and (ii) "has a claim or defense

that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). The

"principal consideration" is "whether the intervention will unduly delay or prejudice the

adjudication of the rights of the original parties." *U.S. Postal Serv. v. Brennan,* 579 F.2d 188, 191

(2d Cir. 1978) *("Postal Service")* (internal quotation marks omitted). *See also Eddystone*, 289 F.

Supp. at 595, citing *Postal Service,* 579 F.2d at 191. Nevertheless, permissive intervention,

pursuant to Rule 24(b), "is to be liberally construed" in favor of intervention. *Olin,* 325 F.R.D. at

87, quoting *Degrafinreid v. Ricks,* 417 F. Supp. 2d 403,407 (S.D.N.Y. 2006). *See also McNeill*

*v. N.Y.C. Hous. Auth.,* 719 F. Supp. 233, 250 (S.D.N.Y. 1989).

Courts may consider other factors, including "'the nature and extent of the intervenors'

interests' ... and 'whether parties seeking intervention will significantly contribute to full

development of the underlying factual issues in the suit and to the just and equitable adjudication

of the legal questions presented.'" *Postal Service,* 579 F.2d at 191-92, quoting *Spangler v.*

*Pasadena City Bd. of Ed.,* 552 F.2d 1326, 1329 (9th Cir. 1977) ("*Spangler*")*.* Courts may further

weigh whether their interests are "adequately represented by the other parties." *Id.* But, this "is

clearly a minor factor at most." *U.S. v. Columbia Pictures Indus., Inc.,* 88 F.R.D. 186, 189

(S.D.N.Y. 1980). *See also New York v. Pruitt,* 2018 WL 1684341 at *1 (S.D.N.Y. Apr. 5, 2018)

(considering adequacy just one of several factors to be considered as to permissive intervention,

but not required).

In light of these entrenched authorities, permissive intervention by Polymer80 is more than appropriate.  First, the instant motion is timely for the reasons outlined above.  Second, the common questions of law and fact as between and among Polymer80 and the present defendants – the legality and propriety of Ruling 2015-1 and the three key Determination Letters – sound loud and clear.  *See Comer v. Cisneros*, 37 F.3d 775, 801-02 (2d Cir. 1994) (granting intervention to minority residents who had applied for or were denied housing subsidies, where the existing plaintiffs were challenging that subsidy program).  Critically, Polymer80's involvement will not "unduly delay or prejudice the adjudication of the rights of the original parties." *Postal Service,* 579 F.2d at 191. There has been no Answer from defendants. Summary judgment motion briefing is ongoing and will be for more than two more months pursuant to a schedule set by this Court. The other intervention motion on file is, to our knowledge, *sub judice*.  Moreover, while "adequacy of representation" is a far less significant consideration in the permissive intervention calculus, were the Court to find such adequacy upon the extant record, there is persuasive recent authority from this District that permissive intervention would still be in order here.  *See Scalia*, 2020 WL 3498755; *HHS*, 2019 WL 3531960.

Finally, it may be that Polymer80 and its counsel (along with those entities, lawyers, and other professionals supporting them) can offer specialized expertise and familiarity with core factual and legal issues that "will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Postal Service,* 579 F.2d at 192, quoting *Spangler,* 552 F.2d at 1329.  With the future of its products and the Company's commercial viability at stake, Polymer80 has a very strong incentive and unique perspective that will enable it to present to the Court the most complete picture of the salient issues.  *Miller v. Silbermann,* 832 F. Supp. 663, 674 (S.D.N.Y. 1993) (granting intervention to

individual tenants and tenant advocacy organization, because the proposed intervenor-defendants, "in light of their knowledge and concern, will greatly contribute to the Court's understanding of this case."). *See also Ass'n of Conn. Lobbyists LLC v. Garfield,* 241 F.R.D. 100, 103 (D. Conn. 2007) (finding that Court will benefit from intervenors' participation by "offer[ing] a unique, personal and highly relevant factual perspective to the law, its development, and its impact[,]" as well as "specialized expertise and substantial familiarity with the legal issues that are presented for review"); *Commack,* 170 F.R.D. at 106 (granting permissive intervention to religious groups, a rabbi, and individual consumers of kosher foods, since "the intervenors will bring a different perspective to the case and will contribute relevant factual variations that may assist the court in addressing the constitutional issue raised").  Plainly, if allowed to intervene, the Company can and will "significantly contribute" to the full and fair adjudication of the disputes before the Court. *Postal Service*, 579 F.2d at 192.

Accordingly, Polymer80 requests permission to intervene as a defendant in this action, should the Court decline to accord the Company that right.

## **CONCLUSION**

For all of the reasons described above and those evident in the remainder of the record of this matter, it is respectfully submitted that the Court should: (i) grant the instant Motion; (ii) determine that Polymer80 can intervene as a defendant in this action as of right, pursuant to Fed. R. Civ. P. 24 (a)(2); or, alternatively, (iii) extend permission to the Company to intervene herein, pursuant to Fed. R. Civ. P. 24(b); and (iv) award Polymer80 such further relief as may be deemed just and proper.

Dated: New York, New York
      December 30, 2020

                            **BARTON LLP**

                            By: _*/s/ James J. McGuire*_
                                   James J. McGuire

                            711 Third Avenue, 14th Floor
                            New York, New York 10017
                            Telephone: (212) 687-6262
                            jmcguire@bartonesq.com

Michael R. Patrick                            *Counsel to Polymer80, Inc.*
Mark A. Berube

*Of Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 30, 2020, I electronically filed the foregoing with the Clerk of the Court using this Court's CM/ECF system, which will send notification to all counsel of record.

*/s/ James J. McGuire*
James J. McGuire
