UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
                            :

CITY OF SYRACUSE, NY, CITY OF SAN   :
JOSE, CA, CITY OF CHICAGO, IL, CITY OF  :
COLUMBIA, SC, EVERYTOWN FOR GUN   :
SAFETY ACTION FUND and EVERYTOWN  :
FOR GUN SAFETY SUPPORT FUND,     :
                            :
              Plaintiffs,    :
                            :    No. 1:20-cv-06885-GHW
        v.                :
                            :
BUREAU OF ALCOHOL, TOBACCO,    :
FIREARMS AND EXPLOSIVES, REGINA   :
LOMBARDO, in her official capacity as Acting  :
Director of the Bureau of Alcohol, Tobacco,  :
Firearms, and Explosives, UNITED STATES  :
DEPARTMENT OF JUSTICE, and WILLIAM  :
BARR, in his official capacity as ATTORNEY  :
GENERAL, U.S. Department of Justice,    :
                            :
              Defendants.   :
                            :

------------------------------------- X

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO
INTERVENE AS DEFENDANT BY POLYMER80, INC.**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

ARGUMENT ....................................................................................................................... 7

    I.     Polymer80 is not entitled to intervene as a matter of right under Rule 24(a)(2). ................................................................................................................ 7

          A.     Polymer80's motion is untimely ............................................................. 8

          B.     Defendants adequately represent Polymer80 in this litigation ............... 13

    II.    Permissive intervention under Rule 24(b) is unwarranted................................. 16

CONCLUSION................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Battle v. City of N.Y.*, No. 11-CV-3599, 2012 WL 112242 (S.D.N.Y. Jan. 12, 2012) ................ 17

*British Airways Bd. v. Port Auth. of N.Y. & N.J.*, 71 F.R.D. 583 (S.D.N.Y. 1976)..................... 17

*Building and Realty Institute of Westchester and Putnam Counties, Inc. v. State of New York*, No. 19-CV-11285, 2020 WL 5658703 (S.D.N.Y. Sept. 23, 2020) .................................................. 9

*Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171 (2d Cir. 2001) ........................... 14, 15

*Chamness v. Bowen*, 722 F.3d 1110 (9th Cir. 2013) ........................................................ 8, 9, 10

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) ..................................... 16

*Eddystone Rail Co., LLC v. Jamex Transfer Servs., LLC*, 289 F. Supp. 3d 582 (S.D.N.Y. 2018) 17

*Floyd v. City of New York*, 770 F.3d 1051 (2d Cir. 2014) .................................................... 7, 8, 13

*Kamden-Ouaffo v. PepsiCo, Inc.*, 314 F.R.D. 130 (S.D.N.Y. 2016) .............................................. 8

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377 (2d Cir. 2006) ................. 7, 13

*New York v. Scalia*, No. 1:20-CV-1689, 2020 WL 3498755 (S.D.N.Y. June 29, 2020)............. 14

*New York v. U.S. Dep't of Health and Human Servs.*, No. 19-CV-4676, 2019 WL 3531960 (S.D.N.Y. Aug. 2, 2019) ............................................................................................. 14, 15

*New York v. United States Department of Education*, No. 20-cv-4260, 2020 WL 3962110 (S.D.N.Y. Jul. 10, 2020) ......................................................................................................... 16

*"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238 (2d Cir. 2006) ................. 8

*State of California v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, No. 3:20-cv-06761-EMC (N.D. Cal., Nov. 30, 2020) (*California v. ATF*) ..................................................... 4

*United States v. City of N.Y.,* 198 F.3d 360 (2d Cir. 1999)........................................................... 14

*United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968 (2d Cir. 1984) ....................... 14

*United States v. Pitney Bowes, Inc.*, 25 F.3d 66 (2d Cir. 1994).................................................... 17

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Statutes**

18 U.S.C. § 921(a)(3)...................................................................................................... 2, 3

5 U.S.C. §§ 701–06............................................................................................................ 2

**Other Authorities**

7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure (3d ed. 2007 & supp. 2019).................................................................................................................. 14

**Rules**

Fed. R. Civ. P. 24(a)(2).................................................................................................. 1, 7

Fed. R. Civ. P. 24(b) ..................................................................................................... 2, 17

## INTRODUCTION

The Court should deny Polymer80's Motion to Intervene (ECF No. 78) ("Motion"). Polymer80's Memorandum of Law (ECF No. 79) ("Memo") does not establish that intervention as a matter of right or permissive intervention is warranted here. Rather, it reveals unacceptable gamesmanship—Polymer80 strategically sat on the sidelines since the inception of this case, hoping to avoid further scrutiny by the authorities, but now seeks to intervene in the midst of summary judgment briefing, claiming to have had critical information all along. Such tactics should not be countenanced. At most, Polymer80 should be permitted to file as *amicus*.

Regarding intervention as of right under Federal Rule of Civil Procedure 24(a)(2), Polymer80 has failed to establish the requisite elements. ***First***, Polymer80's attempted intervention is untimely because it comes months after this case was filed, during a critical stage of dispositive motions practice, and would unduly delay the resolution of this case. The unusual circumstances surrounding Polymer80's motion for intervention—which came only after its business was raided by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") in December 2020 concerning its sale of all-inclusive "Buy Build Shoot" firearm kits, despite admittedly knowing about this lawsuit previously—shows that Polymer80's belated attempted entrance arises from a calculated strategy of evading regulatory oversight and thus should not be countenanced by the Court. ***Second***, Polymer80 has not rebutted the strong presumption of adequate representation by the federal government in defending ATF's actions. Polymer80's theory of inadequate representation is based on ATF's decision to regulate a *different* Polymer80 product—an all-inclusive gun-building kit—not the unfinished, standalone frames and receivers that are the subjects of the ATF determination letters at issue in this case. The "Buy Build Shoot" kit includes all the additional components necessary for assembling a functioning pistol, including a complete slide assembly and magazine, and ATF's explanation of its decision to take regulatory

1

action on the all-inclusive kit specifically reaffirmed ATF's decision not to classify as "firearms" the unfinished, standalone frames and receivers at issue here. Accordingly, ATF's actions with respect to Polymer80's "Buy Build Shoot" kit do not indicate that Defendants will not vigorously defend this action.

With respect to permissive intervention under Federal Rule of Civil Procedure 24(b), the Court should decline intervention for the same reasons that Polymer80's motion is untimely— permitting intervention at this stage would cause undue delay, prejudice the adjudication of Plaintiffs' claims, and extend the public health emergency that has been caused by ATF's unlawful actions. Put simply, Polymer80 should not be permitted to delay Plaintiffs' day in court and otherwise disrupt these proceedings through its strategic decision to sit on the sidelines and intervene at the last possible moment.

## BACKGROUND

### I.      This Litigation

In this action, Plaintiffs challenge under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06, an interpretive rule issued by the United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), three letter determinations issued by ATF to Polymer80, and ATF's failure to respond to Plaintiffs' petition for rulemaking. Plaintiffs allege that ATF's interpretive rule and the letter determinations, which disclaim ATF's authority to regulate certain unfinished firearm frames and receivers ("'ghost gun' components"), are all based on a flawed and erroneous interpretation and application of the Gun Control Act's ("GCA") definition of "firearm," *see* 18 U.S.C. § 921(a)(3), and all fail to provide, as required by the APA, reasoned explanations to support their conclusions. Compl. ¶¶ 174, 183, 189, 195 (ECF No. 1). Plaintiffs further allege that ATF's delay in responding to the petition for rulemaking, which asks ATF to reconsider its current interpretation of "firearm," is unreasonable as a matter of law given the public safety crisis

attributable to the proliferation of the ghost gun components that ATF currently allows to be purchased and assembled into operable firearms without any regulation. *Id.* ¶ 205. Accordingly, Plaintiffs have asked the Court to vacate ATF's actions, and to compel ATF to respond to the petition for rulemaking consistent with the APA's and the GCA's requirements.

Plaintiffs filed this action on August 26, 2020. ECF No. 1. On September 19, 2020, the parties held an initial conference at which they agreed that the action should be resolved at the summary judgment stage. ECF No. 35. The same day, the Court entered a briefing schedule directing Plaintiffs to file their motion for summary judgment on November 25, 2020 and directing Defendants to file their response and cross-motion for summary judgment on January 8, 2021. *Id.* On November 23, Defendants informed Plaintiffs that Defendants had mistakenly failed to produce the full administrative record. ECF No. 54. Accordingly, Plaintiffs received an extension and filed their motion for summary judgment on December 9, 2020. ECF No. 61. Defendants are now due to respond and file a cross-motion on January 29, 2021. ECF No. 87. In the meantime, on November 12, 2020, Zachary Fort, Frederick Barton, Blackhawk Manufacturing Group, Inc., and Firearms Policy Coalition, Inc. filed a motion to intervene as defendants. ECF. No. 43. On January 2, 2021, the Court denied this motion and informed those would-be intervenors that they could instead file a brief as amicus curiae, currently due on January 29, 2021. ECF No. 83.

To date in this litigation, ATF has reaffirmed its position challenged by Plaintiffs: that unfinished, standalone frames and receivers are not "firearms" under 18 U.S.C. § 921(a)(3). In its presentation to the Court during the October 5, 2020 Conference, Defendants stated that "the government's position is that if something is a receiver, is a solid piece of metal . . . that is not sufficiently readily convertible to qualify as a firearm." ECF No. 36 (Transcript) at 13:16–21. And on November 30, in its motion to dismiss a similar, later-filed lawsuit against ATF in the

Northern District of California, ATF contended that the Gun Control Act "unambiguously excludes receiver blanks" and that a "receiver blank is not a receiver."  *See* Motion to Dismiss at 15, 19 (Dkt. 29), *State of California v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, No. 3:20-cv-06761-EMC (N.D. Cal., Nov. 30, 2020) (*California v. ATF*).

## II.     Polymer80 and Its Belated Intervention Motion

From 2015 to 2017, ATF repeatedly determined that certain unfinished Polymer80 receivers and frames sold as standalone products are not "firearms" subject to ATF regulation.  In February 2015, ATF determined that an unfinished Polymer80 "AR-15 pattern receiver casting" was not a "firearm."  ATF0225–0228.[1]  Then, in November 2015, ATF determined that neither an unfinished "AR10-type item identified by [Polymer80] as a 'WARRHOGG BLANK'" nor an unfinished "Glock-type 'GC9 Blank'" was a firearm.  ATF0229–0247.  Finally, in January 2017, ATF determined that "two [unfinished] Glock-type 'PF940C Blank'" frames were not "firearms." ATF0253–0255.

But in February 2018, after Polymer80 submitted another unfinished Glock-type frame for ATF's review, ATF acknowledged that Polymer80 was selling this frame as part of a "kit" that included tools for turning the frame into a completed firearm.  Specifically, in evaluating Polymer80's request "for a classification of a Glock-type 'PF940V2 Blank,'" ATF observed "that the submitted sample [was] only a component used in the assembly of an end-item" and noted that the end-item, the "Polymer 80 Model PF940V2 80% Standard Pistol Frame Kit," included "Complete Finishing Jig, Drill bits and End Mill."  ATF Application for a Search Warrant (attached as Exhibit B), Exhibit 3 at 1–3.  ATF thus informed Polymer80 that ATF would "not render a classification on a <u>partial</u> product submission" and directed Polymer80 to "submit the

---

[1] References to the administrative record filed by Defendants at ECF No. 60 are cited herein as "ATFXXXX."

complete Polymer 80 Model PF940V2 80 % Standard Pistol Frame Kit."  *Id.* at 4 (emphasis in original).

Polymer80 did not submit the complete kit for ATF's review.[2]  Nevertheless, Polymer80 began advertising its kits on its website with a claim that ATF had affirmatively determined that the kits are not "firearms" subject to federal regulation.  To this day, Polymer80's website falsely states "that the G150 AR15 80% Receiver Kit, .308 80% Receiver Kit, *& the PF940C™ 80% Pistol Frame Kits* were classified by the Bureau of Alcohol, Tobacco, Firearms and Explosives as not falling within the federal definition of 'firearm' or 'frame or receiver.'" (emphasis added).[3]

On December 11, 2020, ATF raided a Polymer80 facility pursuant to a search warrant that focused on Polymer80's "Buy Build Shoot" kits, gun-building kits that contain *all* the necessary components of a firearm.  The warrant listed, in addition to various records detailing Polymer80's business practices, the "following items to be seized":

- "Buy, Build, Shoot" kits and components of "Buy, Build, Shoot" kits compiled or arranged in close proximity to one another indicating they were intended to be compiled into "Buy, Build, Shoot" kits;

- Handguns bearing no serial number;

- Communications and records concerning the manufacture, design, marketing, sale, shipment, and transfer of "Buy, Build, Shoot" kits;

- Communications and records concerning federal, state, and local firearms laws

---

[2] As noted in Plaintiffs' Motion for Summary Judgment, the ATF determined in 2015 that an unfinished AR-15 receiver that Polymer 80 disclosed was being sold along with a "kit" that included a jig, drill bits, screws, and a link to "instructions to finish the lower receiver," *was* a firearm.  *See* Plaintiffs' Memorandum of Law in Support of Summary Judgment (ECF No. 62) at 13 n.9 (citing ATF0195–0200).  But that determination letter did not rely on the fact that the unfinished receiver was being sold as part of a kit—it relied on the nature of the fire control cavity.  *Id.*  The administrative record produced in this case indicates that this 2015 determination is the only time that Polymer 80 ever submitted a kit in connection with its many requests for ATF determinations.

[3] Polymer80, *FAQs* (last visited January 22, 2021), https://www.polymer80.com/faqs (archived at https://web.archive.org/web/20210122164500/https://www.polymer80.com/faqs) (also attached as Exhibit C).  As ATF's Application for a Search Warrant explains, the PF940V2, which ATF refused to "approve" without reviewing the whole kit, is simply a newer version of the unfinished PF940C frame that was the subject of ATF's November 2, 2015 determination letter.  Ex. B at 19.

and regulations;

- Communications and records concerning "Buy Build Shoot" kits, or any other similar grouping of components that can be readily assembled into a firearm;

- Communications and records of payments for and shipments of "Buy Build Shoot" kits or any other similar grouping of components that can be readily assembled into a firearm;

- Communications and records concerning the sale or shipment of firearms and firearm components to individuals prohibited from possessing firearms;

ATF Search Warrant (attached as Exhibit A) at v–vii.

ATF's December 9, 2020 Application for a Search Warrant described the "Buy Build Shoot Kit" in detail, noting that "Polymer80 advertises to its customers that this kit 'contains all the necessary components' to build a complete firearm, including 'the 80% frame kit, complete slide assembly, complete frame parts kit, 10 round magazine and a pistol case.'"  Ex. B at 3.   The Application further noted that ATF agents had purchased "a number of 'Buy Build Shoot Kits' from the Polymer80 website" and that "an ATF Senior Special Agent assembled the kit into a fully functional firearm in approximately three hours."  *Id.* at 3–4.   And "[u]tilizing the components provided in another kit, a confidential informant working with the ATF . . . assembled a fully functional firearm in approximately 21 minutes."  *Id.* at 4.   The Application, however, specifically distinguished between the "unfinished [Polymer80] frames" that ATF has deemed not to be firearms and the full Polymer80 kits that also "include the slide, springs, ammunition magazine, and various other parts."  *Id.* at 15–17.

On December 30, 2020, Polymer80 filed the Motion to Intervene.  ECF No. 78.   Its Memorandum of Law acknowledges that it was aware of the instant suit for months—which openly challenges determination letters to Polymer80—but indicates that Polymer80 made the strategic decision *not* to intervene in a timely fashion.  Specifically, Polymer80 states that "since the late August 2020 commencement of this action, Polymer80 has been awaiting defendants'

initial, substantive responses to these averments." ECF No. 79 at 1. And, further: "Polymer80 was not unaware of the filing of, and early developments in, this suit. Indeed, the Company was most interested in scrutinizing and assessing all of the initial submissions from the present defendants in response to the Complaint. To the best of Polymer80's knowledge, no such defense submissions have yet been filed." *Id.* at 7. Yet Polymer 80 also claims that it did not have a basis for intervention sooner, stating that it "was truly unaware of all the relevant facts and circumstances until, at the earliest, December 14, 2020, when it was informed it was under federal Grand Jury investigation." *Id.* at 11.

Notably, Polymer80's motion is high on (unjustified and unsupported) rhetoric criticizing the theory of Plaintiffs' Complaint and Plaintiffs' assertions about Polymer80, further calling into question why Polymer80 failed to seek to correct the record sooner. *E.g.*, *id.* at 4 (claiming that the "Complaint constitutes a frontal assault" on "three separate Determination Letters that ATF issued to Polymer80"); *id.* at 5 (claiming that the "Complaint expends multiple pages propounding a disjointed, significantly inaccurate, and/or immaterial set of averments as to Polymer80 and its business activities"); *id.* (noting the allegedly "incendiary and erroneous allegations of the lengthy Complaint, to all of which the Company has a great interest in responding"); *id.* at 6 (similar).

## ARGUMENT

### I.      Polymer80 is not entitled to intervene as a matter of right under Rule 24(a)(2)

Under Rule 24(a)(2), a proposed intervenor must (1) file a timely motion; (2) "assert[] an interest relating to the property or transaction that is the subject of the action"; (3) demonstrate that "without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest"; and (4) show that its "interest is not adequately represented by the other parties." *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d

377, 389 (2d Cir. 2006). A "'[f]ailure to satisfy *any one* of these four requirements is a sufficient ground to deny the application.'" *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (quoting *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006)). "[T]he proposed intervenor bears the burden of demonstrating that it meets the requirements for intervention." *Kamden-Ouaffo v. PepsiCo, Inc.*, 314 F.R.D. 130, 134 (S.D.N.Y. 2016).

Intervention as of right should be denied for two independent reasons. *See Floyd*, 770 F.3d at 1057. First, considering all the relevant circumstances, Polymer80's motion is untimely. Second, Polymer80 fails to demonstrate, as it must, that the federal government will not adequately defend the ATF actions challenged here.

## A.   Polymer80's motion is untimely

Whether a motion to intervene is timely depends on "(a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness." *Floyd*, 770 F.3d at 1058. These factors, taken together here, indicate that Polymer80's motion is not timely.

### 1.   Intervention will prejudice Plaintiffs and cause unreasonable delay

Polymer80 filed its motion to intervene on December 30, 2020, more than four months after Plaintiffs filed their Complaint on August 26, 2020. *See* ECF Nos. 1 and 78. Although four months is not an unreasonable amount of time in isolation, Polymer80's intervention will disrupt the existing summary judgment briefing schedule and will delay the resolution of this case. Accordingly, Polymer80's motion, on the facts of this case, is unreasonably delayed.

Courts have held that intervention during dispositive motions practice prejudices the existing parties. In *Chamness v. Bowen*, 722 F.3d 1110 (9th Cir. 2013), the Ninth Circuit held that

a motion to intervene, filed five months after the complaint, was untimely where the "parties had submitted a joint case management report to the district court expressing the unanimous view that the case was likely to be resolved at the summary judgment phase," the plaintiffs "had filed a motion for summary judgment and [the] defendants had responded," and the "court had taken the motion under submission and indicated its intent to rule on the briefs." *Id.* at 1121–22. Allowing the third party to intervene, the court explained, "would entail substantial delays and inefficiencies resolving the case." *Id.* By contrast, in *Building and Realty Institute of Westchester and Putnam Counties, Inc. v. State of New York*, No. 19-CV-11285, 2020 WL 5658703 (S.D.N.Y. Sept. 23, 2020), this court rejected a claim of delay when an intervention motion filed several months into the case occurred "prior to any significant substantive motions." *Id.* at *7. Thus, although a few months' delay in seeking intervention may be timely in some cases, a motion to intervene is untimely if substantive motions practice has reached a critical stage and intervention could have been sought sooner.

Here, by publicly filed letter dated September 21, 2020, and by publicly filed order of the Court dated September 29, 2020, the parties agreed that the case should be resolved on early motions for summary judgment, with Plaintiffs' summary judgment motion due on November 25, 2020 and Defendants' response and cross-motion due on January 8, 2021. *See* ECF Nos. 28 and 35. On November 23, 2020, after the Government discovered that its initial disclosure of the administrative record was materially incomplete, the parties requested a two-week extension of the briefing schedule, which the Court granted. *See* ECF Nos. 54 and 68. Plaintiffs filed their summary judgment motion on December 9, 2020, and, in light of one further requested extension by Defendants, the remaining schedule is now set as follows: Defendants' response and cross-motion is due on January 29, 2021; Plaintiffs' reply is due on March 4, 2021; and Defendants'

reply is due on March 15, 2021.  ECF No. 87.  Any amicus brief from unsuccessful intervenors Zachary Fort et al. is due on January 29, 2021 (though we understand they may seek a one-week extension).  ECF No. 85.  Yet, due to belatedly seeking intervention, Polymer80's reply in support of intervention is not due until January 29, 2021—the same day Defendants' summary judgment filings are due.  In short, allowing Polymer80 to intervene at this stage would disrupt ongoing summary judgment proceedings, further delaying resolution of the action (which already has been delayed due to Defendant's incomplete administrative record and other extensions) and substantially prejudicing Plaintiffs.

As in *Chamness*, the parties to this case "expresse[d] the unanimous view that the case was likely to be resolved at the summary judgment phase" and that summary judgment should be resolved as quickly as possible.  *See Chamness*, 722 F.3d at 1122.  Indeed, as Plaintiffs informed the Court during the October 5, 2020, conference, Plaintiffs originally had contemplated moving for a preliminary injunction—but in recognition that a review of the full administrative record would benefit both parties, Plaintiffs and the Government agreed to a summary judgment briefing schedule that would allow for a quick, efficient resolution to the case.  ECF No. 36 (Transcript) at 8:3–11 (Counsel for Plaintiffs) ("As we noted in our letter, we believe early summary judgment practice in an APA case like this one makes the most sentence, particularly where the principal issues are questions of law . . . ."); *id.* at 9:13–16 (Counsel for Government) ("[W]e agree with the plaintiffs that this is the most expeditious way to handle this action and that it will largely turn on issues of law and also the contents of the administrative record.").   Given the pressing life-or-death issues presented by this case—namely, ATF's failure to properly classify as "firearms" lethal objects that are proliferating and being used to commit violent acts across the nation—further delay due to Polymer80's deliberate decision to sit out the case for months should not be permitted.

Polymer80 contends that its intervention would not be disruptive because "discovery has not yet begun." ECF No. 79 at 11. But as the Court knows, there will be no further discovery in this case. Indeed, the only procedural step preventing this court from resolving this case and issuing a final judgment on the merits is the submission of the remaining summary judgment briefs. Allowing Polymer80 to participate in the summary judgment phase will thus delay the resolution of this case, and, consequently, delay the redress sought by Plaintiffs from the ongoing public health emergency caused by ATF's actions.

### 2.    Polymer80's gamesmanship constitutes "unusual circumstances"

The unusual circumstances surrounding Polymer80's attempted intervention confirm that Polymer80's motion should be deemed untimely. Specifically, Polymer80 has acknowledged that it was aware of this lawsuit, which was filed in August 2020, but strategically chose not to intervene until the end of December 2020, after it was raided by the ATF for its commerce in "Buy, Build, Shoot" kits. ECF No. 79 at 7. At the same time, Polymer80 makes the contrary and misleading assertion that it "was truly unaware of all the relevant facts and circumstances, until at the earliest, December 14, 2020." *Id.* at 11. This gamesmanship should not be rewarded.

For the past five years, Polymer80 has built its brand and profits by taking advantage of ATF's deficient, piecemeal approach to firearms regulation and by refusing to provide ATF with requested materials that would make clear the scope of Polymer80's unlawful operations. As discussed above, with one exception that resulted in ATF determining that a Polymer80 kit *was* a firearm, *see supra* at pp. 5 n.1, Polymer80 has only submitted to ATF, and ATF has only "approved" as non-firearms, unfinished, standalone frames and receivers. *See supra* at pp. 4–5. Polymer80 has then repackaged such unfinished frames and receivers as components of all-inclusive kits, falsely claiming that such *kits* have received ATF approval. An FAQ on

Polymer80's website—still available to this day—provides, in response to the question of whether "the Polymer80 80% lower receiver require[s] transfer or registration through an FFL," "that the G150 AR15 80% Receiver Kit, .308 80% Receiver Kit, & the PF940C™ 80% Pistol Frame Kits were classified by the Bureau of Alcohol, Tobacco, Firearms and Explosives as not falling within the federal definition of 'firearm' or 'frame or receiver.'"[4]  But ATF has never determined that any Polymer80 kit is not a firearm, as Polymer80 has failed to submit one for review since receiving an unfavorable determination in 2015—indeed, Polymer80 even failed to submit its PF940V2 Glock-style kit after ATF specifically requested that Polymer80 "submit the complete [kit]" for ATF's review.  Ex. B, Ex. 3 at 4.  Knowing that ATF might deem the complete Glock kit to be a firearm, thus even more definitively rendering Polymer80's FAQ statement false, Polymer80 appears to have made a calculated, strategic decision not to reply to ATF's request for further information.

This background shines critical light on Polymer80's decision to wait until four months after the filing of the Complaint to attempt to intervene.   In less-than-forthright language, Polymer80 concedes that it was "not unaware of the filing of, and early developments in, this suit." ECF No. 79 at 7.  Put forthrightly:  Polymer80 knew about this suit from the beginning but did not seek to intervene, likely to prevent further ATF scrutiny or to avoid being bound by an adverse final judgment, despite now claiming to have information of great relevance to this dispute.  *See, e.g.*, *id.* at 5 (referring to allegedly "incendiary and erroneous allegations of the lengthy Complaint, to all of which the Company has a great interest in responding").

Polymer80 disingenuously seeks to excuse its strategic decision to sit out this case by stating that it was "truly unaware of all the relevant facts and circumstances until, at the earliest,

---

[4] Ex. C.

December 14, 2020, when it was informed it was under federal Grand Jury investigation." *Id.* at 11. In other words, Polymer80 suggests that it thought it could rely on ATF to defend ATF's decision that unfinished frames and receivers are not "firearms," but it could not have known that ATF would take the position that its kits are in fact "firearms." Polymer80's reliance on the recent ATF investigation is a false flag. ATF's position about Polymer80's more comprehensive gun-building kits was not an "unknown unknown" or even a "known unknown"—Polymer80 has known for almost *three years* of ATF's suspicion about Polymer80's gun-building kits, but has been studiously seeking to avoid ATF passing on those kits' legality, including in response to a direct request from ATF in February 2018. Accordingly, when Plaintiffs filed the Complaint in August 2020, Polymer80 knew exactly what the stakes of this case could be for Polymer80's business, but Polymer80 made the decision to sit it out.

Considering these "unusual" circumstances, *Floyd*, 770 F.3d at 1058, Polymer80's intervention is untimely. Polymer80 has for five years been playing regulatory arbitrage and has for five years been using ATF's ambiguous determination letters as business assets. In that light, Polymer80's attempted intervention looks less like a good faith effort to move with "all deliberate speed," ECF No. 79 at 11, and more like a last-ditch attempt to save the erroneous statutory construction that it has been exploiting for over half a decade. It should not be permitted to do so.

### B.     Defendants adequately represent Polymer80 in this litigation

To intervene as of right, Polymer80 also must show that its "interest is not adequately represented by the other parties." *MasterCard*, 471 F.3d at 389. This case is about whether ATF acted in accordance with the GCA and the APA when it issued the 2015 interpretive rule and the three Polymer80 letter determinations, as well as whether ATF has unreasonably delayed in responding to Plaintiffs' Petition. *See* Complaint Counts I–V. Although Polymer80 undoubtedly has an interest in ensuring that the three letter determinations are not vacated, ATF "has a strong

incentive to make every colorable argument" that it acted lawfully when it issued these determinations. *New York v. Scalia*, No. 1:20-CV-1689, 2020 WL 3498755, at * 3 (S.D.N.Y. June 29, 2020). Because Polymer80 is adequately represented by ATF, intervention as of right should be denied.

Where, as here, Polymer80 and Defendants have the "same ultimate objective" the Second Circuit "ha[s] demanded a more rigorous showing of inadequacy." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001). Specifically, when a proposed intervenor and a current party share "an identity of interest," the proposed intervenor "must rebut the presumption of adequate representation by the party already in the action." *Id.* at 179–80. Polymer80 has not and cannot do that here.

Polymer80 and Defendants both seek to uphold an ATF interpretive rule about the meaning of the term "firearm" and ATF determinations that certain Polymer80 products are not "firearms." Polymer80 thus bears the burden of establishing that Defendants' representation will be inadequate. *See New York v. U.S. Dep't of Health and Human Servs.*, No. 19-CV-4676, 2019 WL 3531960, at *5 (S.D.N.Y. Aug. 2, 2019) ("*N.Y. v. H.H.S.*") (proposed intervenors failed to show their interests were not adequately represented by government agency where intervenors and government agency "share the same goal: upholding the Rule"); *New York v. Scalia*, 2020 WL 3498755, at * 3 (same).

Polymer80's burden is especially heavy because Defendants are government agents. "The proponent of intervention must make a particularly strong showing of inadequacy in a case where the government is acting as *parens patriae*." *United States v. City of N.Y.,* 198 F.3d 360, 367 (2d Cir. 1999) (citing *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 985 (2d Cir. 1984)); *see also* 7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §

1909 (3d ed. 2007 & supp. 2019) ("The rare cases in which a member of the public is allowed to intervene in an action in which the United States, or some other governmental agency, represents the public interest are cases in which a very strong showing of inadequate representation has been made."). This heightened showing is required because there is "an assumption of adequacy when the government is acting on behalf of a constituency that it represents." *N.Y. v. H.H.S.*, 2019 WL 3531960, at *4 (citations omitted). Accordingly, "[i]n the absence of a very compelling showing to the contrary, it will be presumed that a state adequately represents its citizens when the applicant shares the same interest." *Id.*

Polymer80 has not offered any evidence sufficient to rebut the presumption that Defendants adequately represent Polymer80's interests. Indeed, as noted above, the evidence is directly to the contrary—in late November, the Government moved to dismiss a similar challenge to ATF's actions, and has given every indication it will defend this case similarly. *See supra* at pp. 5 n.1.

The presumption of adequate representation may be rebutted by "evidence of collusion, adversity of interest, nonfeasance, or incompetence" by the named party sharing the same interest. *Butler*, 250 F.3d at 180. Attempting to establish that Polymer80 and Defendants have an "adversity of interest," Polymer80 relies heavily on ATF's recent decision to take regulatory action with respect to Polymer80's "Buy Build Shoot" kit. ECF No. 79 at 16–19. "Simply put," Polymer80 contends, "the government defendants cannot, as a matter of intellectual integrity, argue, on the one hand, that Polymer80 PF940C Blanks are *not* 'firearms' standing alone but *are* 'firearms' when assembled with and through a Company Kit." *Id.* at 18.

For better or worse, Polymer80 is wrong. Despite Plaintiffs' firmly held view that Defendants' position in this case is unfounded, Defendants have argued and appear intent on

continuing to argue precisely what Polymer80 claims they cannot:  that Polymer80's unfinished, standalone PF940C frames are not firearms, but Polymer80's all-inclusive "Buy, Build, Shoot" kits are firearms.  As explained above, ATF's Search Warrant specifically focused on "Buy Build Shoot" kits and directed ATF agents to seize "components" only if the components were "compiled or arranged in close proximity to one another indicating they were intended to be compiled into 'Buy, Build, Shoot' kits."  Ex. A at v.  ATF's Search Warrant Application also highlighted the many different items included in the kits, describing the kits as "including 'the 80% frame kit, complete slide assembly, complete frame parts kit, 10 round magazine and a pistol case,'" Ex. B at 3, and specifically distinguishing between the "unfinished frames" that ATF had deemed not to be firearms and the full kits that "include the slide, springs, ammunition magazine, and various other parts,"  *id.* at 15–17.  Thus, despite Polymer80's "impossibility" argument, ATF's position appears in fact to be that "Buy Build Shoot" kits are firearms whereas unfinished, standalone frames and receivers are not.  Whether ATF is right, it is simply incorrect that ATF is failing to make the argument or to adequately defend this action.

To the extent Polymer80 is suggesting that Defendants will maintain their current position but put forth only a half-hearted defense, the "presumption of regularity" due executive branch officials prevents the Court from taking this suggestion seriously.  *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971).  Either the Government will put forth a full-throated defense or it will officially announce a change in position—both outcomes counsel against Polymer80's intervention in this case.

## II.   Permissive intervention under Rule 24(b) is unwarranted.

"When considering a motion to intervene by permission under Rule 24(b), a court considers substantially the same factors as for an intervention as 'of right.'"  *New York v. United States Department of Education*, No. 20-cv-4260, 2020 WL 3962110, at *4 (S.D.N.Y. Jul. 10, 2020).

And because "[t]he principal guide in deciding whether to grant permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties,'" *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994) (citing Rule 24(b)(2)), "the considerations that render [Polymer80] ineligible for intervention as of right under Rule 24(a) here militate strongly as well against granting permissive intervention under Rule 24(b)," *Eddystone Rail Co., LLC v. Jamex Transfer Servs., LLC*, 289 F. Supp. 3d 582, 595 (S.D.N.Y. 2018).

As elaborated above, the briefing schedule for this urgent case involving matters of public safety has already been extended twice due to Defendants' delays, and delaying it any further would seriously prejudice Plaintiffs, who have repeatedly emphasized the need for a quick, expedient resolution in order to put a halt to the ongoing public health emergency presented by ATF's failure to classify "ghost gun" components as "firearms."  Because Polymer80's motion will not even be adjudicated until after the Government has made its summary judgment submission on January 29, 2021, Polymer80's participation in the summary judgment phase will necessarily delay the case even further.  Accordingly, the Court should not permit Polymer80 to intervene.  At most, Polymer80 should be permitted to file an amicus brief (sufficiently in advance of Plaintiffs' reply brief to permit meaningful response).

## CONCLUSION

Polymer80 has failed to meet the requirements for intervention as of right and should not be granted permissive intervention for the reasons set forth above.  Intervention should therefore be denied.  To the extent Polymer80 believes it has perspectives that should be considered, those perspectives may be appropriately offered as *amici curiae.  See, e.g.*, *Battle v. City of N.Y.*, No. 11-CV-3599, 2012 WL 112242, at *7 (S.D.N.Y. Jan. 12, 2012); *see also British Airways Bd. v. Port Auth. of N.Y. & N.J.*, 71 F.R.D. 583, 585 (S.D.N.Y. 1976) ("[A] third party can contribute

usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention.").

Dated: New York, New York
          January 22, 2021

Respectfully Submitted,

COOLEY LLP

By:    /s/Stephanie Schuyler
          Stephanie Schuyler

55 Hudson Yards
New York, NY 10001-2157
Telephone: (212) 479-6000

Kathleen R. Hartnett
COOLEY LLP
101 California Street
San Francisco, CA 94111
Telephone: (415) 693-2071

Daniel Grooms
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004
Telephone: (202) 776-2042

Eric Tirschwell
Len Kamdang
Aaron Esty
Krystan Hitchcock
EVERYTOWN LAW
450 Lexington Avenue, P.O. #4184
New York, New York 10024
Telephone: (646) 324-82222

*Attorneys For Plaintiffs*