UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CITY OF SYRACUSE, NY, CITY OF SAN
JOSE, CA, CITY OF CHICAGO, IL, CITY OF
COLUMBIA, SC, EVERYTOWN FOR GUN
SAFETY ACTION FUND and EVERYTOWN
FOR GUN SAFETY SUPPORT FUND,

                  Plaintiffs,

vs.

BUREAU OF ALCOHOL, TOBACCO
FIREARMS AND EXPLOSIVES, REGINA
LOMBARDO, in her official capacity as Acting
Director of the Bureau of Alcohol, Tobacco,
Firearms, and Explosives, UNITED STATES
DEPARTMENT OF JUSTICE, and WILLIAM
BARR, in his official capacity as ATTORNEY
GENERAL, U.S. Department of Justice,

                  Defendants.

CIVIL ACTION
DOCKET NO.:  1:20-cv-06885-GHW

---

**BRIEF OF *AMICUS CURIAE* THE SECOND AMENDMENT FOUNDATION
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Matthew A. Goldstein (admitted pro hac vice)
FARHANG & MEDCOFF PLLC
4801 E. Broadway Boulevard, Suite 311
Tucson, AZ 85711
Tel: 520.214.2000 / Fax: 520.214.2001
mgoldstein@farhangmedcoff.com

David T. Hardy (pro hac vice forthcoming)
8987 E. Tanque Verde No. 265
Tucson, AZ 85749
Tel:  (520) 749-0241
dthardy@mindspring.com

*Attorneys for Amicus Curiae*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

CORPORATE DISCLOSURE STATEMENT ......................................................... iv

INTEREST OF AMICUS CURIAE ....................................................................... 1

INTRODUCTION ............................................................................................... 1

ARGUMENT ..................................................................................................... 2

I.    The Second Amendment Right to Firearm Parts .......................................... 2

II.    The Gun Control Act ................................................................................. 4

      A.    Congressional Deference to the Second Amendment ............................. 4

      B.    Definition of "Firearm" ...................................................................... 6

      C.    Definition of "Frame or Receiver" ...................................................... 7

III.    ATF Classifications of Unfinished Frame and Receiver Blanks ...................... 8

      A.    Classification of Frames and Receivers Focuses on Stage of Manufacture. .............. 9

      B.    The Current ATF Classification Approach is Longstanding. ................... 11

      C.    Time to Completion Has Never Been the Test. ..................................... 12

IV.    Forcing ATF to Adopt Plaintiffs' Temporal Rule Would Exceed Congressional Intent under the GCA and Violate the Second Amendment. ............................. 14

CONCLUSION ................................................................................................ 14

CERTIFICATE OF SERVICE .............................................................................. 16

## TABLE OF AUTHORITIES

**CASES**

*Bezet v. United States*, 276 F. Supp. 3d 576, 605 (E.D. La.  2017)...................................................3

*BFP v. Resolution Trust Corporation*, 511 U.S. 531, 537 (1994)...................................................6

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .......................................................................3

*Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011) ...........................................................3

*Jackson v. City and County of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014)........................3

*Russello v. United States*, 464 U.S. 16, 23 (1983)............................................................................7

*Sendra Corp. v. Magaw*, 111 F.3d 162 (D.C. Cir. 1997) ...............................................................12

*U.S. v. Miller*, 307 U.S. 174, 179 (1939)..........................................................................................2

*U.S. v. Prince*, 593 F.3d 1178, 1183 (10th Cir. 2010) .....................................................................9

*United States v. 1,100 MacHine Gun Receivers*, 73 F. Supp. 2d 1289, 1292 (D. Utah 1999)........7

*United States v. 16,179 Molso Italian .22 Caliber Winlee Derringer Convertible Starter
    Guns*, 443 F.2d 463, 465 (2nd Cir. 1971) ...................................................................................13

*United States v. Jimenez*, 191 F. Supp. 3d 1038 (N.D. Cal. 2016).................................................7

**STATUTES**

18 U.S.C. § 901(3).............................................................................................................................4

18 U.S.C. § 921 *et seq.* ......................................................................................................................1

26 U.S.C. § 5801 et seq. ....................................................................................................................7

26 U.S.C. § 5845(b)...........................................................................................................................7

26 U.S.C., Section 5845(b)..............................................................................................................12

Pub. L. 99-308 ..................................................................................................................................5

Pub. L. No. 75-785 ............................................................................................................................4

Pub. L. No. 90-618 ............................................................................................................................5

Pub.L. 90–351 ...................................................................................................................................4

**REGULATIONS**

27 C.F.R. § 478.11 ..................................................................................................6, 7, 9

27 C.F.R. § 479.11 ..........................................................................................................7

28 C.F.R. § 0.130(a)(1)–(2) ...........................................................................................8

**OTHER AUTHORITIES**

33 Fed. Reg. 18,558 (Dec. 14, 1968) ..............................................................................7

85 Fed. Reg. 82516, 82519 (Dec. 18, 2020) ...................................................................9

ATF Firearms Technology Branch Technical Bulletin 14-01 (Oct. 28, 2013) ...............9

ATF Letter to D. Kingsland April 20, 1978 ...................................................................11

ATF Letter to M. Drake, Jan. 21, 1980 ..........................................................................11

ATF Letter to M. Guzeldere, May 17, 2016....................................................................7, 9

ATF Letter to Polymer80, June 4, 2004 .........................................................................12

ATF Letter to TJ Osman, Sept. 15, 2017. ......................................................................10

ATF Web Notice, "Are some items being marketed as non-firearm 'unfinished' or '80%'
    receivers actually considered firearms?" ...............................................................10

ATF Website Notice, "Are '80%' or 'unfinished' receivers illegal?" ...........................11

Comptroller General of the United States, "Controls over Importing And Exporting
    Munitions Items", April 12, 1973 ...........................................................................5

S. Rep. 90-1097 ...............................................................................................................4

Solid Concepts 3D Prints Another Metal Gun, 'Reason', a 10mm Auto 1911," available at
    https://3dprint.com/21109/3d-print-metal-gun-reason/.............................................14

### CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, Plaintiff Second Amendment Foundation, Inc. ("SAF") hereby states that there is no parent corporation of SAF nor any publicly held corporation owning 10% or more of its stock.

## INTEREST OF AMICUS CURIAE

The Second Amendment Foundation ("SAF") is a non-profit 501(c)(3) membership organization that supports education, research, publications, and legal action about the right to bear arms under the Second Amendment.

The Framers of the Constitution understood the Second Amendment to protect not just the ability to possess arms, but the ability to make arms from raw materials and parts. Congress also recognized these protections in passing the Gun Control Act.

SAF comes as a friend of the Court to explain how Second Amendment protections support the government action being challenged and to show how ruling for Plaintiffs would expand federal government authority beyond the GCA to significantly diminish rights protected by the Second Amendment.

SAF also presents a quantitative assessment of the Administrative Record, which establishes how Defendants' longstanding approach to classifying frames and receivers is consistent, logical, and reasoned.

No one other than SAF and its counsel wrote or paid for this brief or parts of this brief.

## INTRODUCTION

The Second Amendment protects the right to possess and to make firearms, which includes the right to acquire the raw materials and parts needed to make firearms.

Congress kept the Second Amendment in mind when it passed the Gun Control Act of 1968 ("GCA"), 18 U.S.C. § 921 *et seq.*, and chose to exclude all parts except frames and receivers from GCA control. Consistent with this Congressional intent, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") long ago determined that unfinished frame and receiver blanks without any machine work or indexing have not yet reached a stage of manufacture in which they are classified as firearm frames or receivers under the GCA, and thus are not "firearms" subject to GCA control.

In determining what specific frame or receiver blanks constitute receivers under the GCA, ATF conducts a case-by-case physical examination of respective blank samples, looking at any machine work or indexing.  Despite Plaintiffs' claim to the contrary, there was no recent change to this classification approach.  Rather, since at least the 1970s, ATF has issued letters classifying blanks without any machine work or indexing as not subject to GCA control.  Similarly, ATF has issued letters classifying blanks with machine work or indexing of the fire-control cavity as subject to GCA control.

Forcing ATF to adopt the new approach to classification that Plaintiffs demand would greatly expand ATF authority beyond the GCA and violate rights protected by the Second Amendment by imposing restrictions on otherwise lawful Second Amendment activity excluded from the GCA.

## ARGUMENT

### I.   The Second Amendment Right to Firearm Parts

The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II.  When they wrote this language, the Framers of the Constitution had no concept of mass production of arms or of a firearms market dominated by a few national companies.[1]  Rather, when the Second Amendment was created, obtaining a firearm was very much a "home brew" operation.  Blacksmiths and craftsmen were involved in the trade.  But anyone competent with a forge and hammer might make a barrel; and anyone competent with chisels might make a gunstock.  Far from being an oddity or eccentricity, individual and homemade firearms were state of the art. *See e.g., U.S. v. Miller*, 307 U.S. 174,

---

[1] Gun manufacturing as a distinct form of industry did not originate until after the Framing, and it did not take hold until well into the 19th century.  Remington Arms, which boasts of being America's first gun manufacturer, was founded in 1816—in a blacksmith's shop. Colt, Winchester, and Smith & Wesson all were founded in the mid-1850s, long after the Framers were gone.

179 (1939) ("[O]rdinarily when called for [militia] service [able-bodied] men were expected to appear bearing arms supplied by themselves and of the kind in common use at the time.").

Consistent with historical rights that predate the Constitution, the Supreme Court has held that the Second Amendment secures an individual right to possess firearms. *See District of Columbia v. Heller*, 554 U.S. 570 (2008).  Because there is a right to possess firearms, there is, necessarily, an ancillary right to acquire them. *See e.g., Jackson v. City and County of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) (right to possess firearms implies a corresponding right to obtain the bullets necessary to use them.); *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011) ("The right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use…").  And at the time of the Constitution's framing, the most basic means of acquiring something was to make it.

The Second Amendment also protects a person's right to render their firearms operable. *Heller*, 554 U.S. at 630 (laws requiring that "firearms in the home be rendered and kept inoperable at all times" made "it impossible for citizens to use [firearms] for the core lawful purpose of self-defense and [was] hence unconstitutional.").  Here, the core right to possess firearms would not mean much without access to the parts needed to make firearms operable. Therefore, constitutional protection logically and necessarily extends to acquiring parts necessary to the operation of a person's constitutionally-protected firearm. *See Bezet v. United States*, 276 F. Supp. 3d 576, 605 (E.D. La.  2017) (restrictions on imported parts to assemble a firearm "likely impinge on the rights of law-abiding, responsible citizens… to acquire" firearms), *aff'd* 714 F. App'x 336, 341 (5th Cir. 2017).

Consistent with Second Amendment protections, and under the current status quo, a company with an ATF determination that their blank is a not a frame or receiver (a "negative determination letter") may sell the unfinished blanks free from GCA requirements.  These purchasers are generally persons who want to possess firearms for self-defense. *Heller*, 554 U.S. at 628 ("the inherent right of self-defense has been central to the Second Amendment right.").

- 3 -

They can purchase and complete unfinished frames and receivers on their own with certain tools, and can order other parts necessary to assemble a complete firearm. All these activities are protected by the Second Amendment and lawful under the GCA.

## II.   The Gun Control Act

### A.   Congressional Deference to the Second Amendment

In the early days of gun control, every single part of a gun was subject to regulation under the Federal Firearms Act of 1938 ("FFA"). Pub. L. No. 75-785, 52 Stat. 1250 (1938). This was because the FFA definition of "firearm" included firearm parts. *See* 18 U.S.C. § 901(3) (1964) ("any weapon . . . which is designed to expel a projectile or projectiles by the action of an explosive and a firearm muffler or firearm silencer, or any part or parts of such a weapon.").

The parts controls were overly burdensome on both the government and industry. So, in the Omnibus Crime Control and Safe Streets Act of Congress Act of 1968, Pub. L. 90–351, 82 Stat. 197 (June 19, 1968), Congress sought to minimize burdens and focus controls by removing "any part or parts" from the definition of "firearm" other than frames or receivers:

> Under the present definition of 'firearm', any part or parts of such a weapon are included. It has been found that it is impractical to have controls over each small part of a firearm. Thus, the revised definition substitutes only the major parts of the firearm; that is, frame or receiver for the words 'any part or parts'.

S. Rep. 90-1097 (Apr. 29, 1968).

Thereafter, Congress passed the GCA in 1968, Pub. L. No. 90-618, 82 Stat. 1213 (1968), which primarily regulates conventional firearms such as pistols, shotguns, and rifles.[2] At Section 101 of the Act, Congress found it important to expressly note, at the beginning of the GCA:

> [I]t is not the purpose of this title to place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, or use of firearms appropriate to the purpose of hunting, trapshooting, target shooting, personal protection, or any other lawful activity, and that this title

---

[2] The National Firearms Act ("NFA"), 26 U.S.C. § 5801 et seq., regulates sawed off shotguns, machineguns, and other narrow classes of more unusual firearms.

**is not intended to** discourage or eliminate the private ownership or use of firearms by law-abiding citizens for lawful purposes, or **provide for the imposition by Federal regulations of any procedures or requirements other than those reasonably necessary to implement and effectuate the provisions of this title.**

Pub. L. No. 90-618, § 101, 82 Stat. 1213 (emphasis added).

Congress reaffirmed its deference to Second Amendment protections in later amendments to the GCA by the Firearms Owners' Protection Act. Pub. L. 99-308, § 1, 100 STAT. 449, 456 (1986) ("[A]dditional legislation is required to reaffirm the intent of the Congress, as expressed in section 101 of the Gun Control Act of 1968, that 'it is not the purpose of this title to place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the ... possession ... of firearms appropriate to the purpose of ... lawful activity…'" (quoting Pub. L. No. 90-618, § 101, 82 Stat. at 1213)).

Consistent with the limited authority conferred by Congress under the GCA, ATF's implementing regulations do not prohibit law-abiding citizens from making firearms otherwise subject to the GCA for their own use. *See e.g.,* Administrative Record, Dkt. No. 60 (hereinafter, referenced by ATF Bates numbers) at ATF0302 ("it is completely legal for a law-abiding citizen to manufacture his or her own firearm."); *see also* https://www.atf.gov/firearms/qa/what-atf-doing-regards-people-making-their-own-firearms (last visited Jan. 31, 2021) ("An individual may generally make a firearm for personal use.").

Further consistent with the GCA and the Second Amendment, ATF does not seek to control parts other than frames and receivers that have reached a certain stage of manufacture. *See e.g.*, Comptroller General of the United States, "Controls over Importing And Exporting Munitions Items", April 12, 1973, p. 50 ("Only complete firearms and frames or receivers for these firearms come under the Gun Control Act controls."), www.gao.gov/assets/210/200273.pdf (last visited Jan. 31, 2021).

**B.**     **Definition of "Firearm"**

As defined by the GCA and ATF regulations, the term "firearm" consists of the following:

> (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive;
>
> (B) the frame or receiver of any such weapon;
>
> (C) any firearm muffler or firearm silencer; or
>
> (D) any destructive device.

18 U.S.C. § 921(a)(3); 27 C.F.R. § 478.11.

Plaintiffs claim that the GCA defines a "firearm" to include "the frame of a handgun, or the receiver of a long gun—so long as that building block was 'designed to' or could 'readily be converted' into a functional weapon." Dkt. 1 at ¶ 8.  However, the "designed to" and "readily be converted" language at subparagraph (A) of the GCA "firearm" definition does not apply to a frame or receiver at subparagraph (B) because:

- Subparagraph (A) of the definition refers to "any weapon" "designed to or [that] may readily be converted" and a frame or receiver is not a weapon.

- Frames and receivers are not "designed to" expel a projectile, but are designed for assembly with other parts to create a weapon designed to expel a projectile.

- Frames and receivers may not "readily be converted" to expel a projectile. Rather, frames and receivers are assembled with other parts to create a functioning firearm that can expel a projectile.

In addition, applying the "readily be converted" language for weapons at subparagraph (A) to frames and receivers identified at subparagraph (B) is contrary to Congressional intent behind creating a separate subparagraph for frames and receivers. *See BFP v. Resolution Trust Corporation*, 511 U.S. 531, 537 (1994) ("[I]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but

omits it in another,") (internal quotation and citation omitted); *Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (internal quotation and citation omitted).

**C.     Definition of "Frame or Receiver"**

Contemporaneously with the enactment of the GCA, ATF implemented a regulatory definition of "frame or receiver" based on known Congressional intent. 33 Fed. Reg. 18,558 (Dece. 14, 1968).  As explained by ATF:

> As early as 1964, Congress determined that the regulation of each firearm part was impractical and sought to regulate and require serialization of only the most important part of a firearm, the receiver. Thus, in the Gun Control Act of 1968 (GCA), Congress included the "frame" or "receiver" within the definition of "firearm". However, Congress did not define the terms "firearm frame" or "firearm receiver".

ATF Letter to M. Guzeldere, May 17, 2016, ATF0661-0666 at ATF663.

Under the ATF definition, a "frame or receiver" means "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." 27 C.F.R. § 478.11; *see also United States v. Jimenez*, 191 F. Supp. 3d 1038, 1041 (N.D. Cal. 2016) ("This means a receiver must have the housing for three elements: hammer, bolt or breechblock, and firing mechanism.").  For years, ATF has applied this definition in classification letter determinations under both the GCA and the NFA.[3]

---

[3] ATF regulation under the NFA presents an analogous situation where, same as the term "firearm" in the GCA, the term "machinegun" under the NFA is also defined to include the "frame or receiver of any such weapon." 26 U.S.C. § 5845(b). And frames and receivers are defined by the ATF in implementing the NFA the same as they are defined in implementation of GCA—i.e., as "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." 27 C.F.R. § 479.11; *see also United States v. 1,100 Machine Gun Receivers*,

III.    **ATF Classifications of Unfinished Frame and Receiver Blanks**

The Attorney General is responsible for enforcing the GCA and NFA and has delegated responsibility for administering and enforcing these statutes to the ATF Director, subject to the direction of the Attorney General and the Deputy Attorney General. *See* 28 C.F.R. § 0.130(a)(1)–(2).  The ATF Director delegated the authority to classify firearms pursuant to the GCA and NFA to the ATF's Firearms Technology Criminal Branch and the Firearms Technology Industry Services Branch, within the Firearms and Ammunition Technology Division ("FATD").

FATD supports the firearms industry and the general public by, among other things, responding to technical inquiries, and by testing and evaluating firearms samples submitted to ATF for classification under the GCA, the NFA, and the Arms Export Control Act ("AECA"), 22 U.S.C. § 2778, et seq.[4]  There is no requirement that the firearms industry or the public submit firearms to ATF for assessment of the firearm's proper classification.  However, many manufacturers submit requests for classification to ensure compliance with any applicable GCA and NFA requirements.

FATD classification reviews of frames and receivers involve a high level of technical expertise wherein ATF examiners perform detailed examinations and, at times, testing of blank samples submitted for review.  The ATF examiners look for any drilling, carving, or other machining and any indexing of the fire-control housing to determine whether an unfinished blank is classified as a frame or receiver, and thus a firearm under the GCA or NFA.

As recently explained by Defendant ATF, FATD uses the following procedure to ensure consistency in its classifications:

> A firearm voluntarily submitted to FTISB for classification is assigned to a Firearms Enforcement Officer ("FEO") who evaluates the firearm. This may include disassembly, test-firing, or other processes necessary to determine

73 F. Supp. 2d 1289, 1292 (D. Utah 1999) ("The definition of receiver under [former] 27 C.F.R. § 178.112 applies to both the Gun Control Act and the National Firearms Act.").

[4] Among other things, the AECA controls the import and export of firearms and other defense articles designated by ATF and the U.S. Department of State on respective agency control lists.

whether a submission falls under the purview of the NFA, GCA, or AECA. That FEO produces a draft report and that report is peer reviewed by another qualified FEO, and includes a review of the steps taken in the evaluation, the analysis and the conclusions. Therefore, it is not the case that a single FEO is solely responsible for a particular classification. Because of this, prior to any necessary legal review and before the classification letter is signed and finalized, at least two FEOs have reviewed the submission. … After the review by two FEOs, the classification is then reviewed by the Chief, FTISB, to further ensure consistency.

85 Fed. Reg. 82516, 82519 (Dec. 18, 2020).

**A.    Classification of Frames and Receivers Focuses on Stage of Manufacture.**

As explained by ATF:

The definition [of "frame or receiver" does not address the point at which an item becomes a "firearm frame" or a "firearm receiver." The definition of "firearm frame or receiver" therefore **describes "what" and not "when"**."

Guzeldere Letter at ATF0663.

Under ATF's definition of "frame or receiver", a receiver blank with no machining of any kind performed in the area of the trigger/hammer (fire-control) recess (or cavity) and no indexing (i.e., markings  that delineate machining points for the fire-control cavity) has not reach a state of manufacture in which it is classified as a receiver, and thus, is not a firearm. 27 C.F.R. § 478.11. It is only once the cavity is machined and/or indexed, that a blank may be considered a frame or receiver of a firearm, and thus a firearm. "Until that time, it is not even a true component of a firearm, only a potential component of a firearm." *U.S. v. Prince*, 593 F.3d 1178, 1183 (10th Cir. 2010).   As further explained and illustrated in ATF Firearms Technology Branch Technical Bulletin 14-01:

[A]n AR-15 type receiver which has <u>no machining of any kind performed in the area of the trigger/hammer (fire-control) recess (or cavity)</u> might not be classified as a firearm. Such a receiver could have **all** other machining operations performed, including pivot-pin and takedown-pin hole(s) and clearance for the takedown-pin lug, but must be completely solid and un-machined in the fire-control recess/cavity area.

ATF Firearms Technology Branch Technical Bulletin 14-01 (Oct. 28, 2013), ATF0272-0283 at ATF0272 (emphasis in original).

- 9 -

Handgun frames go through a similar case-by-case analysis in which the stage of manufacture determines outcome of the analysis.  For example, ATF determined that 1911-type frame blanks have reached a stage of manufacture to be classified a "firearm" under the GCA when presented in any one of the following configurations:

1. The slide rails are completed or indexed.
2. The barrel seat and barrel lug area are solid, unmilled, unmachined, and unindexed; and
   a. The hammer pivot pin hole is completed or indexed, and
   b. The sear pivot pin hole is completed or indexed.
   [*one pin hole or the other may be completed or indexed*]
3. The barrel seat and barrel lug area is milled, machined or indexed; and
   a. The hammer pivot pin hole is completed or indexed, or
   b. The sear pivot pin hole is completed or indexed.
   [*neither pin hole may be completed or indexed*]

ATF Letter to TJ Osman, Sept. 15, 2017, at ATF0411-0414.

Not all unfinished blanks are excluded from the GCA.  *See e.g.*, ATF Web Notice, "Are some items being marketed as non-firearm 'unfinished' or '80%' receivers actually considered firearms?", ATF0311 ("In some cases, items being marketed as 'unfinished' or '80%' receivers do actually meet the definition of a 'firearm' as defined in the Gun Control Act (GCA)").  For years, ATF has issued classification determinations finding that certain unfinished frame and receiver blanks are subject to the GCA based on the extent of machining completed or indexing present.[5]

---

[5] *See e.g.*, ATF0001-0002, ATF0011, ATF0022, ATF0047-0048, ATF0049, ATF0050, ATF0051-0052, ATF0057, ATF0058-0059, ATF0060-0061, ATF0062-0063, ATF0064, ATF0067-0068, ATF0069-0070, ATF0071-0072, ATF0073-0074, ATF0075-0078, ATF0079-0080, ATF0081-0082, ATF0083-0084, ATF0085-0086, ATF0087-0088, ATF0089-0094, ATF0096-0097, ATF0098, ATF0099-0100, ATF0103-0105, ATF0106-0111, ATF0112-0115, ATF0119-0120, ATF0121-0122, ATF0123-0128, ATF0129-0130, ATF0131-0132, ATF0133-0135, ATF0136-0145, ATF0156-0158, ATF0161-0166, ATF0167-0168, ATF0169-0170, ATF0171-0172, ATF0173-0175, ATF0176-0178, ATF0179-0181, ATF0182-0184, ATF0185-0187, ATF0188-0189, ATF0190-0192, ATF0193-0194, ATF0219-0221, ATF0222-0224,

**B.**     **The Current ATF Classification Approach is Longstanding.**

Plaintiffs claim that ATF's position on unfinished receiver blanks is less than 6 years old (Dkt. 1 at ¶ 8) and conflicts with ATF's prior positions.  But, as correctly noted by ATF in it's Motion for Summary Judgment: "over the past several decades ATF has consistently focused on the degree of machining a device has undergone (and hence its degree of completeness) in order to determine whether the device is a firearm." Dkt. 98 at 7.

In fact, ATF has recognized that the GCA does not authorize control of certain unfinished frame and receiver blanks based on stage of manufacture since at least the 1970s.  For instance, in a 1978 classification letter, ATF found:

> Our examination reveals that Item 2, the rough frame, is not a firearm as defined. However, Item 3, the machined frame, has reached a stage of manufacture such that it may be readily converted to functional condition.

ATF Letter to D. Kingsland April 20, 1978, ATF0001-0002, at ATF0001; *see also*, ATF Letter to M. Drake, Jan. 21, 1980, at ATF0011 ("A 'piece of metal' is considered to be a firearm receiver and subject to the provisions of the Gun Control Act of 1968 (GCA) at such time as it reaches a stage in manufacture where it can be readily converted to a functional condition."); ATF Website Notice, "Are '80%' or 'unfinished' receivers illegal?", ATF0312-0313 at ATF0312 ("ATF has long held that items such as receiver blanks, 'castings' or 'machined

---

ATF0225-0228, ATF0229-0247, ATF0253-0259, ATF0314-0320, ATF0342-0343, ATF0411-0414, ATF0422-0423, ATF0424-0425, ATF0426-0427, ATF0428-0429, ATF0430-0431, ATF0432-0433, ATF0436-0437, ATF0438-0441, ATF0445-0448, ATF0449-0450, ATF0451-0452, ATF0453-0454, ATF0455-0456, ATF0457-0458, ATF0459-0461, ATF0462-0463, ATF0464-0466, ATF0460-0470, ATF0471-0475, ATF0479-0480, ATF0481-0482, ATF0487-0495, ATF0500-0503, ATF0504-0506, ATF0507-0510, ATF0511-0515, ATF0516-0519, ATF0520-0522, ATF0523-0527, ATF0528-0529, ATF0530-0532, ATF0533-0535, ATF0536-0540, ATF0541-0542, ATF0543-0545, ATF0546-0547, ATF0548-0550, ATF0551-4553, ATF0554-4555, ATF0556-0557, ATF0558-0560, ATF0561-0563, ATF0564-0572, ATF0573-0579, ATF0591-0595, ATF0596-0598, ATF0601-0602, ATF0603-0607, ATF0608-4609, ATF0610-0612, ATF0620-0652, ATF0657-0658, ATF0668-0672.

bodies' in which the fire-control cavity area is completely solid and un-machined have not reached the 'stage of manufacture' which would result in the classification of a firearm according to the GCA.").

Technical Bulletin 14-01, noted above, is another example of the many documents that reiterates ATF's longstanding approach to classifying unfinished receiver blanks wherein certain unfinished receiver blanks have not reached a stage of manufacture where they are frames or receivers under the GCA.[6]  As further shown below, ATF made the vast majority of these classifications without noting the time necessary to complete an unfinished frame or receiver.

**C.    Time to Completion Has Never Been the Test.**

Time to completion was a factor considered by ATF in a very small subset of classifications.  However, for decades, stage of manufacture—i.e., the presence of machining or indexing—has and continues to serve as the primary and decisive factor in ATF classification determinations.

More specifically, SAF assessed the 118 frame and receiver classification determinations provided in the Administrative Record and found that 78 resulted in an ATF classification of GCA/NFA control, 34 resulted in classifications that items were not GCA/NFA controlled, and 6 involved more than one item with split determinations on control.

Of the 118 determinations, 114 were based on ATF's examination of milling performed on the receiver cavity and/or the presence of indexing. Only 7 considered time to completion/assembly as a factor in classifying an unfinished receiver blank—all but one of which were premised on stage of manufacture/machining performed on the sample provided for

---

[6] Same as in classifications under the GCA, the ATF has a long history of issuing classification determinations under the NFA based on stage of manufacture.  *See e.g.,* ATF Letter to Polymer80, June 4, 2004, at ATF0204, quoting Feb. 13, 1978 ATF Letter ("As soon as the receiver is capable of accepting all parts necessary for full automatic fire, [the receiver] would be subject to all the provisions of the NFA."); *see also Sendra Corp. v. Magaw*, 111 F.3d 162 (D.C. Cir. 1997) (ATF denial of machinegun registration for receivers because they were not in a stage of the manufacturing process whereby they were National Firearms Act firearms as defined in 26 U.S.C., Section 5845(b).).

examination.  As further shown below, of the few classifications considering time, ATF only considered time to completion of 75 minutes or less: [7]

| BATES NO. | DATE | TIME |
|---|---|---|
| ATF0020 | May 3, 1983 | "75 minutes" * |
| ATF0029-0031 | April 22, 1985 | "20 minutes" * |
| ATF0023-0025 | 1987 | "20 minutes" |
| ATF0053-0054 | December 27, 2002 | "75 minutes" * |
| ATF0065-0066 | August 19, 2004 | "minimal amount of time" * |
| ATF0496-0499 | June 19, 2013 | "less than 5 minutes" * |
| ATF0661-0666 | May 17, 2016 | "several minutes" * |

* Determinations premised on stage of manufacturing/machining performed.

Moreover, even if the "readily be converted" language can be said to apply to frames or receivers (it does not) and said to establish some form of "temporal approach", courts have held that, consistent with the few ATF classifications above, the "readily be converted" language applies where a weapon can be converted by a "relatively simple operation taking only a few minutes..."  *See e.g., United States v. 16,179 Molso Italian .22 Caliber Winlee Derringer Convertible Starter Guns*, 443 F.2d 463, 465 (2nd Cir. 1971) (court affirming ATF classification that starter guns which could be converted to shoot live ammunition within 3 to 12 minutes are firearms).

_____

[7] The Administrative Record includes an ATF letter noting "a few hours" as sufficient to make a receiver constituting a firearm, but the letter did not determine classification. ATF0016.  The Administrative Record also includes an ATF letter classifying a firearm that could be converted to a machinegun in 20 minutes (ATF0308-0309); and ATF letters classifying firearms with parts that, without modification, could be used to assemble a firearm in less than 30 minutes. ATF0434-0435, ATF0443-0444.  These letters did not classify an unfinished frame or receiver blank and, therefore, are not included in the chart above.

Completing a frame or receiver is not a "simple operation taking only a few minutes". To the contrary, purchasers must excavate the fire-control cavity and drill holes for the selector pin, the trigger pin, and the hammer pin.  This milling, drilling, and other fabrication takes significant time to complete and must be performed by someone with sufficient knowledge and skill, with access to jigs, fixtures, and other specialized tools (e.g., drill bits, carbide end mills, a drill or drill press, eye protection, and cutting fluid or lubricant).  And once completed, the frame or receiver must still be assembled with all the other parts and components necessary for a functioning firearm to expel a projectile.

## IV. Forcing ATF to Adopt Plaintiffs' Temporal Rule Would Exceed Congressional Intent under the GCA and Violate the Second Amendment.

Interpreting the scope of "readily be converted" to mean the length of time demanded by Plaintiffs would not only be contrary to established meanings of the term[8], it would increasingly make castings and raw materials subject to GCA control with advances in manufacturing technology.

For example, even today, taking Plaintiffs' view of the "readily be converted" language to its logical outcome would logically extend controls to raw materials that can be used in present day Metal Additive Manufacturing (a/k/a "3D Metal Printing") technologies. *See e.g.*, "Solid Concepts 3D Prints Another Metal Gun, 'Reason', a 10mm Auto 1911," available at https://3dprint.com/21109/3d-print-metal-gun-reason/.

## CONCLUSION

The authority granted by Congress to Defendants is limited and the GCA does not prohibit law-abiding citizens from making firearms otherwise subject to the GCA for their own use.  To the contrary, and as further explained above, a bedrock principle of the Second

---

[8] *See* Cambridge English Dictionary (defining "readily" to mean "quickly, immediately, willingly, or without any problem"),
https://dictionary.cambridge.org/us/dictionary/english/readily (last visited Jan. 31, 2021).

Amendment is to protect the right to arms in common use at the time of the Framers.  This right clearly included the right for citizens to make their own firearms, a right dependent on the ability to access the parts and materials needed to make firearms.

ATF determined the status quo decades ago, which reflects the appropriate balance between government regulations and Second Amendment protections.  Such agency discretion should be preserved.  Because of this, for the foregoing reasons, and for those set forth in Defendants' Motion for Summary Judgment, the Court should grant Defendants' Motion for Summary Judgment.

DATED:  February 2, 2021

FARHANG & MEDCOFF PLLC

By: */s/Matthew A. Goldstein*
Matthew A. Goldstein (admitted pro hac vice)
FARHANG & MEDCOFF PLLC
4801 E. Broadway Boulevard, Suite 311
Tucson, AZ 85711
Tel: 520.214.2000 / Fax: 520.214.2001
mgoldstein@farhangmedcoff.com

David T. Hardy (pro hac vice forthcoming)
8987 E. Tanque Verde No. 265
Tucson, AZ 85749
Tel:  (520) 749-0241
dthardy@mindspring.com

*Attorneys for Amicus Curiae*

## CERTIFICATE OF SERVICE

I, Matthew A. Goldstein, hereby certify that on February 2, 2021, I filed the foregoing BRIEF OF *AMICUS CURIAE* THE SECOND AMENDMENT FOUNDATION IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT using the court's electronic filing system, causing it to be served on all counsel of record.


By: */s/Matthew A. Goldstein*
Matthew A. Goldstein (admitted pro hac vice)
FARHANG & MEDCOFF PLLC
4801 E. Broadway Boulevard, Suite 311
Tucson, AZ 85711
Tel: 520.214.2000 / Fax: 520.214.2001
mgoldstein@farhangmedcoff.com