UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CITY OF SYRACUSE, NY; CITY OF SAN
JOSE, CA; CITY OF CHICAGO, IL; CITY OF
COLUMBIA, SC; EVERYTOWN FOR GUN
SAFETY ACTION FUND; and EVERYTOWN
FOR GUN SAFETY SUPPORT FUND,

        *Petitioners*,

    v.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES; REGINA
LOMBARDO, in her official capacity as Acting
Deputy Director of Bureau of Alcohol, Tobacco
Firearms and Explosives; UNITED STATES
DEPARTMENT OF JUSTICE; and WILLIAM
BARR, in his official capacity as ATTORNEY
GENERAL, U.S. Department of Justice,

        *Defendants*,

    and

ZACHARY FORT; FREDERICK BARTON;
BLACKHAWK MANUFACTURING GROUP,
INC.; and FIREARMS POLICY COALITION,
INC.,

        *Amici Curiae*.

No. 1:20-cv-06885-GHW

**BRIEF OF *AMICI CURIAE*
ZACHARY FORT; FREDERICK
BARTON; BLACKHAWK
MANUFACTURING GROUP, INC.;
AND FIREARMS POLICY
COALITION, INC. IN SUPPORT OF
FEDERAL DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT AND OPPOSITION TO
PETITIONERS' MOTION FOR
SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION ..................................................................................... 1

SUMMARY OF THE ARGUMENT ......................................................... 4

ARGUMENT ............................................................................................. 7

I.      Petitioners Lack Standing To Pursue This Matter ......................................... 7

II.     Neither ATF Ruling 2015-1 Nor ATF's Q&As Are Final Agency Actions
        Relating To The ATF's Application Of The Definition Of "Firearm"
        To Not Include Non-Firearm Objects ............................................................. 13

        A.      ATF Ruling 2015-1 is Neither Reviewable, Nor is the
                Definition of "Firearm" Within the Scope of that Ruling................. 13

        B.      The ATF's Q&As are not Final Agency Actions .............................. 17

III.    The ATF's "Mechanistic Approach" Is A Correct Application Of
        "Readily Convertible," As A Matter Of Law, And Cannot Be
        Substituted By Petitioners' Judgment ............................................................. 18

CONCLUSION ......................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Case**                                                                                 **Page**

*Allen v. Wright*,
    468 U.S. 737 (1984) ...................................................................................   8

*American Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Com'n*,
    389 F.3d 536 (6th Cir. 2004) ....................................................................   11

*ASARCO Inc. v. Kadish*,
    490 U.S. 605 (1989) ...................................................................................   8

*Bennett v. Spear*,
    520 U.S. 154 (1997) ...................................................................................   13, 17

*Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*,
    333 U.S. 103 (1948) ...................................................................................   13

*Christensen v. Harris County*,
    529 U.S. 579 (2000) ...................................................................................   19

*Dept. of Homeland Security v. Regents of the Univ. of Cal.*,
    140 S. Ct. 1891 (2020) ...............................................................................   19, 21

*Dunn–McCampbell Royalty Interest, Inc. v. National Park Serv.*,
    112 F.3d 1283 (5th Cir. 1997) ....................................................................   14

*FCC v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009) ...................................................................................   19

*Golden and Zimmerman, L.L.C. v. Domenech*,
    599 F. Supp. 2d 702 (4th Cir. 2009) .........................................................   17, 18

*James Madison Ltd. by Hecht v. Ludwig*,
    82 F.3d 1085 (D.C. Cir. 1996) ...................................................................   14

*Japan Whaling Assoc. v. Am. Cetacean Soc'y*,
    478 U.S. 221 (1986) ...................................................................................   10, 11

*Kisor v. Wilkie*,
    139 S. Ct. 2400 (2019) ...............................................................................   19

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...................................................................................   7, 8

*Lujan v. National Wildlife Federation,*
    497 U.S. 871 (1990) ................................................................... 16

*McHugh v. Rubin,*
    220 F.3d 53 (2d Cir. 2000) ........................................................ 16

*NAACP v. Button,*
    371 U.S. 415 (1963) ................................................................... 11

*Norton v. Southern Utah Wilderness Alliance,*
    542 U.S. 55 (2004) ..................................................................... 16

*Pennsylvania Dep't of Public Welfare v. U.S. Dep't of Health & Human Serv.,*
    101 F.3d 939 (3d Cir. 1996) ...................................................... 14

*Perales v. Sullivan,*
    948 F.2d 1348 (2d Cir. 1991) ............................................... 19, 21

*Polanco v. U.S. Drug Enforcement Admin.,*
    158 F.3d 647 (2d Cir. 1998) ...................................................... 14

*Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic,*
    400 U.S. 62 (1970) ..................................................................... 13

*Salazar v. King,*
    822 F.3d 61 (2d Cir. 2016) ........................................................ 13

*Schmier v. U.S. Court of Appeals for Ninth Circuit,*
    279 F.3d 817 (9th Cir. 2002) ............................................ 10, 11, 12

*Sierra Club v. Hickel,*
    433 F.2d 24 (9th Cir. 1970) ....................................................... 10

*Sierra Club v. Morton,*
    405 U.S. 727 (1972) .......................................................... 10, 11, 12

*Sierra Club v. SCM Corp.,*
    747 F.2d 99 (2d Cir. 1984) ........................................................ 10

*Sierra Club v. Slater,*
    120 F.3d 623 (6th Cir. 1997) ..................................................... 13

*Simon v. Eastern Kentucky Welfare Rights Organization,*
    426 U.S. 26 (1976) ....................................................................... 8

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ........................................................ 7

*SurvJustice v. DeVos*,
    No. 18-cv-00535-JSC , 2019 WL 5684522 (N.D. Cal. Nov. 1, 2019) .................. 15, 18

*Warth v. Seldin*,
    422 U.S. 490 (1975) ........................................................ 8

**Statutes**

5 U.S.C. § 702 ........................................................ 7, 10, 12

5 U.S.C. § 704 ........................................................ 13, 15

5 U.S.C. § 706 ........................................................ 15, 16, 19

18 U.S.C. § 921(a)(3) ........................................................ 3, 18, 20

18 U.S.C. § 921(a)(11)(B) ........................................................ 15

18 U.S.C. § 921(a)(21)(A) ........................................................ 2, 17

18 U.S.C. § 922(a)(1)(A) ........................................................ 2, 17

18 U.S.C. § 922(g)(1) ........................................................ 4

18 U.S.C. § 922(k) ........................................................ 4

18 U.S.C. § 922(n) ........................................................ 4

18 U.S.C. § 923(i) ........................................................ 2, 15, 17

28 U.S.C. § 2401(a) ........................................................ 13

**Rules**

Fed. R. Civ. P. 5 ........................................................ 23

Fed. R. Civ. P. 24 ........................................................ 1

Ninth Circuit Rule 36-3 ........................................................ 11

**Regulations**

27 C.F.R. § 478.11 ........................................................ 2, 21

*Amici curiae* Zachary Fort; Frederick Barton; BlackHawk Manufacturing Group, Inc., d/b/a 80% Arms ("80% Arms"); and Firearms Policy Coalition, Inc. ("*Amici*") have a direct and personalized interest in this matter.  That interest has been recognized by this Court.  ECF No. 83, at 5 (holding that *Amici* "have asserted a sufficient interest in the outcome of this case," and "have shown that their interests may be impaired by invalidation of the ATF's interpretive rule and determination letters").[1]  After denying *Amici*'s motion to intervene, the Court nevertheless invited *Amici* to file an *amici curiae* brief.  ECF No. 83.[2]  Accordingly, *Amici* file this brief in support of Federal Defendants' Motion for Summary Judgment and Opposition to Petitioners' Motion for Summary Judgment, ECF Nos. 97–100, and respectfully request that this Court enter summary judgment in favor of Federal Defendants on each of Petitioners' claims for relief, ECF No. 11, at 45–51.

## INTRODUCTION

The cities of Syracuse, NY; San Jose, CA; Chicago, IL; and Columbia, SC (collectively, "the Cities"); as well as Everytown for Gun Safety Action Fund and Everytown for Gun Safety Support Fund (collectively "Everytown," and as to all of these parties, "Petitioners") advance a radical theory regarding the proper application of the definition of "firearm" in the Gun Control Act of 1968 ("GCA").  Petitioners' theory—based on the subjective assessment of the time required,[3] or ease, of converting an object into a firearm—is intended to replace the longstanding

---

[1]    All CM/ECF citations in this letter motion are to the Court's electronically maintained docket in this matter, and all pin cites are to the page number applied by the CM/ECF system, not to the filing's internal pagination numbers.

[2]    With respect, *Amici* reserve their argument that they are entitled to intervention as of right, pursuant to Federal Rule of Civil Procedure 24(a), or, in the alternative, permissive intervention, pursuant to Federal Rule of Civil Procedure 24(b).  *See* ECF Nos. 43, 44, 65.  *Amici* have appealed this Court's Order, ECF No. 83, denying *Amici* intervention, ECF No. 101.  *Amici* file this brief in order to advance their arguments and defend their substantial interests—to the extent possible as *amici curiae*.

[3]    Such theory is highly subjective and would be dependent on skill, expertise, hardware, tools, and many other, unascertainable, factors.  Given the subjectivity and factors involved, this would be highly susceptible to abuse.

definition applied by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF").  The ATF, however, has applied the same definition of "firearm," including a "firearm frame or receiver," for decades—dating back to at least the 1980s—by specifically focusing on the extent of the manufacturing processes remaining, which is, as a matter of law, the correct application of the ATF's regulatory authority under the GCA.

The competing terms used by the parties are misleading because of the underlying issue. The term "ghost gun," used by Petitioners, has no federally recognized definition, is used merely to convey a negative connotation, and, in fact, assumes Petitioners' preferred, but legally infirm, interpretation of "firearm."  Even the terms "unfinished frame" and "unfinished receiver," used by the ATF, are not federally recognized, and give rise to troubling legal implications—the objects at issue in this case are neither "frames" nor "receivers," both of which have a recognized federal definition.[4]

Instead, the objects at issue here are simply materials that individuals can purchase in order to continue the longstanding, legal tradition of self-manufacturing personal use firearms.[5]  They are no more "ghost guns," or "unfinished frames or receivers," than a block of aluminum.  These objects, which vary widely, are colloquially referred to in the firearms industry as "receiver blanks," "frame blanks," "partially-manufactured frames," "partially-manufactured receivers," "80% frames," "80% receivers," "unfinished frames," or "unfinished receivers," and are referred to as such for marketing purposes.  *Amici*, however, will continue to refer to them as "Non-Firearm Objects"—because they are exactly that.  These objects are not "ghost" or "unfinished" versions

---

[4]    "Firearm frame or receiver.  That part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward position to receive the barrel."  27 C.F.R. § 478.11.

[5]    Individuals who manufacture firearms for personal use are not regulated under the GCA.  *See* 18 U.S.C. §§ 921(a)(21)(A), 922(a)(1)(A), 923(i); *see also* ATF Br. at 23.

of "firearms," nor do they fit the legal definition of "weapon[s] which will or [are] designed to or may be readily converted to expel a projectile by the action of an explosive," nor are they so intrinsically related as to bear those labels.  18 U.S.C. § 921(a)(3).  A pressure cooker, by analogy, is not a "ghost explosive" or an "unfinished explosive," but rather a generally unregulated object that only becomes dangerous when it is manufactured into something else.  Similarly, based on the actual language of the GCA, the objects at issue here are unequivocally not "firearms."

Petitioners, however, seek to force the ATF to abandon its longstanding application of the definition of "firearms," and adopt an interpretation that would require the federal government to regulate Non-Firearm Objects as if they were firearms.  In so doing, Petitioners ask this Court to force the ATF to go beyond its congressionally mandated authority and regulate objects that cannot be regulated by the ATF under the GCA.

Petitioners' proposed definition would lead to absurd results.  Millions of ordinary objects and raw materials that Americans use or interact with on a daily basis would be swept in, simply because it would not take "too much time"—for *some* person, under *some* set of circumstances— to manufacture those objects into firearms.  Individuals have constructed firearms out of everything from plumbing materials, to a shovel, to 2 x 4 blocks of wood and nails.[6]  The adoption of Petitioners' proposed definition would essentially require the ATF to regulate numerous objects found at your local Home Depot store, merely because of the time arguably or theoretically involved in construction.

---

[6]      *See* Chris Eger, *Richardson Industries M5 Philippine Guerrilla Gun: A Gun to get a Gun*, GUNS.COM (May 14, 2017  04:16 PM), https://www.guns.com/news/2017/05/14/richardsons-philippine-guerrilla-gun-a-gun-to-get-a-gun/; Nick Leghorn, *Turning Ploughshares into Swords: Man Builds AK-47 from Shovel*, THE TRUTH ABOUT GUNS (Nov. 23, 2012), https://www.thetruthaboutguns.com/turning-ploughshares-into-swords-man-builds-ak-47-from-shovel/; *The Assault 2x4*, JEFENRY.COM (Sept. 24, 2015), http://jefenry.com/main/2x4Rifle.php.

As accurately noted by the ATF, "individuals who wish to obtain unfinished frames and receivers that are not subject to the GCA's requirements will still be able to do so and undertake whatever effort would be necessary to ultimately use those objects as part of a firearm." ATF Br. at 23. Criminals will continue to manufacture firearms out of everyday objects—a practice that is already illegal. *See* 18 U.S.C. § 922(g), (n) (prohibiting certain "criminals" from possessing firearms, including fugitives from justice, those convicted of a misdemeanor crime of domestic violence, and even certain indicted individuals). Criminals will continue to purchase illicit firearms or file off serial numbers—which is also illegal. *See* 18 U.S.C. § 922(k) (prohibiting possession of a firearm with "the manufacturer's serial number removed, obliterated, or altered"). And convicted felons, and some misdemeanants, are already prohibited from manufacturing Non-Firearm Objects into firearms. *See* 18 U.S.C. § 922(g)(1) (prohibiting anyone convicted of a crime punishable by more than one year's imprisonment from possessing a firearm). This Court should, therefore, not set public policy by expanding the scope of the GCA on the basis of Petitioners' unfounded assertions that it will stop criminals from accessing firearms. That prerogative is left to Congress.

## SUMMARY OF THE ARGUMENT

*Amici* respectfully request that this Court enter summary judgment in favor of Federal Defendants, and against Petitioners, on each of their claims for relief. *Amici* will not, however, specifically address Petitioners' fifth claim for relief, relating to undue delay,[7] *Complaint* at 49–50, Pet. Br. at 42–47; and instead incorporate Federal Defendants' arguments by reference, ATF

---

[7]      *Amici* do note, however, that there can be no undue delay in responding to a petition for review if the "action" petitioned is not reviewable. Based on this, there can be no undue delay in the ATF's not reviewing ATF Ruling 2015-1 nor ATF's Q&As. *See*, *infra*, Section II.

Br. at 51–56.[8]  *Amici*, instead, elucidate additional defects in Petitioners' standing, address the challengeability—or lack thereof—of ATF Ruling 2015-1 and the ATF's question and answer section of its website ("Q&As"), and provide additional support for the ATF's legally correct application of the definition of "firearm."

   ***First***, in addition to the arguments presented by Federal Defendants establishing Petitioners' lack of standing, there remain two additional issues.  As it relates to traceability, the Cities have failed to adequately support their claim that they are injured by the ATF's application of the definition of "firearm" because criminals prefer to use firearms manufactured from Non-Firearm Objects to commit crime.  The Cities have no basis to argue that they suffer an injury in fact, caused by the ATF, that is redressable by this Court, due to the unregulated sale of Non-Firearm Objects.  Additionally, for the purposes of Everytown's standing inquiry, the organization cannot establish organizational standing in this matter given a lack of injury to the organization, and thus, as a result, also cannot argue that it represents the "public benefit."  Accordingly, each Petitioner lacks standing to pursue this matter.

   ***Second***, neither ATF Ruling 2015-1 nor the ATF's Q&As constitute challengeable final agency actions under the APA in this matter.  Neither resulted in legal consequences, which is the standard for final agency action under the APA.  Further, the scope of Ruling 2015-1 does not encompass the relief Petitioners request because the Ruling does not establish or conclusively interpret the definition of "firearm" as it relates to Non-Firearm Objects.  Even if ATF Ruling 2015-1 were challengeable, ATF Ruling 2015-1 is specifically limited to the question of whether Federal Firearms Licensees ("FFL") or unlicensed machine shops can manufacture a firearm from

---

[8]      *Amici* seek to incorporate these arguments to ensure they are preserved should *Amici* be successful in their appeal and are granted intervention in this matter, and should Federal Defendants, for any reason, cease to zealously litigate their motion for summary judgment or this matter as a whole.

a Non-Firearm Object on behalf of an individual, or allow an individual to manufacture a firearm from a Non-Firearm Object using the FFL or unlicensed machine shop's equipment. Accordingly, the legal status of Non-Firearm Objects is outside of the scope of ATF Ruling 2015-1, and outside of the scope of this Court's review of that Ruling under the APA.

*Third*, the ATF's application of the definition of "firearm" to not include Non-Firearm Objects is not arbitrary, capricious, or otherwise not in accordance with law. The ATF's application of "firearm" is not only accurate as a matter of law, but under the APA's scope of review, neither Petitioners, nor this Court, can substitute their judgment for that of the agency. The ATF has long treated actual manufacturing processes as the proper test for determining whether an object meets the definition of "firearm." *Amicus* 80% Arms has specifically undergone ATF's examinations based on this standard on multiple occasions, as evidenced in the record, and has presented objects to the ATF that the ATF has classified as Non-Firearm Objects and others that the ATF has classified as firearms—both determinations were made based on the manufacturing process involved. This Court need not wade into the realm of *Chevron* or *Auer* deference to confirm this longstanding conclusion.

Overall, based on the administrative record before this Court, the challenged documents, Federal Defendants' arguments, and the arguments of *Amici* in support of Federal Defendants, this Court should grant summary judgment in favor of Federal Defendants and against Petitioners on all claims for relief.

## ARGUMENT

## I.   PETITIONERS LACK STANDING TO PURSUE THIS MATTER

The Cities and Everytown lack standing to pursue their APA claims because they have not suffered an injury in fact, caused by the ATF, redressable by this Court.  Moreover, Everytown cannot establish organizational standing, and thus, is barred from arguing for the "public benefit."

Petitioners bear the burden of establishing standing to pursue this matter.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  To establish standing under Article III, Petitioners must sufficiently allege that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Further, the APA's "right of review" extends only to "[a] person suffering legal wrong because of agency action, or *adversely affected or aggrieved by agency action* within the meaning of a relevant statute."  5 U.S.C. § 702 (emphasis added).

***The Cities***.  The Cities regularly characterize their injury as stemming from the nature of Non-Firearm Objects being "especially attractive" to criminals for use in crime.  *See* Pet. Br. at 27–28.  This is raw guesswork, and it is notable that the Cities have completely failed to support their contention that criminals are actually more likely to use firearms manufactured from Non-Firearm Objects to perpetrate crime, rather than other objects.  *See* Pet. Br. at 26–29.  Federal Defendants have firmly established the tenuous causal chain necessary for the proposed harm to reach back to the ATF's application of the definition of "firearm."[9]

---

[9]      "Here, the City Plaintiffs' theory requires a series of assumptions about the impact of ATF's actions on third parties, including that: 1) more companies are manufacturing unmachined frames or receivers due to ATF's interpretation; 2) those companies have decided to market these items to persons who wish to obtain firearms unlawfully; 3) rather than obtaining finished, operative firearms through another source, those persons have chosen to make their own firearms using unmachined frames or receivers; 4) those persons have then chosen to acquire

"[W]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Lujan*, 504 U.S. at 562 (quoting *Warth v. Seldin*, 422 U.S. 490, 505 (1975) and citing *Allen v. Wright*, 468 U.S. 737, 758 (1984), *abrogated on other grounds by Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014); *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 44–56 (1976)). The burden is on the plaintiff to "adduce facts" that demonstrate the "unfettered choices made by independent actors not before the court and whose exercise of broad and legitimate discretion the courts cannot presume either to control or predict . . . have been or will be made in such manner as to produce causation and permit redressability of injury." *Id.* (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989)) (citations omitted).

The Cities have failed to provide the Court with any evidence that criminals prefer firearms manufactured from Non-Firearm Objects to other firearms, weapons, or firearms manufactured from other objects. And while Petitioners acknowledge that firearms manufactured from Non-Firearm Objects are also used by "law-abiding hobbyists who enjoy and/or prefer building their own guns," the Cities fail to establish that criminal use of such firearms is in any way a significant percentage of the Non-Firearm Object market. *See* Pet. Br. at 27 n.11. Petitioners' "support" for their claim cites to Petitioners' Rule 56.1 Statement, which in turn cites to the Department of Justice's Executive Office Handbook on Prosecuting Firearms Offenses, ATF0296–0302 ("DOJ Handbook"); and several declarations which are separately attached to another declaration, *see*

---

unmachined frames or receivers from a company whose activities were influenced by ATF's interpretation rather than from other companies and rather than making their own, homemade firearms from other firearms parts; 5) after making a firearm, the persons have chosen to use those firearms in a crime; and 6) the crime at issue would not have been committed with another weapon had the person been unable to use an unmachined frame or receiver to commit the crime." ATF Br. at 22.

Pet. 56.1 Statement ¶ 19 (citing *Owens Decl.* ¶ 23 (attached to *Esty Decl.* as Ex. 25); *Bisbee Decl.* ¶¶ 17, 18 (attached as *Esty Decl.* as Ex. 33); *Esty Decl.* ¶ 18 (Ex. 15 at 9)).   None of these sources support the Cities' contention.   The DOJ Handbook says nothing more than "for others, especially felons or other prohibited persons, the desire [to make their own firearms] is much more sinister." ATF 0298.   The Declaration of Sharon Owens, the deputy mayor of Syracuse, contains a single, conclusory statement, without support, that firearms manufactured from Non-Firearm Objects are "more likely to fall into the hands of an individual who is legally prohibited from possessing a gun in New York State because there are no restrictions on who can purchase a Ghost gun.   This increases the likelihood that the gun will be used in conjunction with criminal activity."  *Owens Decl.* ¶ 23 (attached to *Esty Decl.* as Ex. 25).   The Declaration of Aaron Esty cites to a single, conclusory sentence pulled from a memorandum filed by federal prosecutors in opposition to a defendant's application for review of a detention order in the Central District of California.  *Esty Decl.* ¶18.   Moreover, the Declaration of Johnathan Bisbee, an officer of the organization Armed With Knowledge, actually cuts against the Cities' contention.   Bisebee states:

> Criminals attempting to impede the tracking of firearms *will often obliterate the serial numbers* on firearms they transfer or possess. I have personally interviewed multiple sources of illegal firearms who either *obliterated the serial number themselves or instructed others to obliterate the serial number* of firearms involved in illegal trafficking.

*Bisbee Decl.* ¶ 17 (attached to *Esty Decl.* as Ex. 33) (emphasis added).   Unaware that he undercut the Petitioner's precise argument, only later in that paragraph does Bisbee assert, without authority, that using firearms manufactured from Non-Firearm Object "negates the need to obliterate serial numbers, saving traffickers a step in their attempt to conceal illegal activity thus making them attractive to the criminal element."  *Id.*

Simply alleging that firearms manufactured from Non-Firearm Objects are used in crime, or those same firearms are used more often today than in the past, does not establish an actual injury caused by the ATF's regulation, or lack thereof.  Without some evidence that Non-Firearm Objects affect crime in a meaningful way, separate and apart from other arms, and that said crime affects the Cities, the Cities cannot establish standing to pursue their APA claims.

**Everytown.**  Everytown has failed to sufficiently allege that the ATF's application of the definition of "firearm" adversely affects or aggrieves the organization.  *See* 5 U.S.C. § 702.  Additionally, Everytown cannot assert the "public benefit" unless it has otherwise already established standing.

"[A] mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization 'adversely affected' or 'aggrieved' within the meaning of the APA."  *Sierra Club v. Morton* ("*Sierra Club*"), 405 U.S. 727, 739 (1972); *accord Sierra Club v. SCM Corp.*, 747 F.2d 99, 104–07 (2d Cir. 1984) (applying the *Sierra Club v. Morton* analysis).  "[T]he Supreme Court[] [has] repeated[ly] admoni[shed] against taking jurisdiction over cases involving something less than a 'personal,' 'particularized' and 'concrete' injury . . . ."  *Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 822 (9th Cir. 2002) (citing *Sierra Club*, 405 U.S. at 734; *Japan Whaling Assoc. v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986)).

In *Sierra Club*, the Supreme Court reviewed the circuit's determination that Sierra Club lacked standing to pursue its challenge to a Forest Service plan to allow for development in the Mineral King Valley in the Sierra Nevada Mountains in California.  405 U.S. at 728–31.  The

Supreme Court affirmed the circuit's determination[10] that the Sierra Club "had [not] made an adequate showing of irreparable injury . . . ." *Id*. at 731.

> The Sierra Club is a large and long-established organization, with a historic commitment to the cause of protecting our Nation's natural heritage from man's depredations. But if a 'special interest' in this subject were enough to entitle the Sierra Club to commence this litigation, there would appear to be no objective basis upon which to disallow a suit by any other bona fide 'special interest' organization however small or short-lived.

*Id*. at 739.  The Supreme Court noted this standard preserves the original intentions of the APA by preventing litigation by "organizations or individuals who seek to do no more than vindicate their own value preferences through the judicial process."  *Id*. at 740.[11]

In *Schmier*, the Ninth Circuit examined Schmier's suit against that circuit and the Judicial Council for the Circuit alleging that Ninth Circuit Rule 36-3, prohibiting citation to unpublished dispositions as precedent, violated certain of Schmier's constitutionally protected rights.  279 F.3d at 819.  There, in determining Schmier lacked standing, that circuit applied the *Sierra Club* framework and specifically noted that a party can "argue the public interest in support of his claim" *only after* the individual demonstrates the facts necessary to establish an injury in fact.  *Id*. at 822–23 (citing *Sierra Club*, 405 U.S. at 739; *Japan Whaling Ass's*, 478 U.S. at 230 n.4).

---

[10]     "We do not believe that the Sierra Club's complaint alleges that it or its members possess a sufficient interest for standing to be conferred.  There is no allegation in the complaint that members of the Sierra Club would be affected by the actions of defendants-appellants other than the fact that the actions are personally displeasing or distasteful to them."  *Sierra Club v. Hickel*, 433 F.2d 24, 33 (9th Cir. 1970) *aff'd sub nom. Sierra Club*, 405 U.S. 727.

[11]     *Sierra Club*, and later applications thereof, allowed for representational standing when the case is brought by membership organization along with at least one member properly alleging the facts necessary to establish standing. 405 U.S. at 739 ("It is clear that an organization whose members are injured may represent those members in a proceeding for judicial review.") (citing *NAACP v. Button*, 371 U.S. 415, 428 (1963)); *see American Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Com'n*, 389 F.3d 536, 542–43 (6th Cir. 2004) (determining Sierra Club, there, had standing based on the injuries in fact adequately pled by a member of Sierra Club).  That distinguishing factor is inapplicable here for one glaring reason, Everytown is *not* a membership organization, and no "member" of Everytown exists, let alone is a named petitioner in this litigation.  Everytown, thus, has not and cannot allege an injury on behalf of its non-existent or unrepresented members.

Everytown has failed to allege an actual injury, sufficient to establish standing, to the organization itself.  As required by the APA and explained in *Sierra Club*, Everytown has failed to establish that the alleged harms of the ATF's application of the definition of "firearm" actually adversely affects or aggrieves the organization.  *See* 5 U.S.C. § 702; *Sierra Club*, 405 U.S. at 739. Not only has Everytown failed to adequately support its assertion that the sale and distribution of Non-Firearm Objects constitutes an actual injury, but has also entirely failed to allege that said market actually affects Everytown beyond allusions to the organization's already existing policy positions and organizational practices.  *Compare Compl.* ¶ 50 ("Defendants' actions have compelled Everytown to divert resources from other public advocacy, education, and litigation programs to address the violence caused by ghost guns,") *with* Pet. Br. at 29 (describing "Everytown's advocacy efforts" as "advocacy to ensure that background checks are conducted on all gun sales and that guns cannot be obtained by those who are legally prohibited from possessing them").  As the Supreme Court found in *Sierra Club*, "a mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself . . . ."  *Sierra Club*, 405 U.S. at 739.  Everytown's continued pursuit of its mission, through advocacy and outreach, does not adversely affect or aggrieve the organization.

Additionally, as established in *Schmier*, Everytown cannot assert the "public good," or its mission to "save lives" in order to establish standing—rather Everytown must satisfy this Court's individual injury-in-fact analysis first.  279 F.3d at 822–23; Pet. Br. at 29 ("Because of Defendants' flawed determination . . .  Everytown was forced to divert resources to . . . raise public awareness of the growing threat to public safety.").  Given that Everytown has failed to do so, Everytown is barred from utilizing arguments centered around the "public good" to establish standing.

12

Accordingly, in addition to the arguments advanced by Federal Defendants, this Court should determine that Petitioners lack standing to pursue this matter under the APA.

## II. NEITHER ATF RULING 2015-1 NOR ATF'S Q&AS ARE FINAL AGENCY ACTIONS RELATING TO THE ATF'S APPLICATION OF THE DEFINITION OF "FIREARM" TO NOT INCLUDE NON-FIREARM OBJECTS

Neither ATF Ruling 2015-1 nor ATF's Q&As constitute "final agency actions" that trigger the APA's reviewability provisions as they pertain to the application of the definition of "firearm."

Under the APA, this Court has jurisdiction only to review agency actions that are "made reviewable by statute and final agency action[s] for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Petitioners do not assert—nor could they—that the purported agency actions here are made reviewable by statute. Instead, the question is whether ATF Ruling 2015-1 or ATF's Q&As are final agency actions.

> As a general matter, two conditions must be satisfied for agency action to be "final": First, the action must mark the "consummation" of the agency's decisionmaking process, *Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948)—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow," *Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970).

*Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). The Second Circuit applies this same standard.

*See Salazar v. King*, 822 F.3d 61, 82 (2d Cir. 2016) (quoting *Bennett*).

### A. ATF Ruling 2015-1 is Neither Reviewable, Nor is the Definition of "Firearm" Within the Scope of that Ruling

Petitioners' challenge to ATF Ruling 2015-1 is nothing more than an attempt to make an end run around the applicable statute of limitations regarding the ATF's characterization of Non-

Firearm Objects as not firearms.[12]  Not only is Ruling 2015-1 not reviewable under 5 U.S.C. § 704 because "legal consequences" do not flow from the Ruling; but the scope of the Ruling also does not cover the classification of Non-Firearm Objects that Petitioners seek to overturn.[13]

*First,* while ATF Ruling 2015-1 does review provisions of the GCA, the Ruling does not, *by itself,* establish any legal obligations.  The Ruling notes that if FFLs or unlicensed machine shops engage in the business of manufacturing Non-Firearm Objects into firearms for unlicensed individuals, or if those same shops allow unlicensed individuals to use the FFL or shop's facilities or tools to manufacture Non-Firearm Objects into firearms, the FFL or machine shop at issue is still subject to the licensing, identification, and records keeping requirements of the GCA. ATF0290–95.

> The Ruling reads, in pertinent part:

> Any person (including any corporation or other legal entity) engaged in the business of performing machining, molding, casting, forging, printing (additive manufacturing) or other manufacturing process to create a firearm frame or receiver, or to make a frame or receiver suitable for use as part of a "weapon . . . which will or is designed to or may be readily converted to expel a projective by the action of an explosive," i.e., a "firearm," must be licensed as a manufacturer under the [GCA]; identify (mark) any such firearm; and maintain required manufacturer's records.

ATF0290.  The Ruling further notes that a manufacturer cannot avoid the requirements by allowing individuals to use "machinery or equipment under its dominion and control."  ATF0290.  The

---

[12]      "[28 U.S.C.] Section 2401(a) supplies the statute of limitations for suits challenging agency action under the APA."  *Polanco v. U.S. Drug Enforcement Admin.*, 158 F.3d 647, 652–53 (2d Cir. 1998) (citing *Sierra Club v. Slater*, 120 F.3d 623, 631 (6th Cir. 1997); *Dunn–McCampbell Royalty Interest, Inc. v. National Park Serv.*, 112 F.3d 1283, 1286 (5th Cir. 1997); *Pennsylvania Dep't of Public Welfare v. United States Dep't of Health & Human Services*, 101 F.3d 939, 944–45 (3d Cir. 1996); *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1093–94 (D.C. Cir. 1996), *cert. denied*, 519 U.S. 1077 (1997).  Section 2401(a) establishes a six-year statute of limitations.  28 U.S.C. § 2401(a).

[13]      *Amici* incorporate Federal Defendants' arguments establishing that ATF Ruling 2015-1 is not a final agency action as it related to Non-Firearm Objects and is thus not reviewable by this Court to ascertain the definition of "firearm."  *See* ATF Br. at 26–28.

Ruling only serves to clarify a single point—because Non-Firearm Objects are not firearms, if an FFL or machine shop manufactures a firearm from a Non-Firearm Object, the shop is, in reality, manufacturing a firearm for sale/commercial use, which is already regulated under the GCA. *See* ATF0290–95; *see also* 18 U.S.C. § 923(i) (setting forth serializing requirements). As such, manufacturing a firearm from a Non-Firearm Object also does not qualify as gunsmithing, which does not bear the same statutory requirements as manufacturing. *See* ATF0291–94; *see also* 18 U.S.C. § 921(a)(11)(B).

Accordingly, no legal consequences flow from ATF Ruling 2015-1. Instead, all legal consequences flow from the GCA itself. Ruling 2015-1 clarifies that if an FFL or machine shop manufactures a firearm or aids an unlicensed individual in manufacturing a firearm, then they are required to abide by the requirements established by the GCA for manufacturing firearms—a well established legal principle. The ATF could not prosecute an FFL for violating ATF Ruling 2015-1, because the Ruling does not impose any specific legal requirements. Instead, the ATF would be required to charge an FFL with violating the GCA.

As such, ATF Ruling 2015-1 is not a final agency action from which legal consequences flow, and is not subject to APA review pursuant to Section § 704. *Cf. SurvJustice v. DeVos*, No. 18-cv-00535-JSC, 2019 WL 5684522, *11 (N.D. Cal. Nov. 1, 2019) (issuance of federal guidance was not final agency action, where the court concluded that any enforcement action would in fact be "predicated on violations of the underlying statute and its implementing regulations").

***Second,*** even if ATF Ruling 2015-1 was a challengeable final agency action, the scope of review would be limited to the question of manufacturer liability under the GCA.

This Court's review, under the APA, is limited to the agency action properly before the Court. 5 U.S.C. § 706 ("To the extent necessary to decision and when presented, the reviewing

court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability *of the terms of an agency action*.") (emphasis added). The Court cannot require an agency to undergo a review of an issue outside the scope of the challenged agency action. *See McHugh v. Rubin*, 220 F.3d 53, 61 (2d Cir. 2000) ("We are aware of no alchemy capable of transforming review of the ATF's decision under [5 U.S.C.] § 706 into the relief the plaintiff seeks—plenary adjudication of his application by the district court.); *cf. Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) ("[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is *required to take*. These limitations rule out several kinds of challenges. The limitation to discrete agency action precludes the kind of broad programmatic attack we rejected in *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990).").

ATF Ruling 2015-1, by its own terms, is limited exclusively to the question of manufacturers' obligations under the GCA. ATF0290. Ruling 2015-1 does not establish the ATF's classification of Non-Firearm Objects as outside the definition of "firearm" under the GCA, nor does the Ruling analyze that definition. Instead, the Ruling treats the classification of Non-Firearm Objects as a matter of fact when evaluating manufacturer's obligations. ATF0290 ("Unlicensed individuals occasionally purchase castings or machined/molded or other manufactured bodies (sometimes referred to as 'blanks,' or '80% receivers') that have not yet reached a stage of manufacture in which they are classified as 'firearm frames or receivers' under the [GCA] and implementing regulations."). The Ruling never presents or addresses the question of whether Non-Firearm Objects are firearms under the GCA. Any treatment of the definition of "firearm" is merely to reiterate the fact that manufacturing a Non-Firearm Object into a firearm is manufacturing a firearm, just as manufacturing a firearm from raw materials would be.

16

Accordingly, should this Court remand Ruling 2015-1 to the agency pursuant to the APA, the basis and scope of that remand would be limited to whether FFLs and unlicensed machine shops are subject to the provisions of the GCA when manufacturing firearms out of Non-Firearm Objects.  Of note, individuals who manufacture firearms out of Non-Firearm Objects solely for personal use are excluded from the licensing, marking, and record-keeping requirements of the GCA, as a matter of law.  18 U.S.C. §§ 921(a)(21)(A), 922(a)(1)(A), 923(i); *see* ATF Br. at 23.

Petitioners' attempt to style their challenge to the ATF's application of the definition of "firearm" as a challenge to Ruling 2015-1—so as to narrowly avoid a 6-year statute of limitations—is unpersuasive, given Ruling 2015-1 is not an implementation of ATF action or policy, nor does it specifically relate to the definition of "firearm."

### B.        The ATF's Q&As are not Final Agency Actions

Much like ATF Ruling 2015-1, the ATF's Q&As are not the "consummation of the agency's decisionmaking process," nor do the Q&As determine obligations or establish legal consequences.  ATF0310–12; *Bennett*, 520 U.S. at 177–78 (citations omitted).

In addition to the generally applicable Second Circuit precedent demonstrated above, the Fourth Circuit has specifically addressed the challengeability of the ATF's general guidance.  In *Golden and Zimmerman, L.L.C. v. Domenech*, the Fourth Circuit examined an APA challenge to a frequently asked question and response in the ATF's official Federal Firearms Regulations Reference Guide.  599 F. Supp. 2d 702, 705 (4th Cir. 2009).  There, the circuit determined that "[t]he practical effect of FAQ F13 was not to alter the legal regime under which plaintiffs operated, nor to affect plaintiffs' rights, but rather to restate a long-held view."  *Id*. at 710.  Accordingly, the circuit held that the ATF's FAQ did not meet the first element of final agency action established in *Bennett*.  *Id.*; *see Bennett*, 520 U.S. at 177–78.  Finally, when addressing the question of legal

consequences, the circuit noted that "the existence of FAQ F13 does not harm plaintiffs—should they engage in the transaction described in FAQ F13, ATF must decide to prosecute them, and a court must agree with the agency that the transaction is prohibited by the GCA." *Golden and Zimmerman*, 599 F. Supp. 2d at 711.

The ATF's Q&As, here, do not establish a new policy. They merely state the ATF's long held and seemingly obvious position that Non-Firearm Objects do not meet the definition of "firearm" under the GCA. Further, the Q&As, at every turn, identify the statutory section that imposes the requirements reproduced in the Q&As. ATF0310–12 (linking to the GCA on each webpage). Much like the FAQ examined by the Fourth Circuit, the ATF could not prosecute an individual for failing to follow one of the Q&As, but rather, would have to pursue that charge under the GCA. *See Golden and Zimmerman*, 599 F. Supp. 2d at 711; c*f. SurvJustice*, No. 18-cv-00535-JSC, 2019 WL 5684522, *11. Accordingly, the Q&As are neither the consummation of the ATF's decisionmaking process, nor do they establish legal consequences.

Overall, neither ATF Ruling 2015-1 nor the Q&As constitute reviewable, final agency actions under the APA. Additionally, even if Ruling 2015-1 were reviewable, the scope of that review would be limited to manufacturer licensing, marking, and record keeping requirements, and could not encompass the breadth of the definition of "firearm."

## III.   THE ATF'S "MECHANISTIC APPROACH" IS A CORRECT APPLICATION OF "READILY CONVERTIBLE," AS A MATTER OF LAW, AND CANNOT BE SUBSTITUTED BY PETITIONERS' JUDGMENT

Regardless of the challengeability of the underlying "actions," the ATF's use of the "mechanistic approach"—analyzing the actual manufacturing process involved in converting an object into a firearm—is a direct application of the phrase "readily convertible," and such an

18

application is required by statute.  Further, Petitioners, under the APA, cannot substitute their own

judgment for that of the agency in applying the definition of firearm under the GCA.

Under the APA, a court shall "hold unlawful and set aside agency action, findings, and

conclusions found to be (a) arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law."  5 U.S.C. § 706 (2).  "An agency's action is arbitrary and capricious when

it fails to meet statutory, procedural, or constitutional requirements."  *Perales v. Sullivan*, 948 F.2d

1348, 1354 (2d Cir. 1991); ATF Br. at 29.  Under the APA's "narrow standard of review, . . . a

court is not to substitute its own judgment for that of the agency."  *Dept. of Homeland Security v.*

*Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020) (quoting *FCC v. Fox Television Stations,*

*Inc.*, 556 U.S. 502, 513 (2009)); *accord. Perales*, 948 F.2d at 1354.  Accordingly, the

inappropriateness of substituting the court's judgment for that of the agency, in this context, is a

limitation on the APA's scope of review, not a question of agency deference under *Chevron*.

The ATF goes to great lengths to demonstrate that its treatment of Non-Firearm Objects as

not "firearms" is based on the plain meaning of the GCA.  ATF Br. at 28–38.  The ATF's linguistic

analysis and review of congressional intent evidences that Non-Firearm Objects, as a matter of

law, do not meet the definition of "firearm" under the GCA.  *Id.*

The ATF then unnecessarily argues that even if this Court determines that the definition of

"firearm" is ambiguous, the ATF's interpretation is reasonable.  ATF Br. at 39.  Such deference,

however, is inapplicable here, where the definition of firearm is not ambiguous.  *See Kisor v.*

*Wilkie*, 139 S. Ct. 2400, 2414 (2019) ("[T]he possibility of deference can arise only if a regulation

is genuinely ambiguous. And when we use that term, we mean it—genuinely ambiguous, even

after a court has resorted to all the standard tools of interpretation."); *cf. Christensen v. Harris*

*County*, 529 U.S. 579, 588 (2000) ("Because the regulation is not ambiguous on the issue of compelled compensatory time, *Auer* deference is unwarranted.").

This Court need not wade into the ever-shrinking realm of agency deference here.  This Court should look to the ATF's textual interpretation, ATF Br. at 28–38; the ATF's long-standing, in-depth mechanistic review of objects submitted to the agency to determine if objects are "designed to or may readily be converted to expel a projectile by the action of an explosive," ATF Br. at 40–47, 18 U.S.C. § 921(a)(3); and to *amicus* Second Amendment Foundation's extensive review of the original public meaning of the GCA, ECF No. 104-1, to affirmatively determine that the ATF's "mechanistic approach" is appropriate, as a matter of law.

For example, *Amicus* 80% Arms has itself undergone the ATF's intensive, mechanistic evaluation of objects.  In 2013, 80% Arms submitted three separate samples to the ATF's Firearms Technology Branch for evaluation.  ATF0136.  For each sample, the ATF examined whether the objects "would be classified as 'firearms' under the [GCA]."  ATF0136.  For the first sample, the ATF specifically noted which operations were already performed.  ATF0136–37 ("1. Front and rear assembly/pivot pin holes drilled.  2. Front and rear assembly/pivot-detent pin holes drilled. 3. Magazine-release and catch slots cut.  4. Rear of receiver drilled and threaded to accept buffer tube.  5. Buffer-retainer hole drilled.  6. Pistol-grip mounting area faced off and threaded. 7. Magazine well completed.  8. Trigger guard machined.  9. Receiver end-plate area machined. 10. Pistol-grip mounting area threaded.  11. Selector-lever detent hole drilled.").  The ATF then noted which operations were not yet performed.  ATF0137 ("1. Milling out of fire-control cavity. 2. Selector-lever hole drilled.  3. Cutting of trigger slot.  4. Drilling of trigger pin hole.  5. Drilling of hammer pin hole.").  Because of the operations that were not yet performed—namely the precise operations that would affect the fire-control group of the item—the ATF determined that the object

20

was not a "firearm" under the GCA.  ATF0137.  This process, however, is not a rubber stamp.  In the same letter, the ATF determined that the second and third samples submitted by 80% Arms *were* in fact "firearms."  ATF0137–38.  The difference between the first sample, on one hand and the second and third samples, on the other hand, which constituted operations on the selector-lever hole (a hole on the side of a firearm receiver that allows the operator to select the fire-mode of the weapon) and some drilling into the fire-control cavity, led the ATF to determine, based on manufacturing process, that those samples were "firearms."  ATF0137–38.  Again, these differences, as the ATF has maintained for decades, amounted to some operations in the fire-control cavity.

Petitioners have not met the high burden, under the APA, of demonstrating that the ATF's predictable and relied-upon treatment of Non-Firearm Objects "fails to meet statutory, procedural, or constitutional requirements."  *Perales*, 948 F.2d at 1354.  Instead, Petitioners propose an alternative application of the definition of "firearm," attempting to establish that it would be more reasonable to assess whether objects are "designed to or may readily be converted to expel a projectile by the action of an explosive," under a time-based approach.  *See* ATF0387 (Petitioners proposal of an amendment to the definition of "firearm frame or receiver" in 27 C.F.R. § 478.11 to include "any such part . . . that, without the expenditure of substantial time and effort, can be converted for use in an assembled, operable firearm").  Not only is this approach significantly more subjective than the manufacturing approach, but Petitioners have also not established that the GCA, as a matter of law, requires the implementation of a subjective, time-based interpretation of the term "firearm."  Further, even if Petitioners' interpretation was reasonable, this Court cannot substitute its judgment for that of the agency.  *See Dept. of Homeland Security*, 140 S. Ct. at 1905.  Unless this Court can establish that the ATF's treatment of Non-Firearm Objects is actually a

violation of the GCA, this Court cannot require the ATF to embrace Petitioners' preferred alternative. Accordingly, based simply on the scope of the APA, and not on *Chevron* deference, this Court should determine that the ATF's application of the definition of "firearm" to not encompass Non-Firearm Objects is not arbitrary, capricious, or otherwise not in accordance with law.

## **CONCLUSION**

For the foregoing reasons, and those stated in Federal Defendants' Motion for Summary Judgment and Opposition to Petitioners' Motion for Summary Judgment, ECF Nos. 97–100, *Amici* respectfully request this Court enter summary judgment in favor of Federal Defendants on each of Petitioners' claims for relief.

DATED this 5th day of February 2021.

Respectfully Submitted,

*/s/ Cody J. Wisniewski*
Cody J. Wisniewski*
*Admitted *Pro Hac Vice*
David C. McDonald
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado  80227
(303) 292-2021
cody@mslegal.org
dmcdonald@mslegal.org

David D. Jensen
DAVID JENSEN PLLC
33 Henry Street
Beacon, New York  12508
(212) 380-6615
david@djensenpllc.com

*Attorneys for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2021, I electronically filed the foregoing with the Clerk of the Court using this Court's CM/ECF system, which will send notification to all counsel of record, pursuant to Fed. R. Civ. P. 5 and Local Civil Rule 5.2.

Attorneys for Petitioners:

Eric Tirschwell
Len Hong Kamdang
Aaron Esty
Krystan Hitchcock
EVERYTOWN LAW
450 Lexington Avenue, P.O. #4184
New York, New York  10024
Telephone: (646) 324-8222

Stephanie Schuyler
COOLEY LLP
55 Hudson Yards
New York, New York  10001
sschuyler@cooley.com
Telephone: (212) 479-6747

Daniel Grooms
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC  20004-2400
Telephone: (202) 776-2042

Kathleen Hartnett
COOLEY LLP
101 California Street, 5th Floor
San Francisco, California  94111-5800
Telephone: (415) 693-2000

Attorneys for Defendants:

Audrey Strauss
Acting United States Attorney for the Southern District of New York

Alexander J. Hogan
Talia Kraemer
U.S. ATTORNEY'S OFFICE
Southern District of New York
86 Chambers Street, Third Floor
New York, New York  10007
Telephone: (212) 637-2799

*/s/ Cody J. Wisniewski*
Cody J. Wisniewski
MOUNTAIN STATES LEGAL FOUNDATION