UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CITY OF SYRACUSE, *et al.*,

                Plaintiffs,

    v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES, *et al.*,

                Defendants.

No. 20 Civ. 6885 (GHW)

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

AUDREY STRAUSS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2799/2822
Fax: (212) 637-2686/2702
E-mail: alexander.hogan@usdoj.gov
       talia.kraemer@usdoj.gov

ALEXANDER J. HOGAN
TALIA KRAEMER
Assistant United States Attorneys
– Of Counsel –

**TABLE OF CONTENTS**

ARGUMENT ....................................................................................................................1

I. Plaintiffs Do Not Have Standing To Bring this Action ............................................1

II. The 2015 Ruling and Q&A Postings Are Not Final Agency Action........................3

III. Defendants' Regulatory Regime is Not Contrary to Law.........................................6

    A. Section 921(a)(3)'s "Cross-Referencing" ............................................................6

    B. Defendants' Interpretation is Not Contrary to Law ............................................8

    C. Regardless of the Level of Deference, ATF's Interpretation is
       Sufficiently Reasonable and Persuasive To Be Upheld....................................10

IV. Defendants Have Not Unreasonably Delayed in Responding to Plaintiffs'
    Rulemaking Petition................................................................................................14

CONCLUSION..............................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971) ............................................................................................................... 12

*Comprehensive Comm. Dev. Corp. v. Sebelius*,
  890 F. Supp. 2d 305 (S.D.N.Y. 2012) ..................................................................................... 12

*Ctr. for Law & Educ. v. Dep't of Educ.*,
  396 F.3d 1152 (D.C. Cir. 2005) ................................................................................................ 2

*Doe v. Leavitt*,
  552 F.3d 75 (1st Cir. 2009) ..................................................................................................... 10

*Estate of Landers v. Leavitt*,
  545 F.3d 98 (2d Cir. 2008) ................................................................................................ 10, 11

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) .................................................................................................................. 2

*Manners v. Secretary of Defense*,
  242 Fed. App'x 723 (2d Cir. 2007) ........................................................................................... 5

*Skidmore v. Swift & Co.*,
  323 U.S. 134 (1944) ................................................................................................................ 10

*United States v. Lam*,
  20 F.3d 999 (9th Cir. 1994) .................................................................................................... 13

*United States v. Mead Corp.*,
  533 U.S. 218 (2001) ................................................................................................................ 12

**Statutes**

18 U.S.C. § 921(a)(3) ............................................................................................................ *passim*

While Plaintiffs may disagree with the line ATF has drawn for regulating unfinished frames and receivers, that choice is a policy dispute that is not actionable under the Administrative Procedure Act ("APA") in light of ATF's lawful and reasonable interpretation of the Gun Control Act ("GCA"). ATF's determinations in the Polymer80 Classification Letters[1] at issue in this litigation are consistent with the GCA's statutory text and ATF's longstanding, reasonable practice of assessing the amount of machining that would be required before an unfinished frame or receiver may be deemed a firearm. ATF has not declined to regulate unfinished frames and receivers altogether; indeed, as demonstrated by the administrative record ("Record" or "AR."), *see* Dkt. No. 60, ATF has frequently deemed a given unfinished frame or receiver to be a firearm. This demonstrates the fundamental problem with Plaintiffs' argument: though the parties disagree about the exact circumstances in which unfinished frames and receivers qualify as firearms, that line-drawing exercise remains a matter of ATF's discretion, because ATF's determinations are consistent with the GCA and are not arbitrary and capricious.

## ARGUMENT

### I. Plaintiffs Do Not Have Standing To Bring this Action

As an initial matter, Plaintiffs still have not met their burden to establish standing. As to Plaintiff Cities, Plaintiffs' Reply lays bare the basic flaw with their standing argument: in identifying their alleged injuries, Plaintiffs lump together all varieties of "ghost guns," as well as "ghost-gun kits," without distinguishing between (1) the unfinished frames and receivers at issue in the challenged Polymer80 Classification Letters or in the 2015 Ruling and Q&A postings, and (2) other kinds of untraceable weapons referred to as "ghost guns." *See* Plaintiffs' Reply Brief in

---

[1] Defined terms not otherwise defined herein have the same meaning as in Defendants' opening brief.

1

Support of Plaintiffs' Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment ("Plaintiffs' Reply" or "Pl. Reply."), Dkt. No. 112, at 3-4. Because only the former are at issue in this case, Plaintiffs would need to demonstrate that their asserted injuries are traceable to those types of unfinished frames and receivers, which they have not done. *See* Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment ("Def. Mem." or "Defendants' Motion"), Dkt. No. 98, at 11-13. Plaintiffs' invocation of injuries resulting from "ghost-gun kits" especially misses the mark. Plaintiffs have not challenged in this litigation ATF's regulation of gun-building kits, which, as Plaintiffs themselves emphasize, ATF treats differently than stand-alone unfinished frames and receivers. Pl. Reply at 1-2. Thus, because Plaintiff Cities have not established that their injuries are caused by the types of frames and receivers at issue in the Polymer80 Classification Letters or in the 2015 Ruling or Q&A, they have failed to establish that their asserted injuries are traceable to the ATF activities at issue in this case. Plaintiff Cities' redressability argument fails for the same reason.

As for the Organizational Plaintiffs, Plaintiffs have not demonstrated injury beyond abstract harm to the Organizational Plaintiffs' advocacy efforts—an injury that does not suffice to establish standing. Ignoring the Supreme Court's decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), Plaintiffs continue to insist that they have a cognizable injury simply because they have diverted resources from other projects to focus on "ghost guns." Pl. Reply at 4-5. But the Organizational Plaintiffs have failed to show that ATF's challenged actions imposed any burden on their usual activities, as would be necessary to confer standing. Rather, the Organizational Plaintiffs have chosen to spend resources on an issue they determined to be relevant to their advocacy interests—precisely the type of "interest in a problem" that is inadequate to create

2

standing. *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1162 n.4 (D.C. Cir. 2005) (internal quotation marks omitted). Because no plaintiff has met its burden of establishing standing, this matter should be dismissed.

## II. The 2015 Ruling and Q&A Postings Are Not Final Agency Action

Plaintiffs' argument that the 2015 Ruling and Q&A web postings together constitute final agency action with respect to unfinished frames and receivers hinges on a sleight of hand, combined with a blatant rewriting of the 2015 Ruling. Plaintiffs' convoluted efforts to manufacture final agency action in 2015—likely to avoid statute-of-limitations problems—should be rejected.

First, while Plaintiffs refer repeatedly to a "2015 Interpretive Rule" that supposedly consisted of the 2015 Ruling combined with the Q&A web postings, those items do not operate together to announce the agency's decision on unfinished frames and receivers. *See* Pl. Reply at 5. As explained in the Government's opening brief, the 2015 Ruling did not announce any decision at all with respect to when an unfinished frame or receiver becomes a firearm. *See* Def. Mem. at 16-17. Nor is the 2015 Ruling transformed into a decision on unfinished frames and receivers if considered in conjunction with the Q&A web postings. Those postings, which describe ATF's views on when unfinished frames or receivers may be considered firearms, address distinct subject matter and make no reference whatsoever to the 2015 Ruling. *See* AR. at 310-12. There is no basis for concluding that the two items together constitute final agency action.

Second, neither the 2015 Ruling nor the Q&A alone constitutes "final agency action" regarding when unfinished frames and receivers will be deemed firearms under the GCA. The 2015 Ruling does not qualify as final agency action on unfinished frames and receivers because it simply does not announce any agency decision on that issue. Instead, the 2015 Ruling addressed

3

the circumstances under which businesses must comply with the GCA's license, marking, and recordkeeping requirements. Indeed, when the text from which Plaintiffs selectively quote is read in its entirety, Plaintiffs' claim that the 2015 Ruling "unambiguously proclaims that whether an unfinished receiver or frame will be considered a firearm *turns on* minor drilling and machining activities" strains credulity. Pl. Reply at 5 (emphasis added). In reality, the 2015 Ruling provides:

> The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) has received inquiries from the public asking whether Federal Firearms Licensees (FFL), or unlicensed machine shops, may engage in the business of completing, or assisting in the completion of, the manufacture of firearm frames or receivers for unlicensed individuals without being licensed as a manufacturer of firearms.
>
> Unlicensed individuals occasionally purchase castings or machined/molded or other manufactured bodies (sometimes referred to as "blanks," or "80% receivers") that have not yet reached a stage of manufacture in which they are classified as "firearm frames or receivers" under the Gun Control Act of 1968 (GCA) and implementing regulations. Once purchased, these individuals may perform minor drilling and machining activities in or on the fire control area or other critical areas of the castings or machined/molded bodies sufficient to create a "firearm frame or receiver" under the law. Although the frame or receiver may be sufficiently complete to be classified and regulated as a "firearm," it generally requires substantial additional machining before it can accommodate fire control components such as a trigger, hammer, or sear and be used to expel projectiles. For instance, a casting of an AR-15 type receiver can be machined using common power tools so that it reaches a stage of manufacture that it would be classified as a "firearm frame or receiver," yet incapable of being assembled into a weapon that will expel projectiles. Unlicensed individuals propose to take either a blank, or a frame or receiver (not marked with a serial number or any other marks of identification) to a licensed dealer-gunsmith or machine shop for further machining and finishing so that it can be assembled into a complete or functional firearm as designed. The FFLs or unlicensed machine shops would then use their own equipment, such as a Computer Numeric Controlled (CNC) machine or other means, to finish the blank or frame or receiver into one that can be used to assemble a weapon capable of firing projectiles.

AR. at 290-91. That is, the ruling explains that there may be *some* circumstances in which an individual performs "minor drilling and machining activities in or on the fire control area or other critical areas" that are sufficient to create a firearm. AR. at 290. But the fact that this may occur on occasion hardly announces a rule that whether an unfinished frame or receiver is a firearm

4

"turns on" the presence or absence of minor drilling and machining activities. Pl. Reply at 5. This is underscored by the fact that the 2015 Ruling issued three "holdings," none of which proclaims the circumstances under which an unfinished frame or receiver is a firearm. AR. at 294-95.

The 2015 Ruling also does not constitute final agency action regarding unfinished frames and receivers because it does not determine any party's rights or obligations, or result in legal consequences for any party, with respect to that issue. Plaintiffs' claim that industry players "cite the Rule to market their unfinished receivers and frames" is entirely unsupported by the evidence Plaintiffs cite, which reflects instead that sellers have relied on the Polymer80 Classification Letters—not the 2015 Ruling—in marketing their products. *See* Pl. Reply at 7; Pl. 56.1 Statement ¶¶ 8-9, 11.

Likely recognizing that the 2015 Ruling is a weak basis for identifying "final agency action" with respect to unfinished frames and receivers—and that their challenge to ATF's general regulatory approach is time-barred unless they can identify such action within six years before filing their lawsuit[2]—Plaintiffs point to an informational "Q&A" posting on ATF's website from 2015, arguing that the two together add up to final agency action. But nothing in the Q&A bolsters Plaintiffs' revisionist view of the 2015 Ruling, which did not reflect agency action on unfinished frames and receivers. Plaintiffs' assertion that manufacturers understood the Q&A and 2015 Ruling as together "crystali[zing]" ATF's approach is again unsupported by Plaintiffs' cited evidence, which shows only that at least one seller posted information about the 2015 Ruling on its website, but does not demonstrate that the seller relied on that ruling in marketing unfinished

---

[2] A six year statute of limitations applies to APA claims. *See Manners v. Secretary of Defense*, 242 Fed. App'x 723, 725 (2d Cir. 2007) ("Actions under the APA, like other civil actions against the United States, are subject to the six-year statute of limitations set forth at 28 U.S.C. § 2401(a).").

frames and receivers as non-firearms. *See* Pl. Reply at 7; Pl. 56.1 ¶ 48. Finally, because the Q&A, whether alone or considered together with the 2015 Ruling, does not result in legal consequences for any party, it cannot constitute final agency action. *See* Def. Mem. at 18. As a result, neither the 2015 Ruling nor the Q&A is reviewable "final agency action" on the issue of when unfinished frames or receivers are deemed to be firearms under the GCA.

### III. Defendants' Regulatory Regime is Not Contrary to Law

Plaintiffs argue that ATF's focus on the degree of machining to an unfinished frame or receiver is a "mechanistic approach [that] violates the GCA's clear command . . . to determine if an unfinished frame or receiver 'may readily be converted' into (or was 'designed to' be) an operable firearm." Pl. Reply at 10. This is inaccurate.

#### A. Section 921(a)(3)'s "Cross-Referencing"

As an initial matter, in their reply brief, Plaintiffs make much of the "cross-reference" contained in Section 921(a)(3)'s definition of "firearm." *See* Pl. Reply at 9 ("And Section 921(a)(3)(B) directs ATF to regulate the frames and receivers of 'any such weapons,' cross-referencing Section 921(a)(3)(A)."). But that cross-reference does not support Plaintiffs' statutory reading.

The first subsection of Section 921(a)(3) deems an item to be a "firearm" if it is a weapon that will, is designed to, or may readily be converted to expel a projectile by action of an explosive. 18 U.S.C. § 921(a)(3)(A). Thus, Defendants do not dispute that if a weapon can be readily converted to expel a projectile (or is designed to be a device that expels a projectile), then it is a "firearm" within the definition of the GCA.

The second subsection of Section 921(a)(3) provides that the frame or receiver of "any such weapon" also qualifies as a firearm. *Id.* § 921(a)(3)(B). However, this does not mean that

6

the relevant inquiry is whether an unfinished frame or receiver is designed to be, or can readily be converted into, a finished *frame or receiver*.[3] *Cf.* Pl. Reply at 19 (suggesting that the test is whether "a frame or receiver that is complete except for 'minor drilling' is . . . 'designed to be' a complete frame or receiver"). Rather, Section 921(a)(3)(B) makes clear that, if, for example, there is a fully assembled and functional firearm, then the frame or receiver of that weapon is, itself, a firearm. Or, for example, if there is a firearm that was designed to expel a projectile, but, due to damage or a mechanical failure cannot do so, then the frame of such a weapon is also a firearm. Or, if a weapon could fire with only minor modifications and thus is readily convertible to expel a projectile, then the frame or receiver of such an instrument would be a firearm. In other words, if a given weapon does expel a projectile, is designed to expel one, or can readily be converted into a weapon that does so, then the frame or receiver of such a weapon is also regulated.

In their opening brief, Plaintiffs argued that unfinished frames or receivers like those at issue in the Polymer80 Classification Letters must be regulated as firearms because the GCA "requires ATF to regulate as a 'firearm' any frame or receiver that 'is designed to or may readily be converted to' become an operable weapon"—that is, because such items qualify as firearms under Section 921(a)(3)(A). Plaintiffs' Motion for Summary Judgment ("Pl. Mot." or "Plaintiffs' Motion"), Dkt. No. 62, at 25; *see also id.* at 24, 26-28. As explained at length in Defendants' Motion, and discussed further below, unfinished frames or receivers like those at issue in the Polymer80 Classification Letters are not themselves "designed to," nor readily convertible to, expel a projectile. In Plaintiffs' Reply, however, they now appear to argue that these items instead

---

[3] To be clear, ATF's position is that the "readily be converted" language modifies only "weapon" in Section 921(a)(3)(A) and not "frame or receiver" in Section 921(a)(3)(B). However, if a frame or receiver (even if not entirely finished) has reached a critical stage of manufacture such that it can accept the components it is designed to house, then it may be deemed a frame or receiver pursuant to Section 921(a)(3)(B).

7

qualify as firearms under Section 921(a)(3)(B).  Plaintiffs reason that "[t]he category of weapons that 'may readily be converted to' fire projectiles necessarily describes firearms that have not been completely machined," and because frames and receivers are an integral part of such weapons, "the GCA covers as 'firearms' at least some incomplete frames and receivers."  Pl. Reply at 9.  However, the relevant question here is not whether *some* unfinished frames and receivers may qualify as firearms, but whether the receiver blanks at issue in the Polymer80 Classification Letters must be deemed firearms under the GCA in light of the degree to which those items are unfinished.[4]  Nothing in the statute's "cross-referencing" compels such a result.

### B. Defendants' Interpretation is Not Contrary to Law

Under the plain meaning of the phrase "designed to," unfinished frames or receivers like those at issue in the Polymer80 Classification Letters are not designed to expel a projectile.  At most, they are designed to be finished into a frame or receiver and then incorporated (along with many other parts) into a weapon that is designed to expel a projectile.  *See* Def. Mem. at 25-26.  As explained in the Government's opening brief, if a manufacturer's intended use for receiver blanks were sufficient to bring such items within the GCA's definition of "firearm," as Plaintiffs request, *see* Pl. Reply at 13 n.7, then all gun parts would qualify as firearms, a result that is plainly not contemplated under the GCA.  *Id.* at 21-25.

Plaintiffs next contend that Section 921(a)(3)(A)'s "readily be converted" language "unambiguous[ly]" forecloses any bright-line test for when an unfinished frame or receiver qualifies as a firearm.  Pl. Reply at 9-10.  Plaintiffs claim that "[t]hese terms are intentionally broad and flexible, and thus cannot be reduced to the bright-line consideration of a single attribute,

---

[4] Even if the 2015 Ruling and/or Q&A are deemed final agency action subject to judicial review, the same is true of the receiver blanks described more broadly in those materials.

like the presence or absence of certain machining." *Id*. at 10-11.  However, a bright-line rule is not incompatible with the "readily be converted" language.  Nothing about the term "readily be converted" forbids ATF from establishing basic guidelines governing which items may "readily be converted" and which may not.  Indeed, even if ATF were to adopt Plaintiffs' preferred analysis, and assess whether "substantial time and effort" is needed to convert an unfinished frame or receiver into an operable firearm, basic guidelines would be necessary for such a rule to be administrable.  *See* Cmpl. at ¶ 152.  In those circumstances, ATF would need to determine what amounted to a "substantial" amount of time.  This would require ATF to adopt guidelines about how much time is considered "substantial," so as to apply the regulation consistently across devices—just as ATF has in evaluating the degree of machining or indexing a device has undergone.  In short, simply because a term is broad (such as "readily convertible"), that does not mean that the term cannot be subject to bright-line rules that provide some limitations as to how that term is applied.

The question, then, is whether ATF's rule is proper.  Here, ATF has focused on the fire control cavity and the degree of machining in the cavity because that is the critical component of the firearm that allows it to fire.  If there is no machining in that cavity, it is reasonable to determine that the device is not a firearm in light of the significant steps that must, in all cases, still be undertaken before the device can expel a projectile.  *See* Def. Mem. at 27.  Because such devices cannot be turned into a firearm "without much difficulty" or "with fairly quick efficiency" in light of those required steps, ATF has reasonably determined that such items are not weapons that may readily be converted to expel a projectile.  *See* Def. Mem. at 26.

Plaintiffs attempt to undermine ATF's standard by noting that ATF does deem a device to be a firearm when there is some machining to the frame or receiver (as opposed to it being

9

completely unmachined).[5] *See* Pl. Reply at 12.  But ATF must draw the line somewhere, and there will always be only a minor amount of additional machining standing between a device that falls on one side of that line and a device that falls on the other.  Plaintiffs do not like where ATF has drawn the line, but that is not the relevant question under the APA.  The inquiry is whether this line is contrary to law (or arbitrary and capricious), and ATF's reasonable line drawing is neither.  *See* Def. Mem. at 38-39 (collecting cases with respect to agency line drawing).

### C. Regardless of the Level of Deference, ATF's Interpretation is Sufficiently Reasonable and Persuasive To Be Upheld

Plaintiffs contend that Defendants are not entitled to *Chevron* deference, but only *Skidmore* deference.  *See Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).  However, even under *Skidmore* deference, ATF's interpretation must be upheld.  Pursuant to *Skidmore*, the agency's interpretation is "still entitled to respect according to its persuasiveness, as evidenced by the thoroughness evident in the agency's consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Estate of Landers v. Leavitt*, 545 F.3d 98, 107 (2d Cir. 2008) ("*Leavitt*") (internal citations omitted).  *Skidmore* deference "must mean something more than that deference is due only when an inquiring court is itself persuaded that the agency got it right.  Otherwise, *Skidmore* deference would not be deference at all."  *Doe v. Leavitt*, 552 F.3d 75, 81 (1st Cir. 2009).

ATF's interpretation of the GCA is sufficiently reasonable that it must be upheld (under either *Chevron* or *Skidmore* deference).  ATF has determined that the lack of any machining in the fire control cavity, in devices such as those at issue in the Polymer80 Classification Letters, renders

---

[5] As noted above, *see supra* note 3, in such circumstances, ATF does not deem the unfinished frame or receiver to be a firearm because it can "readily be converted" under Section 921(a)(3)(A). Rather, ATF views such items as having reached a critical stage of manufacture such that they are frames or receivers within the meaning of Section 921(a)(3)(B).

10

a device sufficiently unmachined that it cannot be deemed a firearm. As discussed in Defendants' Motion, ATF's focus on the degree of machining to the device is longstanding. *See* Def. Mem. at 32-33.

In addition to the consistency of the agency's interpretation, *Skidmore* examines the formality of the agency's interpretation. "The deference due to an agency interpretation is at the high end of the spectrum of deference when the interpretation in question is not merely ad hoc but is applicable to all cases." *Leavitt*, 545 F.3d at 110 (internal citation and quotation omitted). ATF's interpretation is not ad hoc; indeed, Plaintiffs themselves argue that ATF has been applying this approach for years and that the approach has "crystallized" into formal guidance. Pl. Reply at 20-21. ATF's approach is reflected, for instance, in a 2013 Technical Bulletin providing that "[i]n order to preclude classification as a firearm, this area of the receiver, in addition to being solid, must not contain any holes or dimples for the trigger, hammer, and selector." AR. at 273. The Second Circuit has ruled that an interpretation set forth in a policy manual is "relatively formal" and owed an "intermediate level of deference." *Leavitt*, 545 F.3d at 110. The same conclusion is warranted here, where ATF has made clear to the public that this is a generally applicable guideline, not one "advanced only in litigation." *Id*.

Additionally, ATF's thoroughness in coming to these conclusions is evident. The Record demonstrates that ATF engages in detailed analysis of devices submitted to it for classification—often noting the precise machining operations that have or have not occurred. *See* Def. Mem. at 30-32. This thorough approach is evidenced, for example, by ATF's analysis with respect to devices submitted for classification by Polymer80. *See* Def. Mem. at 41. Plaintiffs fault ATF for not engaging in the same level of testing in every determination letter. Pl. Reply at 19. But the fact that ATF has declined to engage in repetitive analysis for receiver blanks does not render its

determinations arbitrary and capricious, as those determinations are informed by ATF's accumulated experience in this area.

Under *Skidmore* deference, the Court may also consider other factors that have the power to persuade. Here, the Court should consider ATF's experience and expertise in regulating firearms, as well as the need for national uniformity in applying these regulations, which weigh in favor of according substantial deference to ATF's interpretation. *See United States v. Mead Corp.*, 533 U.S. 218, 234 (2001) (*Skidmore* deference appropriate where agency has specialized experience, and in light of "the value of uniformity in its administrative and judicial understandings of what a national law requires"). ATF's decision that a stand-alone solid, unfinished frame or receiver like those at issue in the Polymer80 Classification Letters falls outside of the GCA promotes uniformity and consistency. While ATF continues to evaluate items on a case-by-case basis, this guideline provides a baseline. And such a baseline is particularly important given the interests impacted by this area of regulation—constitutional rights under the Second Amendment, *see* Def. Mem. at 37, and potential criminal sanctions (for unlawful firearm sales or possession), *see* Def. Mem. at 45.

Plaintiffs' arguments to the contrary are unpersuasive. First, Plaintiffs highlight ATF's position that Polymer80's "gun building kits" are firearms and subject to the GCA. *See* Pl. Reply at 15; *see also* Dkt. No. 92-2 ("Search Warrant Application"). As an initial matter, the Search Warrant Application is not part of the Record in this case and should not inform the Court's decision. In an APA action, "'the full administrative record'" is what "'was before the Secretary at the time he made his decision.'" *Comprehensive Comm. Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305, 308 (S.D.N.Y. 2012) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)). Since the Search Warrant Application postdates the decisions Plaintiffs

12

challenge, "these post-decision documents necessarily were not considered by" ATF when making the challenged decisions. *Id.* at 313.

Further, even if this Court were to consider the Search Warrant Application, the "Buy Build Shoot Kits" at issue in that case included not only a receiver blank, but all other parts and tools necessary to build a functioning handgun (such as a barrel, slide, springs, and all other necessary parts and tools). *See, e.g.,* Search Warrant Application at ¶¶ 8, 38, 45. It is entirely reasonable for ATF to determine that a kit that provides every part needed to create a functional weapon is "readily convertible" to expel a projectile, while an unfinished frame or receiver standing alone is not.

Second, Plaintiffs cannot seriously dispute, *see* Pl. Reply at 16, that one purpose of the GCA was to avoid "unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, or use of firearms appropriate to . . . hunting, [recreation], personal protection, or any other lawful activity . . . [or the] ownership or use of firearms . . . for lawful purposes." *United States v. Lam*, 20 F.3d 999, 1001 (9th Cir. 1994) (quoting Pub. L. No. 90-618, § 101, 82 Stat. 1213). And Plaintiffs are incorrect that the Administrative Record lacks evidence that ATF relies on the GCA's purpose in making its determinations about unfinished frames and receivers. *See* Pl. Reply at 20; *see also* AR. at 302 ("Addressing the clear public safety challenges from these firearms while respecting the rights of law abiding citizens will be a challenge going forward.").

Plaintiffs claim that ATF did not engage in a "reasoned justification" for the "machining" test in either the 2015 Ruling or the Polymer80 Classification Letters. Pl. Reply at 19. Even if this Court were to review Plaintiffs' challenge to the 2015 Ruling, Plaintiffs' criticism of the ruling fails for the same reason that the ruling is not reviewable as final agency action. The ruling does

13

not "explain why the absence of 'minor drilling' precludes 'ready conversion,'" Pl. Reply at 19, because the ruling says no such thing to begin with. As to the Polymer80 Classification Letters, ATF lists in those letters the machining operations that have and have not been performed on the relevant frame or receiver, and relies on those operations in determining whether the device has reached a critical stage of manufacture and therefore qualifies as a firearm. Under ATF's current approach, a stand-alone unfinished frame or receiver with a lack of machining or indexing like those at issue in the Polymer80 Classification Letters is not a weapon that can readily be converted to expel a projectile, *see* Def. Mem. at 26-29, and thus, there is no further intervening inquiry that need be memorialized in ATF's decisions. Similarly, in ATF's view, an unfinished frame or receiver is never "designed to" expel a projectile. Accordingly, ATF classification letters would not analyze a device under this theory, because ATF believes it to be wholly irrelevant to the classification decision.

## IV. Defendants Have Not Unreasonably Delayed in Responding to Plaintiffs' Rulemaking Petition

Defendants do not seek to "downplay" the fact that firearms implicate health and human welfare. Pl. Reply. at 23. They undoubtedly do. In fact, so much so that the Government has established an entire agency to address issues related to the regulation of firearms. However, by virtue of the fact that ATF's primary focus is the regulation of firearms (and explosives), most all of its decisions implicate health and human welfare, and it is owed deference as to the ordering of its priorities.

Plaintiffs claim that their Petition has only become more urgent in light of the pandemic due to an increase in the purchase of ghost guns that has occurred during that time. *See* Pl. Reply. at 24, n.10. However, this only demonstrates that any changes that the Petition seeks would have even broader consequences. Fundamentally, Plaintiffs are seeking a sweeping change to a

regulatory regime that has far reaching implications. It is unsurprising that the evaluation of such a proposal has taken time—especially in light of a public health pandemic. And though one part of the necessary evaluation process with respect to Plaintiffs' Petition was completed some months ago, that is only part of the process that must be completed, and DOJ is still evaluating Plaintiffs' Petition.

In sum, Defendants do not dispute that the Petition implicates an important issue with broad consequences, but that only supports the need for careful deliberation. In light of all the considerations noted in Defendants' Motion, Defendants have not engaged in unreasonable delay as to the Petition.

## CONCLUSION

For the reasons stated herein, the Court should grant Defendants' motion for summary judgment in its entirety and deny Plaintiffs' cross-motion for summary judgment.

Dated: March 19, 2021
       New York, New York

                                    Respectfully Submitted,

                                    AUDREY STRAUSS
                                    United States Attorney of the
                                    Southern District of New York


                              By:   /s/ Alexander J. Hogan
                                    ALEXANDER J. HOGAN
                                    TALIA KRAEMER
                                    Assistant United States Attorneys
                                    86 Chambers Street, Third Floor
                                    New York, New York 10007
                                    Tel.: (212) 637-2799/2822
                                    Fax: (212) 637-2686/2702
                                    E-mail: alexander.hogan@usdoj.gov
                                            talia.kraemer@usdoj.gov