

Kathleen R. Hartnett
Telephone: (415) 693-2000
Email: khartnett@cooley.com

VIA ECF

October 3, 2022

Honorable Gregory H. Woods
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *City of Syracuse, et al. v. Bureau of Alcohol, Tobacco, Firearms and Explosives, et al.*, 20 Civ. 6885

Dear Judge Woods:

Pursuant to the Court's May 6, 2022 Order (ECF No. 136), the parties in the above-captioned action provide the Court with this joint update and explain the parties' respective positions on future proceedings.

On June 21, 2021, the Court granted the parties' request to stay this matter in light of a proposed rule to be issued by Defendant Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") concerning the subject matter of this litigation. ECF No. 127 at 3. ATF issued the final rule (the "Rule") on April 11, 2022 with an effective date of August 24, 2022. *Definition of "Frame or Receiver" and Identification of Firearms*, 87 Fed. Reg. 24652. On April 29, 2022, the parties requested that the Court administratively close the case, noting that the parties would "be in a better position to know whether further proceedings in this matter are necessary after the effective date of the rule." ECF No. 136 at 1. On May 6, 2022, this Court granted the parties' proposal to administratively close the case and directed the parties to submit a joint status update on or before October 3, 2022. *Id.* at 2.

The parties set forth their respective positions below.

**Plaintiffs' Position:** Plaintiffs request that the Court issue an order ending the administrative closure and granting Plaintiffs 30 days to file an amended complaint. As described further below, Plaintiffs commenced this litigation to challenge ATF's unlawful interpretation of the Gun Control Act (the "Act")—an interpretation that has fueled the rapid proliferation of unserialized and untraceable "ghost guns." Following issuance of the Rule, ATF appears to be continuing to implement a legally flawed interpretation of the Act. Meanwhile, the ghost gun industry is continuing to actively sell the parts necessary to easily build ghost guns while pursuing three separate lawsuits challenging the Rule, which have to date resulted in the Rule being enjoined as to several parties and may well lead to a broadened injunction. Accordingly this action is not moot. Absent a change in course by ATF, Plaintiffs intend to continue this action to rectify ATF's legally flawed implementation of the Act.

ATF's interpretation of the Rule. The Gun Control Act defines "firearm" to include "(A) any weapon . . . which . . . is *designed to or may readily be converted to* expel a projectile by the action of an explosive" or "(B) the frame or receiver of *any such weapon*." 18 U.S.C. § 921(a)(3) (emphases added). Plaintiffs'

Cooley LLP   3 Embarcadero Center   20th Floor   San Francisco, CA   94111-4004
t: +1 415 693 2000   f: +1 415 693 2222   cooley.com

# Cooley

Complaint alleges that under this definition, at least the following items are "firearms" subject to regulation: partially complete "frames" and "receivers," as well as gun-building "kits" (containing partially complete frames and receivers) that are designed to be or may readily be converted into fully operational guns. ECF No. 11 ("Compl."). Plaintiffs have explained that, under a contrary interpretation, anyone with a "credit card and an address" has been able to go online and, without a background check, buy a near-complete frame, receiver, or kit—designed for the sole purpose of being converted into a fully operational gun—and quickly and easily finish and assemble those items into fully operational guns that have "no serial number" and are "untraceable." *Id.* ¶ 1.

On its face, ATF's new Rule covers partially complete frames and receivers, as well as gun-building kits. *See*, *e.g.*, 87 Fed. Reg. at 24686 (discussing "frames," "receivers," and "kits"). Indeed, the Rule added directly into the Code of Federal Regulations a clarification that the statutory terms "frame" and "receiver" "shall include a *partially complete* . . . frame or receiver" that "is designed to or may readily be completed . . . to function as a frame or receiver." 27 C.F.R. § 478.12(c) (emphasis added). And "readily," in turn, is defined as "a process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state" and the Rule provides a nonexhaustive list of factors relevant to applying that definition. *Id.* § 478.11.

However, since the Rule took effect in late August, ATF appears to have embarked on a path that continues its legally flawed pre-Rule interpretation of the Act. Specifically, ATF seems to have determined that the Rule, while covering kits for building ghost guns, does *not* cover a large swath of partially complete frames or receivers sold on their own, whether or not such items are designed to be or readily convertible into firearms. For example, in proceedings before the Southern District of Texas, ATF's counsel stated that ghost gun distributors can "continue" to "sell[] receiver blanks . . . without a license. That's not going to be a problem." *Division 80, LLC, et al. v. Merrick Garland, et al.*, ECF No. 68 at 16:3–5 (S.D. Tex. Aug. 9, 2022), 22 Civ. 148. Then, in a September 27, 2022 open letter from ATF to "federal firearms licensees," ATF announced the following: "A partially complete AR-type receiver with no indexing or machining of any kind performed in the area of the fire control cavity is not classified as a 'receiver,' or 'firearm' if not sold, distributed, or marketed with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a receiver parts kit." ATF, *Open Letter to All Federal Firearms Licensees: Impact of Final Rule 2021-05F on Partially Complete AR-15/M-16 Type Receivers* at 3 (Sept. 27, 2022) (attached as Exhibit A). But, in contrast to that letter, the term "readily convertible" does not require that associated templates, jigs, molds, equipment, tools, instructions, or guides, be sold or distributed alongside the partially complete frame or receiver for such frame or receiver to be readily convertible into an operational gun. 27 C.F.R. § 478.11. And for good reason: the undeniable reality is that these items can be easily obtained and used to quickly convert a partially complete frame or receiver into an operational ghost gun, allowing these weapons' continued proliferation.

Indeed, whereas the Rule states that "persons cannot undermine [the Act's] requirements and prohibitions by working with others or structuring transactions to avoid the appearance that they are not commercially manufacturing and distributing firearms," 87 Fed. Reg. at 24713, and likewise states that a partially complete frame or receiver can "readily" be converted into a firearm based on the "tools" and the "availability" of the parts required to finish and assemble the operational gun, *id.* at 24735, ATF's recent open letter indicates that many partially complete frames and receivers will *not* be classified as a firearm unless literally sold in the same set or together with the parts and/or tools needed to complete the firearm, Exhibit A at 1. It appears that ATF is already implementing this interpretation of the Rule (and the Act). For instance, Tactical Machining—a prominent ghost gun purveyor—reportedly received approval "in writing" from a "local ATF office" to sell near-complete frames and receivers without a kit. Keegan Hamilton, *A Simple Plastic Tool is Undermining New Ghost Gun Rules*, VICE (Sept. 12, 2022), https://bit.ly/3UJ82Ot. Similarly, Intervenor Polymer80, Inc.—the company that by all reports has sold the vast majority of the ghost gun-building kits recovered by law enforcement over the last several years, and which remains under criminal investigation by ATF—continues to sell partially complete but readily convertible pistol frames that

Cooley LLP   3 Embarcadero Center   20th Floor   San Francisco, CA   94111-4004
t: +1 415 693 2000  f: +1 415 693 2222  cooley.com

2

ATF erroneously deemed a non-firearm prior to the enactment of the Rule,[1] along with instructions available on Polymer80's website on how to complete that frame into an operable weapon.[2]

In short, Plaintiffs' Complaint alleges that (1) partially complete frames, receivers, and gun-building kits are "firearms" under the Act because they are designed to be and may readily be converted into operable guns, and (2) ATF's contrary interpretation is unlawful.  But while the Rule recognizes that a partially complete frame or receiver need not be sold with a kit to be a "firearm," ATF appears to be reading the Rule as limited to only kits and perhaps some arbitrary subset of partially complete frames and receivers.  In doing so, ATF leaves many if not most commercially available and readily convertible partially complete frames and receivers unregulated and freely available with the click of a button.  If ATF were to clarify its open letter—such that partially complete frames and receivers sold on their own are deemed firearms so long as they are designed to be or may readily be converted into firearms, taking into account the public availability of tools and parts needed to complete them—then this litigation may well be mooted (if the Rule survives legal challenges).  But to date, that is not what ATF has done and, accordingly, Plaintiffs ask for 30 days to amend their Complaint.  And indeed, a similar case challenging ATF's pre-Rule interpretation of the Act, the Northern District of California recently permitted the plaintiffs leave to amend their complaint—over ATF's assertion that the case is moot—for several of the reasons outlined by Plaintiffs in this letter.  *State of California, et al. v. Bureau of Alcohol, Tobacco, Firearms and Explosives, et al.*, 20 Civ. 6761, ECF Nos. 116, 118 (N.D. Cal.).  The transcript of the hearing at which leave was granted is attached as Exhibit B.

<u>Ongoing litigation</u>.  As of this writing, three lawsuits have challenged the Rule on various grounds.  In *Morehouse Enterprises, LLC, et al. v. Bureau of Alcohol, Tobacco, Firearms and Explosives, et al.*, the District of North Dakota denied the challengers' motion to enjoin the Rule.  Order, 22 Civ. 116, ECF No. 85 (D.N.D. Aug. 23, 2022).  That decision is on appeal to the Eighth Circuit.  In *Division 80, LLC v. Merrick Garland, et al.*, the Southern District of Texas denied a different set of challengers' motion to enjoin the Rule.  Order, 22 Civ. 148, ECF No. 74 (S.D. Tex. Aug. 23, 2022). In *VanDerStok, et al. v. Merrick Garland, et al.*, however, Judge Reed O'Connor of the Northern District of Texas granted a motion to enjoin the Rule with respect to one of the challengers.  22 Civ. 691, ECF No. 56 (N.D. Tex. Sept. 2, 2022).  After further briefing, Judge O'Connor expanded the injunction to cover both ghost gun purveyor Tactical Manufacturing *and its customers* (wherever in the country those customers may be, thus granting Tactical Manufacturing an effective monopoly on ghost gun distribution).  22 Civ. 691, ECF No. 89 (N.D. Tex. Oct. 1, 2022).  Still pending before Judge O'Connor is a motion filed by another ghost gun purveyor, Blackhawk Manufacturing Group, Inc. ("Blackhawk"), seeking to intervene and obtain relief of the kind awarded to Tactical Manufacturing.  22 Civ. 691, ECF Nos. 76, 77, 79 (N.D. Tex.).  Judge O'Connor has also ordered ATF to produce the administrative record by October 24, 2022, to allow for summary judgment briefing.  22 Civ. 691, ECF No. 82 (N.D. Tex. Sept. 23, 2022).

The outcomes of these challenges to the Rule directly implicate this litigation.  The Eighth Circuit appeal could reverse the District of North Dakota's denial of injunctive relief.  And Judge O'Connor may enjoin the Rule further, with respect to Blackhawk and its customers, and potentially with respect to other intervenors.  Moreover, once the matter before Judge O'Connor advances to summary judgment briefing, he could order that the Rule be "set aside" through vacatur, 5 U.S.C. § 706(2), which would have the effect of vacating the Rule nationwide.  Thus, even apart from ATF's apparently unlawful interpretation that denies the relief Plaintiffs seek in this lawsuit, it is possible that the Rule itself may be enjoined in a manner that would return this litigation to the pre-Rule state of affairs—independently belying any claim of mootness.

\*\*\*

---

[1] *Compare* Polymer80, Inc., *P80 80% Pistol Blanks*, https://bit.ly/3rmcRjl (last visited Oct. 2, 2022), *with* Compl. ¶¶ 108–19.

[2] Polymer80, *PF940C Pistol Frames, 80% Instructions*, https://bit.ly/3EaUKnT (last visited Oct. 2, 2022).

Cooley LLP   3 Embarcadero Center   20th Floor   San Francisco, CA   94111-4004
t: +1 415 693 2000  f: +1 415 693 2222  cooley.com

3

In sum, Plaintiffs request that the Court issue an order (1) lifting the administrative closure and reopening this matter, and (2) granting Plaintiffs 30 days to file an amended Complaint.

**Defendants' position:** Plaintiffs' Complaint in this action challenges the previously operative definition of the statutory terms "firearm" and "frame or receiver," as well as certain classification decisions issued under the previous definition to Polymer80. As both the definition and the resulting classification decisions challenged here have been superseded by the new Final Rule that became effective on August 24, 2022, 87 Fed. Reg. 24,652 (the "Final Rule"), Plaintiffs' case is moot and the Court should not reopen the case. For the reasons stated below, should the Court re-open the case, Defendants intend to file a motion to dismiss this matter as moot.

As Plaintiffs acknowledge, the Final Rule amends the operative definitions of the statutory terms "firearm" and "frame or receiver" under the Gun Control Act. Specifically, the Final Rule expressly includes in the definition of "firearm," 27 C.F.R. § 478.11, ATF's previously-held interpretation that "a weapon parts kit that is designed to or may readily be completed, assembled, restored, or otherwise converted to expel a projectile by the action of an explosive." 87 Fed. Reg. 24,735. The Final Rule also amended the definition of "frame or receiver." The previous definition simply provided that a "frame or receiver" was "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." *Id.* at 24,652. The Final Rule amended the definition in part to contain a subparagraph specifically addressing under what circumstances a "[p]artially complete, disassembled, or nonfunctional frame or receiver" constitutes a "frame or receiver" under federal firearms laws. In particular, it provides that the terms "frame" or "receiver" "shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component . . . ." *Id.* at 24,739.

The claims in Plaintiffs' Complaint are specifically predicated on interpretive decisions and determinations made by ATF applying the previous definitions of terms that have since been amended in the Final Rule. *See* Compl. ¶¶ 168-180 (Count I, challenging ATF's 2015 interpretive rule ("ATF Ruling 2015-1")). Yet the Final Rule unquestionably updated and amended the relevant regulatory terms that Plaintiffs' claims are predicated upon. Specifically, there is no question that the Final Rule's amended definition of "frame or receiver" was in part designed to address the widespread unregulated sales of so-called "80 percent receivers" by sellers not federally licensed to sell firearms. As the Rule specifically states, "[t]he NPRM stated that partially complete or unassembled frames or receivers, commonly called '80% receivers,' are often sold in kits where the frame or receiver can readily be completed or assembled to a functional state. The Department stated that the supplemental definition is necessary for clarity because companies are not running background checks or maintaining transaction records when they manufacture and sell these kits." 87 Fed. Reg. 24,663. There can be no question, then, that the Final Rule expands the range of components and component kits considered to be a "frame or receiver" under federal firearms statutes.[3] *See also, e.g.*, 87 Fed. Reg. 24,689 (discussing previous interpretation and clarifying that solidity remains an "important factor" while noting that ATF's new rule involves additional examination of "templates, jigs, molds, instructions, equipment, or marketing materials" to determine whether a partially complete frame or receiver with a solid fire-control cavity is a "firearm" under the GCA).

Plaintiffs also base their claims on specific classification letters ATF issued Polymer 80 – a manufacturer and seller of certain weapon components and parts – prior to the Final Rule. *See* Compl. ¶¶ 181-198. But

---

[3] Indeed, a number of plaintiffs, including manufacturers and sellers of weapon components that could be impacted by the amended definitions, have brought suit in other courts seeking to enjoin ATF from implementing or enforcing the amended definitions. *See, e.g.*, *Division 80, LLC v. Garland, et al.*, No. 3:22-cv-00148 (S.D. Tex.); *Morehouse Enters., LLC, et al. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, et al.*, No. 3:22-cv-00116-PDW-ARS (D.N.D.); *VanDerStok, et al. v. Garland, et al.*, No. 4:22-cv-00691-O (N.D. Tex.).

Cooley LLP   3 Embarcadero Center   20th Floor   San Francisco, CA   94111-4004
t: +1 415 693 2000  f: +1 415 693 2222  cooley.com

4

the Final Rule explicitly states that prior classification letters classifying some frame or receiver components as *not* a "frame or receiver" are no longer operative now that the Final Rule has taken effect. *See* 87 Fed. Reg. 24,654 ("[I]n keeping with the public safety goals of the rule, this rule grandfathers existing complete frame or receiver designs previously determined by the Director to be the firearm 'frame or receiver' of a given weapon.  It does *not* grandfather partially complete, disassembled, or nonfunctional frames or receivers, including weapon or frame or receiver parts kits, that ATF did not classify as firearm 'frames or receivers' as previously defined." (emphasis added)).  In other words, if a previous component or components was previously classified as a "frame or receiver" under the previous definition of that term, it is still a "frame or receiver."  But if a component or components received a previous classification decision that it was not a frame or receiver, as Plaintiffs' position seems to rely upon, that classification decision is no longer operative and it may still be considered a "frame or receiver" under the amended definition of that term contained in the Final Rule.

Plaintiffs' final claim is for unreasonable delay on their petition for rulemaking.  Compl. ¶¶ 199-206.  As ATF has now promulgated the Final Rule, this claim is moot as well.  *Cf. Nat'l Parks Conservation Ass'n v. U.S. Dep't of Interior*, 794 F. Supp. 2d 39, 45 (D.D.C. 2011) (holding that even a negative response to a petition for rulemaking will moot a claim of unreasonable delay).

In short, the materials and circumstances cited by Plaintiffs in their Complaint as the basis for their claims—the standards applied by ATF under the previous definition; guidance documents issued by ATF explaining the previous definitions of the terms "firearm" and "frame or receiver"; classification decisions made by ATF regarding specific submission and products in which ATF determined that the weapon component or components submitted did not constitute a "frame or receiver" under the previous definition of "frame or receiver"; and the absence of new rulemaking to address perceived deficiencies—are no longer in effect as of the effective date of the Final Rule on August 24, 2022.

To the extent Plaintiffs argue that they are concerned about how the Final Rule will be applied to classification requests, such potential claims are not yet ripe.  The Final Rule, and the amended definitions contained therein, have been in effect for just over a month.  Many sellers and manufacturers have submitted classification requests to ATF, and ATF is just beginning the process of considering and issuing decisions on such requests.  Tellingly, Plaintiffs can produce no actual decision, action, or classification letter of ATF to which they object.  The fact that some manufacturers and sellers are still advertising or selling certain products does not mean or even imply that ATF has specifically authorized them to do so.  Likewise, any representation by a seller or manufacturer regarding whether its product is considered a "frame or receiver" under the amended definition contained in the Final Rule does not mean that Defendants have made such a determination.  It is possible that, under the amended definition of "frame or receiver" contained in the Final Rule, ATF may determine that a component or component submitted for a classification decision is not a "frame or receiver," and Plaintiffs may believe that such a decision is arbitrary or capricious in violation of the APA or otherwise legally objectionable.  But should chain of events occur, Plaintiffs could bring their challenge to such a classification decision after it is issued.

In sum, none of the actions Plaintiffs challenge their Complaint are still operative, and therefore all of Plaintiffs' claims in the present action are moot.  Accordingly, the Court should deny Plaintiffs' request to re-open the case.

**Intervenors' Position:**  Intervenor Defendant Polymer80, Inc. states that its position is that it was not afforded sufficient opportunity to review the parties' positions prior to filing and, therefore, does not take a position at this time.

Cooley LLP   3 Embarcadero Center   20th Floor   San Francisco, CA   94111-4004
t: +1 415 693 2000  f: +1 415 693 2222  cooley.com

5

# Cooley

Sincerely,

*/s/ Kathleen R. Hartnett*

Kathleen R. Hartnett
Cooley LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
(415) 693-2000
khartnett@cooley.com

Eric Tirschwell
Everytown Law
450 Lexington Avenue, P.O. #4184
New York, NY 10024
(646) 324-8222
etirschwell@everytown.org

*Counsel for Plaintiffs*

Cooley LLP   3 Embarcadero Center   20th Floor   San Francisco, CA   94111-4004
t: +1 415 693 2000  f: +1 415 693 2222  cooley.com

6