# EXHIBIT A



**U.S. Department of Justice**

Bureau of Alcohol, Tobacco,
Firearms and Explosives

*Office of Enforcement Programs and Services*

Washington, DC 20226
www.atf.gov

September 27, 2022

## OPEN LETTER TO ALL FEDERAL FIREARMS LICENSEES

### Impact of Final Rule 2021-05F on Partially Complete AR-15/M-16 Type Receivers

The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) is issuing this open letter to further assist the firearms industry and the public in understanding whether a "partially complete, disassembled, or nonfunctional" receiver of an AR-15/M-16 variant weapon has reached a stage of manufacture such that it "may readily be completed, assembled, restored, or otherwise converted" to a functional receiver, and is therefore classified as a "**frame or receiver**" or "**firearm**" in accordance with the final rule titled "Definition of 'Frame or Receiver' and Identification of Firearms (Final Rule 2021R-05F), which became effective August 24, 2022. In particular, the following addresses items that are clearly identifiable as an unfinished component part of a weapon—specifically, partially complete, disassembled, or nonfunctional AR-type receivers (also known as receiver 'billets' or 'blanks').

**Summary**

As stated in Final Rule 2021-05F and the regulatory text, a partially complete AR-type receiver with no indexing or machining of any kind performed in the area of the fire control cavity is not classified as a "**frame or receiver**" or "**firearm**" provided that it is not sold, distributed, or marketed with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a receiver parts kit. 27 CFR 478.12(c), Example 4. Consistent with Final Rule 2021R-05F and the regulatory text, ATF is providing the visual aids below to further illustrate the section of an "unfinished" item that, with further manufacture, machining, or processing, will constitute the "fire control cavity;" the second set of visual aids illustrates the stage of manufacture or machining at which that item becomes a receiver as defined in Final Rule 2021R-05F.

**Background**

The Gun Control Act (GCA) defines the term "**firearm**" as: *"…(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; **(B) the frame or receiver of any such weapon**; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."* 18 U.S.C. § 921(a)(3). The GCA implementing regulations now define the terms "frame" and "receiver" by describing a single housing or structural component for one specific

fire control component of a given weapon—for example, a single housing is specified for particular weapons such as a "handgun" and a "rifle."  27 CFR 478.12(a).  Moreover, 27 CFR 478.12(f)(1) also provides that the terms "frame" and "receiver" "shall include the specific part of a complete weapon … determined (classified) by the Director to be defined as a firearm frame or receiver prior to April 26, 2022."  As explicitly set out in the regulations, 27 CFR 478.12(f)(1)(i), for AR-15/M-16 variant firearms, "[t]he receiver is the lower part of the weapon that provides housing for the trigger mechanism and hammer (*i.e.*, lower receiver)."

A current regulation, 27 CFR 478.12(c), explains when a clearly identifiable component  of a weapon that is partially complete, disassembled, or nonfunctional is a "**frame**" or "**receiver**":

> *The terms 'frame' and 'receiver' shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, i.e., to house or provide a structure for the primary energized component of a handgun, breech blocking or sealing component of a projectile weapon other than a handgun, or internal sound reduction component of a firearm muffler or firearm silencer, as the case may be.  The terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article that has not yet reached a stage of manufacture where it is clearly identifiable as an unfinished component part of a weapon (e.g., unformed block of metal, liquid polymer, or other raw material).  When issuing a classification, the Director may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit to the purchaser or recipient of the item or kit.*

Sections 478.11 and 479.11 also define "**readily**" as:

> *A process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state.  With respect to the classification of firearms, factors relevant in making this determination include the following:*
>
> *(a) Time, i.e., how long it takes to finish the process;*
> *(b) Ease, i.e., how difficult it is to do so;*
> *(c) Expertise, i.e., what knowledge and skills are required;*
> *(d) Equipment, i.e., what tools are required;*
> *(e) Parts availability, i.e., whether additional parts are required, and how easily they can be obtained;*
> *(f) Expense, i.e., how much it costs;*
> *(g) Scope, i.e., the extent to which the subject of the process must be changed to finish it; and*
> *(h) Feasibility, i.e., whether the process would damage or destroy the subject of the process, or cause it to malfunction.*

The above list of factors is a non-exhaustive list, but represents factors that have been identified by Federal courts as being relevant to a "**readily**" analysis with respect to firearms.

3

## Analysis

There are many partially complete, disassembled, or nonfunctional AR-type "receivers" being marketed as so-called "80%" receivers. However, Federal firearms statutes and supplemental regulations do not employ terms such as "80%," "80% finished," or "80% complete." These are merely terms used by some to market these items; they are not based upon application of the term "**readily**" in the GCA or Final Rule 2021-05F. As used in the GCA and the Final Rule, the term "readily" does not involve evaluation of a percentage of completion for an item that, when completed, will function as a frame or receiver. Rather, the analysis examines how efficiently, quickly, and easily a clearly identifiable component part of a weapon can be completed, assembled, restored, or otherwise converted to house or provide a structure for the applicable fire control component.

In an AR-15 variant weapon, the "fire control cavity" is the critical area of the receiver because this area "provides housing for the trigger mechanism and hammer." 27 CFR 478.12(f)(1)(i). To be a "functional" receiver, an AR-type receiver must include a cavity sufficient to house the relevant internal parts, including a hole for a selector and 2 pin holes (trigger pin and hammer pin) in precise locations. Removing or indexing any material in this critical area, or completing or indexing any of these holes, is therefore a crucial step in producing a functional receiver.

Thus, in order <u>not</u> to be considered "**readily**" completed to function, ATF has determined that a partially complete AR-type receiver must have no indexing or machining of any kind performed in the area of the trigger/hammer (fire control) cavity. <u>A partially complete AR-type receiver with no indexing or machining of any kind performed in the area of the fire control cavity is not classified as a "**receiver**," or "**firearm**," if not sold, distributed, or marketed with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a receiver parts kit</u>.



**(if not sold, distributed, or marketed with any associated templates, jigs, molds, equipment, tools, instructions, or guides)**

4



**(if not sold, distributed, or marketed with any associated templates, jigs, molds, equipment, tools, instructions, or guides)**

Because the front of the takedown-pin lug clearance area merges with the back of the fire control cavity in a functional AR-type receiver, it was necessary for ATF to determine the point at which the takedown-pin lug clearance area stops, and the fire control cavity begins.  ATF has determined that drilling or milling a standard 0.800-inch takedown-pin area, measured from immediately forward of the front of the buffer retainer hole next to the fire control cavity, does not impact the ability of the fire control cavity to house the trigger mechanism and hammer.  Provided this length is not exceeded, the fire control cavity remains *"without critical interior areas having been indexed, machined, or formed"* as stated in 27 CFR 478.12(c), Example 4.

The following illustration demonstrates the fire control cavity of an AR-type receiver:





**However**, the above analysis only applies to partially complete, disassembled, or nonfunctional frames or receivers without any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials.  Pursuant to Final Rule 2021R-05F, partially complete, disassembled, or nonfunctional frames or receivers that are sold, distributed, possessed with such items (or made available by the seller or distributor to the same person) may change the analysis, including those distributed as frame or receiver parts kits.  27 CFR 478.12(c).  For example, jigs, templates, or instructions can provide the same indexing as if it were placed directly on the unfinished frame or receiver.



**Firearm**



**Firearm**

<u>It is important that persons engaged in the business of manufacturing, importing, or dealing in these items do not take any steps to avoid licensing (18 U.S.C. §§ 922(a)(1), 923(a)), serialization (§ 923(i); 27 CFR 478.92(a)(2)), recordkeeping (§ 923(g)(1)(A); 27 CFR 478/125(i)), and other requirements and prohibitions of the law by selling or shipping the parts or parts kits in more than one box or shipment to the same person, or by conspiring with others to do so (18 U.S.C. §§ 2, 371).</u>

Further, although unfinished frames or receivers that do not meet the definition of a "firearm" are not subject to regulation under GCA provisions, they are still considered "defense articles" on the U.S. Munitions Import List and, therefore, require an approved Application and Permit for Importation of Firearms, Ammunition and Implements of War (ATF Form 6) for importation into the United States under 27 CFR 447.41; 447.22, and are also subject to export controls.[1]

This information is provided to assist the firearms industry and general public in understanding whether a partially complete AR-type receiver has reached the stage of manufacture where it is classified as a "receiver" or "firearm." If persons remain unclear with respect to a specific model or configuration, they can voluntarily submit a request, under penalty of perjury, with a sample to ATF in accordance with 27 CFR 478.92(c) (GCA) or 479.102(c) (NFA). If you have any questions, please contact the Firearms & Ammunition Technology Division at fire_tech@atf.gov or (304) 616-4300.

Acting Assistant Director                    Acting Assistant Director
Enforcement Programs and Services                 Field Operations

---

[1] Exporters should consult with the U.S. Departments of Commerce and State to determine applicable requirements.