# EXHIBIT B

COPY

1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

STATE OF CALIFORNIA; BRYAN          )
MUEHLBERGER, FRANK BLACKWELL,        )
and GIFFORDS LAW CENTER TO           )
PREVENT GUN VIOLENCE,                )  Case No. 3:20-CV-06761-EMC
                                     )
                  Plaintiffs,        )  September 20, 2022
vs.                                  )  Videoconference Hearing by
                                     )  Zoom Webinar
BUREAU OF ALCOHOL, TOBACCO,          )
FIREARMS, AND EXPLOSIVES; et         )  Case Management Conference
al.,                                 )
                                     )  Pages 1 - 28
                  Defendants.        )
_____)

BEFORE THE HONORABLE EDWARD M. CHEN
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Plaintiffs                 OFFICE OF THE ATTORNEY GENERAL
                                   California Department of Justice
State of California:
                                   Mr. S. Clinton Woods
                                   Deputy Attorney General
                                   455 Golden Gate Avenue
                                   Suite 11000
                                   San Francisco, California 94102-7004

                                   Mr. R. Matthew Wise
                                   Deputy Attorney General
                                   1300 I Street, Suite 125
                                   P. O. Box 944255
                                   Sacramento, California 94244-2550

Bryan Muehlberger,                 PAUL HASTINGS LLP:
Frank Blackwell,
Giffords Law Center to             Mr. Avi Weitzman
Prevent Gun Violence:              Attorney at Law
                                   200 Park Avenue
                                   New York, New York 10166

                                   GIBSON, DUNN, & CRUTCHER:

                                   Mr. Lee R. Crain
                                   Ms. Liesel N. Schapira
                                   Attorneys at Law
                                   200 Park Avenue
                                   New York, New York 10166-0193

2

APPEARANCES (continued):

For the Defendant, Bureau        UNITED STATES DEPARTMENT OF JUSTICE
of Alcohol, Tobacco,
Firearms, and Explosives,        Mr. Martin M. Tomlinson
et al.:                          Senior Trial Counsel
                                 1100 L Street, NW Room 12504
                                 Washington, DC 20005

For the Intervenors:             FIREARMS POLICY COALITION

Zachary Fort,                    Mr. Cody Wisniewski
Frederick Barton,                Attorney at Law
BlackHawk Manufacturing,         5550 Painted Mirage Road
Firearms Policy Coalition:       Las Vegas, Nevada 89149

Polymer80, Inc.:                 GREENSPOON MARDER LLP

                                 Mr. Germain D. Labat
                                 Attorney at Law
                                 1875 Century Park East
                                 Suite 1900
                                 Los Angeles, California 90067

Official Court Reporter:         Ronelle F. Corbey, RPR, CRR, CCR
                                 Washington CCR No. 2968
                                 United States District Courthouse
                                 P.O. Box 700
                                 Spokane, Washington 99210
                                 (509) 458-5283

Proceedings reported by mechanical stenography; transcript produced by computer-aided transcription.

*CIVIL CASE MANAGEMENT CONFERENCE VIA ZOOM WEBINAR – SEPTEMBER 20, 2022*

(Court convened on September 20, 2022, at 2:30 p.m.)

THE COURTROOM DEPUTY:  These proceedings are being recorded by this court.  Any other recording of this proceeding either by audio, video, including screenshots, or other copying of the hearing is strictly prohibited.

This Court is now in session.  The Honorable Edward M. Chen presiding.

Court is calling the case *State of California, et al., v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, et al.,* Case No. 20-6761.

Counsel, please state your appearance for the record beginning with the plaintiff.

MR. WEITZMAN:  Good afternoon, your Honor.  On behalf of Plaintiffs Bryan Muehlberger, Frank Blackwell, and the Giffords Law Center to Prevent Gun Violence, this is Avi Weitzman from Paul Hastings.  I have with me at counsel table so to speak -- virtual table -- my co-counsel Lee Crain and Liesel Schapira from Gibson, Dunn, and Crutcher.

THE COURT:  All right.  Thank you, Mr. Weitzman and company.

MR. WOODS:  Good afternoon, your Honor.  On behalf of the State of California, Clint Woods from the California Department of Justice.

Also with me is Matthew Wise also from the California Department of Justice.

4

*CIVIL CASE MANAGEMENT CONFERENCE VIA ZOOM WEBINAR – SEPTEMBER 20, 2022*
*COURT'S COLLOQUY WITH MR. TOMLINSON*

THE COURT:  Okay.  Thank you.  Thanks, Mr. Woods.

MR. WISNIEWSKI:  Good morning, your Honor.
Cody Wisniewski on behalf of the proposed intervenors:  Zachary
Fort, Frederick Barton, BlackHawk Manufacturing, and Firearms
Policy Coalition.

THE COURT:  All right.  Thank you, Mr. Wisniewski.

MR. LABAT:  Good morning, your Honor.  Also for a
proposed intervenor, Polymer80, Germain Labat with Greenspoon
Marder.

THE COURT:  All right.  Thank you, Mr. Labat.

MR. LABAT:  Thank you.

MR. TOMLINSON:  Your Honor, Martin Tomlinson from the
Department of Justice on behalf of the defendants.

THE COURT:  All right.  Thank you, Mr. Tomlinson.

So there seems to be a disagreement as to whether or not
there's a live issue at this point.  Maybe I can hear a response
from the Government with respect to kind of some of the showings
that have been made at least by these exhibits that were filed
that seem to demonstrate that there -- at least from the
perspective of the plaintiffs, there's still a live issue about
how far the new regulations reach and whether or not it reaches
to -- to the limit that they believe the statute requires.

Why isn't there seemingly a live issue here still?

MR. TOMLINSON:  Well, your Honor, as I think we
explained in the -- in the status report, obviously your Honor's

5

correct.  There is a disagreement about whether there's a live issue.  But as we pointed out, I mean, much of the allegations and maybe, perhaps, all of the allegations in their Complaint really concern some of these classification decisions that were made under the previous rule; some of the standards and analytical framework that ATF allegedly used under the previous rule.

And so, you know, here there's -- you know, the things they're pointing to were -- were issued under the previous rule. I mean, these classification decisions, you know, frankly, are just starting to be made by ATF.  As -- as your Honor's well aware, I mean, it's been less than a month since this new rule taken -- has taken effect.  ATF has received, as you can imagine, a flood of requests for classification decisions.  It's been issuing those decisions.

But, you know, as we explained in the -- in the status report, we think the appropriate thing would be for ATF to actually issue those decisions and -- and set forth the new rule for it to become clear how the new rule is going to be applied rather than -- than this -- this -- this case morphing into a case about the new decision, which hasn't really become ripe yet.

And so, your Honor, as -- as we set forth, we think the best course of action is for us to -- to file -- to file a motion to dismiss, either in whole or in part, sort of setting

6

*CIVIL CASE MANAGEMENT CONFERENCE VIA ZOOM WEBINAR – SEPTEMBER 20, 2022*
*COURT'S COLLOQUY WITH MR. TOMLINSON*

forth why we think that this action is moot and -- and then having a chance to, you know, provide a fulsome response at that time.

THE COURT:  So let me -- let's forecast what's going to happen over the next -- I don't know -- let's say three to six months.  There's going to be some classification decisions and specific decisions made in a particular context as one thing that's going to develop and evolve?  Is that right?

MR. TOMLINSON:  Yes, your Honor.  I mean, I -- I can't represent that there's any particular classification decision that's going to be made; but, yes, certainly that process is -- is happening and it's going to continue.

I mean the -- the one caveat is, as I imagine almost everybody on this call is aware but just to make sure, there are three cases brought, at least in part, by manufacturers or sellers of some of these products seeking to enjoin the rule.

There is one in the Southern District of Texas.  That preliminary injunction was denied on the basis of irreparable harm in balance to the equities, but the Court didn't reach the -- the likelihood of success on the merits.  So that's going forward.  So we -- we will be in summary judgment briefing on that relatively soon.

There's a case in the District of North Dakota in which the Court denied the motion for preliminary injunction on the basis that they hadn't shown a likelihood of success on the merits.

That has been appealed to the Eight Circuit.  So that's already up on appeal.

And then there's a case in the Northern District of Texas in which the Court has enjoined the rule but, as of now, only as to a single plaintiff in the case, although he -- he did order or allow supplemental briefing on the appropriate scope of the injunction and that issue is under -- under consideration with the Court.

The plaintiffs -- well, the plaintiffs -- frankly, the plaintiffs in all three cases requested nationwide injunctions.

And so I just want to make sure this Court is aware and all the parties are aware, I mean, you know, thus far, this rule is in effect.  ATF is moving forward with this rule.  It's operative right now as to -- as to everyone in the country except for the single plaintiff in the Northern District of Texas, but that could change depending on litigation -- how litigation develops.

So -- so I -- I didn't want to -- I -- I apologize if I interrupted your Honor because it seemed like you may have more -- more to say, but I certainly -- if we're -- if we're forecasting what -- at least what might happen over the next three to six months, I just wanted to make sure the Court and all the parties were aware of that.

THE COURT:  Well -- and I'll want to talk about that in a minute.  But let me ask before we get to these other cases,

which is something slightly beyond ATF's control, are there -- is there -- are there further -- other than the final rule itself, are there -- is there some pendency of interpretative -- further refinement, interpretative guidance?  I don't know.  I guess they wouldn't be regulations, but any other ATF -- any other administrative -- other than adjudicating classification decisions, are there -- are there other things that may be pending that would shed light in terms of providing, perhaps, more detail and meaning about the final rule?  Is there a process?  Is there anything pending?

MR. TOMLINSON:  Your Honor, there are.  You know, sometimes an agency will issue technical clarifications or technical -- you know, yeah, really, sort of, clarifications.  I mean, those are generally relatively small in nature.  Not, you know -- obviously, as -- as I think everybody was aware, this was -- this rule was a pretty massive undertaking.  It took a long time.  There were hundreds of thousands of comments.  So -- so ATF isn't just going to, you know, on a whim issue major corrections to the rule or -- or changes to the rule I guess I should say.

So -- but, yeah, I mean, there -- there's a possibility that ATF might issue some sort of technical clarifications, but I would expect those to be relatively minor in nature if they occur.

THE COURT:  All right.  So, when would you -- if the

*CIVIL CASE MANAGEMENT CONFERENCE VIA ZOOM WEBINAR – SEPTEMBER 20, 2022*
*COURT'S COLLOQUY WITH MR. WEITZMAN*

case were not to proceed now, whether it's stayed or dismissed without prejudice, at what juncture would it be appropriate, would it be sufficiently ripe -- I don't know if that's the exact word or not -- for the plaintiffs to move forward?  Is it after there have been a series of, perhaps, classification decisions to sort of -- so that the contours of the final rule are made more clear?  Or what -- what do you envision as the point where it would be appropriate to proceed?

MR. TOMLINSON:  Yeah, I think that's exactly right, your Honor.  I think -- I think our position is that the plaintiffs would at least need to wait until the point where they -- some of these classification decisions have come out and they have something concrete from ATF in -- in, you know, a very specific context to point to to say, you know, "See, ATF is classifying X product as -- as not a firearm and not a frame or receiver."

THE COURT:  All right.  Let me hear from the -- from the plaintiffs why not; and, that is, why not wait for some gestation and some development?  I don't know if you would call it almost like a common law sort of development or interpretive decisions through these classification decisions to involve, you know, exactly -- or better what the contours are and what the challenge is.

MR. WEITZMAN:  Thank you, your Honor.  Avi Weitzman on behalf of the plaintiffs.  We would love nothing more than for

this case to be mooted.  We would love nothing more than for 80 percent receivers to be off the streets, for ghost guns to be effectively regulated, which doesn't mean abolished.  It means serialized and tracked and made sure that they're not sold to convicted felons and underage minors.

There's no reason to wait further before deciding that the case is not moot, however, because the rule itself in the ATF's interpretative guidance makes very clear that the essence of our lawsuit has not been mooted.

The core of our lawsuit was that these 80 percent receivers and frames are readily convertible into firearms.  It was not about the kits, although we certainly relied on the sale of kits as evidence to show that they are readily convertible; but it was about the fact that, by mail using just a credit card, anybody in the United States can order an 80 percent receiver or frame with impunity and without any regulation.

Unfortunately, despite our best efforts, ATF's final rule will still let that proceed and continue.

When you look -- and we've attached some of these exhibits. When you look at the interpretative guidance and how the industry itself is interpreting it, it's very clear that 80 percent frames and receivers are not within the scope of the rule.  And there is no need for a classification letter to make that any clearer.

For example, in the -- in the PowerPoint that ATF released

11

as part of its final rule, it identifies the definition of a frame or receiver and identification of firearms.  And it specifically states in Example 2, and I'll quote from this: (Reading)  Definition of firearm, frame, and receiver.  Example 2, not a receiver:  A billet or blank of an AR-15 variant receiver without critical interior areas having been indexed, machined, or formed that is not sold, distributed, or possessed with instructions, jigs, templates, equipment, or tools such that it may readily be completed is not a receiver.

And what that means and what the industry has interpreted it is that the rule only regulates these kits -- these ghost-gun kits where everything is sold in one package.

But so long as the jig or the elements of the kit are sold in a different mailing or different part of a website than the -- then the 80 percent receiver, it's -- it's not regulated.  And that's what the ATF has told the industry.  And, in fact, Mr. Tomlinson, in Exhibit E and his -- his -- his DOJ colleague, Daniel Riess, specifically represented that to the Court in the *Division 80* lawsuit that was filed in the Southern District of Texas stating that, and I quote, "..., selling receiver blanks, you can continue to do that without a ... license."

Now, I understand the challenge that the Department of Justice is in.  They're trying to defend their regulation from attack on both sides.  But, frankly, that doesn't mean that this lawsuit shouldn't proceed.  To the contrary, it only reinforces

*CIVIL CASE MANAGEMENT CONFERENCE VIA ZOOM WEBINAR – SEPTEMBER 20, 2022
COURT'S COLLOQUY WITH MR. WEITZMAN*

the importance of proceeding with this lawsuit, in part, because of the positions that DOJ and ATF has taken in the other lawsuits.

And so it would be fundamentally unfair to permit ATF to effectively indefinitely stay this lawsuit by simply delaying the issuance of classification letters.  In the meantime, harm is proceeding; and there's ongoing injury.  And that is the very essence of the mootness analysis whether --

THE COURT:  Let me ask you.  You've referred to a "PowerPoint."  An ATF PowerPoint presentation?

MR. WEITZMAN:  Correct, your Honor.

THE COURT:  Is that a -- I don't see that appended to your Joint Status Report.  Where do I --

MR. WEITZMAN:  Yeah, I apologize.  It's a publicly available document, and we can certainly share it with your Honor on this screen if -- if we had that opportunity.  But I can also -- I think my colleague, Ms. Schapira, could probably direct -- direct your Honor to a website.  I'm -- I'm not as well versed, your Honor.  Apologies.

THE COURT:  Well, let me ask the Government/ATF to respond to the argument that -- where would that -- I mean, obviously, this final rule has drawn a different line than previously.  The point is the line from the plaintiffs' viewpoint does not go far enough in that it affords the 80 percent receivers and frames status to -- to evade

13

registration requirements so long as, for instance, they're not part of a kit, separate jig, et cetera, et cetera.

What's -- does the Government have a specific response to that assertion?

MR. TOMLINSON:  Sure, your Honor.  I mean, I think -- so first of all, I would just note, you know, "80 percent receiver" is not a term that ATF formally uses.  That's not a formal classification.  That's, essentially, a term that the -- the industry came up with to market these things.  And so, you know, to say 80 percent receiver has sort of a set technical definition is something I'm not sure, at least, ATF would, you know, agree with.

You know, it's clear from the rule -- I mean, there's several statements throughout the rule, certainly in the preamble, that ATF makes clear that -- that the -- the widespread selling of these 80 percent receivers is something the rule is designed to address.

And as your Honor notes, I mean, this -- this rule changes the line in terms of the definition of "frame and receiver." And specifically the way it changes the line is using the concept of this term, you know, is can it be sort of readily adapted or converted to a -- to a fully functional frame or receiver and then it -- elsewhere in the rule it includes a specific definition -- or a definition of all the factors and I believe there are eight factors that ATF is going to consider

14

when determining whether a product, a component, or set of components is readily convertible.

And so, you know, inherently, when you're talking about applying an eight-factor test, I mean, you're -- you're talking about something that's very fact specific and it's going to be very product specific. And I think most people on this call, certainly anyone who's familiar with the -- the background of why this rule came about, what it's designed to do, how it may work in practice sort of understands that there's a history of -- of sell -- selling this receiver or blanks in kits and components and what ATF can do and can't do. It's been a bit of a cat-and-mouse game.

And so, you know, your Honor, again, I think our -- our position most directly is that we should be allowed to brief this issue and provide the Court with, you know, fulsome briefing on this issue of whether it's moot or not.

But, yeah, the issue we intend to present, I think, is that this line has moved; and the line as moved in a fairly fact-specific way in that we don't really have -- the Court doesn't really have all the -- all the information at the moment as to exactly what products are going to be classified because -- because this -- you know, again, what plaintiffs have -- have largely submitted, as we pointed out in plaintiffs' Complaint, was a lot of materials about classification decisions under -- and classification decisions and analytical frameworks

15

that were -- that were used by ATF under the prior rule.

And so -- so here it just seems to make sense that plaintiffs would need to bring an action challenging what ATF is going to -- means they're going to be doing in the future or, at the very least, is currently doing under the current rule, which is going to be applying a different definition of frame or receiver and applying a different analytical framework and issuing different classification decisions than what plaintiffs actually challenged in their Complaint.

THE COURT:  Let me ask the plaintiffs.  Is this what we might call a -- would it be a facial challenge to the new rule that the readily adaptable test and the eight-factor test on its face is inconsistent with the statute or would it -- is this more of a, as it may be applied, the result would be inconsistent?  I mean, is this -- I know this is a little different, but it's like -- is this kind of a facial challenge or an as-applied challenge?

MR. WEITZMAN:  I think in -- within that framework, your Honor, which is not exactly the framework of the APA, I -- I do think it would -- we can frame this as a facial challenge.

And I think rather than saying that the lawsuit is moot, the lawsuit targets a problem that the ATF has not regulated. The ATF shouldn't be permitted to moot that problem or moot that lawsuit by not addressing the problem in the way that we think it should be addressed by addressing it in a different way.

16

At best, all that warrants is an Amended Complaint.  It's the same core Complaint just a different statutory reference.

But it doesn't moot the lawsuit or else the ATF would be in a position to moot a lawsuit whenever it -- by just modifying slightly a regulation and then constantly mooting litigation when the core of the problem remains the same.

THE COURT:  Well, that's not to say that there's automatic mootness just because there's a change; but one would have to look at it through the lens of the appropriate standards under the APA.  And depending on how the regulation is articulated, I mean, the APA challenge -- perhaps that's the risk you have to take because, if it's not clear, you know, what -- I mean, I know it's -- you know, that's more of a First Amendment aspect.  But there -- I do think there's something to this that if something on its face violates the statute and constitutes whether -- I don't know if there's a standard abuse of discretion or contrary to law, you know, APA, sometimes you need facts and sometimes you don't.  And I don't know that yet. Right?

MR. WEITZMAN:  Yeah.  I do think that we can -- that -- in all fairness, the ATF's regulation and its own statements provide the challenge under the APA.  It doesn't require the issuance of a class -- an APA challenge doesn't require the issuance of a classification letter.

The issuance of the classification letters may confirm what

17

we believe the ATF is doing, but I think the ATF's own statements make that very clear.

THE COURT:  So you think that is clear even in the absence of actual classification determinations.

MR. WEITZMAN:  Yes, your Honor.

THE COURT:  Well, it seems to me that the case is a -- is different in a sense that now we have a new regulation.  And I -- one way to approach this is to have the plaintiffs file an Amended Complaint knowing that there may be a ripeness kind of question floating there.  How you address that I'm not sure.  And then have the defense respond.  And in all likelihood, I think we know what that response is going to be.  It's a motion to dismiss on grounds of mootness.

But if it's properly framed now and directed and focused on the new language so I could see, you know, is this, for instance, a matter that is sufficiently ripe for termination that may be one of the things we look to.

So does anybody see a problem with that, I mean, just procedurally?  That the plaintiff, given that we've got a new set of rules at this point, is to focus the Complaint on this even in the absence of -- of classification decisions under the rule at this juncture at least for now?  And then the defense can -- can file its motion.

MR. WEITZMAN:  Yeah, I think that is the proper way to go.  And, in fact, considering that other plaintiffs have

18

challenged the new rule in the opposite direction without a classification letter, I think -- I think it only confirms that the -- the positions of the ATF are sufficiently clear.

THE COURT:  And, by the way, what would be the effect? You've got three actions going now in which, coming from the other direction, it's kind of interesting.  I mean, those could not be res judicata or collateral estoppel on the plaintiffs here because they're not -- it can't be binding I assume.

Is that a fair assumption?

MR. WEITZMAN:  I think that is correct.

THE COURT:  And, yet, if you have an order -- let's say an injunction -- coming from a District Court out of -- whether it's Texas or North Dakota, that raises sort of interesting questions.

What happens if this case -- and if I deem this case sufficiently ripe but not moot and you're seeking relief, does -- does that somehow preclude this Court from issuing an injunction?

MR. WEITZMAN:  I don't believe it does, your Honor.  I think this is what higher courts are there for when there are conflicts in the District Court and then the Circuit.  It gets resolved.

But, ultimately, I think your Honor's judgment is the one that controls certainly in your Honor's court and in that -- in the District and hopefully in the Circuit, as well.

19

MR. WISNIEWSKI:  Your Honor, if I may?

THE COURT:  Yeah.

MR. WISNIEWSKI:  So Cody Wisniewski for proposed intervenors.

THE COURT:  Yeah.

MR. WISNIEWSKI:  I think there's a -- and I think we've touched on it, but we've skirted around it a bit.  I think there's a really big procedural problem or question that's left standing.  Plaintiffs' Complaint addresses two claims for relief both of which are substantially based on classification letters. The ATF hasn't made clear whether those prior classification letters are still in effect or whether they've been abrogated by the new rule.  As a matter of procedure, the APA doesn't allow a party to sue over a problem.  Right?  The APA allows a party to sue over an agency action.  Now, if those prior classification letters were abrogated by the agency, then the agency action that the plaintiffs were suing under is no longer in place and, thus, there could be a mootness problem.

Now, this might properly be framed as a -- as a challenge to the final rule; but the entirety of plaintiffs' Complaint in this case, their petition for review, is structured around those classification letters and that position.

And so I'm -- I'm not certain that just merely an Amended Complaint could -- could save that, could rescue that when you're talking about an entirely new agency action that the

20

*CIVIL CASE MANAGEMENT CONFERENCE VIA ZOOM WEBINAR – SEPTEMBER 20, 2022*
*COURT'S COLLOQUY WITH MR. WISNIEWSKI*

parties are now purportedly suing over because it doesn't go far enough?

I will also just disclose, your Honor, so that you're aware Firearms Policy Coalition is a plaintiff in the lawsuit in the Northern District of Texas as that active challenge.

Also BlackHawk Manufacturing, while not a plaintiff, is a member of Firearms Policy Coalition and did provide a Declaration in that litigation demonstrating the harm that has occurred from the final rule.

But in that litigation, ATF has taken some -- some seemingly contrary positions as to those -- those classification letters.  In one sense, they say that -- that they remain into effect as to certain firearms.  In another sense, they say that -- and I'll quote -- there is an -- the only exception to grandfathering is for partially complete, disassembled, or nonfunctional frames or receivers.

So it's unclear what the status of Polymer80's classification letters that were sued over, BlackHawk Manufacturing's classification letters that were cited repeatedly and we've addressed in our -- our briefing.

So I think that is a question that needs to be resolved, and it might just not be curable under the APA, which is -- is limited and provides specific statutory limits.

THE COURT:  Well, I wonder whether, if the Complaint is amended and depending how it's framed, that could -- that

21

could put the question you raise at issue because that's one way that the plaintiff -- if we're talking about -- again, I loosely refer to this as "an-applied" kind of challenge and that's an example of as-applied; or whether they're going to try to assert an APA claim against the -- the new regulation or final rule kind of in a vacuum without any specific application, which, of course, then raises the question of ripeness and justiciability and everything else.

So that's why I think I need to put the ball in the plaintiffs' court and see where it goes.  And if the ball is in -- put in their court and they pass it over to the Government, I guess the Government is going to have to figure out which -- at some point you got figure -- somebody's got to figure out which way it's going on this.

So I -- whatever it is, I think the current Complaint -- I mean, it's -- it's now sort of out voted, outdated, and I think we need a new operative document upon which, then, the issue of which -- of ripeness, justiciability, all that can be adjudicated.

MR. WISNIEWSKI:  Understood, your Honor.  I think -- and maybe that's the proper posture.  I think the key really is going to be the ATF taking a position on the status of those letters but, also, taking a more solid position on the effect of their rule.  You know, it's outside of this Court, obviously; but that's something that has come up -- come to light in the

22

Northern District of Texas, as well, is the confusing nature of the rule and how it is, in fact, going to be applied. You know, I think that plaintiffs here probably thought that it was going to be applied in a -- a much more stringent way. And -- and I would say that, you know, plaintiffs in the Northern District of Texas also thought that it would probably be applied in a more stringent way, which caused us harm in a different direction, obviously, your Honor. But --

THE COURT: Right.

MR. WISNIEWSKI: -- I think that's a key issue.

And then just the last thing I would address is -- is, as we have before, you know, we would request that this Court grant our intervention. You know, unfortunately, we weren't able to participate in the Joint Status Report for this case so we couldn't present these issues until we got to this -- this stage. But I think it's very clear at this point that we're very obviously opposed to defendants. We're engaged in active litigation against them on the other side. You know, we're very obviously not in the same -- aligned with plaintiffs.

Furthermore, plaintiffs have -- have, yet again, included information from BlackHawk Manufacturing in the Status Report as Exhibit 3. So they continue to oppose our intervention but then continue to put our information before this Court and continue to use it to justify their case and to justify their position.

So I think it's overwhelmingly clear at this point, your

23

*CIVIL CASE MANAGEMENT CONFERENCE VIA ZOOM WEBINAR – SEPTEMBER 20, 2022*
*COURT'S COLLOQUY WITH MR. WISNIEWSKI*

Honor, that our intervention should be granted.  And we would request it's done so sooner rather than later so that, should there be an Amended Complaint, should there be a motion to dismiss briefing, we're fully able to participate in that.

THE COURT:  Well, wouldn't I have to look at the mootness issue first before I decide on intervention?  If this case is moot, there's nothing to intervene.

MR. WISNIEWSKI:  Potentially, your Honor.  We would probably be -- or we would request to be part -- to participate in the mootness briefing should this move forward into that stage.  I mean, I suppose this Court could allow us to do so on a limited capacity as opposed to granting our intervention, which we wouldn't be opposed to.  But we do think it is very clear that, at this stage, we're an interested party.  You know, we've demonstrated every element necessary for intervention. And as this goes on, it just becomes more and more clear, your Honor.

THE COURT:  All right.  Well, let's -- let's go down the path of, I think, the first things first; and I think we have to have a new Complaint to -- to kind of frame the issues. And I think the plaintiffs are advised to keep in mind -- I think you know what's coming.  So the more specific the Complaint, obviously, the better it is that we'll be able to make some -- some determinations.

So -- and then I think, you know, the Government will file

*CIVIL CASE MANAGEMENT CONFERENCE VIA ZOOM WEBINAR – SEPTEMBER 20, 2022*
*COURT'S COLLOQUY RE:   SCHEDULING*

its motion.  And at that point, I may allow the proposed intervenors to, perhaps, file an amicus brief on that.  I don't think you need to intervene just for purposes of discussing mootness if that's going to be the issue.

And then we'll see where we go from there.  If this case proceeds, then we would have to address in earnest the motions to intervene because now the alignments are probably different than what they were at one point.

So let me ask plaintiffs.  How much time do you need to file an Amended Complaint?

MR. WEITZMAN:  Spitballing here of thirty days?

THE COURT:  All right.  And I assume that applies to all the plaintiffs?

MR. WEITZMAN:  Yes.  We filed one joint Complaint.

THE COURT:  Okay.  All right.  Thirty days.  And then I assume a response within the normal time thereafter under the rules for -- for ATF to respond?

MR. TOMLINSON:  Your -- your Honor, I think the -- the rules only give us 14 days, but I may be rusty.  So I think we'd request 30 days.

THE COURT:  All right.  So I would say 30 days to file the Complaint.  Thirty days thereafter for the response.  I will allow the intervenors to file an amicus if you want on the question of moot.  I assume that you're going to move on mootness -- move to dismiss as you've indicated.  I assume

25

that's what the Government's going to do.

MR. TOMLINSON:  Yeah.  I mean, your Honor, it's -- it's sort of difficult to know without seeing -- seeing exactly what --

THE COURT:  Yeah.  Okay.

MR. TOMLINSON:  -- the plaintiffs do in the Complaint; but we'd like to at least reserve the right to do that.

THE COURT:  All right.  Well, 30 days to respond.  If the intervenors have -- just anticipating that there may be a mootness issue, if the intervenors want to file hopefully a succinct brief on mootness, any comments you have procedurally, I'll allow that as an amicus at this point within the same time frame.  And then -- and then we'll follow the usual briefing schedule thereafter.  Okay?

MR. WISNIEWSKI:  Question, your Honor --

THE COURT:  Yeah.

MR. WISNIEWSKI:  -- within the same time frame.  Would it be possible -- or so are we -- would we be filing concurrently with defendants or would it be possible to review their briefing?  As I mentioned, we're -- we're adverse to them in other cases.  We're adverse to them, potentially, here.  I'm not sure that -- that we would necessary agree with their position.  So we would request leave to file a brief either in support of their motion to dismiss or in opposition to their motion to dismiss depending and then would probably request --

26

you know, maybe we don't need a full 30 days but, potentially, 14 days to allow us to review that and file a responsive brief?

THE COURT:  All right.  Why don't we do this.  I think that makes sense.  I'd like the parties to -- because then the plaintiffs will probably want some time thereafter.  Why don't you meet and confer and submit to me a briefing schedule that takes into account possible amicus filing shortly after the Government files its response and then gives the plaintiff some -- some time to respond.

And if you could stipulate and submit to the Court a briefing schedule as long as I get two weeks from the last hearing -- from the last brief to the hearing.  That's my main concern.  If you could submit that to me and then we'll just go about that.

But for now I'm going to assume that the process is going to be started with an Amended Complaint within 30 days.  All right?

MR. WEITZMAN:  Yes.  Thank you, your Honor.

THE COURT:  And then we'll double up the hearing on -- on the motion.  I assume there's going to be some kind of motion.  We'll double that up at a status conference at that point.

MR. WISNIEWSKI:  That makes sense to us, your Honor. And just to -- to clarify, the intent is that we'll be included in that scheduling order, as well, in order to --

27

*CIVIL CASE MANAGEMENT CONFERENCE VIA ZOOM WEBINAR – SEPTEMBER 20, 2022*
*COURT'S COLLOQUY RE:   SCHEDULING*

THE COURT:  Yeah.  Right.  Right.  All right.  So see you in a couple of months is my guess.

ALL COUNSEL:  Thank you, your Honor.

THE COURT:  Great.  Thanks.

(Hearing concluded at 3:11 p.m.)

28

**GENERAL INDEX**

**PAGE**

Civil Case Management Conference via Zoom Webinar –
September 20, 2022.................................... 3

Court's Colloquy with Mr. Tomlinson................... 4

Court's Colloquy with Mr. Weitzman................... 9

Court's Further Colloquy with Mr. Tomlinson.......... 13

Court's Further Colloquy with Mr. Weitzman........... 15

Court's Colloquy with Mr. Wisniewski................. 19

Court's Colloquy Re:  Scheduling..................... 24

Reporter's Certificate............................... 29

**WITNESS INDEX**

**PLAINTIFF WITNESSES:**                                    **PAGE**

None

**DEFENDANT WITNESSES**                                    **PAGE**

None

**EXHIBIT INDEX**

**NO.    DESCRIPTION**                                    **ADMITTED**

None

29

C E R T I F I C A T E

I, RONELLE F. CORBEY, do hereby certify:

That I am an Official Court Reporter for the United States District Court for the Eastern District of Washington in Spokane, Washington;

That the foregoing proceedings were taken on the date and at the time and place as shown on the first page hereto; and

That the foregoing proceedings are a full, true and accurate transcription of the requested proceedings, duly transcribed by me or under my direction.

I do further certify that I am not a relative of, employee of, or counsel for any of said parties, or otherwise interested in the event of said proceedings.

DATED this 23rd day of September, 2022.

_____
RONELLE F. CORBEY, RPR, CRR, CCR
Washington CCR No. 2968
Official Court Reporter for the
U.S. District Court for the
Eastern District of Washington in
Spokane County, Washington